**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE CAPITAL ONE TELEPHONE CONSUMER LITIGATION ACT LITIGATION | Master Docket No. 1:12-cv-10064 MDL No. 2416 |
| This document applies only to: | CLASS ACTION |
| 1:11-cv-5886 (N.D. Ill.) | |
| 2:12-cv-0024-RSL (W.D. Wash.) | |
| 1:12-cv-01061 (N.D. Ill.) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.      INTRODUCTION ............................................................................................. 1

II.     STATEMENT OF THE FACTS ..................................................................... 2

      A.     Procedural Background......................................................................... 2

           1.     The *Mack* Action.................................................................. 2

           2.     The *Amadeck* Action........................................................... 3

           3.     The *Patterson* Action.......................................................... 4

           4.     The *Alarcon* Action............................................................. 5

           5.     The Multi-District Litigation ................................................ 5

           6.     The Litigation........................................................................ 6

      B.     The Parties' Mediation......................................................................... 7

      C.     Confirmatory Discovery ...................................................................... 7

      D.     The Proposed Settlement ..................................................................... 8

           1.     The Settlement Class............................................................. 8

           2.     Monetary Relief for Settlement Class Members.................... 9

           3.     *Cy Pres* Distributions ......................................................... 10

           4.     Class Release ......................................................................... 10

           5.     Class Representative Service Award ..................................... 10

           6.     Attorneys' Fees and Costs .................................................... 11

           7.     Administration and Notice..................................................... 11

III.    ARGUMENT.................................................................................................. 13

      A.     The Settlement Approval Process......................................................... 13

      B.     The Settlement is Within the "Range of Reasonableness" for Preliminary Approval........................................................................... 16

           1.     The Settlement Provides Substantial Relief for Class Members, Particularly in Light of the Uncertainty of Prevailing on the Merits............................................................ 16

                a.     The Monetary Amount offered in Settlement................. 16

                 b.     The Strength of Plaintiffs' Case....................................... 18

## TABLE OF CONTENTS
### (continued)

**Page**

2.    Continued Litigation is Likely to be Complex, Lengthy, and Expensive ............................................................................. 21

3.    There is Currently No Opposition to the Settlement .................. 21

4.    Class Counsel Strongly Endorse the Settlement ......................... 22

5.    The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval ................................ 22

C.    Provisional Certification of the Settlement Class is Appropriate ........... 23

1.    The Rule 23(a) Requirements are Satisfied ................................ 24

2.    The Rule 23(b)(3) Requirements are Satisfied ........................... 25

D.    The Proposed Notice Program Is Constitutionally Sound ..................... 26

IV.    CONCLUSION ................................................................................................ 27

CERTIFICATE OF SERVICE ................................................................................... 30

**Cases**

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,
  No. 09 C 910, 2011 U.S. Dist. LEXIS 48323
  (N.D. Ill. May 5, 2011) ................................................................................ 20

*Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*,
  No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219
  (N.D. Ill. July 26, 2011) ......................................................................... 14, 15

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................... 25

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ......................................................... 13, 14, 15, 17

*Arthur v. Sallie Mae, Inc.*,
  No. 10-cv-132413, 2012 U.S. Dist. LEXIS 132413
  (W.D. Wash. Sept. 17, 2012) ......................................................................... 19

*Chapman v. First Index, Inc.*,
  No. 09 C 5555, 2014 U.S. Dist. LEXIS 27556
  (N.D. Ill. March 4, 2014) ............................................................................... 20

*Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998) ........................................................................ 13

*G.M. Sign, Inc. v. Brinks Manufacturing Co.*,
  No. 09 C 5528, 2011 U.S. Dist. LEXIS 7084
  (N.D. Ill. March 4, 2014) ............................................................................... 20

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
  No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869
  (N.D. Ill. Aug. 20, 2009) ............................................................................... 24

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) ..................................................................... 16

*In re Mexico Money Transfer Litig.*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000) ............................................................ 22

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ..................................................................... 13, 15

*Kessler v. Am. Resorts International's Holiday Network, Ltd.*,
  Nos. 05 C 5944 & 07 C 2439,
  2007 U.S. Dist. LEXIS 84450
  (N.D. Ill. Nov. 14, 2007) ............................................................................... 15

*Kramer v. Autobytel*,
  No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800
  (N.D. Cal. Jan. 27, 2012) ............................................................................... 17

*Malta v. Fed. Home Loan Mortg. Corp.*,
   No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731
   (S.D. Cal. Feb. 5, 2013) ............................................................................... 17

*McCabe v. Crawford & Co.*,
   210 F.R.D. 631 (N.D. Ill. 2002) .................................................................... 24

*McKinnie v. JP Morgan Chase Bank, N.A.*,
   678 F. Supp. 2d 806 (E.D. Wis. 2009) .......................................................... 22

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ....................................................................................... 26

*Murray v. New Cingular Wireless Servs.*,
   232 F.R.D. 295 (N.D. Ill. 2005) .................................................................... 25

*Parker v. Risk Mgmt. Alternatives, Inc.*,
   206 F.R.D. 211 (N.D. Ill. 2002) .................................................................... 24

*Phillips Randolph Enters., LLC v. Rice Fields*,
   No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027
   (N.D. Ill. Jan. 11, 2007) ................................................................................ 20

*Redman v. Radioshack Corp.*,
   No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880
   (N.D. Ill. Feb. 7, 2014) ................................................................................. 15

*Sadowski v. Med1 Online, LLC*,
   No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766
   (N.D. Ill. May 27, 2008) ............................................................................... 25

*Savanna Group, Inc. v. Trynex, Inc.*,
   No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277
   (N.D. Ill. Jan. 4, 2013) .................................................................................. 20

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................ 21

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ......................................................................... 16

**Statutes**

Telephone Consumer Protection Act,
   47 U.S.C. § 227(b)(1)(A) ................................................................................ 1

**Rules**

*In the Matter of Rules and Regulations*
   *Implementing the Telephone Consumer Protection Act of 1991*,
   23 F.C.C.R. 559, 23 FCC Rcd. 559,
   43 Communications Reg. (P&F) 877,
   2008 WL 65485 (F.C.C.) ............................................................................... 18

**Other Authorities**

4 *Newberg on Class Actions* §§ 11.25 and 11.41 (4th ed. 2002)............................................. 13, 14

*Manual for Complex Litig.,*
    at §§ 13.14, 21.312, 21.632, and 21.633 (Fourth) (2004)....................................... 13, 15, 23, 26

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs respectfully move the Court for preliminary approval of the nationwide class action settlement ("Settlement") reached between Plaintiffs and Defendants. The proposed Settlement would resolve all claims in the above-entitled action. Plaintiffs allege that Defendants called Plaintiffs and Class Members on their cell phones through the use of automatic telephone dialing systems or by using an artificial or prerecorded voice without Plaintiffs' or Class Members' prior express consent, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A).

The Settlement requires Defendants to pay largest settlement cash sum – by far – in the 22-year history of the TCPA—$75,453,307.14—into a settlement fund ("Fund"). Eligible Class Members who file qualified claims will receive a pro rata cash payment from this Fund. Not a single penny of the Fund will revert back to Defendants.

This action involves sharply opposing positions on many issues, including three critical ones. First, the parties disagree whether Capital One's Customer Agreement provided Capital One[1] with prior express consent to make automated calls to Class Members on their cellular telephones.

Second, the parties disagree on whether the TCPA permits prior express consent to be obtained after the transaction that resulted in the debt owed. Plaintiffs assert, based on certain rulings from the Federal Communications Commission (the "FCC"), that consent may be given only during the origination of the credit relationship. Capital One maintains that Plaintiffs'

---

[1] The following Capital One entities are named as Defendants in Plaintiffs' amended complaint (*see* Dkt. No. 120): Capital One Bank (USA), N.A., Capital One, N.A., Capital One Financial Corporation, Capital One Services, LLC, and Capital One Services II, LLC.

construction of the rulings is wrong. In particular, Capital One maintains that a "transaction resulting in debt" extends over many years, and that Capital One may use automated calls to contact customers at any point during this period after a customer has provided a cell phone number as a contact number.

Finally, the parties also disagree as to whether Plaintiffs can certify a class because of what Capital One maintains are inherently individual issues among Class Members.

Despite these disagreements, the parties reached settlement after participating in three in-person and two telephonic mediation sessions spanning over seven months before the Honorable Edward A. Infante (Ret.) of JAMS. The Settlement came about only after Judge Infante made a mediator's proposal, which the parties carefully considered and accepted.

With this motion, Plaintiffs seek preliminary approval of the Settlement and provisional certification of a nationwide class for purposes of providing the Class with notice of the Settlement and an opportunity to opt-out, object, or otherwise be heard. The proposed Settlement satisfies all criteria for preliminary settlement approval under Seventh Circuit law.

## II.     STATEMENT OF THE FACTS

### A.     Procedural Background

#### 1.     The *Mack* Action

On August 25, 2011, Plaintiff Nicholas Martin filed a class action complaint against Leading Edge Recovery Solutions, LLC ("Leading Edge") in the United States District Court, Northern District of Illinois, C.A. No. 1:11-05886. Mr. Martin alleged that Leading Edge made at least one prerecorded call using an automatic dialing system to his cell phone. *Id.*, Dkt. No. 1, ¶ 9. The original complaint did not name Capital One as a defendant. Martin added Capital One as a defendant, and Mack as an additional plaintiff, on January 18, 2012 (the "*Mack* Action"). The Complaint in the *Mack* Action alleged that Capital One and Leading Edge violated the

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by using an automatic telephone dialing system and/or an artificial prerecorded voice to call cell phones without the prior express consent of Mack, Martin, and the potential class members. *See* Dkt. No. 32. Capital One moved to dismiss the *Mack* Action under Fed. R. Civ. P. 12(b)(1) and 12(b)(6); that motion was denied in its entirety. *See* Dkt. No.84. Plaintiff Mack and Capital One had moved into discovery motion practice (*see* Dkt. No. 87) when the *Mack* Action was found to fall within the scope of this action and re-assigned to this Court (*see* Dkt. No. 115).

### 2.    The *Amadeck* Action

On January 20, 2012, Amadeck and Felix Hansen ("Hansen") filed a Complaint in the Superior Court of Washington in and for the County of King captioned *Amadeck et al. v. Capital One Financial Corp. and Capital One Bank (USA), NA*, Case No. 12-2-D2641-6 SEA. On February 12, 20112, Capital One removed the case to the United States District Court for the Western District of Washington, where the case was captioned *Amadeck et al. v. Capital  One Financial Corp. and Capital One Bank (USA) NA*, Case No. 12-cv-00244 RSL (W.D. Wash.) ("*Amadeck* Action"). The First Amended Complaint in the *Amadeck* Action alleged, *inter alia*, that Capital One violated the TCPA by using an automatic telephone dialing system and/or an artificial prerecorded voice to call phones without the prior express consent of Amadeck and the potential class members.

The Amadeck Plaintiffs promulgated written discovery to Capital One, analyzed the responses, and responded to written discovery from Capital One. Counsel held conferences with Capital One's counsel regarding discovery and other issues. As part of their investigation, counsel issued public records requests to the Washington Attorney General's Office and the Federal Trade Commission, analyzing and cataloging responsive complaints. Plaintiffs also noticed a Rule 30(b)(6) deposition of Defendant Capital One Bank U.S.A. (NA) regarding

electronically stored information, including databases.  When the case was stayed pending transfer to this Court, Plaintiffs' Motion to Modify the Scheduling Order and for Leave to Amended Complaint was pending in the Western District of Washington.

### 3.      The *Patterson* Action

On February 14, 2012, Patterson filed a Complaint in the United States District Court for the Northern District of Illinois captioned *Patterson v. Capital Management Services, LP and Capital One Bank (USA) N.A.*, Case No. 12-cv-01061 (N.D. Ill.) (Holderman, J.) (the "*Patterson* Action").  The Complaint in the Patterson Action alleged that Capital One and Capital Management Systems, LP ("CMS") violated the TCPA by using an automatic telephone dialing system and/or an artificial prerecorded voice to call cell phones without the prior express consent of Patterson and the potential class members.

Capital One moved to dismiss the *Patterson* Action for lack of subject matter jurisdiction (*see* Dkt No. 28); this Court denied that motion, holding that Patterson had standing to bring a claim because "he suffered annoyance and an invasion of his privacy when he received the unwanted calls" and because "Congress . . . elevated that minimal injury in the TCPA by creating a private cause of action to recover statutory damages for any violation."  *See* Dkt. No. 35 (June 5, 2012 Order).  Capital One and CMS responded to extensive discovery requests and the parties then engaged in discovery motion practice.  On September 6, 2012 Magistrate Judge Sheila Finnegan granted Plaintiff Patterson's motion to compel class discovery.  *See* Dkt. No. 55. On October 11, 2012, this Court granted Capital One's motion to stay the case pending the JMPL's decision to transfer for Coordinated or Consolidated Pretrial Proceedings Under 28 U.S.C. § 1407.  *See* Dkt. No. 67.  The case was later transferred to this action.  *See* Dkt. No. 73.

### 4. The *Alarcon* Action

On August 7, 2012, Alarcon filed a nationwide class action in the Northern District of California captioned *Alarcon v. Cap. One Bank (USA) N.A., et al.*, Civ. No. 3:12-CV-4145 (N.D. Cal.) (the "*Alarcon* Action"). The Complaint in the Alarcon Action alleged that Capital One violated the TCPA by using an automatic telephone dialing system and/or an artificial prerecorded voice to call cell phones without the prior express consent of Alarcon and the potential class members. Alarcon voluntarily dismissed this lawsuit on October 1, 2012 to join the *Amadeck* Action.

### 5. The Multi-District Litigation

Plaintiffs' counsel in the four class actions worked collaboratively to prosecute these actions in the most efficient manner possible. Plaintiffs' counsel consolidated their efforts to and engaged in extensive motion practice before the Judicial Panel on Multidistrict Litigation ("JPML") to transfer and consolidate these actions to a single forum.

On December 10, 2012, the JPML transferred the *Mack*, *Amadeck*, and *Patterson* Class actions and related individual actions involving TCPA claims to the Northern District of Illinois. *See In re Capital One Telephone Consumer Protection Act Litigation*, MDL No. 2416, Dkt. No. 1. On February 15, 2013, the Court designated Jonathan Selbin of Lieff Cabraser Heimann & Bernstein, LLP, and Beth Terrell of Terrell Marshall Daudt & Willie, PLLC, as Interim Co-Lead Counsel, and Keith Keogh of Keogh Law, Ltd. as Liaison Counsel. *Id.*, Dkt. No. 12. Plaintiffs filed a Consolidated Master Class Action Complaint ("Master Complaint") on February 28, 2013 against Capital One, Leading Edge, and CMS. *See Id.*, Dkt. 19. The Master Complaint superseded the complaints filed in the *Mack*, *Amadeck*, and *Patterson* Actions, and was amended on June 13, 2014, to add plaintiff Kalik, Defendant AllianceOne Incorporated ("AllianceOne"), and other Capital One entities. *Id.*, Dkt. No. 120.

6.   **The Litigation**

With Lead Counsel in place, Plaintiffs proceeded to litigate the case.  In a half-day, in-person meeting in Chicago, followed by weeks of telephonic, letter, and email correspondence, the parties named in the original Master Complaint conducted their Rule 26(f) conference and negotiated an E-Discovery Plan and proposed Case Management Order.[2]  The discussions were thorough and, at many points, contentious, as the parties addressed all facets of discovery as well as their respective views on class certification and the merits of Plaintiffs' class TCPA claims.[3]  These meet and confer efforts were informed by the substantial classwide discovery already conducted in the prior actions.[4]

In particular, in a series of meet and confers, the parties named in the original Master Complaint discussed their respective positions on the key, case-dispositive issue of whether the terms of Capital One's Customer Agreement  constitute prior express consent within the meaning of the TCPA.  Plaintiffs' counsel obtained and analyzed a complete set of the contractual language at issue during the Class Period.  As these parties prepared to engage in motion practice, they also began to explore the possibility of mediation.  However, as a condition precedent to mediation, Plaintiffs insisted that Capital One agree to classwide discovery sufficient to engage in meaningful settlement discussions in an informed manner.  After Capital One agreed to provide this information, these parties devoted their efforts to engaging in that discovery.  Over a six-month period, Capital One produced, and Plaintiffs analyzed, the data and documents requested.

---

[2] Declaration of Jonathan D. Selbin in Support of Motion for Preliminary Approval of Settlement ("Selbin Decl.") ¶ 14.
[3] *Id.*
[4] *Id.*

### B. The Parties' Mediation

The parties named in the Master Complaint participated in three in-person (July 2 and November 4, 2013 and January 29, 2014) and two telephonic mediation sessions before the Honorable Edward A. Infante (Ret.) of JAMS.[5] Prior to the mediation, Capital One, Leading Edge, and Plaintiffs submitted detailed mediation briefs to Judge Infante, setting forth their respective views on the strengths of their cases.[6] The parties discussed their relative views of the law and the facts and potential relief for the proposed Class.[7] As the negotiations evolved, Plaintiffs' counsel requested, and Capital One provided, additional data and documents for Plaintiffs' counsel to analyze.[8]

Counsel exchanged a series of counterproposals on key aspects of the Settlement, including monetary relief for the Class, notice to the Class and the meaning and interpretation of the eligibility requirements.[9] At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length.[10] Capital One and Plaintiffs agreed to a Settlement only in the days following the January 29, 2014 mediation and after Judge Infante made a mediator's proposal.[11] The three Participating Vendors agreed to join the settlement in the months thereafter.

### C. Confirmatory Discovery

Plaintiffs served confirmatory discovery requests on Capital One and the Participating Vendors, including interrogatories asking them to identify the total number of Settlement Class

---

[5] *Id.* ¶ 17.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*. ¶ 18.
[10] *Id.*
[11] *Id.* ¶ 19.

Members and to describe all changes to their business practices required by the Settlement.[12]

Plaintiff also asked Capital One to identify all Capital One affiliates and Participating Vendors

that made automated calls during the class period.[13] Capital One and the Participating Vendors

replied to these discovery requests in a timely manner, and supplied complete and

comprehensive information.[14]

Plaintiffs also conducted four depositions of Rule 30(b)(6) designees for Capital One and

the three Participating Vendors, including extensive questioning regarding the subject matter of

the discovery requests described above.[15]

> **D.** **The Proposed Settlement**

The Settlement's details are contained in the Agreement signed by the parties, a copy of

which is attached as Exhibit 1 to the Selbin Decl. For purposes of preliminary approval, the

following summarizes the Agreement's terms:

> **1.** **The Settlement Class**

The Settlement Class is defined as follows:

> All persons within the United States who received a non-
> emergency telephone call from Capital One's dialer(s) to a cellular
> telephone through the use of an automatic telephone dialing system
> or an artificial or prerecorded voice in connection with an attempt
> to collect on a credit card debt from January 18, 2008, through
> June 30, 2014, and all persons within the United States who
> received a non-emergency telephone call from a Participating
> Vendor's dialer(s) made on behalf of Capital One to a cellular
> telephone through the use of an automatic telephone dialing system
> or an artificial or prerecorded voice in connection with an attempt
> to collect on a credit card debt from February 28, 2009, through
> June 30, 2014.

---

[12] *Id.* ¶ 20.
[13] *Id.*
[14] *Id.*
[15] *Id.* ¶ 21.

Agreement § 2.38. The confirmatory discovery confirms the is comprised of people throughout the United States who possess approximately 21.2 million unique cellular phone numbers.[16]

### 2. Monetary Relief for Settlement Class Members

The Settlement requires Capital One and the Participating Vendors to create a non-reversionary Settlement Fund of $75,453,307.14. Agreement § 2.42. Out of this Fund, eligible Settlement Class Members who file a qualified claim will receive a Cash Award in the form of a cash payment. *Id.* §§ 2.06, 4.04. The amount of each Class Member's Award will be based on a *pro rata* distribution, depending on the number of valid and timely claims. *Id.* § 4.04. No amount of the Settlement Fund will revert to Defendants. *Id.* §§ 2.42, 4.02. While it is not possible to predict the precise amount of the Awards until all claims have been submitted, Class Counsel, based on their experience in similar TCPA class actions, estimate awards in the range of $20 to $40 after deductions for Court-approved attorneys' fees and costs, Court-approved incentive awards to the Plaintiffs, and costs of notice and claims administration. Checks for Cash Awards will be valid for 210 days from the date of the check. *Id.* § 7.04.

In order to exercise the right to obtain the relief outlined above, Class Members need only complete a simple, one-page claim form and provide it to the Claims Administrator via the Settlement Website, by telephone, or by mail. *Id.* Class Members shall be notified of the settlement 45 days after an order granting preliminary approval issues (*id.* § 243), and will have 90 days following this notification to submit their claim forms. *Id.* §§ 2.10, 2.11. If Class Members wish to object to or opt out of the Settlement, they will have 60 calendar days from the Settlement Notice Date—*i.e.* 105 days from the Preliminary Approval Order—to do so. *Id.* §§ 2.31, 2.32.

---

[16] These numbers may increase slightly following preliminary approval after Defendants provide updated class member data through the end of the Class Period (June 30, 2004).

### 3. *Cy Pres* Distributions

Only if the combined amounts of any settlement payment checks to Class Members that remain uncashed for more than 210 days would not allow a second pro rata distribution to the qualifying Settlement Class Members equal to or greater than $1.00 per Settlement Class Member, the remaining money will be distributed cy pres to a non-profit organization(s) to be submitted by the parties for Court approval. *Id.* § 7.04(g).

### 4. Class Release

In exchange for the benefits allowed under the Settlement, Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release all claims "that arise out of or relate in any way to: (i) Capital One's use of an 'automatic telephone dialing system' or 'artificial or prerecorded voice' to contact or attempt to contact Settlement Class Members in connection with Capital One's Credit Card Accounts via Calls . . . from January 18, 2008 to June 30, 2014, and/or (ii) any Participating Vendor's use of an "automatic telephone dialing system" or "artificial or prerecorded voice" to contact or attempt to contact Settlement Class Members in connection with Capital One's Credit Card Accounts via Calls . . . from February 28, 2009, to June 30, 2014." *Id.* §14.01

### 5. Class Representative Service Award

Prior to the Final Approval hearing, the Class Representatives will ask the Court to award them service awards for the time and effort they have personally invested in this Action. As part of the Settlement, Defendants agree not to object to such incentive payments to be paid to the Plaintiffs from the Settlement Fund provided they do not exceed $25,000 in the aggregate or $5,000 for each Class Representative, subject to Court approval. *Id.* §5.02

### 6. __Attorneys' Fees and Costs__

Also prior to the Final Approval hearing, Class Counsel will apply to the Court for an award of attorneys' fees and costs.  Defendants will not contest Class Counsel's application to this Court for payment of the costs incurred by Class Counsel in litigating this action, or attorneys' fees of not more than 30 percent of the Settlement Fund.  *Id.* §5.01.  As will be addressed in Class Counsel's motion for attorneys' fees, Seventh Circuit courts commonly award even higher percentages of settlement common funds as attorneys' fees, and it is appropriate to compensate Class Counsel in this amount here for the work they have performed in procuring a record-setting settlement for the Class, as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, overseeing settlement implementation and administration, assisting Class Members, and obtaining dismissal of the action.  It should be noted, however, that the enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees or costs.  *Id.*

### 7. __Administration and Notice__

All costs of notice and claims administration will be paid from the Settlement Fund.  The parties have agreed that BrownGreer PLC (the "Claims Administrator") will administer the Settlement, subject to review by Class Counsel, which includes the following duties: (1) issuing Class Notice and claim forms; (2) setting up and maintaining the settlement website and toll-free number; (3) responding to Class member inquiries regarding the claims administration process; (4) approving or rejecting claims; and (5) and issuing settlement payments.  *Id.* §§ 2.08, 7.01. Defendants have agreed to cooperate with the Claims Administrator to ensure that it has all of the information it needs to perform these tasks.  *Id.* § 7.02.

Within forty-five (45) days of entry of the Preliminary Approval Order, the Claims Administrator will issue the Class Notice (Exhibit B to the Agreement) via mail or email to all

Class Members for whom Capital One possesses contact information. *Id.* § 8.01. Notice will be delivered by email to all Class Members for whom such records exist and have not opted out of receiving emails or, by first class mail, for those persons for whom Capital One does not have an email address or who have opted out of receiving emails. *Id.* § 8.02. The Claims Administrator will confirm last known addresses of Settlement Class Members through a variety of means, including checking addresses against the United States Post Office National Change of Address Database before the initial mailing. *Id.* The Claims Administrator will conduct a reasonable search to locate an updated address for any person in the Settlement Class whose Settlement Notice is returned as undeliverable. *Id.* Additionally, publication notice will be provided via a nationwide internet notice program. *Id.* § 8.03.

Further, the Claims Administrator will establish and maintain a Settlement Website. *Id.* § 8.04. The Settlement Website will provide for online submission of claims and will also include general information such as the Settlement Agreement; the full length form of notice; the Preliminary Approval Order; a downloadable Claim Form for anyone wanting to print a hard copy of and mail in the Claim Form; and, when filed, the Motion for Attorneys' Fees and the Final Approval Order. *Id.*

The Claims Administrator will also set up a toll-free telephone number for receiving toll-free calls related to the Settlement within ten days of preliminary approval. *Id.* § 8.05. That telephone number will be maintained until 30 days after the Claims Deadline, after which, for 90 days a recording will advise any caller to the toll-free telephone number that the Claims Deadline has passed and the details regarding the Settlement may be reviewed on the related Settlement Website. *Id.*

## III.    ARGUMENT

### A.    The Settlement Approval Process

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, 'there is an overriding public interest in favor of settlement.' Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentator Professor Newberg, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25.

With this motion, Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is merely to determine whether the settlement is within the "range of possible approval," and thus whether notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile. *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219, at *32-33 (N.D. Ill. July 26, 2011) (citing *Armstrong*, 616 F.2d at 314). Accordingly, at the preliminary approval stage, courts need not "conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Id.*

When determining whether a settlement is ultimately fair, adequate, and reasonable at the "final approval" stage, courts in this Circuit consider the following factors:

(1) the strength of plaintiffs' case compared to the terms of the proposed settlement;

(2) the likely complexity, length, and expense of continued litigation;

(3) the amount of opposition to settlement among affected parties;

(4) the opinion of competent counsel; and

(5) the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199. While not required, courts often consider these factors to determine whether the settlement falls within the range of possible approval at the preliminary approval stage. *See, e.g., Am. Int'l Group*, 2011 U.S. Dist. LEXIS 84219, at *33 ("[A]lthough neither the Federal Rules of Civil Procedure nor binding case law requires it, courts in this district have performed "a more summary version" of the final fairness inquiry at the preliminary approval stage); *Kessler v. Am. Resorts International's Holiday Network, Ltd*., Nos. 05 C 5944 & 07 C 2439, 2007 U.S. Dist. LEXIS 84450, at *17 (N.D. Ill. Nov. 14, 2007) ("Although this [fair, reasonable, and adequate] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase."). In reviewing these factors, courts view the facts "in a light most favorable to the settlement." *Redman v. Radioshack Corp*., No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880, at *9 (N.D. Ill. Feb. 7, 2014) (citing *Isby*, 75 F.3d at 1199). In addition, courts "should not substitute [their] own judgment as to the best outcomes for litigants and their counsel." *Id.* (citing *Armstrong*, 616 F.2d at 315).

Granting preliminary approval of this Settlement will allow all Class Members to receive notice of the proposed Settlement's terms and the date and time of the final Settlement approval hearing, at which Class Members may voice approval of or opposition to the Settlement, and at which the parties and Class Members may present further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement. *See Manual for Compl. Lit.*, at §§ 13.14, § 21.632

**B.    The Settlement is Within the "Range of Reasonableness" for Preliminary Approval**

The Settlement meets all of the factors relevant to final approval, and thus the Settlement should be preliminarily approved.

### 1.    The Settlement Provides Substantial Relief for Class Members, Particularly in Light of the Uncertainty of Prevailing on the Merits

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement."  *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted).  Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs."  *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

### a.    The Monetary Amount offered in Settlement

The Settlement requires Defendants to pay $75,453,307.14 into a Settlement Fund. Of this, Capital One will contribute $73,000,000; Leading Edge will contribute $996,205.71; CMS will contribute $24,220.08; and AllianceOne will contribute $1,434,672.95.  Out of these contributions, all eligible Class Members will receive their *pro rata* share of cash payments. Agreement § 2.41, 4.05.  The Settlement Fund is non-reversionary, ensuring that all or nearly all monetary benefits will go to Class Members—none of the Settlement Fund will return to Defendants.  The Settlement Fund created by this Settlement is the largest such cash fund of which Class Counsel are aware in a TCPA class action case.[17]  The TCPA has been on the books

---

[17] Selbin Decl., ¶ 6, discussing *Rose, et al. v. Bank of America Corp.*, et al., No. 11-cv-02390 (N.D. Cal.), a nationwide settlement pending final approval that achieved a $32,083,905 common fund, which was the then-largest monetary settlement in the history of the TCPA.

since 1991, and it has been litigated extensively. Thus, the monetary amount achieved by the Settlement is simply an outstanding result for Class Members, particularly because TCPA damages are purely statutory damages in that Class Members have not suffered any out-of-pocket losses or other economic harm.

Class Counsel acknowledge that the $75,453,307.14 fund does not constitute the full measure of statutory damages potentially available to the Class. This fact alone, however, should not weigh against preliminary approval. "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. The Settlement was reached after extensive factual investigation and discovery of the claims and issues and after taking into consideration the risks involved in the actions, after extensive arm's-length negotiations presided by an experienced mediator and former judge. Further, the Settlement compares favorably to other TCPA class actions settlements. Indeed, courts have approved other TCPA class action settlements involving similarly large putative classes that achieved much smaller *pro rata* monetary recoveries.[18] Moreover, as discussed further below, aggregate statutory awards have been viewed with skepticism, particularly where, as here, class members

---

[18] *See, e.g., Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at Dkt. No. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012) (attached as Exhibits 4 & 5 to Selbin Decl.) (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash. Oct. 21, 2011) (attached as Exhibits 6 & 7 to Selbin Decl.) (approving $5.5 million settlement to benefit 18.1 million class members).

incurred zero actual damages or out-of-pocket losses. The key here is that the Settlement provides class members with real monetary relief, despite the fact that this is a purely statutory damages case in which class members incurred nominal economic damages or whose actual damages (such as to the invasion of their privacy are difficult or impossible to quantify).[19]

For all of the above reasons, the monetary amount recovered through the Settlement—the largest TCPA settlement known to Class Counsel—is a great result for the Class.

**b.     The Strength of Plaintiffs' Case**

Plaintiffs continue to believe that their claims against Defendants have merit and that they could make a compelling case if their claims were tried. Nevertheless, Plaintiffs and the Class would face a number of difficult challenges if the litigation were to continue.

First, the Parties have competing interpretations of what constitutes "prior express consent" under the TCPA based on the FCC's January 4, 2008 declaratory ruling, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (hereinafter "Declaratory Ruling"). The Declaratory Ruling is the FCC's official interpretation of the governing provisions of the TCPA. The FCC's Declaratory Ruling addresses the meaning of "prior express consent" and states that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." Plaintiffs maintain that Paragraph 10 requires that the cell phone number be "provided during the transaction that resulted in the debt owed," *i.e.*, during the "origination" of the credit or banking relationship. Capital One, however, interprets the term "transaction" to cover a much longer time period.

---

[19] To the extent the Court determines that it would like additional information regarding the value of the relief provided, Class Counsel will provide such information prior to final approval.

Based on this interpretation, Capital One maintains that some or all of the Class Members gave it prior express consent to contact them at their cell phone numbers. If the Court found that the FCC's Declaratory Ruling and/or the TCPA permits "prior express consent" to be given any time a customer provides a cell phone number as a contact number the amount of recoverable damages could be reduced significantly or eliminated altogether. *See, e.g., Arthur v. Sallie Mae, Inc.,* No. 10-cv-132413, 2012 U.S. Dist. LEXIS 132413, at *4 (W.D. Wash. Sept. 17, 2012) (granting final approval of TCPA settlement "in part because of the novelty of central issues").

Second, Capital One maintains that it has obtained prior express consent to call its customers under the TCPA through the Capital One Customer Agreement. For example, one Agreement in effect during the Class period states: "[w]hen you give us or we obtain your mobile telephone number, we may contact you at this number using an Autodialer." Plaintiffs believe that this language does not provide prior express consent for numerous reasons, including that it does not provide permission to contact a customer in violation of the TCPA, which is underscored by an express carve out in the Agreement that Capital One can only contact class members "unless the law says that we cannot." Capital One argues that this language goes beyond the requirements of the TCPA, and that is constitutes express, written consent to auto-dial customers, who agreed to be bound by the terms in exchange for using their Capital One credit cards.

Third, while Plaintiffs continue to believe that class certification would be achievable, Capital One consistently argued that class certification would be inappropriate due to the question of whether Class Members consented to the calls at issue. If the Court were to accept Capital One's interpretation of "prior express consent" under the statute, identifying which class members consented and in what manner could be difficult. And, "[c]ourts are split on whether

the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case." *Chapman v. First Index, Inc.*, No. 09 C 5555, 2014 U.S. Dist. LEXIS 27556, at *6-7 (N.D. Ill. March 4, 2014) (citing cases). For example, in *Savanna Group, Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277, at *49 (N.D. Ill. Jan. 4, 2013), the court granted class certification and rejected the defendant's argument that questions of consent caused individual issues to predominate, noting that the defendant had not offered evidence tending to show that any particular class member consented to the faxes at issue, whereas in *G.M. Sign, Inc. v. Brinks Manufacturing Company*, No. 09 C 5528, 2011 U.S. Dist. LEXIS 7084, at *7-10 (N.D. Ill. March 4, 2014), the court declined to certify a class, finding that the defendant offered evidence illustrating that consent could not be shown with common proof. If Capital One were able to present convincing facts to support its position, there is a risk that the Court would decline to certify the class, leaving only the named Plaintiffs to pursue their individual claims.

Fourth, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.*, No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process

clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Finally, there is a risk of losing a jury trial. And, even if Plaintiffs did prevail at trial, any judgment could be reversed on appeal.

The Settlement provides substantial relief to Class Members without delay and is within the range of reasonableness, particularly in light of the above risks that Class Members would face in litigation.

### 2. Continued Litigation is Likely to be Complex, Lengthy, and Expensive

Litigation would be lengthy and expensive if this action were to proceed. Although the parties engaged in significant discovery efforts, continued litigation would involve extensive motions practice, including Plaintiffs' motion for class certification. In addition, Defendants might bring a motion for summary judgment. The parties might also engage experts to analyze Capital One's and its vendors' call data. It is likely to be more than two years before the case would proceed to trial. And, any judgment in favor of Class Members could be further delayed by the appeal process. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiffs and Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 3. There is Currently No Opposition to the Settlement

All parties favor settlement. But because notice has not yet been sent to the class, this factor cannot be fully evaluated prior to the final fairness hearing.

### 4. Class Counsel Strongly Endorse the Settlement

Class Counsel and Plaintiffs strongly endorse this Settlement.[20]  Class Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation (particularly in similar TCPA class action cases); (2) Class Counsel engaged in formal and informal discovery and exhaustively evaluated the claims in the context of settlement negotiations; and (3) the Settlement was reached at arm's length through negotiations by experienced counsel, after three full-day in-person and two telephonic mediation sessions before an experienced mediator and former judge, and after the parties accepted a mediator's proposal.[21]  *See McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").  This factor therefore weighs in favor of preliminary approval.

### 5. The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval

The Settlement was informed by Class Counsel's thorough litigation and analysis of the factual and legal issues involved.  Through and after the mediation process, Capital One also voluntarily provided Class Counsel with, and Class Counsel reviewed, the call record data and other information necessary to confirm that the Settlement is fair, reasonable, and adequate.[22]

---

[20] Selbin Decl. ¶ 25.

[21] *Id.*, ¶ 14.

[22] *Id.* ¶ 22.

Settlement negotiations were prolonged and hard-fought, spanning many months.[23]  The parties named in the original Master Complaint participated in three full-day mediation sessions on July 2, 2013, November 4, 2013, and January 29, 2014 before the Honorable Edward A. Infante (Ret.) of JAMS.  The negotiation process nearly broke down several times as Class Counsel continually advocated for a larger fund for the Class, while Capital One, CMS and Leading Edge wanted a smaller fund.[24]  The case settled only after the parties accepted a mediator's proposal.[25]  Thereafter, the parties spent numerous hours negotiating the final settlement terms and drafting the Settlement Agreement.[26]

Accordingly, the final terms of Settlement were agreed to only after Class Counsel thoroughly vetted the claims and potential damages through the exchange of both informal and formal discovery and participated in lengthy arm's-length negotiations.

### C. <u>Provisional Certification of the Settlement Class is Appropriate</u>

For settlement purposes, Plaintiffs respectfully request that the Court provisionally certify the Class defined in the Agreement.  Agreement § 2.39.  Provisional certification for settlement purposes permits notice of the proposed Settlement to issue to inform Class Members of the existence and terms of the proposed Settlement, their right to be heard on its fairness, their right to opt out, and the date, time and place of the formal fairness hearing.  *See Manual for Compl. Lit.*, at §§ 21.632, 21.633.  Defendants waive their right to challenge class certification solely for purposes of this Settlement.  For the reasons set forth below, provisional certification is appropriate under Federal Rule of Civil Procedure Rule 23.

---

[23] *Id.* ¶ 18.
[24] *Id.*
[25] *Id.* ¶ 19.
[26] *Id.*

### 1.    **The Rule 23(a) Requirements are Satisfied**

The numerosity requirement of Rule 23(a) is satisfied because the combined Class consists of people throughout the United States who owned approximately 21.2 million unique cell phones called by Defendants, and joinder of all such persons is impracticable. *See McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) (a class of forty or more is generally sufficient to establish numerosity). The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on Defendants' common practice of using an automated dialing system to call Class Members on their cell phones. *See Parker v. Risk Mgmt. Alternatives, Inc*., 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."); *G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *12 (N.D. Ill. Aug. 20, 2009) (finding the following common questions: "1) whether Defendant violated the TCPA by faxing advertisements without first obtaining express invitation or permission to do so; 2) whether Plaintiff and other class members are entitled to statutory damages; and 3) whether Defendants acts were 'willful' or 'knowing' under the TCPA and, if so, whether Plaintiff and other class members are entitled to trebled damages."). The typicality requirement is satisfied because Plaintiffs' TCPA claims, which are based on Defendants' systematic use of automated calls to cell phones, arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206 F.R.D. at 213. The adequacy of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign,* 2009 U.S. Dist. LEXIS 73869, at *15-16. Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise in prosecuting complex class actions, including TCPA actions. *See id.*

### 2.    The Rule 23(b)(3) Requirements are Satisfied

The predominance requirement of Rule 23(b)(3) is satisfied because common questions present a significant aspect of the case and can be resolved for all Settlement Class members in a single adjudication.  Common issues predominate here because the claims of the class members arise from Defendants' alleged common practice of using an automated dialing system to contact consumers on their cell phones without their consent.  *See Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766, at *13 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated from Defendant's database and whether Defendant's actions . . .  violated the TCPA" to predominate, and that the issue of consent might be resolved through common proof such as "the source of the numbers" and "how Defendant selected who was to receive the [ ] faxes").

Because the claims are being certified for purposes of settlement, there are no issues with manageability.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").  And, resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication.  *See Sadowski*, 2008 U.S. Dist. LEXIS 41766, at *14 (quoting *Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 303 (N.D. Ill. 2005)) ("In consumer actions involving small individual claims, such as this one, class treatment is often appropriate because each member's damages 'may be too insignificant to provide class members with incentive to pursue a claim individually.'").  For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

**D.    The Proposed Notice Program Is Constitutionally Sound**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra*, at § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  According to the *Manual*, *supra*, at § 21.312, the settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Provide information regarding attorneys' fees;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

The proposed forms of Notice, attached as Exhibit B to the Agreement, satisfy all of the criteria above.  The Notice Plan provides for direct, individual notice via either email or mail.

Agreement § 8.01. For all returned mail, the Claims Administrator will perform data searches and other reasonable steps to attempt to obtain better contact information. Agreement § 8.02. In addition, notice will be provided via a nationwide publication internet-based notice program. Agreement § 8.03. Also, notice will be provided to Class Members online through the Settlement Website. Agreement § 8.04.

## IV.  **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court do the following: (1) preliminarily approve the proposed Settlement as being within the range of possible final approval; (2) conditionally certify the Settlement Class and appoint Plaintiffs as class representatives; (3) appoint Class Counsel; and (4) appoint BrownGreer as the Claims Administrator to administer the proposed Notice and Claims Program.

Dated:  June 13, 2014                LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:   /s/  *Jonathan D. Selbin*
            Jonathan D. Selbin

Jonathan D. Selbin
Email:  jselbin@lchb.com
Douglas I. Cuthbertson
Email:  dcuthbertson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

Daniel M. Hutchinson
Email: dhutchinson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Interim Co-Lead Counsel*

TERRELL MARSHALL DAUDT
  & WILLIE PLLC


By:    /s/ *Beth E. Terrell*
           Beth E. Terrell

Beth E. Terrell
Email: bterrell@tmdwlaw.com
Michael D. Daudt
Email: mdaudt@tmdwlaw.com
Kimberlee L. Gunning
Email: kgunning@tmdwlaw.com
TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

*Interim Co-Lead Counsel*

KEOGH LAW, LTD

By:   /s/ *Keith James Keogh*  
      Keith James Keogh

Keith James Keogh
Email: Keith@Keoghlaw.com
Craig M. Shapiro
Email: cshapiro@keoghlaw.com
Timothy J. Sostrin
Email: tsostrin@keoghlaw.com
KEOGH LAW, LTD
55 W. Monroe
Suite 3390
Chicago, IL 60603

Telephone:  (312) 726-1092
Facsimile   (312) 726-1093

*Interim Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2014, service of this document was accomplished via email and United States First Class Mail to the following:

Aaron D. Van Oort
Email:  aaron.vanoort@faegrebd.com
Eileen M. Hunter
Email:  eileen.hunter@faegrebd.com
Erin L. Hoffman
Email:  erin.hoffman@faegrebd.com
FAEGRE BAKER DANIELS
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

*Attorneys for Defendant Capital One*

James K. Shultz
Email: jschultz@sessions-law.biz
SESSIONS, FISHMAN, NATHAN & ISRAEL LLC
55 West Monroe Street, Suite 1120
Chicago, Illinois 60603-5130
Direct: (312) 578 -0993
Office: (312) 578-0990
Fax: (312) 578-0991

*Attorneys for Defendant Capital Management Systems, LP*

Alan I. Greene
agreene@hinshawlaw.com
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601
Telephone:  (312) 704-3536

*Attorneys for Defendant Leading Edge Recovery Solutions, LLC*

Grace Carter
gracecarter@paulhastings.com
PAUL HASTINGS
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105

Phone: (415) 856-7015
Fax: (415) 856-7115

*Attorneys for Defendant AllianceOne Receivables Management, Inc.*

Dated this 13th day of June, 2014.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:   /s/ Daniel M. Hutchinson
   Daniel M. Hutchinson

Daniel M. Hutchinson
Email:  dhutchinson@lchb.com
LIEFF CABRASER HEIMANN
 & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

*Attorneys for Plaintiffs*