**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE | ) | |
| CAPITAL ONE TELEPHONE | ) | Master Docket No. 1:12-cv-10064 |
| CONSUMER PROTECTION ACT | ) | MDL No. 2416 |
| LITIGATION | ) | |
| | ) | |
| This document relates to: | ) | |
| | ) | |
| BRIDGETT AMADECK, et al., | ) | Case No: 1:12-cv-10135 |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL ONE FINANCIAL | ) | |
| CORPORATION, and CAPITAL ONE | ) | |
| BANK (USA), N.A. | ) | |
| This document relates to: | ) | |
| | ) | |
| NICHOLAS MARTIN, et al., | ) | Case No: 1:11-cv-05886 |
| | ) | |
| v. | ) | |
| | ) | |
| LEADING EDGE RECOVERY | ) | |
| SOLUTIONS, LLC, and CAPITAL ONE | ) | |
| BANK (USA), N.A. | ) | |
| This document relates to: | ) | |
| | ) | |
| CHARLES C. PATTERSON, | ) | Case No: 1:12-cv-01061 |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL MANAGEMENT | ) | |
| SERVICES, L.P. and CAPITAL ONE | ) | |
| BANK (USA), N.A. | ) | |

**MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AWARD OF**
**ATTORNEYS' FEES AND FOR SERVICE AWARDS TO THE CLASS**
**REPRESENTATIVES**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................ 1

II.    BACKGROUND ................................................................ 2

    A.    The Settlement ................................................................ 2

    B.    Class Counsel Undertook Considerable Risk in Prosecuting This Action ................................................................ 4

    C.    The Quality And Amount Of Work Performed By Class counsel ............. 4

        1.    The *Mack* Action ................................................................ 4

        2.    The *Amadeck* Action ................................................................ 5

        3.    The *Patterson* Action ................................................................ 5

        4.    The *Alarcon* Action ................................................................ 6

        5.    The Multi-District Litigation ........................................... 6

        6.    The Litigation ................................................................ 7

        7.    The Parties' Mediations ........................................... 8

        8.    Confirmatory Discovery ........................................... 8

    D.    Class Counsel's Fee Request ................................................ 9

    E.    The Class Notice and Claims Administration Program ........................ 10

III.    THE SEVENTH CIRCUIT REQUIRES AN AWARD OF THE MARKET PRICE FOR LEGAL SERVICES IN COMMON FUND SETTLENTS ................................................................ 11

IV.    ARGUMENT ................................................................ 13

    A.    Class Counsel's Requested Fee Award Is Reasonable. ...................... 13

        1.    30% Of The Common Fund Is A Reasonable Market Price ........ 13

        2.    The Requested Fee Reflects The Market Price For Legal Services. ................................................................ 17

            a.    Risk Of Nonpayment Supports the Requested Fee .......... 17

            b.    Class Counsel's Performance Supports the Requested Fee. ................................................................ 21

            c.    The Amount Of Work By Class Counsel Supports The Requested Fee. ................................................ 22

            d.    The Stakes Of The Case Support the Requested Fee ....... 23

**TABLE OF CONTENTS**
**(continued)**

**Page**

3. The Named Plaintiffs' Service Awards Are Reasonable............ 23

V. CONCLUSION................................................................................... 25

CERTIFICATE OF SERVICE ............................................................................. 28

1196591.9

# TABLE OF AUTHORITIES

**Page**

## Cases

*Accounting Outsourcing, LLC. v Verizon Wireless*,
2007 U.S. Dist. LEXIS 97153 (M.D. La. 2007) ..................................................... 14

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,
No. 09 C 910, 2011 U.S. Dist. LEXIS 48323
(N.D. Ill. May 5, 2011) ........................................................................................ 19

*Am. Int'l Group, Inc. v. Ace Ina Holdings, Inc.*,
2012 U.S. Dist. LEXIS 25265
(N.D. Ill. Feb. 28, 2012) ...................................................................................... 24

*Americana Art China, Co., Inc. v. Foxfire Printing & Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) ................................................................................ 12

*Beesley v. Int'l Paper Co.*,
2014 U.S. Dist. LEXIS 12037 (S.D. Ill. Jan. 31, 2014) ......................................... 14

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .............................................................................................. 11

*Brown v. DIRECTV, LLC*,
2013 U.S. Dist. LEXIS 90894 (C.D. Cal. June 26, 2013) ....................................... 20

*City of Greenville v. Syngenta Crop Prot., Inc.*,
904 F. Supp. 2d 902 (S.D. Ill. 2012) ..................................................................... 15

*Cooper v. IBM Pers. Pension Plan*,
2005 U.S. Dist. LEXIS 17071 (S.D. Ill. Aug. 16, 2005) ......................................... 12

*Elkins v. Medco Health Solutions, Inc.*,
2014 U.S. Dist. LEXIS 57633 (E.D. Mo. Apr. 25, 2014) ........................................ 20

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ................................................................................ 16

*George v. Kraft Foods Global, Inc.*,
2012 U.S. Dist. LEXIS 166816 (N.D. Ill. June 26, 2012) ........................... 12, 15, 24

*Greene v. DirecTV, Inc.*,
2010 U.S. Dist. LEXIS 118270 (N.D. Ill. Nov. 8, 2010) .................................. 20, 21

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .............................................................................................. 12

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
792 F. Supp. 2d 1028 (N.D. Ill. 2011) ................................................................... 20

- iii -

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ............................................................ 13

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
   2011 U.S. Dist. LEXIS 157910 (N.D. Ill. Nov. 30, 2011) .......................... 12, 13, 15

*In re Ready-Mixed Concrete Antitrust Litig.*,
   2009 U.S. Dist. LEXIS 132343 (S.D. Ind. Mar. 31, 2009).............................. 15, 23

*In re Sw. Airlines Voucher Litig.*,
   2013 U.S. Dist. LEXIS 120735 (N.D. Ill. Aug. 26, 2013) ............................ 24

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) ............................................................ 11, 17

*Jamison v. First Credit Servs.*,
   290 F.R.D. 92 (N.D. Ill. 2013)............................................................ 18, 20

*Kirchoff v. Flynn*,
   786 F. 2d 320 (7th Cir. 1986) ............................................................ 16

*Locklear Elec., Inc. v. Norma L. Lay*,
   No. 3:09-cv-00531 (S.D. Ill. Sept. 8, 2010).............................................. 14

*Mangone v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001) .......................................................... 13, 16

*McDaniel v. Qwest Commc'ns. Corp.*,
   2011 U.S. Dist. LEXIS 154591 (N.D. Ill. Aug. 29, 2011) ............................ 15

*Meyenburg v. Exxon Mobil Corp.*,
   2006 U.S. Dist. LEXIS 52962 (S.D. Ill. July 31, 2006) ............................ 15

*Phillips Randolph Enters., LLC v. Rice Fields*,
   No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027
   (N.D. Ill. Jan. 11, 2007) ................................................................ 19

*Redman v. Radioshack Corp.*,
   Nos. 14-1470, 14-1471, 14-1658, 14-1320,
   2014 U.S. App. LEXIS 18181 (7th Cir. Sept. 19, 2014) ............................ 10, 12, 22

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*,
   2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 6, 2001)................................ 16

*Saf-T-Gard Int'l v. Vanguard Energy Servs.*,
   2012 U.S. Dist. LEXIS 174222 (N.D. Ill. Dec. 6, 2012)................................ 18

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................ 11, 15, 22, 24

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Silverman v. Motorola, Inc.*,
   2012 U.S. Dist. LEXIS 63477 (N.D. Ill. May 7, 2012) ................................................. 12, 17, 23

*Stumpf v. PYOD, LLC*,
   12 C 4688, 2013 U.S. Dist. LEXIS 165854 (N.D. Ill. Nov. 20, 2013).................................... 16

*Sutton v. Bernard*,
   504 F.3d 688 (7th Cir. 2007) ........................................................................................ 11, 17

*Taubenfeld v. AON Corp.*,
   415 F.3d 597 (7th Cir. 2005) ........................................................................................ 13, 15

*Warnick v. DISH Network LLC*,
   2014 U.S. Dist. LEXIS 87818 (D. Colo. June 27, 2014 ....................................................... 20

*Will v. Gen. Dynamics Corp.*,
   2010 U.S. Dist. LEXIS 123349 (S.D. Ill. Nov. 22, 2010) ....................................................... 15

*Williams v. Gen. Elec. Capital Auto Lease*,
   1995 U.S. Dist. LEXIS 19179 (N.D. Ill. Dec. 20, 1995)........................................................ 12

## I.      <u>INTRODUCTION</u>

On July 29, 2014, this Court preliminarily approved a proposed class action settlement ("Settlement") between Plaintiffs Bridgett Amadeck ("Amadeck"), Tiffany Alarcon ("Alarcon"), Charles C. Patterson ("Patterson"), David Mack ("Mack"), and Andrew Kalik ("Kalik") (together, "Plaintiffs"), individually and on behalf of all others similarly situated, and (1) Capital One Bank (USA) N.A., Capital One, N.A., Capital One Financial Corporation, Capital One Services, LLC, Capital One Services II, LLC (collectively, "Capital One"); (2) Leading Edge Recovery Solutions, LLC ("Leading Edge"); (3) Capital Management Systems LP ("CMS"); and (4) AllianceOne Receivables Management, Inc. ("AllianceOne") (collectively, "Defendants"). The Settlement secured significant business practice changes by Capital One, which constitutes the core relief under the Settlement, as well as a $75,455,098.74 common fund.

After three years of complex litigation, Class counsel submit that the Settlement is an outstanding result for Class members.  Class counsel respectfully move the Court for an award of attorneys' fees of $22,636,529.62, which represents 30% of the common fund and also subsumes all litigation costs.  Despite its clear value to the class, Class counsel do not seek to monetize, nor recover as fees a percentage of, the value of the core injunctive relief.  As detailed below, Class counsel's fee request is well within the reasonable range of market prices for contingent legal fees in complex class litigation, and is reasonable and appropriate given the attorneys' fees awarded in similar cases.  In addition, the fee request is reasonable in light of the risks presented by this case, the quality and amount of work performed by Class counsel, the high stakes presented, and the exceptional result achieved.

Class counsel also respectfully move the Court for an award of modest service awards to each of the five Named Plaintiffs in the amount of $5,000 each, for their work on behalf of the Class. Such awards are routine and proper.[1]

## II.   BACKGROUND

### A.   The Settlement

The details of the Settlement are contained in the Agreement signed by the parties, attached as Exhibit 1 to the Amended Declaration of Jonathan D. Selbin in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 131), and summarized in that brief. The Settlement required Capital One to develop and implement significant enhancements to its calling systems designed to prevent the calling of a cellular telephone with an autodialer unless the recipient of the call has provided prior express consent. Agreement § 4.01. The practice changes that Class counsel obtained are a tremendous result and will benefit every one of the millions of Class members.

Specifically, Capital One instituted a protocol under which it places calls to a cellular telephone number using its dialer(s) only where the cellular telephone number was provided on the customer's application for credit. (Declaration of Jonathan D. Selbin in Support of Class counsel's Motion for Attorneys' Fees and Service Awards ("Selbin Decl."), ¶ 27.) In other words, Capital One's practices are now consistent with Plaintiffs' interpretation of the FCC's 2008 Declaratory Ruling. Therefore, under Capital One's protocol, it will not place autodialed calls to consumers' cellular telephones unless it obtained prior express consent under the TCPA.

In addition, effective July 1, 2014, Capital One will only dial such numbers (that were provided on a customer's credit application) if one of two additional conditions is also met,

---

[1] Consistent with *Radioshack* and *In re Mercury*, Plaintiffs will post this brief on the Settlement website, https://capitalonetcpaclasssettlement.com/, within 24 hours of filing.

namely, either: (1) the cellular telephone number is specifically linked to the customer's name based on third party research; or (2) Capital One has made contact with the customer on the cellular telephone number within the past 90 days.  (*Id.*)  In other words, Capital One will not rely solely on the fact that a number appears in a credit application for assurance that the number still belongs to one of its customers.  Recognizing that people sometimes change their cellular telephone numbers, this avoids the circumstance in which a Capital One customer enters a particular number on a credit application, then changes that number, and some different person takes that same number who is then autodialed by Capital One.  With this new protocol in place, Capital One will dramatically reduce the probability that it will make an automated call to someone with whom it has had no business dealings.  This business practice change, therefore, provides a tremendous benefit.

Capital One will also use reasonable commercial efforts to stop calling a cellular telephone number if the called party requests.  In other words, as a direct result of these lawsuits and the prospective practice changes secured by Class counsel in this Settlement, every Class member who wants the automated calls to stop has the ability to make the calls stop.[2]

In addition to these practice changes, the Settlement requires Defendants to pay $75,455,098.74 into a common settlement fund for the benefit of Class members.  Agreement §7.02.  Class counsel believe that this is the largest cash settlement in the 23-year history of the TCPA.

On July 29, 2014, this Court entered a preliminary approval order finding that "the Agreement is fair, reasonable, and adequate, and within the range necessary for preliminary approval." (*See* Dkt. No. 137, ¶ 4.)

---

[2] Class counsel are in the process of meeting and conferring regarding additional confirmatory discovery to document the implementation of these business practice changes and will report additional details, if appropriate, with their final approval brief.

**B.**     <u>**Class Counsel Undertook Considerable Risk in Prosecuting This Action.**</u>

Class counsel undertook this matter on a pure contingency basis; as a result, they shouldered the risk of expending substantial costs and time without any guarantee of recovery in the event of an adverse judgment.[3] Litigating and resolving this matter has required Class counsel to expend time and money that could have been spent on other fee-generating matters. (*See id.*)

**C.**     <u>**The Quality And Amount Of Work Performed By Class counsel**</u>

The Settlement is the result of over three years of hard-fought litigation involving four separate class actions that were transferred to the Northern District of Illinois by the Judicial Panel on Multidistrict Litigation ("JPML").

**1.**     <u>**The *Mack* Action**</u>

Plaintiff Nicholas Martin originally filed a class action complaint against Leading Edge in the United States District Court, Northern District of Illinois, Case No. 1:11-05886, on August 25, 2011. The original complaint did not name Capital One as a defendant; Martin added Capital One as a defendant and Mack as a plaintiff on January 18, 2012. Capital One moved to dismiss the *Mack* Action under Fed. R. Civ. P. 12(b)(1) and 12(b)(6); that motion was denied in its entirety. (*See* Dkt. No. 84.) Plaintiff Mack and Capital One had moved into discovery motion practice (*see* Dkt. No. 87) when the *Mack* Action was found to fall within the scope of this action and re-assigned to this Court (*see* Dkt. No. 115).

---

[3] Selbin Decl., ¶¶ 15-17; Selbin Decl. Ex. B: Co-counsels' Declarations (Declaration of Alexander H. Burke in Support of Motion for Attorneys' Fees and Service Awards, ¶¶ 13-14; Declaration of Beth E. Terrell in Support of Motion for Attorneys' Fees and Service Awards, ¶¶ 15-17; Declaration of Matthew R. Wilson in Support of Motion for Attorneys' Fees and Service Awards, ¶¶ 10-13; Declaration of Keith Keogh in Support of Motion for Attorneys' Fees and Service Awards, ¶¶ 29-32; Declaration of Rob Williamson in Support of Motion for Attorneys' Fees and Service Awards, ¶¶ 11-13.).

### 2.     The *Amadeck* Action

On January 20, 2012, Amadeck and Felix Hansen filed a Complaint in the Superior Court of Washington in and for the County of King captioned *Amadeck et al. v. Capital One Financial Corp. and Capital One Bank (USA), NA*, Case No. 12-2-D2641-6 SEA.  On February 12, 2012, Capital One removed the case to the United States District Court for the Western District of Washington.

The Amadeck Plaintiffs promulgated written discovery to Capital One, analyzed the responses, and responded to written discovery from Capital One.  Counsel held conferences with Capital One's counsel regarding discovery and other issues.  As part of their investigation, counsel issued public records requests to the Washington Attorney General's Office and the Federal Trade Commission, analyzing and cataloging responsive complaints.  Plaintiffs also noticed a Rule 30(b)(6) deposition of Defendant Capital One Bank U.S.A. (N.A.) regarding electronically stored information, including databases.  When the case was stayed pending transfer to this Court, Plaintiffs' Motion to Modify the Scheduling Order and for Leave to Amended Complaint was pending in the Western District of Washington.

### 3.     The *Patterson* Action

On February 14, 2012, Patterson filed a Complaint in the United States District Court for the Northern District of Illinois captioned *Patterson v. Capital Management Services, LP*, Case No. 12-cv-01061 (N.D. Ill.) (Holderman, J.) (the "*Patterson* Action").  The Complaint named CMS as a defendant, but not Capital One, which was added as a defendant on February 21, 2012.

CMS moved to dismiss the *Patterson* Action for lack of subject matter jurisdiction (*see* Dkt No. 28); this Court denied that motion, holding that Patterson had standing to bring a claim. (*See* Dkt. No. 35: June 5, 2012 Order).  Capital One and CMS responded to extensive discovery requests and the parties then engaged in discovery motion practice.  On September 6, 2012,

Magistrate Judge Sheila Finnegan granted Plaintiff Patterson's motion to compel class discovery. (*See* Dkt. No. 55.)  On October 11, 2012, this Court granted Capital One's motion to stay the case pending the JPML decision to transfer for coordinated or consolidated Pretrial proceedings under 28 U.S.C. § 1407.  (*See* Dkt. No. 67.)  The case was later transferred to this action.  (*See* Dkt. No. 73.)

### 4.    The *Alarcon* Action

On August 7, 2012, Alarcon filed a nationwide class action in the Northern District of California captioned *Alarcon v. Cap. One Bank (USA) N.A., et al.*, Civ. No. 3:12-CV-4145 (N.D. Cal.) (the "*Alarcon* Action").  Alarcon voluntarily dismissed this lawsuit on October 1, 2012, to join the *Amadeck* Action. (Selbin Decl. ¶ 18.)

### 5.    The Multi-District Litigation

Plaintiffs' counsel in the class actions described above worked collaboratively to prosecute these actions in the most efficient—and more importantly, the most effective—manner possible. (*Id.* ¶ 19.)  They consolidated their efforts and engaged in motion practice before the JPML to transfer and consolidate these actions to a single forum.  (*Id.*)

On December 10, 2012, the JPML transferred the *Mack*, *Amadeck*, and *Patterson* class actions and related individual actions involving TCPA claims filed against Capital One to the Northern District of Illinois.  *See In re Capital One Telephone Consumer Protection Act Litigation*, MDL No. 2416, Dkt. No. 1.  On February 15, 2013, the Court designated Jonathan Selbin of Lieff, Cabraser, Heimann, & Bernstein, LLP, and Beth Terrell of Terrell Marshall Daudt & Willie, PLLC, as Interim Co-Lead Counsel, and Keith Keogh of Keogh Law, Ltd. as Liaison Counsel.  *Id.*, Dkt. No. 12.  Plaintiffs filed a Consolidated Master Class Action Complaint ("Master Complaint") on February 28, 2013, against Capital One, Leading Edge, and CMS.  *See Id.*, Dkt. 19.  The Master Complaint superseded the complaints filed in the *Mack*,

*Amadeck*, and *Patterson* Actions, and was amended on June 13, 2014, to add plaintiff Kalik,

AllianceOne, and four other Capital One entities: Capital One, N.A., Capital One Financial

Corporation, Capital One Services, LLC, and Capital One Services II, LLC. *Id.*, Dkt. No. 120.

### 6. **The Litigation**

With Lead and Liaison Counsel in place, Plaintiffs proceeded to litigate the case. In a

half-day, in-person meeting in Chicago, followed by weeks of telephonic, letter, and email

correspondence, the parties named in the original Master Complaint conducted their Rule 26(f)

conference and negotiated an E-Discovery Plan and proposed Case Management Order. (*Id.* ¶

20.) The discussions were thorough and, at many points, contentious, as these parties addressed

all facets of discovery as well as their respective views on class certification and the merits of

Plaintiffs' class TCPA claims. (*Id.*) These meet and confer efforts were informed by the

substantial classwide discovery already conducted in the prior actions. (*Id.*)

In particular, in a series of meet and confers, the parties named in the original Master

Complaint discussed their respective positions on the key, case-dispositive issue of whether the

terms of Capital One's Customer Agreement constitute prior express consent within the meaning

of the TCPA. (*Id.* ¶ 21.) Plaintiffs' counsel obtained and analyzed a complete set of the

contractual language at issue during the Class Period. (*Id.*) As these parties prepared to engage

in motion practice, they also began to explore the possibility of mediation. (*Id.*) However, as a

condition precedent to mediation, Plaintiffs insisted that Capital One agree to classwide

discovery sufficient to engage in meaningful settlement discussions in an informed manner. (*Id.*)

After Capital One agreed to provide this information, these parties devoted their efforts to

engaging in that discovery. (*Id.*) Over a six-month period, Capital One produced, and Plaintiffs

analyzed, the data and documents requested. (*Id.*)

- 7 -

### 7. The Parties' Mediations

The parties named in the Master Complaint participated in three in-person (July 2 and November 4, 2013 and January 29, 2014) and two telephonic mediation sessions before the Honorable Edward A. Infante (Ret.) of JAMS. (*Id.* ¶ 22.) Prior to the mediations, Capital One, Leading Edge, and Plaintiffs submitted detailed mediation briefs, setting forth their respective views on the case. (*Id.*) The parties discussed their relative views of the law and the facts and potential relief for the proposed Class. (*Id.*) As the negotiations evolved, Class counsel requested, and Capital One provided, additional data and documents for Class counsel to analyze. (*Id.*)

Counsel exchanged a series of counterproposals on key aspects of the Settlement, including monetary relief for the Class, notice to the Class and the meaning and interpretation of the eligibility requirements. (*Id.* ¶ 23.) At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length. (*Id.*) Capital One and Plaintiffs agreed to a Settlement only in the days following the January 29, 2014, mediation and after Judge Infante made a mediator's proposal. (*Id.*) CMS, Leading Edge, and AllianceOne (together "Participating Vendors") agreed to participate in the Settlement in the months thereafter. (*Id.*)

### 8. Confirmatory Discovery

Plaintiffs served confirmatory discovery requests on Capital One and the Participating Vendors, including interrogatories asking them to identify the total number of Settlement Class Members and to describe all changes to their business practices required by the Settlement. (*Id.* ¶ 25.) Plaintiffs also asked Capital One to identify all Capital One affiliates and Participating Vendors that made automated calls during the class period. (*Id.*) Capital One and the Participating Vendors replied to these discovery requests in a timely manner, and supplied complete and comprehensive information. (*Id.*)

- 8 -

Plaintiffs also conducted four depositions of Rule 30(b)(6) designees for Capital One and the three Participating Vendors, including extensive questioning regarding the subject matter of the discovery requests described above. (*Id.* ¶ 26.)  Even after preliminary approval, the confirmatory discovery has been ongoing.  Class Counsel are still in the process of meeting and conferring regarding additional confirmatory discovery to document the implementation of business practice changes.  (*Id.* ¶ 27.)

### D. Class Counsel's Fee Request

Pursuant to the Settlement Agreement, Class counsel seek a total award of attorneys' fees of $22,636,529.62, or 30% of the Settlement Fund. Class counsel also do not seek additional payment for any of their expenses on top of this requested award.  Class counsel do not seek to monetize, nor recover fees as a percentage of, the valuable injunctive relief they obtained for the Class.

Class counsel negotiated with Defendants to reach an agreed-upon fee amount that they regarded as reasonable based on, *inter alia*, the benefits achieved for the Class and applicable legal principles, and did so only *after* they reached agreement on the other key deal terms.  (*Id.* ¶ 24.)  Like the Settlement itself, the parties agreed to the fee amount under the auspices and with the assistance of an experienced, well-respected former judge and mediator, Judge Edward A. Infante.  (*Id.*) The fee amount is consistent with Plaintiffs Alarcon's, Mack's, and Patterson's retainer agreements with Class counsel, in which Ms. Alarcon and Mr. Mack agreed that Class counsel may seek up to 40%, and Mr. Patterson up to one-third, of any settlement proceeds or judgment they obtain as fees.[4]  The Court's approval of the Settlement, however, is not conditioned on an award of fees and costs in the amount Class counsel request; in other words,

---

[4] Plaintiff Amadeck's and Kalik's attorney-client agreements simply state that Class counsel will recover their fees from the common fund, but do not mention a specific percentage.

the Court can approve the Settlement and award Class counsel a lesser amount in fees without undoing the Settlement itself.

E.      **The Class Notice and Claims Administration Program**

Even at this early stage, the notice and claims administration program has been a resounding success. The settlement administrator sent notice by mail or email to 16,645,221 Class members, with an 87.40% deliverable rate so far. (Selbin Decl., ¶ 29.) Some 735,410 Class members have submitted claims forms. (*Id.*) This claims rate is more than double other large TCPA class action settlements. *Cf. Arthur, et al. v. Sallie Mae, Inc.*, No. C10-0198 JLR (W.D. Wash.).

The Seventh Circuit recently held, in very different circumstances, that attorneys' fees should be calculated after excluding notice and claims administration costs from the settlement fund. *See Redman v. Radioshack Corp.*, Nos. 14-1470, 14-1471, 14-1658, 14-1320, 2014 U.S. App. LEXIS 18181, at *11-17 (7th Cir. Sept. 19, 2014). There, Judge Posner held that for coupon settlements, CAFA requires attorneys' fees to be paid in relation to coupons redeemed, which should not include notice and claims administration costs when calculating those fees. Plaintiffs respectfully submit that this case is fundamentally different than *Radioshack Corp.* First, this action involves a non-reversionary cash fund in excess of $75 million and no coupons. Second, while *Radioshack Corp.* provided direct notice to less than a third of the class, the notice program here has been designed to reach over 95% of the Class. Third, while *Radioshack Corp.* included a bare-bones claims program, here, Class counsel included state-of-the-art claims practices designed to benefit Class members by facilitating claims. Class members may complete a simple claim form by a pre-addressed, postage-page postcard; through a user-friendly website; or by telephone. Even at this early stage of the claims process, these procedures have been a extremely successful. As noted above, the claims rate is already double the claims rate in

- 10 -

similar TCPA class actions, with over 700,000 unique claims already filed. However, should the Court wish to exclude the cost of claims and notice administration from the Settlement Fund when calculating Class Counsel's attorneys' fees, Class counsel's requested fee would be $21,247,919.62. This excludes $4,628,700 – the estimated cost of notice and claims administration as of September 26, 2014 – from the settlement fund. (Selbin Decl., ¶ 30.) Class counsel will provide an updated estimate of notice and claims administration costs in advance of or at the December 9, 2014 final approval hearing.

## III. THE SEVENTH CIRCUIT REQUIRES AN AWARD OF THE MARKET PRICE FOR LEGAL SERVICES IN COMMON FUND SETTLENTS

The Seventh Circuit has instructed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases). Compensation also depends "on the quality of [counsel's] performance, . . . in part on the amount of work necessary to resolve the litigation, and in part on . . . the stakes of the case." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597 (N.D. Ill. 2011) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d at 721).

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries. The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("Once a settlement has been reached in a class action, the attorneys for the class

- 11 -

petition the court for compensation from the settlement or common fund created for the class's benefit.")

In common fund cases, unlike fee-shifting cases, courts have discretion to use one of two methods to determine whether the request is reasonable: (1) percentage of the fund; or (2) lodestar plus a risk multiplier. S*ee, e.g.*, *Americana Art China, Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). However, as this Court has held, "[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09 C 7670; MDL 2103, 2011 U.S. Dist. LEXIS 157910, at *9 (N.D. Ill. Nov. 30, 2011) (Holderman, C.J.) (citing *Williams v. Gen. Elec. Capital Auto Lease*, No. 94 C 7410, 1995 U.S. Dist. LEXIS 19179, at *29 (N.D. Ill. Dec. 20, 1995) (Lefkow, J.) (citations omitted)); *see also, e.g.*, *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 U.S. Dist. LEXIS 63477, at *14-15 (N.D. Ill. May 7, 2012) (same); *George v. Kraft Foods Global, Inc.,* Case Nos. 1:08-cv-3799; 1:07-cv-1713, 2012 U.S. Dist. LEXIS 166816, at *7 (N.D. Ill. June 26, 2012); *Cooper v. IBM Pers. Pension Plan*, Civ. No. 99-829, 2005 U.S. Dist. LEXIS 17071, at *12 (S.D. Ill. Aug. 16, 2005) (same). The Seventh Circuit recently affirmed this principle. *Radioshack Corp*., 2014 U.S. App. LEXIS 18181, at *24.

The Supreme Court has explained: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). While the Court must perform its own evaluation to verify that the requested fees are not the product of collusion, it should give weight to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length

- 12 -

negotiations after the parties agreed on the other key deal terms. *See, e.g., Mangone v. First USA Bank,* 206 F.R.D. 222, 226 (S.D. Ill. 2001).

## IV.   ARGUMENT

### A.   Class Counsel's Requested Fee Award Is Reasonable.

Class counsel's request for fees is reasonable because it represents the market price for the legal services provided by Class counsel. *See In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *19; *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568, 572 (7th Cir. 1992) ("It is not the function of judges in fee litigation to determine the equivalent of the medieval just price . . ." and counsel is "entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.").

### 1.   30% Of The Common Fund Is A Reasonable Market Price.

Both the Seventh Circuit and this Court have explicitly "recognized the appropriateness of relying on analogous class action settlements to determine the reasonableness of attorneys' fees." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *14-15 (citing *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (internal quotations omitted)).

Here, the requested fee (costs included) is ***less than*** the attorneys' fees consistently awarded in TCPA class litigation in this district, which is one-third of the total fund. (*See* Appendix: *Gehrich v. Chase Bank, USA, N.A.*, No. 1:12-cv-05510 (N.D. Ill. Aug. 12, 2014) (preliminarily approving attorneys' fees and costs up to $11,000,000 (Feinerman, J.) (Dkt. No. 117) (one-third of the Settlement Fund after subtracting the Dedicated Cy Pres Distribution); *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding one-third fee payment of distributed fund); *Cummings v Sallie Mae*, 12

- 13 -

C-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the

common fund for fees); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612 (N.D. Ill. Dec. 23, 2013)

(Castillo, J.) (Dkt. No. 86) (awarding one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*,

No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (approving payment of

one-third of common fund); *Paldo Sign and Display Company v. Topsail Sportswear, Inc.*, No.

1:08-cv-05959 (N.D. Ill. Dec. 21, 2011 (Kennelly, J.) (Dkt. No. 116) (approving one-third of the

settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv-05456

(N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (same); *Saf-T-Gard Int'l, Inc., v. Seiko*

*Corp. of Am.*, No. 1:09-cv-00776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Dkt. No. 100) (same);

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 1:07-cv-05953 (N.D. Ill. Nov. 1, 2010) (Kendall,

J.) (Dkt. No. 146) (same); *Hinman, et al., v. M & M Rental Ctr., Inc.*, No. 1:06-cv-01156 (N.D.

Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (same); *Holtzman v. CCH*, No. 1:07-cv-07033

(N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys.,*

*Inc.*, No. 1:07-cv-00066 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (same).[5]

Class counsel's request is also ***less than*** the 33.33% reasonable market price consistently

awarded in other common fund in non-TCPA cases within the Seventh Circuit.  *See* Appendix:

*In re Plasma Derivative Protein Therapies Antitrust Litigation,* No. 09-cv-07666, (N.D. Ill.

Apr. 16, 2014) (awarding 33.3% of the $64 million settlement fund in Sherman Act case)

(Gottschall, J.) (Dkt. No. 703); *Beesley v. Int'l Paper Co.,* No: 3:06-cv-703-DRH-CJP, 2014 U.S.

Dist. LEXIS 12037, at *7-10 (S.D. Ill. Jan. 31, 2014) (awarding $10,000,000 fee (and over $1.5

million in costs) constituting one-third of the total common fund); *City of Greenville v. Syngenta*

---

[5] Courts in other jurisdictions have awarded a similar percentage of the common fund in TCPA
settlements.  *See, e.g.,* Appendix: *Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09-cv-00531 (S.D.
Ill. Sept. 8, 2010) (Reagan, J.) (Dkt. No. 67) (awarding 33% of the common fund plus costs);
*Accounting Outsourcing, LLC. v Verizon Wireless,* No. 03-CV-161, 2007 U.S. Dist. LEXIS
97153, at *6-7 (M.D. La. 2007) (awarding in excess of 35% of the common fund plus costs).

*Crop Prot., Inc.,* 904 F. Supp. 2d 902, 908-09 (S.D. Ill. 2012) (approving one-third fee of over $32 million and noting that "the market price for fee awards is the amount of court-awarded attorneys' fees in comparable cases.") (citing *Taubenfeld,* 415 F.3d at 599); *George v. Kraft Foods Global, Inc.,* Case Nos. 1:08-cv-3799; 1:07-cv-1713, 2012 U.S. Dist. LEXIS 166816, at *8 (N.D. Ill. June 26, 2012) ("'[T]he normal rate of compensation in the market [is] 33.33% of the common fund recovered' because the class action market commands contingency fee agreements and the Class counsel accepts a substantial risk of nonpayment."); *McDaniel v. Qwest Commc'ns. Corp.*, Civil Action No. 05 C 1008, 2011 U.S. Dist. LEXIS 154591, at *11-12 (N.D. Ill. Aug. 29, 2011) ("As decisions of the Seventh Circuit have confirmed, the  real-world market range for contingent fee cases is 33% to 40%."); *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *18-19 (citing cases and describing a 32.7% common fund fee as "well within the market rate and facially reasonable."); *Schulte*, 805 F. Supp. 2d at 598 ("A number of fee awards in common-fund cases from within the Seventh Circuit show that an award of 33.3% of the settlement fund is within the reasonable range."); *In re Ready-Mixed Concrete Antitrust Litig.,* No. 1:05:CV-00979, 2009 U.S. Dist. LEXIS 132343, at *34 (S.D. Ind. Mar. 31, 2009) ("[T]he normal rate of compensation in the market [is] 33.33% of the common fund recovered"); *Meyenburg v. Exxon Mobil Corp.*, Case No. 3:05-cv-15-DGW, 2006 U.S. Dist. LEXIS 52962, at *5 (S.D. Ill. July 31, 2006) ("The Court is independently aware that 33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation."); *Will v. Gen. Dynamics Corp.*, Civ. No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *9 (S.D. Ill. Nov. 22, 2010) (finding that

"the market for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing that "a one-third fee is consistent with the market rate.").[6]

The customary fee arrangement with private litigants and their attorneys in this Circuit is 33% to 40% of the total recovery. *See Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40%, and affirming award of 38%); *Kirchoff v. Flynn,* 786 F. 2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP,* Case No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397, at *11 (N.D. Ill. Dec. 6, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding Class counsel the requested one-third of the common fund) (citation omitted). Indeed, this 33.33% to 40% range is precisely the range of fees in most of the Plaintiffs' signed retainer agreements. Under these circumstances, the Court should give weight to the judgment of the parties and their counsel regarding reasonable fees. *See Stumpf v. PYOD, LLC*, 12 C 4688, 2013 U.S. Dist. LEXIS 165854, at *5-6 (N.D. Ill. Nov. 20, 2013) ("The named plaintiff's agreement to a floor of 33.33% of any net recovery supports the claim that 30% of the net recovery is tied to the market."); *Mangone,* 206 F.R.D. at 226 (requiring weight to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms). As shown above, the parties' private, arm's length negotiation has yielded a result fully consistent with the market for legal fees.

---

[6] In addition, this Court recently preliminarily approved a 33% fee request in *Harris v. Comscore, Inc. See* Appendix, No. 1:11-cv-05807 (N.D. Ill. June 6, 2014) (Dkt. No. 353).

### 2. **The Requested Fee Reflects The Market Price For Legal Services.**

In addition to analyzing the market price for legal services from analogous cases, courts may examine whether "'the risk of nonpayment a firm agrees to bear, . . . the quality of its performance, . . . the amount of work necessary to resolve the litigation, and . . . the stakes of the case.'"  *See Sutton*, 504 F.3d at 691; *Silverman v. Motorola, Inc.*, 07 Civ. 4507, 2012 U.S. Dist. LEXIS 63477, at *4 (N.D. Ill. May 7, 2012) (noting that compensation may depend "on the quality of [counsel's] performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case.") (citing *Synthroid*, 264 F.3d at 721.) (citation omitted).  Each factor supports the requested fee.

### a. **Risk Of Nonpayment Supports the Requested Fee.**

Prosecution of this action has involved significant financial risk.  As noted above, Class counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and knowing that they would only receive a fee if there was a recovery.  (Selbin Decl. ¶¶ 15-17.)  Class counsel litigated this case aggressively for almost two years before entering into an initial mediation, the first of three, highly contentious multi-party mediations that, as noted above, only reached settlement in the days following the last mediation in January 2014. (*Id.* ¶ 24.)

The risk of further protracted litigation—and ultimately of no recovery at all—was particularly high in this case, given various defenses potentially available to Defendants.  The factual defense of consent loomed large, as Capital One argues that many or most Class Members provided their cell phone numbers either on original credit applications or through subsequent dealings with Capital One or the Participating Vendors.  The parties disagree whether the TCPA allows prior express consent for calls to a cell phone to be given at any time after origination of a credit relationship.  Plaintiffs assert, based on certain rulings from the Federal

- 17 -

Communications Commission (the "FCC"), that consent may be given only at the time the line of credit was established, i.e., during the transaction that resulted in the debt owed. Capital One maintains that Plaintiffs' construction of the rulings is incorrect. In Capital One's view, the "transaction that resulted in the debt owed" lasts many years, and any numbers disclosed to Capital One during that period fall within the FCC's definition of consent. To recover under the TCPA, Plaintiffs would need to convince the Court to adopt their view that the FCC has clarified that "prior express consent" can only being given during the opening of Class Members' Capital One accounts. The Court could instead have adopted Capital One's view that consent may be given at any time and in any manner before the call was placed.

Second, Plaintiffs would face hurdles at class certification. Courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare Jamison v. First Credit Servs*., 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) *with Saf-T-Gard Int'l v. Vanguard Energy Servs.,* Case No. 12 C 3671, 2012 U.S. Dist. LEXIS 174222, at *14-15 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding that no evidence supported the view that issues of consent would be individualized).

Third, Capital One maintains that it obtained prior express consent to call its customers through the Capital One Customer Agreement. For example, one Agreement in effect during the Class period states: "[w]hen you give us or we obtain your mobile telephone number, we may contact you at this number using an Autodialer." Plaintiffs believe that this language does not provide prior express consent for numerous reasons, including that it does not provide permission to contact a customer in violation of the TCPA, which is underscored by an express carve out in the Agreement that Capital One can only contact class members "unless the law says

- 18 -

that we cannot." Capital One argues that this language goes beyond the requirements of the TCPA, and that it constitutes express, written consent to auto-dial customers, who agreed to be bound by the terms in exchange for using their Capital One credit cards.

Fourth, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, at \*13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, at \*7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Finally, there is the risk of losing a jury trial. And, even if Plaintiffs did prevail, any recovery could be delayed for years by an appeal. Any potential statutory recovery in this case would likely be impossible to recover as a factual matter due in part to the fact that Capital One would have every incentive to litigate appeals of any such judgment as far as possible over many years. The Settlement provides substantial relief, including important business practice changes on Capital One's part, to Class Members without further delay.

Plaintiffs believe that they could have prevailed on these issues, but success was by no means assured. Litigating these issues would have risked recovering nothing for the Class, and would have required significant additional expenditure of time, money, and resources for which

- 19 -

Class counsel would not be compensated should they lose on summary judgment or fail to certify a class. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035-37 (N.D. Ill. 2011) (finding Class counsel incurred significant risk of nonpayment where, among other reasons, Class counsel would have to overcome case dispositive defenses and certify a class); *see also Elkins v. Medco Health Solutions, Inc.,* Case No. 4:12CV2141, 2014 U.S. Dist. LEXIS 57633 (E.D. Mo. Apr. 25, 2014) (granting summary judgment against Plaintiff in TCPA class case); *Jamison*, 290 F.R.D. at 102-09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Greene v. DirecTV, Inc.,* 10 C 117, 2010 U.S. Dist. LEXIS 118270 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against Plaintiff in TCPA class case).

That risk was real and meaningful. As detailed in the accompanying declarations of counsel, Class counsel have lost a number of TCPA class actions without any recovery for the proposed class or any fees for their work. (Terrell Decl., ¶¶ 18-19; Burke Decl., ¶ 13; Keogh Decl. ¶ 31; Selbin Decl. ¶ 17) (citing *Warnick v. DISH Network LLC*, 2014 U.S. Dist. LEXIS 87818 (D. Colo. June 27, 2014) (class certification denied); *Elkins v. Medco Health Solutions, Inc.*, Case No. 4:12CV2141, 2014 U.S. Dist. LEXIS 57633 (E.D. Mo. Apr. 25, 2014) (granting summary judgment against Plaintiff); Appendix: *Martin v. Wells Fargo Bank, N.A.*, 3:12-cv-06030-SI (N.D. Cal. Apr. 4, 2014) (dismissing case with prejudice); Appendix: *Evans v. Aetna Inc.*, Case No. 2:13-cv-01039-LA (E.D. Wisc. Nov. 20, 2013) (dismissing case); *Brown v. DIRECTV, LLC*, 2013 U.S. Dist. LEXIS 90894 (C.D. Cal. June 26, 2013) (compelling claims to arbitration on an individual basis); *Gannon v. Network Telephone Services, Inc.,* 2:12-cv-09777-RGK-PJW (C.D. Cal.) (C.D. Cal. June 5, 2014) (denying class certification); *Jamison v. First Credit Services*, 290 F.R.D. 92 (N.D. Ill. March 28, 2013) (class certification denied); *Cayanan*

*v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1208 (S.D. Cal. 2013) (same); Appendix: *Delgado v. US Bankcorp*, 2:12-cv-10313-SJO-AJW (C.D. Cal. Jan. 17, 2013) (dismissing case); Appendix: *Moore v. Chase Bank USA, N.A.*, Case No. 2:12-cv-10316-PA-E (C.D. Cal. Jan. 9, 2013) (dismissing case); *Greene v. DirecTV, Inc.*, Case No. 10-C-117, 2010 U.S. Dist. LEXIS 118270 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against Plaintiff in TCPA class case)).

### b.     Class Counsel's Performance Supports the Requested Fee.

By applying their skills and experience in class action litigation generally, and particularly in TCPA litigation, Class counsel achieved an outstanding result in the face of a resolute defense.  As discussed above, the parties' core dispute was the manner by was the meaning of "prior express consent" under the TCPA.  If Capital One prevailed on this issue, most, if not all Class members, would have not TCPA claims.  In the face of this dispute, the Settlement negotiated by Class counsel includes business practice changes consistent with Plaintiffs' interpretation of the TCPA's and FCC's requirements.  This is a tremendous result.

The Settlement also requires Defendants to pay $75,455,098.74 into a Settlement Fund, out of which all eligible Class Members will receive a pro rata share following payments for class notice and settlement administration, and any attorneys' fees and service awards awarded by the Court.  The Settlement Fund is non-reversionary, ensuring that all or nearly all monetary benefits will go to Class Members—not one penny of the Settlement Fund will revert to Defendants.  Plaintiffs conservatively estimate that each eligible Class member will receive approximately $20-40 per claim.  This is a good result for Class Members, particularly because TCPA damages are purely statutory damages in that Class Members have not suffered any significant out-of-pocket losses or other economic harm.

The Settlement was reached after extensive factual investigation and discovery of the claims and issues and after taking into consideration the risks involved in the actions, after three separate arm's length negotiations presided over by an experienced mediator and former judge, and via a mediator's proposal made after the third mediation had concluded. The Settlement Fund is the largest ever achieved in a TCPA class action and is the direct result of the dedication, skill, and experience of Class counsel. *See, e.g., Schulte*, 805 F. Supp. 2d at 598 ("[T]he quality of Class counsel's performance in th[e] litigation favors approval of the fees requested. Class counsel have navigated a complicated case and have negotiated a Settlement Agreement that provides significant benefits to the Class Members."); *see also Radioshack Corp.*, 2014 U.S. App. LEXIS 18181, at *24 ("We have emphasized that in determining the reasonableness of the attorneys' fee agreed to in a proposed settlement, the central consideration is what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation.").

### c. The Amount Of Work By Class Counsel Supports The Requested Fee.

Class counsel devoted significant time to investigating, litigating, and settling this case and made considerable outlays of time and money by, among other things, (1) investigating these actions; (2) conducting legal research; (3) briefing motions to dismiss prior to the creation of the MDL; (4) conducting discovery, including four 30(b)(6) depositions (one from Capital One and one from each Participating Vendor); (4) negotiating the Settlement over seven months, including by participating in three full-day in-person mediation and two telephonic mediation sessions; (5) reviewing confirmatory discovery and data; (6) administering the Settlement, which involves communications with over 16 million class members; (7) responding to hundreds of

- 22 -

Class Member inquiries; and (8) conducting additional confirmatory discovery.  (Selbin Decl. ¶¶ 18-30.)

Overall, Class counsel's efforts have been substantial and the amount of work supports the requested fee.  *See, e.g., In re Ready-Mixed Concrete Antitrust Litig.*, 2009 U.S. Dist. LEXIS 132343, at *33 (approving one-third fee where counsel engaged in the amount of work necessary to resolve the litigation).[7]

### d.     The Stakes Of The Case Support the Requested Fee.

This action involves millions of Class Members who allegedly received harassing, unlawful calls from Defendants.  Although the TCPA provides for statutory damages, for most Class Members, the cost and risk of individual litigation is too daunting, and the costs to successfully prosecute even an individual action are so high, that a class action is realistically the only way that they would receive any relief.  Those who wish to pursue such litigation can, of course, opt out of the class settlement.  In light of the high number of class members who likely would not have received any relief without the assistance of Class counsel, the requested fee is reasonable.  *See Silverman*, 2012 U.S. Dist. LEXIS 63477, at *10-11 (granting requested fee award where "stakes of [a] complex securities fraud case were significant" and where  counsel secured "what appears to be the third-largest settlement amount in a securities fraud class action in the Seventh Circuit.").

### 3.     The Named Plaintiffs' Service Awards Are Reasonable.

Service awards compensate named plaintiffs for work done on behalf of the class by attempting to account for financial, personal, or reputational risks associated with litigation, and to encourage plaintiffs to step forward on behalf of unnamed class members.  Modest incentive awards, such as those requests here, promote the public policy goals described above.  The

---

[7] Class counsel will provide the Court with a summary or detailed records upon request.

requested service awards of $5,000 for each of the five Named Plaintiffs are well justified and supported by case law in this District.

In addition to lending their names to this matter, and thus subjecting themselves to public attention, the Plaintiffs were actively engaged in this Action. Among other things, they: (1) provided information to Class counsel for the complaints and other filings; (2) reviewed pleadings and other documents including the complaints; (3) communicated on a regular basis with Class counsel and kept themselves informed of progress in the litigation and settlement negotiations; and (4) reviewed and approved the proposed settlements. Their dedication to these actions is notable, particularly given the relatively modest size of their personal financial stake in this case. In such circumstances, a modest award is appropriate. S*ee, e.g.*, *Schulte*, 805 F. Supp. 2d at 601-02 ("Class Representative's willingness to publically place their names on this suit and open themselves up to scrutiny and attention is certainly worth some remuneration.").

Moreover, the amount requested here, $5,000 for each Named Plaintiff (totaling $25,000, a tiny fraction of the Settlement Fund), is substantially lower than amounts frequently approved by federal courts in Illinois and elsewhere. *See, e.g., Cook,* 142 F.3d at 1016 (upholding award of $25,000 to class representative); *In re Sw. Airlines Voucher Litig.*, Case No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *32 (N.D. Ill. Aug. 26, 2013) (awarding $15,000 each to two named plaintiffs); *Am. Int'l Group, Inc. v. Ace Ina Holdings, Inc.*, No. 07 CV 2898; No. 09 C 2026, 2012 U.S. Dist. LEXIS 25265, at *59 (N.D. Ill. Feb. 28, 2012) (a $25,000 incentive award is a reasonable one); *Kraft Foods Global, Inc.,* 2012 U.S. Dist. LEXIS 166816, at *8 (awarding $15,000 each to four named plaintiffs). It is also in line with – and actually well below – many of the service awards frequently awarded in TCPA cases.[8]

---

[8] *See* Appendix: *Cummings v Sallie Mae*, 12 C-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding a $5,000 and a $2,500 incentive award to the named plaintiffs); *Martin*

Accordingly, Class counsel respectfully request that the Court approve service awards of $5,000 each to Plaintiffs Alarcon, Mack, Patterson, Amadeck, and Kalik.

## V.   CONCLUSION

For the foregoing reasons, Class counsel respectfully request that the Court grant their motion and award Class counsel attorneys' fees in the amount of $22,636,529.62 which subsumes litigation costs.  Class counsel further requests that the Court approve the incentive awards of $5,000 each to the five named plaintiffs for a total of $25,000.

---

*v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding $20,000 incentive award to named plaintiff); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (Dkt. No. 86) (awarding named plaintiff a $25,000 incentive award); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (approving incentive awards of $30,00 each to two named plaintiffs); *Paldo Sign and Display Company v. Topsail Sportswear, Inc.*, No. 1:08-cv-05959 (N.D. Ill. Dec. 21, 2011 (Kennelly, J.) (Dkt. No. 116) (awarding $9500 incentive payment to named plaintiff); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv-05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) ($25,000 incentive award to named plaintiff); *Saf-T-Gard Int'l, Inc., v. Seiko Corp. of Am.*, No. 1:09-cv-00776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Dkt. No. 100) (approving $12,000 incentive award to named plaintiff); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 1:07-cv-05953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (awarding $9,500 incentive payment to named plaintiff); *Hinman, et al., v. M & M Rental Ctr., Inc.*, No. 1:06-cv-01156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) ($7,500 each awarded to two named plaintiffs); *Holtzman v. CCH*, No. 1:07-cv-07033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (named plaintiff awarded $5,000 incentive award); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 1:07-cv-00066 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (awarding $9500 incentive payment to named plaintiff).

Dated:  September 29, 2014          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP


By:   /s/ *Jonathan D. Selbin*                
            Jonathan D. Selbin

Jonathan D. Selbin
Email:  jselbin@lchb.com
Douglas I. Cuthbertson
Email:  dcuthbertson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

Daniel M. Hutchinson
Email:  dhutchinson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

*Co-Lead Counsel*

TERRELL MARSHALL DAUDT
  & WILLIE PLLC


By:   /s/ *Beth E. Terrell*            
            Beth E. Terrell

Beth E. Terrell
Email:  bterrell@tmdwlaw.com
Michael D. Daudt
Email:  mdaudt@tmdwlaw.com
TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington  98103
Telephone:  (206) 816-6603
Facsimile:   (206) 350-3528

*Co-Lead Counsel*

- 26 -

1196591.9

KEOGH LAW, LTD

By:   /s/ *Keith James Keogh*
        Keith James Keogh

Keith James Keogh
Email: Keith@Keoghlaw.com
Craig M. Shapiro
Email: cshapiro@keoghlaw.com
Timothy J. Sostrin
Email: tsostrin@keoghlaw.com
KEOGH LAW, LTD
55 W. Monroe
Suite 3390
Chicago, IL 60603

Telephone: (312) 726-1092
Facsimile (312) 726-1093

*Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2014, service of this document was accomplished via email and United States First Class Mail to the following:

Aaron D. Van Oort
Email: aaron.vanoort@faegrebd.com
Eileen M. Hunter
Email: eileen.hunter@faegrebd.com
Erin L. Hoffman
Email: erin.hoffman@faegrebd.com
FAEGRE BAKER DANIELS
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

*Attorneys for Defendant Capital One*

James K. Shultz
Email: jschultz@sessions-law.biz
SESSIONS, FISHMAN, NATHAN & ISRAEL LLC
55 West Monroe Street, Suite 1120
Chicago, Illinois 60603-5130
Direct: (312) 578 -0993
Office: (312) 578-0990
Fax: (312) 578-0991

*Attorneys for Defendant Capital Management Systems, LP*

Alan I. Greene
agreene@hinshawlaw.com
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601
Telephone: (312) 704-3536

*Attorneys for Defendant Leading Edge Recovery Solutions, LLC*

- 28 -

Grace Carter
gracecarter@paulhastings.com
PAUL HASTINGS
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105
Phone: (415) 856-7015
Fax: (415) 856-7115

*Attorneys for Defendant AllianceOne Receivables Management, Inc.*

Dated this 29th day of September, 2014.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:  /s/ *Daniel M. Hutchinson*
        Daniel M. Hutchinson

Daniel M. Hutchinson
Email:  dhutchinson@lchb.com
LIEFF CABRASER HEIMANN
   & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

*Attorneys for Plaintiffs*

- 29 -