# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| In re: CAPITAL ONE TELEPHONE CONSUMER PROTECTION ACT LITGATION | ) ) ) ) ) |

MDL No. 2416
Master Docket No. 1:12-cv-10064

### OBJECTION TO MOTION FOR ATTORNEYS' FEES
### AND NOTICE OF INTENTION TO APPEAR
### OF CLASS MEMBER KRYSTAL L NYKAZA

Class member Krystal L Nykaza[1], 1760 Gorge Park Blvd., Stow, OH 44224, tel. #
(330) 322-1898, hereby objects to the Class Counsel's Motion for Attorneys' Fees. A
copy of Ms. Nykaza's claim filing confirmation email is attached hereto as *Exhibit A*.
Ms. Nykaza intends to appear and be heard at the fairness hearing scheduled for
December 9, 2014 through her undersigned counsel.

**I.      Lead Plaintiffs Inadequately Discharged Their Duty To Negotiate
An Ex Ante Fee Agreement With Class Counsel, Thus Preventing
This Court From Assessing The Market Rate.**

The Seventh Circuit awards attorneys' fees in common fund cases based on the
market rate that was or would have been negotiated between the client and the attorney at
the beginning of the litigation. *Taubenfeld v. AON Corp.*, 415 F.3d 597,599 (7th Cir.
2005); *In re Synthroid Marketing Litig.*, 264 F.3d 712 (7th Cir. 2001). "Although it is
impossible to know *ex post* exactly what terms would have resulted from arm's-length
bargaining *ex ante*, courts must do their best to recreate the market by considering factors
such as actual fee contracts that were privately negotiated for similar litigation,
information from other cases, and data from class-counsel auctions." *Taubenfeld*, 415

---

[1] Ms. Nykaza used to be known by her maiden name, Krystal L Snyder.

F.3d at 599. "We agree with [Appellant] that attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013).

In previous cases, courts within the Seventh Circuit have struggled with the process of trying to retroactively reconstruct the conditions that would have obtained at the commencement of litigation, and place themselves in the shoes of an adequate, sophisticated client trying to obtain the best deal from its lawyers. In *Taubenfeld*, the Seventh Circuit reaffirmed the need for lead plaintiffs to negotiate a fee agreement at the outset of the case, not afterwards. Such a negotiation was clearly feasible here. The *ex post facto* reconstructions in which the courts were forced to engage in *Taubenfeld* and *Synthroid* are less than ideal and poor substitutes for an actual negotiation at the beginning of a case.

II.     **In the Absence of an Ex Ante Fee Agreement,
        Synthroid II Dicatates a Fee of 20%.**

The second time the *Synthroid* case came before the Seventh Circuit, the Court of Appeals, rather than remanding for a third time, *actually determined* the market rate that obtains in a case such as this one.

> Instead of remanding for still a third calculation, we think it best to set the fees ourselves... We stick as close as possible to the district court's approach and thus give consumer counsel 30% of the first $10 million and 25% of the next $10 million. Because consumer counsel bore at least as much risk as TPP counsel for the band from $20 million to $46 million, consumer class counsel is entitled to 22% of that portion of the recovery. And we think that 15% of all amounts over that is a decent estimate of the fee that would have been established in *ex ante* arms'-length negotiations.

*In re Synthroid Marketing Litig.*, 325 F.3d 974, 980 (7th Cir. 2003)(*Synthroid II*).  The overall fee on the $88 million fund that resulted from the application of these declining percentages was 19.9%.  *Id.*

Here, in contrast, Class Counsel have requested a 30% fee not only on the first $10 million recovered, but on the entire $75 million fund!  Applying the more sensible *Synthroid II* formula to the settlement fund in this case yields a fee of approximately 21%, or $15 million, a far more reasonable fee and one that comports with this Circuit's preference for market rate fees that account for economies of scale and ex ante expectations for the case.

While the *Synthroid II* numbers are not etched in stone for all future cases in this Circuit, the basic structure of the *Synthroid* fee *is mandatory* for market rate fee calculations in this Circuit.  "The justification for diminishing marginal rates applies to $50 million and $500 million cases too, not just to $200 million cases."  *Silverman, supra*, 739 F.3d at 959.

In other words, any *ex post* reconstruction of a market rate fee must establish a series of recovery bands, and assign a percentage amount to each successive band that progressively declines as the amount of recovery goes up.  At the very least, Class Counsel must explain why the market rate for recoveries between $46 million and $75 million rose from 15% ***to 30%*** in the eleven years between *Synthroid II* and this fairness hearing.  Certainly, there is no scarcity of lawyers willing to file these cases that could possibly explain such a radical increase in the market rate.  Indeed, this case saw the

filing of no fewer than three copycat actions in an attempt to grab a piece of the fees.[2]
This was not a case that required a higher than market rate percentage fee in order to
attract counsel.

While the Seventh Circuit rejected a megafund **cap** in *Synthroid I*, it did so
because the district court applied the cap to the entire settlement fund, and suggested that
if the district court had applied the 10% rate only to amounts over $74 million it would
have been affirmed. *Synthroid I*, 264 F.3d at 718. This Court *expressly adopted* the
sliding scale approach as essential to establishing the market rate in *Synthroid II,* and
reaffirmed that approach just last year in *Silverman, supra*. There is no support in
Seventh Circuit caselaw for a one-size-fits-all percentage award that would apply the
percentage that corresponds to the first $10 million of recovery to the entire $75 million
fund.

The methodology for reconstructing an *ex ante* market rate adopted by the
Seventh Circuit in *Synthroid II* and affirmed by Judge Easterbrook in *Silverman* has the
advantage of not requiring the parties to be clairvoyant at the beginning of the case.
Because no one can predict with certainty what the ultimate recovery will be at the
beginning of litigation, the fee agreement specified in *Synthroid II* has the advantage of
being reasonable at every level of potential recovery. If the plaintiffs are ultimately
unsuccessful and recover only a small percentage of potential damages, the larger
percentage applied to the lower recovery bands will ensure that they receive a substantial
portion of their lodestar as a fee. If, on the other hand, plaintiffs recover a larger
percentage of potential damages, the lower percentage recoveries in the higher bands will

---

[2] Nor can risk justify the high percentage, since the 7th Circuit noted that the consumer attorneys pursued a
very risky case against Synthroid long before the third-party payors entered the picture. *Synthroid II*, 325
F.3d at 978.

take into account the economies of scale in a class action, and prevent unreasonable windfalls to class counsel.

The fee produced by application of the *Synthroid II* formula also comports with observed national market rates in settlements of between $75 million and $100 million, as observed and reported by Brian T. Fitzpatrick in his article *An Empirical Study of Class Action Settlements and Their Fee Awards*, Journal of Legal Empirical Studies, Volume 7, Issue 4 (2010).[3]  Professor Fitzpatrick found that for settlements between $75 million and $100 million the average fee award is 23.7%, and the median award is 24.3%.  *Id*. at 839.  Therefore, a fee award of 21% is well within the range of market rate fee awards found across the entire country, let alone in the Seventh Circuit that follows the market rate method of setting fees.[4]

A prior study by Class Action Reports found a mean fee award of 21% in cases that settle for $75 million.  *See* chart attached hereto as *Exhibit C*.  This is the exact same number yielded by the *Synthroid II* formula.

Class Counsel did not disclose their lodestar in their Fee Motion, and this failure tells the Court everything it needs to know.  In a case that has lasted a little over two years, Class Counsel's lodestar is likely not more than 3 or 4 million dollars, making their requested fee unreasonable as a multiple of their lodestar, in addition to being excessive as a percentage of the fund.

---

[3] A copy of this article is attached hereto as *Exhibit B*.
[4] Because other circuits follow a benchmark methodology that awards 25% to 30% regardless of settlement size, Professor Fitzpatrick's national study is necessarily skewed upwards by fee awards from those circuits. A study of fees awarded limited to the Seventh Circuit would result in a lower observed median and mean.

The Seventh Circuit has previously suggested that a lodestar-multiplier of 2 is an appropriate "ceiling." *See Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998). In any event, Class Counsel cannot argue that a fee of 21% of the net fund, or $15 million, will not provide them well in excess of their reasonable lodestar.

Objector Nykaza urges the Court to award a fee to Class Counsel of no more than 21% of the Settlement Fund net of notice and claims administration expenses, or $15 million, which is at the absolute upper range of what a reasonable lead plaintiff should have negotiated at the commencement of this case, and which will provide Class Counsel with a very generous multiplier on their undisclosed reasonable lodestar.[5]

---

[5] Class Counsel's lodestar likely contains a great deal of duplication due to the filing of four copycat complaints and counsel's efforts to run up lodestar in an effort to grab a larger portion of the fees.

## CONCLUSION

For the foregoing reasons, this Court should award a fee to Class Counsel of no more than 21% of the net Settlement Fund, which is the market rate established by empirical data from other cases, and by *Synthroid II*.

Respectfully submitted,
Krystal Nykaza,
By her attorney,


*/s/ John J Pentz*
John J. Pentz
19 Widow Rites Lane
Sudbury, MA 01776
Phone: (978) 261-5725
jjpentz3@gmail.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed via the ECF filing system of the USDC for the ND IL on October 24, 2014, and that as a result electronic notice of the filing was served upon all attorneys of record.


*/s/ John J. Pentz*
John J. Pentz