**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE CAPITAL ONE TELEPHONE | ) | |
| CONSUMER LITIGATION ACT | ) | |
| LITIGATION | ) | Master Docket No. 1:12-cv-10064 |
| | ) | MDL No. 2416 |
| | ) | Relates to All Cases |
| | ) | |
| | ) | Judge Holderman |
| | ) | |

**OBJECTIONS, PROOF OF MEMBERSHIP IN CLASS
AND NOTICE OF INTENT TO APPEAR, BY COUNSEL,
AT THE  DECEMBER 9, 2014 FAIRNESS HEARING**

Objector Devera R. D. Bartte, by her counsel, objects to the proposed settlement as follows:

**PROOF OF MEMBERSHIP IN THE SETTLEMENT CLASS**

Objector Bartte is a member of the settlement class having received a post card from the Settlement Administrator, BrownGreer PLC so stating and assigning her Claimant Notice ID: 70331-06773-36364.  On August 23, 2014 Objector Bartte signed, dated and mailed her postcard claim to the Capitol One TCPA Class Settlement Administrator by U.S. mail, postage prepaid by the claims administrator.  A true and correct copy of Objector Bartte's postcard claim is attached and incorporated by reference as *Exhibit A.*

**NOTICE OF INTENT TO APPEAR**

Objector Bartte hereby gives notice of her intent to appear, through undersigned counsel, at the Fairness Hearing before the Honorable James F. Holderman, U.S. District Judge on December 9, 2014 in Courtroom 1801 at the United States District Court for the Northern District of Illinois at 11:00 a.m.  Objector Bartte reserves the opportunity to cross-examine witnesses and present legal arguments addressing her objections.  At this time, Objector Bartte

1

does not intend to offer documents into evidence or call witnesses.

## **OBJECTIONS**

1.      Both the Long Form[1] and Short Form (Postcard) Notice on the proposed settlement are defective because they do not meet minimum constitutional due process requirements with regard to providing class members with adequate notice and an opportunity to be heard. The Notice says at page 1 "Plaintiffs brought a lawsuit alleging that Capital One, Capital Management Systems, LP, Leading Edge Recovery Solutions, LLC, and AllianceOne Receivables Management, Inc. violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq. by using an automatic telephone dialing system and/or an artificial or prerecorded voice to place non-emergency servicing calls to cell phones ("Automatic Calls") in connection with servicing credit card accounts that were in default, and that these autodialed calls were made without the prior express consent of Settlement Class Members. Capital One, Capital Management Systems, LP, Leading Edge Recovery Solutions, LLC, and AllianceOne Receivables Management, Inc. deny the allegations in the lawsuit."

The Notice fails to inform class members of the size of the class. Therefore, class members cannot adequately evaluate whether the Proposed $75,455,098.74 Settlement is fair, adequate or reasonable. For example, if an absent class member knew that the class comprised 21.2 million people, then by doing the arithmetic, the class member could divide the aggregate number of class members into the $75.455 million settlement to determine that the Proposed Settlement amounted to a net of $2.43 per class member. ($75.455 million ÷ 21.2 million = $3.56. Taking $3.56, and subtracting $1.07 (30%) for attorney fees, service awards to the

---

[1] Pages 1 through 4 of the long form are unnumbered so any reference to pages 1-4 refers to the actual (unnumbered) page.

2

representative plaintiffs, costs, expenses, and settlement administration leaves each class member a net amount of $2.43.)

At page 5 the Long Form Notice provides "For non-emergency calls made using an automatic telephone dialing system and/or an artificial or prerecorded voice, without the prior express consent of the called party, the TCPA provides for damages of $500 per call, and up to $1,500 per call if making the call is found to be willful."    Given the significant penalties for violation of the TCPA because of the public outcry from charges caused by unsolicited communications, knowledge of the size of the class is essential to meet the minimum notice requirements to pass constitutional muster.   With that information, a class member could easily do the math, and  multiply the 21.2 million  people in the class by $500.00 in statutory damages to determine that the class' statutory damages to be $10.6 billion   (21.2 million x $500 = $10,600,000,000.00)  Then by dividing $75,455,098.74 by $10.6 billion, absent class members could assess that **class counsel proposes that the class settle for 7/10 of a penny on the dollar per class member**[2]; slightly more than 3/4 of 1 percent of the statutory damages available. (10% of $10.6 billion is $1.06 billion. 1% is $106 million.)

2.    To evaluate whether the Proposed $75,455,098.74 Settlement is fair, adequate or reasonable, the Court must quantify the net expected value of continued litigation to the class, since a settlement for less than that value would not be adequate.   Determining that value requires estimating the range of possible outcomes and ascribing a probability to each point on that range.   *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1132-1133 (7th Cir.1979)   Admittedly, a high degree of precision cannot be expected in valuing

---

[2] This proposed settlement is the equivalent of settling a $1 million damage claim for $7,000.00.

3

litigation, especially regarding the estimation of the probability of particular outcomes. One methodology has a lawyer estimating the chance of winning at 50/50 and assigning a 50% chance of a zero verdict. Then the lawyer picks a high, medium and low outcome, and assigns a percentage (out of the remaining 50%) to each. Here, another variable affects the adequacy evaluation, i.e. the prescribed statutory damage amount. Winning on liability under the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227(b)(3), predetermines an award of damages of an amount in the sum of $500.00. Thus, the pivotal question, in the instant case, is: Does the class really only have a 7/10 of 1% chance, or less of winning this case? A 10% chance of winning the case triggers a settlement value of $1.06 billion.

3. The Proposed $75,455,098.74 Settlement is not fair, adequate or reasonable because it is release driven, not damages driven. The history of claims rates support this characterization. Assuming a 5% take rate in this claims made settlement, generates a volume of about 1,060,000 claims. **Defendants obtain a full release from a $10.6 billion cause of action** in exchange for class members with perfected claims pocketing $71.18 before a 30% ($21.35) reduction for attorney fees and costs, or about $50.00 each.

4. Ordinarily, "a defendant is interested only in disposing of the total claim asserted against it . . . the allocation between the class payment and the attorneys' fees is of little or no interest to the defense . . . ." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, at 819-20 (3d Cir. 1995) Because the Notice fails to inform class members of the size of the class, they could not estimate their *pro rata* share of the purposed $75,455,098.74 settlement fund. If a class member knew there were 21.2 million people in the class, then they could calculate the "claim-filing rates[3]" at 2% to 20% and estimate that if 2,5 % of class members, 21.2

---

[3] Studies have shown that, "[b]y examining historical claims-filing rates organized by

million people, filed claims then each claimant's *pro rata* share would be $142.36 before

attorney fees and costs; and if 20% of class members, filed claims then each claimant's *pro rata*

share would be $14.24[4] before attorney fees and costs.

     5.     Judge Posner pinpointed the potential conflict between the class and class counsel

in parceling out proceeds from a settlement in *Reynolds, V.  Beneficial Natl. Bank* 288 F.3d 277

(7th Cir. 2002).  He emphasized the judicial duty to protect the members of a class in class action

litigation from lawyers for the class who may, in derogation of their professional and fiduciary

obligations, place their pecuniary self-interest ahead of the class' financial interest.   "This

problem, repeatedly remarked by judges and scholars, see, e.g., *Culver v. City of Milwaukee*, 277

F.3d 908, 910 (7th Cir. 2002); *Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012, 1013

(7th Cir. 1999); *Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir. 1991); *Duhaime v. John*

*Hancock Mutual Life Ins*. Co., 183 F.3d 1, 7 (1st Cir. 1999); John C. Coffee, Jr., "Class Action

Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation," 100 Colum.

L.Rev. 370, -385-93 (2000); David L. Shapiro, "Class Actions: The Class as Party and Client,"

---

case type, certain trends can be identified and used to help predict response rates for settlements of similar type and scope. Other factors specific to any particular settlement may have more impact than case type, leaving a sometimes broad range of response rates even within otherwise similar cases.  Regardless, these ranges do provide useful information. A typical securities settlement may conclude with between 20 and 35 percent of class members having filed claims. For labor and employment settlements, the number tends to be from 20 percent to as high as 85 percent. With their broad range of subject matter, benefit types and amounts, and class member demographics, as well as the "hit-or-miss" availability of mailing lists, consumer settlements can draw a filing rate between two percent and 20 percent. An equally wide variety of claims-filing rates occurs across property-related settlements, due in large part to the supporting documents required to file claims." *See* Tiffany Allen, November 2008, Rust Consulting, "Anticipating Claims Filing Rates in Class Action Settlements."

[4] A 20% take rate would also result in each of the $5,000.00 requested incentive awards being 351 times larger than the amounts received by all other class members. A somewhat obvious conflict of interest between named plaintiffs and un-named class members.

73 Notre Dame L.Rev. 913, 958-60 and n. 132 (1998), requires district judges to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions. We and other courts have gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries. *Culver v. City of Milwaukee*, *supra*, 277 F.3d at 915; *Stewart v. General Motors Corp.*, 756 F.2d 1285, 1293 (7th Cir. 1985); In re Cendant Corp. Litigation, 264 F.3d 201, 231 (3d Cir. 2001); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir. 1987)."

6.     In this matter, based on the forgoing analysis, the requested attorney's fees are excessive and unreasonable.

7.     Objector Bartte hereby adopts all other meritorious and timely filed objections that are not inconsistent with these objections.

**WHEREFORE**, Objector Bartte respectfully requests that this Court to sustain these Objections and enter such Orders as are necessary and to provide the following relief:

A)     disapprove the proposed settlement because it is not fair, adequate or reasonable;

B)     disapprove the proposed settlement because of the improper and constitutionally defective notice to the class;

C)     require class counsel and the settling defendants to craft a new settlement and notice and then to re-notice the class;

D)     reduce class counsels' attorney fees to 7/10 of 1 percent of the settlement fund; and,

E)     grant such other relief that this court deems necessary or proper so as to alleviate any inherent unfairness, inadequacy and unreasonableness of the proposed Settlement.

6

Dated: October 27, 2014

Respectfully submitted,

**DEVERA R. D. BARTTE,**
*Objector,*

By:    /s/ Thomas C. Cronin
          One of her Attorneys

Thomas C. Cronin
Cronin & Co., Ltd.
161 North Clark Street
Suite 2550
Chicago, Illinois 60601
312.201.7100

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on this 27th[th] of October, 2014, the foregoing was filed with the Clerk of the Court and that all parties will be electronically served by the CM/ECF email system.

/s Thomas C. Cronin