UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE<br>CAPITAL ONE TELEPHONE CONSUMER<br>PROTECTION ACT LITIGATION | Master Docket No. 1:12-cv-10064<br>MDL No. 2416 |
| This document relates to:<br><br>BRIDGETT AMADECK, et al.,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION,<br>and CAPITAL ONE BANK (USA), N.A. | Case No. 1:12-cv-10135 |
| This document relates to:<br><br>NICHOLAS MARTIN, et al.,<br><br>v.<br><br>LEADING EDGE RECOVERY SOLUTIONS,<br>LLC, and CAPITAL ONE BANK (USA), N.A. | Case No. 1:11-cv-05886 |
| This document relates to:<br><br>CHARLES C. PATTERSON,<br><br>v.<br><br>CAPITAL MANAGEMENT, L.P., and CAPITAL<br>ONE BANK (USA), N.A. | Case No. 1:12-cv-01061 |
| JEFFREY T. COLLINS,<br><br>        Objector. | |

**OBJECTOR JEFFREY T. COLLINS' REPLY IN SUPPORT OF MOTION TO LIFT
STAY FOR LIMITED DISCOVERY AND MEMORANDUM OF LAW IN SUPPORT**

# INTRODUCTION

Plaintiffs' Opposition to Collins' Motion to Lift Stay for Limited Discovery ("Opposition") demonstrates that class counsel wishes to hide their lodestar, likely because it reveals what Objector Collins suspects: that class counsel's fee request is grossly excessive under Seventh Circuit law. Class counsel devote much of their Opposition to irrelevant arguments including (1) false *ad hominem* attacks; (2) argument that billing records are confidential and should be submitted *in camera* (although Collins' requests seek lodestar summaries, not billing records); and (3) argument that percentage-of-recovery is a superior method in awarding fees (something Collins does not dispute). *See* Opposition at 2-4, 5-9, 13. As demonstrated below, the proposed discovery Collins seeks is relevant and limited in scope regarding class counsel's lodestar and litigation risk.

## I. Class counsel's "dishonor[able]" *ad hominem* attacks are false and irrelevant.

"Courts expect — demand — responsible advocacy from members of the bar. ... Lawyers who launch ad hominem attacks on the bench and their adversary bring dishonor only on themselves." *United States v. Kimberlin*, 898 F.2d 1262, 1266 (7th Cir. 1990) (admonishing counsel and threatening disbarment). Yet, despite being limited to fifteen pages, class counsel devotes several pages in the opening of their brief to personally attacking Collins's counsel—and not even Collins's counsel in the Northern District of Illinois, but that attorney's boss and employer. Dkt. 205 at 2-4. The attacks would be irrelevant under the best of circumstances—but worse in this case, they are false or misleading. Declaration of Theodore H. Frank ¶¶ 4-15 ("Frank Decl.") (attached hereto at Exhibit 1).[1] This Court has the authority under *Kimberlin* to admonish class counsel for their advocacy beyond the pale.

---

[1] Class counsel also misrepresents the record when they claim that the withdrawn objection in *Steinfeld v. Discover* has any relevance to Collins's objection. Dkt. 205 at 12. Mr. Collins's objection is based on Seventh Circuit law and objects only to the fees and *cy pres*; the *Steinfeld* objection was based on materially different Ninth Circuit law and, as class counsel's own documents show, was largely an objection to settlement fairness based on an ultimately falsified premise of illusory relief. Frank Decl. ¶ 15; *Compare* Dkt. No. 191 *with* Dkt. 206 Exh. E. If class counsel wishes to claim that *Steinfeld* requires the withdrawal of this objection, they should follow the appropriate procedures to make a motion to strike, and risk the 28 U.S.C. § 1927 consequences for that baseless argument.

Class counsel argues that courts should "consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first." This makes little sense: either Collins's arguments are correct on the law or they are not. They are not more or less correct whether his counsel is Thurgood Marshall or Roy Cohn, much less someone in between. Claiming that Collins's arguments should be discounted because one of his attorneys was affiliated with the free-market American Enterprise Institute is like claiming a judge deserves less discretion because he was appointed by Ronald Reagan.

But if class counsel's premise that the identity of objectors' counsel is relevant to the merits of the objection is correct, it cuts *in favor* of Collins's objection and motion. The overwhelming evidence is that the Center "put[s] the interest of the class members first" and brings meritorious objections in good faith. Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES (Aug. 13, 2013) (calling Frank "the leading critic of abusive class action settlements"); Jeffrey B. Jacobson, *Lessons From CCAF on Designing Class Action Settlements*, Law360 (Aug. 6, 2013) (discussing the Center's recent track record); Ashby Jones, *A Litigator Fights Class-Action Suits*, WALL ST. J. (Oct. 31, 2011) (noting the Center's unique strategy of refusing to withdraw objections for *quid pro quo* payments); Frank Decl. ¶¶ 2-8; *cf. also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain though, is why "professional" is a dirty word. It implies experience, if not expertise"). Center head Frank has argued three Seventh Circuit appeals as of October 29 on behalf of class members or shareholders, and has won all three. Frank Decl. ¶ 7. But the Court need not reach any of the red-herring collateral factual contentions class counsel raises. Collins is correct on the merits.

**II.  Objector Collins' interrogatory requests seek lodestar summaries, which information is not privileged and does not require *in camera* review.**

Class counsel argue that Collins' request "seeks non-public, confidential information that may reveal Class counsel's litigation strategy work product." *See* Opposition at 5. This is not true. Collins' interrogatories seek lodestar *summaries*, i.e., (1) the identity of each legal professional who contributed to the lodestar; (2) number of hours worked by those legal professionals; and (3) those

legal professionals' hourly rates. *See* Collins' Proposed Interrogatories, Dkt. 191-1 at 3-4. This information does not reveal work product. In fact, this information is frequently disclosed by class counsel in class counsel's other TCPA cases. *See, e.g., Arthur v. Sallie Mae, Inc.*, No. 10-cv-198-JLR (W.D. Wash.) Dkt. 225 at 8-10 (citing declarations detailing lodestar information) (May, 17, 2012) (attached hereto at Exhibit 2); *Rose v. Bank of Am. Corp.*, No. 11-cv-02390-EJD (N.D. Cal.), Dkt. 73 at 17-21 (citing declarations) (Feb. 19, 2014) (attached hereto at Exhibit 3); *Steinfeld v. Discover Fin. Servs.*, No. 12-cv-01118-JSW (N.D. Cal.), Dkt. 64 at 16-20 (citing declarations) (Dec. 23, 2013) (attached hereto at Exhibit 4).

Class counsel's opposition suggests providing class counsel's time records to the court for *in camera* review[2] and that Collins "ignores authority from this Court denying objector's request for class counsel's billing sheets." *See* Opposition at 9 (citing *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *9 (N.D. Ill. Nov. 30, 2011)). Again, Collins' proposed interrogatories do not ask for production of class counsel's billing sheets or time records. Indeed, in *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*, class counsel provided their lodestar to the court—including the legal professional's name, number of hours and billing rate—which is exactly the information Collins seeks here. *See In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 9-cv-7670, Dkt. 108-2 (November 16, 2011) ¶ 19 (disclosing lodestar in class counsel's declaration in support of motion for final approval and approval of attorneys' fees) (attached hereto at Exhibit 5).

Collins seeks the information that *Redman v. RadioShack* requires to be disclosed to objectors for compliance with Rule 23(h). 2014 U.S. App. LEXIS 18181, at *37-*38 (7th Cir. Sept. 19, 2014) (holding that objectors were "handicapped in objecting because the details of ***class counsel's hours***

---

[2] It's worth noting that even before the adoption of 23(h) in 2003, the Seventh Circuit has "disapprove[d] the practice…of encouraging or permitting the submission of fee applications *in camera*." *Reynolds*, 288 F.3d at 286 ("To conceal the application and in particular their bottom line paralyzes objectors, even though inflated attorneys' fees are an endemic problem in class action litigation and the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge.") ("In the unlikely event that some confidential information is contained in the [fee] applications, that information can be whited out.").

*and expenses*" were provided after the objection deadline) (emphasis added).[3] Class counsel argue that *Redman* is inapplicable because "there is no reversion of any money going back to defendant, this is not a coupon settlement and the TCPA does not have a fee-shifting provision." *See* Opposition at 8-9. But fee-shifting was not the basis under which class counsel sought fees in *Redman*. 2014 U.S. App. LEXIS 18181, at *11 (noting that in support of $1 million agreed-upon fee request "[c]lass counsel argued that since the attorneys' fees were only about 25 percent of the total amount of the settlement, they were reasonable"). More important, *Redman* does not limit objectors' 23(h) rights to non-common fund cases and class counsel offer no reason why this Court should so limit *Redman's* holding. *Redman* followed the Ninth Circuit's *Mercury Interactive* decision, which involved a pure common-fund settlement where objectors were denied an opportunity to "provide the court with critiques of the specific work done by counsel when they were furnished with no information of what that work was, how much time it consumed, and whether and how it contributed to the benefit of the class." 618 F.3d 988, 994 (9th Cir. 2010). *Mercury* is directly applicable here.

### III. Lodestar crosscheck should be performed even when percentage-of-recovery approach is utilized.

Objector Collins does not disagree with class counsel that the percentage-of-recovery method should be the primary method. But the lodestar crosscheck—as counsel for Collins has frequently argued[4]—should also be performed under Seventh Circuit law. And while class counsel

---

[3] *See also In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988, 994-95 (9th Cir. 2011) ("Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members. It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee.") (citing 5 Moore's Federal Practice § 23.124[4] (Matthew Bender 3d ed. 2009) ("[a]ny objection deadline set by the court should provide the eligible parties with an adequate opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request").

[4] *See, e.g., In re Southwest Voucher Airlines Voucher Litigation*, No. 11-cv-8176, Dkt. 105 at 10 (arguing that lodestar crosscheck can "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate" and that class counsel's request for lodestar multiplier of 2.63 was inappropriate) (quoting *In re*

devote pages to defending the advantages of the percentage-of-recovery method (a premise not disputed by Collins), class counsel provide no response to the use of lodestar as a *crosscheck*. Indeed, cross counsel does not respond to the cases of sister district courts cited in Collins' Motion to Lift Stay (Dkt. at 7-9) that demonstrate the utility of lodestar crosscheck in the Seventh Circuit including *In Williams v. Rohm & Haas Pension Plan*, 2010 U.S. Dist. LEXIS 54414, at *2 (S.D. Ind. Jun. 1, 2010) (requiring class counsel to submit lodestar summaries for purposes of performing a cross-check) and *In re Trans Union Corp. Privacy Litig.*, 2009 U.S. Dist. LEXIS 116934, *16-*17 (N.D. Ill. Dec. 9, 2009) (utilizing lodestar data for purposes of cross-check)).

Even in pure common fund cases, the Seventh Circuit itself has suggested that a lodestar multiplier of 2 might be a "sensible ceiling" to avoid unwarranted attorney windfalls. *Skelton v. Gen. Motors Corp.*, 860 F. 2d 250, 258 (7th Cir. 1988); *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) (citing *Skelton* approvingly); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) (same); *see also In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 5497275, 2013 U.S. Dist. LEXIS 143146, at *38-*40 (N.D. Ill. Oct. 3, 2013), *reconsideration granted in part on other grounds* 2014 U.S. Dist. LEXIS 84072 (Jun. 20, 2014) (same; reducing proposed multiplier from 2.63 to 1.5).

An example of the crosscheck's significance was demonstrated in another TCPA case in which class counsel was involved. *Rose v. Bank of America Corp.* involved a common fund of $32 million of which class counsel sought 25%. No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *13-*15 (N.D. Cal. August 29, 2014). The court rejected class counsel's request for $8 million and instead awarded $2.4 million. *Id.* at *37. The 25% percentage of recovery was the "starting point for analysis" but the lodestar crosscheck revealed an 8.64 multiplier, which was not justified under the circumstances. *See id.* at *30, *36-*37. Based on class counsel's recent reduction of $6 million in a similar case, it is not surprising that they would want to hide their lodestar here.

---

*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 945 (9th Cir. 2011)) (attached hereto at Exhibit 6).

IV. **Class counsel's track record of recovery for lodestar is evidence of *ex ante* risk.**

Class counsel argues that their "lodestar in other actions is irrelevant to the risk they faced in this action." Dkt. 205 at 10-12. In support of this argument, they cite absolutely no precedent from any court. Their ipse dixit contradicts common sense and Seventh Circuit law. "The market rate for legal fees depends in part on *the risk of nonpayment a firm agrees to bear*, in part on the quality of its performance, in part on *the amount of work necessary to resolve the litigation*, and in part on the stakes of the case." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 (7th Cir. 2001) (emphasis added). Class counsel's portfolio and lengthy history of TCPA cases is absolutely relevant to both "the risk of nonpayment a firm agrees to bear" and "the amount of work necessary to resolve the litigation."

Imagine a hypothetical world where an attorney knew in advance that if he brought a particular kind of lawsuit, he would always win and recover his attorneys' fees. By definition, that is a case with no risk, and offering lodestar without a multiplier (or a small multiplier to reflect the time-value of money) would be sufficient to induce attorneys to bring suit. After all, even large law firms operate with effective multipliers of their lodestar somewhere between 0.9 and 1.0 (between writedowns and risks of clients not paying) by definition, and the profits per partner for such firms are in the millions of dollars a year. Lodestar without a multiplier is, by definition, sufficient to induce defense attorneys to represent clients.

Of course, TCPA cases are riskier than the hypothetical kind of suit above; Collins does not dispute that there is *some* risk to bringing a TCPA case and that *some* multiplier may be appropriate. (Class counsel's repeated claim that Collins is arguing there is no risk is a strawman irrelevant to Collins's actual argument.) But how much riskier are TCPA cases from a sure thing?

For example, if half of all hours spent on TCPA cases result in dismissal without any recovery, and half of all hours spent on TCPA cases result in a settlement that pays a multiplier of lodestar, a multiplier of 2.2 would mean that the average hour spent on a TCPA case results in 110% of lodestar being paid: a not-unreasonable compensation for risk under *Synthroid*. But if the average

multiplier in the winning cases is 4, and class counsel recovers for 50% of their hours, that means that the average hour spent on a TCPA case results in 200% of lodestar being awarded: plainly overcompensation for *ex ante* risk, given that class counsel admittedly has a large portfolio of TCPA cases, and thus averages out their risk over several cases. Overcompensation for risk would result in perverse incentives and distortions in the market for contingent fees: class counsel might prefer to bring relatively meritless TCPA cases over a more meritorious § 1983 civil rights case because of the promise of a higher multiplier in the event of success.

But what is that percentage of hours that have historically received recovery? Are TCPA cases very risky, and 90% of hours go uncompensated, entitling class counsel to a gigantic multiplier to compensate them for that risk? Or are they relatively unrisky because of defendants' huge incentive to settle,[5] with 80% of hours on cases resulting in compensation, meaning that only a small multiplier would be needed to compensate class counsel *ex ante* for their risk? That is an empirical question with a known mathematical answer, and the evidence sits within class counsel's files, and should be disclosed under *Synthroid*. Yet class counsel fails to mention *Synthroid* once. There is no reason to have an assessment of risk based on self-serving declarations with vague abstract *ipse dixit* adjectives when a concrete quantitative empirical measurement of risk is available, and class counsel provides no reason. Multipliers entail "a retroactive calculation of the probability of success as measured at the beginning of litigation" and should not be reduced to a matter of "mathematical happenstance." *Stumpf v. PYOD, LLC*, No. 12 C 4688, 2013 U.S. Dist. LEXIS 152093, at *14 (N.D. Ill. Oct. 23, 2013) (quoting *Skelton* in part). That retroactive calculation is best done with empirical data.

At least one court ruling on a fee motion by this class counsel has held that TCPA cases are not particularly risky.

---

[5] *See generally Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) (noting high percentage of class actions settle because of enormous risks to defendant of even "small probability of an adverse judgment").

> Class Counsel, for the most part, have a great deal of experience litigating TCPA class actions and presumably would "know how to pick a winner." Furthermore, Class Counsel's apparent strategy of filing numerous small, related cases, with a few attorneys working on each, hedges against the the risk of recovering nothing for their work. For example, if Rose and Ramirez had looked unpromising, Class Counsel could simply have chosen not to file Duke, Bradshaw, Makin, and Johnson. This strategy also puts heavy pressure on defendants to settle the case early. Finally, because the TCPA has the potential of ruinous financial liability ($500 or $1,500 per violation, and some defendants are accused of millions of violations), defendants will almost always settle if there is any merit at all to the case.

*Rose v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 121641, *35-36 (N.D. Cal. Aug. 29, 2014). And even *Rose* awarded a lodestar multiplier of 2.59, which may be too large under *Synthroid* and other Seventh Circuit cases.

Class counsel argues that they also incur risk because of the risk of changes to the law. (Of course, the law can become *more* favorable for plaintiffs as a case proceeds, not just less favorable.) But class counsel's argument goes to the *weight* of the materiality of the evidence of their historic lodestar recoveries. Class counsel is free to introduce evidence that their recovery between 2010 and 2013 in TCPA cases is unrepresentative of the risk that they faced in bringing this case (though because this case involves especially deep-pocketed defendants and an especially large class, the reverse is probably true), or to introduce evidence that TCPA cases have become riskier over time. The possible existence of this evidence of other factors relating to risk does not preclude the relevance of the empirical evidence Collins seeks.

A look at a handful of class counsel's recent TCPA cases where they disclosed lodestar demonstrates that they regularly ask to be very handsomely compensated for their risk. In *Steinfeld v. Discover Fin. Servs.,* No. 12-cv-01118-JSW (N.D. Cal.), class counsel asked for, and received a 3.4 multiplier. In *Rose*, discussed above, class counsel asked for a multiplier of 8.65. 2014 U.S. Dist. LEXIS 121641, at *36-*37. *Rose* refused, and awarded 7.4% of the fund, for a 2.59 multiplier. *Id.* These multipliers of 2.59 and 3.4 (much less 8.65) would overcompensate class counsel if class counsel lost as much 50% of their cases—but, on information and belief, the majority of class

counsel's hours spent on TCPA cases result in settlement. (Class counsel did not appeal this finding in *Rose*.) If this information and belief is incorrect, it would be of little trouble to demonstrate the empirical risk that class counsel takes in bringing cases, and to show that class counsel, on average, gets less than 100% of their lodestar. But class counsel's resistance to any discovery and insistence on relying on self-serving declarations instead of actual concrete empirical evidence suggests that this Court should draw an adverse inference. If the data were favorable, class counsel would volunteer it. *Cf.* DOUGLAS G. BAIRD, *et al.*, GAME THEORY AND THE LAW 89-91 (1998); George A. Akerlof, *The Market for Lemons: Quality Uncertainty and the Market Mechanism*, 84 Q. J. ECON. 488 (1970). Given that the Seventh Circuit notes that a high percentage of class actions settle (*Eubank*, 753 F.3d at 720), class counsel's self-serving claims that empirical evidence is not necessary to demonstrate their claims of high risk meriting what is likely a double-digit multiplier of their lodestar should be rejected.

## CONCLUSION

For reasons discussed above, the Court should grant Collins' Motion to Lift Stay for Limited Discovery.

Dated: October 29, 2014.            /s/ Melissa A. Holyoak
                                    Melissa A. Holyoak, (DC Bar No. 487759)
                                    Center for Class Action Fairness
                                    1718 M Street NW, No. 236
                                    Washington, DC 20036
                                    Phone: (573) 823-5377
                                    Email: melissaholyoak@gmail.com

                                    *Attorney for Objector Jeffrey T. Collins*

### Certificate of Service

The undersigned certifies she electronically filed the foregoing Reply in Support of the Motion to Lift Stay for Limited Discovery via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing. Additionally she caused to be served via first class mail a copy of this Reply in Support of the Motion to Lift Stay for Limited Discovery upon the following:

| | |
|---|---|
| Andre Verdun<br>Crowley Law Group<br>401 West "A" Street, Suite 925<br>San Diego, CA 92101<br><br>Chelsea Hamill<br>Doll Amir and Eley LLP<br>1888 Century Park East, Suite 1850<br>Los Angeles, CA 90067<br><br>Christy T. Nash<br>Burr & Forman LLP<br>Suite 3200<br>201 N. Franklin St.<br>Tampa, FL 33602<br><br>Darren Sharp<br>Armstrong Teasdale LLP<br>2345 Grand<br>Suite 2000<br>Kansas City, MO 64108<br><br>George C Bedell<br>Lash & Wilcox, PL<br>4401 W. Kennedy Blvd., Suite 210<br>Tampa, FL 33609<br><br>Devera R.D. Bartte<br>3440 SW 28th Terrace, Apt A<br>Gainesville, FL 32608 | Jeanne Lahiff<br>Sleemi Law Firm<br>2001 Route 46<br>Suite 310<br>Parsippany, NJ 07054<br><br>Kenneth Grace<br>Sessions Fishman Nathan & Israel LLC<br>3350 Buschwood Park Drive, Ste 195<br>Tampa, FL 33618-4317<br><br>Marjorie Bergiste<br>10352 Old Winston Ct<br>Lake Worth, FL 33449<br><br>Mitchell B. Levine<br>Fishman McIntyre P.C.<br>12th Floor<br>44 Wall Street<br>New York, NY 10005<br><br>Sarah Nicole Davis<br>Morrison & Foerster<br>425 Market St<br>SF, CA 94105 |

Additionally, she caused to be delivered a courtesy copy of the foregoing via overnight hand-delivery addressed to:

Hon. James F. Holderman
United States District Court for the Northern District of Illinois
Everett McKinley Dirksen United States Courthouse
Room 2516A
219 South Dearborn Street
Chicago, IL 60604


Dated: October 29, 2014.

/s/ Melissa A. Holyoak