# EXHIBIT 1

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE<br>CAPITAL ONE TELEPHONE CONSUMER PROTECTION ACT LITIGATION | Master Docket No. 1:12-cv-10064<br>MDL No. 2416 |
| This document relates to:<br><br>BRIDGETT AMADECK, et al.,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, and CAPITAL ONE BANK (USA), N.A. | Case No. 1:12-cv-10135 |
| This document relates to:<br><br>NICHOLAS MARTIN, et al.,<br><br>v.<br><br>LEADING EDGE RECOVERY SOLUTIONS, LLC, and CAPITAL ONE BANK (USA), N.A. | Case No. 1:11-cv-05886 |
| This document relates to:<br><br>CHARLES C. PATTERSON,<br><br>v.<br><br>CAPITAL MANAGEMENT, L.P., and CAPITAL ONE BANK (USA), N.A. | Case No. 1:12-cv-01061 |
| JEFFREY T. COLLINS,<br><br>      Objector. | |

**DECLARATION OF THEODORE H. FRANK IN SUPPORT OF MOTION**

Theodore H. Frank states the following under oath and under penalty of perjury in support of Objector Jeffrey Collins's motion to lift the stay:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to them.

2. I graduated the University of Chicago Law School with high honors. I am a member of the Illinois, California, and District of Columbia bars; a former clerk for a judge on the U.S. Court of Appeals on the Seventh Circuit; and an elected member of the American Law Institute.

3. I am founded the Center for Class Action Fairness in 2009. It is currently a 501(c)(3) non-profit public-interest law firm based out of Washington, DC. Melissa Holyoak is one of the Center's attorneys, and works under my supervision.

4. The goal of the Center is to protect class members in the class action settlement process from certain abuses of the class action system. The Center's attorneys have won class members millions of dollars and has received national acclaim. *See, e.g.,* Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES (Aug. 13, 2013) (calling me "the leading critic of abusive class action settlements"); Jeffrey B. Jacobson, *Lessons From CCAF on Designing Class Action Settlements*, Law360 (Aug. 6, 2013) (discussing the Center's recent track record); Ashby Jones, *A Litigator Fights Class-Action Suits*, WALL ST. J. (Oct. 31, 2011).

5. The Center brings objections for the benefit of consumers and the class as a whole. As a child, I admired Ralph Nader and consumer reporter Marvin Zindler (whose autographed photo was one of my prized childhood possessions), and read every issue of *Consumer Reports* from cover to cover. I have focused my practice on conflicts of interest in class actions because, among other reasons, I saw a need to protect consumers that no one else was filling, and as a way to fulfill my childhood dream of being a consumer advocate.

6. I have indeed brought multiple objections and represented clients *pro bono* in multiple cases where they objected to unfair class action settlements or fee requests. But we have won the majority of those objections, and the vast majority of federal appeals—nine out of eleven—that we have argued that have been decided. In the process, the Center and I have improved recovery for

class members by tens of millions of dollars. If the Center's arguments "[bore] little or no relation to existing law," we would not have this track record of success, especially on appeal.

7. As of October 29, 2014, I have argued before the Seventh Circuit three times in cases related to class action or shareholder derivative settlements. All three times my clients have prevailed. *Redman v. RadioShack Corp.*, No. 14-1470, -- F.3d --, 2014 U.S. App. LEXIS 18181 (7th Cir. Sep. 19, 2014); *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) (non-Center case for private client); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012). A fourth argument, *Pearson v. NBTY, Inc.*, No. 14-1198, is scheduled for the morning October 31, and, based on the briefing and post-briefing decisions, I expect to prevail in that appeal as well.

8. The Center brings every objection in good faith, and this narrow objection to an excessive fee request is no different. CCAF receives many more requests to bring meritorious objections to class actions and excessive fee requests than it has resources to pursue, and thus has no interest in wasting resources bringing an objection it does not believe is legally meritorious. Because CCAF is non-profit, it cannot and does not settle its objections for a *quid pro quo* cash payment to withdraw, as many professional objectors do.

9. Class counsel tries to detract from the legal merits of Mr. Collins's objection by misquoting half of a single sentence in *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 773, 785 (N.D. Ohio 2010) that alleged that an argument I made against reversion clauses was "long on ideology and short on law." It is worth noting that *Lonardo* was criticizing only one particular argument as "ideolog[ical]"; it otherwise held that "Frank's policy arguments contribute to the legal discussion regarding this important area of law," and awarded fees to my client based on the $2 million benefit to the class caused by the objection. Most importantly, I ultimately won the argument: both the Ninth and Seventh Circuit agreed with me and disagreed with *Lonardo* on the question of whether "kicker" arrangements where fees from a separate fund revert to the defendant are improper. *Contrast In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) *and Eubank v. Pella Corp.*, 753 F.3d at 723, *with Lonardo*, 706 F. Supp. 2d at 785. Even if it were true in

2010 that my argument in *Lonardo* against the kicker was "short on law," it is not true now that that same argument has persuaded the Ninth and Seventh Circuits.

10. While the *Wyeth* court in the Southern District of New York was unfortunately critical of me based on its dislike of arguments that my client's objection never made, it ultimately agreed to reduce fees by several million dollars. Because my objecting client prevailed, and we were not seeking attorneys' fees, there was nothing to appeal, and we had no grounds to challenge the unfair remarks made by the district court.

11. Class counsel states "Mr. Frank has even been accused of promoting his agenda by taking actions—such as appealing an approved class action settlement—without first obtaining his objector-clients' authorizations to do so." Note that class counsel only says "accused" and refrains from actually claiming that I engaged in this unethical behavior. This is because they know that the accusations from the *Deepwater Horizon* case are unequivocally false. I was only retained in *Deepwater Horizon* after the appeal was underway (and thus had no role in the decision to appeal), and the appellants had pre-authorized their counsel to retain additional appellate counsel. Opposing counsel in *Deepwater Horizon* made disciplinary complaints to Illinois and California based on the false allegations in the brief that class counsel uses as an exhibit. Both state bars investigated the allegations, and determined that there was no basis to proceed or bring disciplinary charges against me. The fact that class counsel devotes a portion of its 15-page brief to an *ad hominem* class counsel *knows* to be false shows how weak their arguments are. It is within this Court's power to *sua sponte* sanction class counsel for their abusive briefing and attempt to mislead the Court with knowingly scurrilous assaults on Ms. Collins's counsel's boss. *United States v. Kimberlin*, 898 F.2d 1262, 1266 (7th Cir. 1990).

12. Class counsel alleges that the Center "seeks to advance a particular ideological agenda here that is openly hostile to class actions and class action settlements generally." The accusation—aside from being utterly irrelevant to the legal merits of any particular objection—has no basis in reality. I have been writing and speaking about class actions publicly for over a decade, and I have never asked for an end to the class action, just proposed reforms for ending the *abuse* of

class actions and class-action settlements; I have frequently confirmed my support for the principles behind class actions in declarations under oath, interviews, essays, and public speeches, including a January 2014 presentation in New York that was broadcast nationally on C-SPAN 1. That I oppose class action abuse no more means that I oppose class actions than someone who opposes food poisoning opposes food.

13. I believe that the primary beneficiaries of class actions are supposed to be the class members, and that class actions can be harmful to society when they are structured to benefit the attorneys instead. This may be "ideology," but I think it's inherent in the nature of fiduciary duty to one's clients and the constitutional requirement of adequate representation. Fortunately, the appellate courts I have argued in front of have agreed with this "ideology." *See, for example, Redman v. RadioShack Corp.*, No. 14-1470 (7th Cir. 2014) (attached as Exhibit 7); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178, 179 (3d Cir. 2013).

14. The primary beneficiaries of this settlement are the class members, so the Center only agreed to represent Mr. Collins if he agreed to restrict his objection to the excessive fee request and *cy pres* procedure. This limited objection (even as many other class members have objected to settlement fairness) demonstrates that class counsel exaggerates when they claim the Center is "hostile" to "class action settlements generally."

15. The *Steinfeld* objection was based on a unique clause in that settlement that allowed the defendant to credit offsets against the settlement fund. On behalf of my client, we repeatedly asked class counsel for data demonstrating that the credit offsets would not result in illusory relief because of the possibility that it would offset discharged debt. Class counsel refused to provide that data, so we proceeded with an objection. After multiple rounds of filings, the defendant ultimately provided the assurances my client sought, and my client withdrew his objection. The claim that Mr. Collins's objection—which is based on Seventh Circuit law and is only to the fees and *cy pres*—is identical to the *Steinfeld* objection—which was based on materially different (and less favorable) Ninth Circuit law and was largely an objection to settlement fairness based on an ultimately falsified

premise of illusory relief—is baseless on its face. If anything, *Steinfeld* demonstrates the good faith of the Center's objections: when the premise of our objection is falsified, we withdraw the objection.

16. If the premise of our objection is falsified, we would be in a similar situation here—but class counsel's aggressive and abusive response shows that there is not just smoke, but fire. We do not dispute in this case that class counsel may be entitled to a multiplier, but merely argue that that multiplier should be tied to the risk class counsel actually incurred, and that that risk can be empirically measured with reference to the lengthy track record class counsel has in TCPA class actions. We do not know what that empirical data will show. Perhaps it will entitle class counsel to a 4x multiplier; perhaps it will entitle class counsel to a 1.5x multiplier; perhaps more or less. What is clear is that class counsel is embarrassed by that data and believes its disclosure would result in a lower fee, because it is risking reversible error and engaging in false *ad hominem* rather than disclosing facts that, if they supported the gigantic fee request, would cause us to agree not to proceed on appeal on his behalf.

I hereby certify that the foregoing statements made by me are true.

I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Executed on October 29, 2014, in Houston, Texas.

Theodore H. Frank