

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE ) | |
| CAPITAL ONE TELEPHONE ) | Master Docket No. 1:12-cv-10064 |
| CONSUMER PROTECTION ACT ) | MDL No. 2416 |
| LITIGATION ) | |
| ——————————————— ) | |
| ) | |
| This document relates to: ) | Case No: 1:12-cv-10135 |
| BRIDGETT AMADECK, et al., ) | |
| v. ) | **FILED** |
| CAPITAL ONE FINANCIAL ) | |
| CORPORATION, and CAPITAL ONE ) | OCT 31 2014 |
| BANK (USA), N.A. ) | |
| ——————————————— ) | THOMAS G. BRUTON |
| ) | CLERK, U.S. DISTRICT COURT |
| This document relates to: ) | Case No: 1:11-cv-05886 |
| NICHOLAS MARTIN, et al., ) | |
| v. ) | |
| LEADING EDGE RECOVERY ) | |
| SOLUTIONS, LLC, and CAPITAL ONE ) | |
| BANK (USA), N.A. ) | |
| ——————————————— ) | |
| ) | |
| This document relates to: ) | Case No: 1:12-cv-01061 |
| CHARLES C. PATTERSON, ) | |
| v. ) | |
| CAPITAL MANAGEMENT ) | |
| SERVICES, L.P. and CAPITAL ONE ) | |
| BANK (USA), N.A. ) | |
| ——————————————— ) | |

I am a member of the settlement class in the case of *In re Capital One Telephone Consumer Protection Act Litigation,* Master Docket No. 1:12-cv-10064 (N.D. Ill.). I am writing to object to the proposed settlement because I believe the settlement is unfair to class members. The attorneys' fees are too high and the award to class members is too low. I also believe the notice is inadequate, because it does not indicate all of the credit

1

cards involved in this settlement.

1.    **The Compensation to Class Members is too Small**

Under 47 U.S.C. §227(b)(3), plaintiffs are entitled to treble damages, or up to $1,500 for each knowing or willful violation of the TCPA, and up to $500 for each negligent violation. In the case of an individual who has been subject to a large number of non-consensual calls, text messages or fax transmissions, potential damages are significant. The estimated compensation offered to class members of between $20 to $40 is too low. Although the settlement fund of $75,455,098.74 seems large, Capital One obviously was an egregious violator of the TCPA. As discussed below, it appears this will not change as Capital One has not changed its definition of consent. At any rate, the compensation for individual class members is too low.

The settlement should also be evaluated in terms of the risk that Plaintiffs might not be able to prove this case if they proceed to trial. Here, that risk is extremely low. In order to recover under the Settlement, class members are required to provide the telephone number for the cell phone on which they received the non-consensual calls. In essence, they are required to prove the violations. Although in most cases the court needs to weigh the risks of proving the case versus the recovery, here there is very little risk that Plaintiffs would not be able to prove the case, as electronic records exist for all of the alleged violations, and Class Members will each need to make a verifiable claim in order to recover. The ease of proving this case supports my objection that the compensation offered to class members is too low. Similar class action cases alleging violations of the TCPA have entitled class members to recoveries more in keeping with the damages provided for under the statute.

2.    **The Practice Changes are Illusory**

The Settlement Agreement claims "As a benefit to all Settlement Class Members, Capital One has developed and implemented significant enhancements to its calling systems designed to prevent the calling of a cellular telephone with an autodialer unless

2

the recipient of the call has provided prior express consent." However, other documents inform us that this "consent" is actually inferred by providing a cell phone number on an application for credit. See Declaration of Jonathan D. Selbin in Support of Class counsel's Motion for Attorneys' Fees and Service Awards, ¶ 27 (stating Capital One instituted a protocol under which it places calls to a cellular telephone number using its dialer(s) only where the cellular telephone number was provided on the customer's application for credit). This is not consent. Capital One is continuing to violate the law, and is just buying an overly broad release of its liabilities through this settlement.

3.    **The Released Parties are Not Clear**

The Settlement Agreement states that "Released Parties" specifically includes all corporate affiliates of Capital One, Leading Edge, CMS, and AllianceOne, respectively, that are related to Capital One's credit-card lines of business. This is an extremely broad release. The release also covers á broad group of Capital One affiliates, including "past, present, and future parents, subsidiaries, affiliated companies and corporations, and each of their respective past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint ventures, assigns, or related entities, and each of their respective executors, successors, assigns, and legal representatives". Settlement Agreement, Section 2.36, page 7.

This is a very large group of released parties, and I do not believe the notice or advertisements sufficiently inform many potential class members that they are members of the class and will have their claims released as a result of this settlement (or are eligible for compensation). A cursory review of Capital One's website reveals that Capital One provides credit cards for several companies that do not appear to be identified through this notice program. See http://www.capitalone.com/credit-cards/partnerships/, visited on October 24, 2014. This web page includes pictures of PlayStation and Sony credit cards that do not appear to clearly indicate that they are

3

Capital One cards.

I believe the Settlement Agreement attempts to release account holders for these cards. These account holders should not be bound by this settlement. The Class Notice does not adequately indicate all of the numerous other cards that might be included. At the very least the court needs to ensure that these account holders have been properly identified and have been sent individualized notice explaining that their "Sony" card or other card is included in the settlement. The court should be aware that in other similar cases large groups of class members were not identified in discovery or provided notice of the settlement. *See, e.g., Arthur v. Sallie Mae, Inc.,* 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012) (nearly two million class members were not identified in original notice plan) and *Connor v. Chase*, Case No: 10-cv-01284 DMS (BGS) (S.D. Cal. 2012) (where original notice plan to 1,381,406 class members failed to identify 1,653,559 class members and a second notice plan was ordered).

4.      **The Cy Pres Beneficiaries Should Be Identified**

I also object to the failure to indicate the cy pres beneficiaries. The class notice states: "Any residual amount remaining after all the payments included in the Settlement are made that would be economically unfeasible to distribute will be donated to a non-profit(s) to be determined." Long Form Notice, page 6. First, I object to a distribution of settlement funds to cy pres beneficiaries if there is any way the money could go to class members. *Accord. Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) ("There is no indirect benefit to the class from the defendant's giving the money to someone else."); Martin H. Redish, *Peter Julian, & Samantha Zyontz, Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. 617 (2010). The parties could easily arrange for all funds to be electronically disbursed to class members, perhaps through credits to class member credit card accounts.

But if some residual funds remain after a good faith attempt to distribute the bulk

4

of the settlement to the class and a cy pres distribution cannot be avoided, class members have a right to know the identity of the cy pres recipient for the remainder. The American Law Institute supports this position. ALI Principles §3.07(c) states: "The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class."

Failure to identify the cy pres beneficiary deprives me and other class members of the right to notice and object to the recipient if we do not approve. Class members should have the right to distance themselves from causes or institutions that they would rather not support. A class member has the right not "to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable." *Wooley v. Maynard*, 430 U.S. 705, 715 (1977). Requiring parties to designate cy pres beneficiaries preserves that right. If a cy pres recipient's identity were simply an immatieral administrative detail, courts would not invalidate distributions on the grounds that the recipient was improperly selected. *See* Sam Yospe, *Note, Cy Pres Distributions in Class Action Settlements*, 2009 COLUM. BUS. L. REV. 1014, 1027-41 (2009).

Failing to designate the cy pres recipient "restricts the court's ability to conduct the searching inquiry required to approved a distribution." *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 504 (D. Kan. 2012). The Second Circuit adopted a similar approach in *In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 179, 185 (2d Cir. 1987) (reversing for court's failure to "designate and supervise" "the specific programs that will consume the settlement proceeds.")

Many courts have found that not just any worthy recipient can qualify as an appropriate cy pres beneficiary. The Ninth Circuit has established strict requirements regarding cy pres beneficiaries. *See Dennis v. Kellogg Co.*, 697 F.3d 858 (2012). To avoid the "many nascent dangers to the fairness of the distribution process," the Ninth Circuit has held that there should be "a driving nexus between the plaintiff class and the cy pres beneficiaries." *Dennis* at 865, *citing Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038

(9th Cir. 2011). *Dennis* further held a cy pres award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members and must not benefit a group too remote from the plaintiff class.

This court should be guided by the approach followed in *Dennis* and advocated by the ALI because class members have a right to know (and object to) the recipient of settlement funds coming from a settlement entered into on their behalf. Disclosure/notice is the "first and perhaps most important principle for class action governance." Alexandra Lahav, *Fundamental Principles for Class Action Governance*, 37 IND. L. REV. 65, 118-125 (2003).

The identity of the cy pres recipients and the substance of their mission is material to the fairness of the settlement; the court should require the parties designate the cy pres recipient and give notice to the class of the recipient prior to the deadline to object.

5.    **The Attorneys' Fees Requested are Too High**

The attorneys are requesting the court award fees of 30% of the settlement fund, or $22,636,528. For such a large settlement, with questionable value to class members, attorneys' fees of 30% are too high. A study by Brian T. Fitzpatrick confirmed that attorney fee percentage awards in large class actions show an inverse relationship to the size of the award. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811 (2010). For settlements over $72.5 million, the mean percentage award nationwide is only 18.4%, much less than the fee percentage sought by Class Counsel in this case. *Id.* at page 839. The Seventh Circuit agreed that fee awards based on declining marginal percentages make sense. *See In re Synthroid Marketing Litig.*, 264 F.3d 712 (7th Cir. 2001)

Comparable TCPA settlements do not support the fees requested here. A recent decision in the Northern District of California – which awarded fees of approximately seven percent of the common fund – suggests Class Counsel's fee request is far out of line with the current market for these cases. *See Rose v. Bank of America*, No. 11-cv-

6

02390 (N.D. Cal. Aug. 29, 2014) (Doc. 108, Final Approval Order).

In addition, class counsel's failure to provide lodestar information renders their fee request unacceptable. The result in *Rose, supra* explains the reason the request is unacceptable. In that case the court reduced the lodestar requested in two phases, mediation and settlement, and case investigation, because it found work in those phases was duplicative and unnecessary. Analysis of the time spent on the litigation is an essential factor in determining a reasonable percentage award in this circuit. In *Synthroid* the court noted, "The market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, **in part on the amount of work necessary to resolve the litigation**, and in part on the stakes of the case." *Synthroid*, at 721. The Seventh Circuit favors a market-based approach, but the market does not support awarding of fees without evidence supporting the work the attorneys have done on behalf of the class. Here, the attorneys' are requesting $22,636,528. Such an award would be a windfall. Without lodestar information, at most the court should award the seven percent awarded in *Rose.*

A market-based approach requires analysis of the time spent on the litigation. Class Counsel did not provide the court sufficient information to do this analysis. Neither this Circuit nor the competitive market for attorneys' fees, supports this court awarding fees of 30% of the common fund without receiving sufficient information to determine whether counsel have earned this fee.

6. **Conclusion**

In addition to the objections raised above, I would like to join in any other well-founded and meritorious objections.

This settlement is unfair to the class. It appears to award huge attorneys' fees to class counsel, but little to class members. Class counsel appear to have abandoned their duty to the class in their pursuit of attorneys' fees. I respectfully request that the court reject this settlement and enter such orders as are necessary to render the settlement more

fair. In particular the court should order additional discovery into class members not receiving notice. The court should also order class counsel to submit detailed billing records in support of their attorneys' fee, and should reduce the percentage award to an appropriate level. The court should also require that the parties identify the proposed cy pres beneficiaries. I respectfully ask that the court enter such additional orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement. As currently drafted, the court should not approve this settlement.

Dated October 24, 2014

Mary Smith Tweed (aka: Mary M. Smith)

2112 Hillcrest Street
Fort Worth, TX 76107
Phone: 817-584-2332
Email: megsmith75@gmail.com

## Capital One TCPA Class Settlement
### Confirmation of Claim Form Submission

**You successfully submitted your claim. You should print this page and keep it for your records. You may need to refer to your Notice ID, Claimant Number and Access Code below in the future.**

| | |
|---|---|
| **Notice ID:** | 955301271124244 |
| **Claimant Number:** | 100267751 |
| **Access Code:** | 2093 |
| **Claimant Name** | SMITH, MARY M |
| **Address:** | 2112 HILLCREST ST, FORT WORTH, TX 76107-4330 |
| **Contact Telephone:** | (817) 584-2332 |
| **Email Address:** | megsmith75@gmail.com |
| **Claimed Cell Phone Number:** | (817) 584-2332 |

| | |
|---|---|
| **Date of Submission:** | 09/29/2014 |
| **Time of Submission:** | 1:09 PM (EST) |