```
1                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
2                          EASTERN DIVISION

3   IN RE                           ) Docket No. 12 C 10064
    CAPITAL ONE TELEPHONE CONSUMER  ) Chicago, Illinois
4   PROTECTION ACT LITIGATION,      ) October 30, 2014
                                    ) 9:16 a.m.
5

6            TRANSCRIPT OF PROCEEDINGS - Motion Hearing
            BEFORE THE HONORABLE JAMES F. HOLDERMAN
7

8   APPEARANCES:

9   For Plaintiffs and
    Liaison Counsel:    KEOUGH LAW, LTD., by
10                      MR. KEITH J. KEOUGH
                        55 West Monroe Street
11                      Suite 3390
                        Chicago, IL 60603
12
    For the Plaintiffs: LIEFF, CABRASER, HEIMANN & BERNSTEIN, by
13                      MR. DANIEL M. HUTCHINSON
                        275 Battery Street
14                      29th Floor
                        San Francisco, CA 94111
15
    For Capital One:    FAGRE BAKER DANIELS, by
16                      MS. ERIN L. HOFFMAN
                        2200 Wells Fargo Center
17                      90 S. Seventh Street
                        Minneapolis, MN 55402
18
    For Objector
19  Jeffrey T. Collins: CENTER FOR CLASS ACTION FAIRNESS, by
                        MS. MELISSA HOLYOAK
20                      1718 M Street NW, No. 236
                        Washington, DC 20036
21

22

23

24

25
```

```
 1    APPEARANCES (continued):

 2

      For Capital Management
 3    Services and
      NCO Financial:        SESSIONS, FISHMAN, NATHAN & ISRAEL, by
 4                          MR. DANIEL W. PISANI
                            55 West Monroe Street
 5                          Suite 1120
                            Chicago, IL 60603
 6
      For Leading Edge
 7    Recovery Solutions:   HINSHAW & CULBERTSON, LLP, by
                            MR. ALAN I. GREENE
 8                          222 North LaSalle Street
                            Suite 300
 9                          Chicago, IL 60601

10

11

12

13

14

15

16

17

18

19

20    Court Reporter:       LISA H. BREITER, CSR, RMR, CRR
                            Official Court Reporter
21                          219 S. Dearborn Street, Room 1802-C
                            Chicago, IL 60604
22                          (312) 818-6683
                            lisa_breiter@ilnd.uscourts.gov
23

24

25
```

(In open court.)

THE CLERK: 12 C 10064, Capital One Telephone Consumers.

MR. HUTCHINSON: Good morning, your honor. Daniel Hutchinson of Lieff, Cabraser, Heimann & Bernstein for the class.

MR. KEOUGH: Good morning, your Honor. Keith Keough, liaison counsel.

MS. HOLYOAK: Good morning, your Honor. Melissa Holyoak from the Center for Class Action Fairness for Objector Collins.

MS. HOFFMAN: Good morning, your Honor. Erin Hoffman for Capital One.

MR. PISANI: Good morning, your Honor. Daniel Pisani for defendant Capital Management Services.

MR. GREENE: Good morning, your Honor. Alan Greene on behalf of defendant Leading Edge Recovery Solutions.

THE COURT: Good morning to all of you. I appreciate that you went ahead and completed the briefing in connection with this motion to lift the stay.

And one of the points that I didn't quite fully grasp was if I were to allow this very limited discovery -- and it's only three interrogatories you're seeking, correct?

MS. HOLYOAK: Yes, that's correct, your Honor.

THE COURT: How burdensome would it be?

1  MR. KEOUGH: Your Honor, I can speak to that. They're
2  seeking not only discovery in this case, but discovery in every
3  TCPA case, every plaintiff's firm since 2010 of October. My
4  firm alone, which is a small firm, has filed dozens of those
5  cases. I think a little bit under 50.
6  Clearly we have not prevailed on all those cases. So
7  somehow thinking you're going to file these cases and win is a
8  bit of a misnomer, I think.
9  THE COURT: Okay.
10  MR. KEOUGH: So it's quite burdensome for my firm to
11  gather data, especially on cases that we lost where we have not
12  finalized everything to produce it and especially when it's
13  irrelevant.
14  I think if I may -- I don't want to go too far from
15  your question, but there's a couple of points I wanted to raise
16  in response to the reply.
17  THE COURT: All right. Well, you said it's going to
18  be. But you do have the records, though?
19  MR. KEOUGH: Yes, your Honor.
20  THE COURT: And have you had a discussion with
21  Mr. Collins' counsel about that burden to see if we can
22  minimize that burden?
23  MR. KEOUGH: We've had discussions regarding the
24  overall burden, not so much to minimize it.
25  THE COURT: Okay.

1  MR. KEOUGH: They've mostly been dealing with
2  relevancy, especially for the unrelated cases.
3       THE COURT: All right.
4       MS. HOLYOAK: And your Honor, just to clarify and with
5  respect to burden, we are not looking for time records, billing
6  sheets. I know that was in their opposition. We just want the
7  summary. It's usually just a paragraph that includes the legal
8  professional, their hours and their rates. And really this
9  would be no more than one Excel spreadsheet.
10      MR. KEOUGH: Well, your Honor, as in burden, too, what
11 you have here is a competitive issue for all of our cases.
12 It's one thing for them to research saying, well, this case,
13 you lost on this case. You spent this much time. So settle
14 our case for less.
15      They want a snapshot of the guts of our firm and how
16 to -- anybody can then use in the future to try to push a lower
17 settlement. It's one thing to say, hey, you've won here,
18 you've lost here, but look how much time you wasted over here.
19 It's really, I think, untoward.
20      I've never heard of a Court allowing discovery in
21 unrelated cases. It's one thing -- time records in this case
22 is a different issue obviously. And I think that the burden is
23 not so much the physical aspect of it. It's the burden of
24 every case we bring going forward and putting us at a
25 competitive disadvantage.

1     THE COURT: Well, if we allow some protection as to
2  the use of this information, wouldn't that lessen that problem?
3     MR. KEOUGH: Well, I think every counsel in this case
4  will have it who defend a lot of these cases that we bring. If
5  there's an appeal, it's out there.
6     I mean, I don't -- I don't know how we can do that,
7  your Honor. Because even the attorneys on the other side in
8  this case -- and there's enough of them out there that we
9  litigate against them all the time.
10     THE COURT: Okay. Well, let's turn to the attorneys
11  on the other side of this case. Ms. Hoffman, what do you
12  think? Do you have any position at all?
13     MS. HOFFMAN: No. Capital One has no position on the
14  objector's motion.
15     THE COURT: Anyone else?
16     MR. PISANI: Capital Management Services also has no
17  position, your Honor.
18     MR. GREENE: The same for Leading Edge.
19     THE COURT: All right.
20     MR. KEOUGH: And your Honor, I would note that each
21  counsel's law firm I have several cases against. Other
22  counsel's law firm, I have several other unrelated cases
23  against.
24     THE COURT: You're a busy lawyer. That's a good
25  thing.

1    MR. KEOUGH: Well, in plaintiff's work, your Honor,
2    sometimes busy is not always good. But that's what we're
3    getting at here. There's enough here that I think it would be
4    a burden going forward.
5    And then one thing they point out in the reply brief
6    is that there's really three points. They say that the
7    superior method is the percentage method. They want the Court
8    to institute a cross-check, which you obviously have discretion
9    to do, Judge.
10    THE COURT: Yes, I know.
11    MR. KEOUGH: But they also put in their footnote
12    there's a material difference between the 9th Circuit and 7th
13    Circuit law. But they're relying on 9th Circuit law to
14    basically mandate a cross-check.
15    THE COURT: Let me -- first of all, I'm going to allow
16    the limited discovery. I just returned from the Multi-district
17    Litigation Conference. I may have even mentioned that that's
18    where I was going to be for the last couple of days.
19    This particular issue was discussed among the judges
20    who hear class action cases, common fund cases. We discussed
21    other issues as well.
22    And based on your briefing, based upon the education I
23    was provided as late as yesterday morning on this issue by the
24    Multi-district Litigation Panel and its experts, who primarily
25    are judges and law professors, I believe that the lodestar

1  cross-check -- which is what Mr. Collins is seeking, right?
2              MS. HOLYOAK:  Yes, your Honor.
3              THE COURT:  The lodestar cross-check --
4              MS. HOLYOAK:  Yes, your Honor.
5              THE COURT:  -- is something that the 7th Circuit
6   believes is an appropriate evaluation.
7              And Mr. Keough, this is the way the law's going.  The
8   7th Circuit has issued a few opinions lately in connection with
9   class action attorney fee issues.
10             And so my concern is, even coming on to the bench
11  after I've reviewed your materials, is not whether I should do
12  this.  It's the extent to which I should do this.  And that's
13  why I was concerned about the burden.
14             MR. KEOUGH:  And, your Honor, I think that's
15  obviously -- there's a huge distinction between fees in this
16  case and fees in dozens of unrelated cases.
17             THE COURT:  Well, that's why, I mean, you can talk
18  about that, right?
19             MR. HUTCHINSON:  Your Honor, if I may --
20             THE COURT:  Let me ask Mr. Collins' counsel.
21             MS. HOLYOAK:  I'm sorry, what's the question, your
22  Honor?
23             THE COURT:  Well, you're going to talk about the
24  burden.  You'll try to minimize the burden.
25             MS. HOLYOAK:  Absolutely.  And I believe even as

1    proposed, it's very limited.  It's only summaries in those
2    cases and the cases -- and for many of those cases, they've
3    already done this.  They've already provided their lodestar
4    summaries in the cases where they've won.
5            And just one other point, your Honor.  I'm not quite
6    sure I understand what the competitive disadvantage, their
7    argument on why it should be -- I don't know if you want to
8    keep it confidential or what that --
9            THE COURT:  Well, to the extent -- I don't know that
10   it's good to be arguing that further out in the public open
11   court.  So that's why I wanted you folks to confer.
12           All right.  I've got Mr. Collins' position.  Let me
13   hear further from counsel.
14           MR. HUTCHINSON:  Yes, your Honor.  As co-lead counsel
15   for the class in this action, as the Court knows, we have many
16   other TCPA cases.  We have many other cases generally.
17           THE COURT:  I talked with several judges across the
18   country who have these kind of cases, yes.
19           MR. HUTCHINSON:  Ms. Holyoak's office has objected to
20   dozens of cases.
21           THE COURT:  I don't recall Mr. Collins' name being
22   specifically mentioned.  But serial objectors was, of course,
23   an issue that we discussed and considered.
24           MR. HUTCHINSON:  This information is non-public
25   information.  It is highly valuable.  One of the ways in which

1  our firm is able to be so successful is because of our track
2  record of success in other cases. And we have a credible
3  threat of being able to go to trial, of being able to get large
4  settlements from defendants.
5      This information, as Mr. Keough said, is the guts of
6  our law firm. It exposes highly, highly valuable information
7  about our firm. And so the only request that we would have is
8  if your Honor believes this information is necessary to the
9  Court's evaluation, we would ask that it be submitted in
10 camera. There's really no reason in this case --
11     THE COURT: Well, it can be submitted in camera, but
12 the first thing that has to happen is it has to be provided to
13 the objector.
14     MR. HUTCHINSON: But the objector's counsel is
15 litigating against my firm and has done so in dozens of other
16 cases. And so the competitive disadvantage --
17     THE COURT: I'm not going to take it without the input
18 of counsel. That is not something that I'm going to put the
19 burden on myself to do.
20     But I will refer the matter to the magistrate judge
21 for the purpose of overseeing this. So Magistrate Judge Kim
22 can assist you in connection with this. It also seems to me
23 that perhaps this may take a little longer than we previously
24 had thought. I may have to vacate that date that we had for
25 final approval.

1  MR. HUTCHINSON: Your Honor, we would ask that we
2  were -- this will be burdensome work. This will take many
3  hours for counsel to perform. Our records will have to be
4  audited.
5  We would ask that we do not vacate the final approval
6  hearing date. That information is provided to approximately
7  16 million people by direct notice. They have that information
8  available to them.
9  We think it would be just not fair to those persons
10 who are noticed on that specific date as to when the hearing
11 date may be. So counsel will work, and if it needs to be moved
12 for whatever reason, that's obviously the Court's discretion,
13 but we think it would be prejudicial to the class to move that
14 date.
15 MR. KEOUGH: Your Honor, if I may, too, is you can
16 obviously value or evaluate the fairness of the settlement and
17 hold on the issue of fees.
18 MR. HUTCHINSON: That's correct.
19 MR. KEOUGH: So you can set a hearing after that on
20 fees. And if anything, the case will get better for the class,
21 not worse.
22 So I think you can evaluate the fairness of the
23 settlement because most -- the objectors really are arguing
24 about fees, not really arguing about the value of the case.
25 Some made a couple of points on it.

1     So I think you can easily deal with the fairness of
2  the case and then hold off on fees and then just a matter of
3  either increasing the class members' award or not.
4     MS. HOLYOAK: And I would respond to that that is
5  incorrect under the holding of *Redman v. Radio Shack*, the
6  recent opinion of the 7th Circuit, which made clear that under
7  23(h) to comply with that, that the fee information needs to be
8  provided to the objectors, and if not, quote, the objectors are
9  handicapped from being able to analyze that.
10    MR. KEOUGH: Your Honor, *Redman* did not allow the fees
11 on other cases. If you're talking about this case or just
12 other cases, those are two different things. This is somewhat
13 uncharted territory here.
14    We are still arguing that it's not relevant. It's
15 burdensome. The fees in this case obviously are relevant as
16 the Court has held. But the fees in other cases -- and that's
17 what's going to take so much time is the other cases. If they
18 want the fees in this case, that's fairly easy, your Honor.
19    I have almost 50 cases they're talking about here on
20 individual settlements, too. We're talking cases where I have
21 plaintiffs pass away on me. There's a lot here that we're
22 talking about, your Honor, that take a lot of time and have
23 nothing to do with this case.
24    And you know, it's somewhat of a complete fishing
25 expedition regarding these other cases whether the risks we

1  have -- I wish I had this crystal ball they're talking about if
2  I file a case knowing I would win.  But, you know, I don't
3  understand that this mathematical algorithm is going to be able
4  to figure it out.
5          THE COURT:  Well, I'm afraid I am going to have to
6  vacate that date given the comments that you have made.  Well,
7  how quickly -- maybe we don't have to.  How quickly can you get
8  that accomplished?
9          MR. HUTCHINSON:  We will certainly do it as soon as
10 practical, your Honor.
11         THE COURT:  My question was not the manner in which
12 you're going to do it.  My question was how quickly can you do
13 it?  It's a different question, all right?  So give me a date.
14         MR. HUTCHINSON:  Your Honor, I think that -- well, do
15 you want to speak to this, Mr. Keough?  My firm can do it
16 within a week's time.
17         THE COURT:  All right.
18         MR. HUTCHINSON:  We have information that we can pull.
19 We have to audit that information for cases that have not
20 been -- we haven't had to do this before, so we need to make
21 sure that the information is correct.  That requires a
22 line-by-line review of thousands of time entries.
23         THE COURT:  You'll have it completed by the 6th.
24         MR. HUTCHINSON:  My firm has 60 attorneys and over 100
25 employees.

1  THE COURT: That's good.

2  MR. HUTCHINSON: Co-counsel, some of them are solo
3  practitioners. So I can't represent to the Court how long it
4  would take. Mr. Keough can speak for his own firm.

5  MR. KEOUGH: Your Honor, I'm in a conference speaking
6  on the 5th through the 8th. If I can have a couple weeks, and
7  that's a couple weeks of me doing this all the time. Three
8  would be great, but I know there's a rush here. So I mean...

9  THE COURT: Well, three, if we take three, then we'll
10 have to vacate the date.

11 MR. KEOUGH: Then if I can have two, your Honor.

12 THE COURT: Two would be the 13th of November. We may
13 still have to vacate the date.

14 Perhaps what we might want to do is... All right.
15 Two weeks. We'll set the case for further status. Two weeks
16 is the 13th of November. We'll set the case for further
17 status. That's a Thursday.

18 MR. HUTCHINSON: We have a hearing that date already
19 for the case, your Honor.

20 THE COURT: So let's keep it. How is that? Is that
21 fine? Yeah. Then we got everybody in and they don't have to
22 pay -- their clients don't have to pay them to specifically
23 come to Chicago for this situation.

24 All right. Let's see how cooperatively we can work in
25 connection with this fee discovery, and we'll see where we are

1    at that point. All right. Thank you. We'll see you on the
2    13th of November.
3           MR. KEOUGH: Your Honor, I guess we will discuss with
4    Judge Kim the time frame. Until we work out an agreement,
5    could we have an attorneys' eyes only?
6           THE COURT: Any problem with that?
7           MS. HOLYOAK: Attorneys' eyes only, no, if I'm one of
8    the attorneys.
9           THE COURT: Yeah, you're the attorney.
10          MR. HUTCHINSON: Attorneys' eyes only for use in this
11   case, not for any other matters. That's really what we're
12   concerned about.
13          THE COURT: Until you work out a further agreement, I
14   would recommend you go to Judge Kim right away, provide him
15   this information so he is at least aware of the issues that
16   you're thinking may arise, and he can assist us.
17          I still think we may have to vacate the final approval
18   date. I've had to do that in the past when necessary. So I
19   may end up doing that anyway. All right, but thank you.
20          MR. HUTCHINSON: Thank you, your Honor.
21          MR. GREENE: Should we keep it at 11:00 o'clock on the
22   13th?
23          THE COURT: We'll keep it at 11:00 o'clock at this
24   point. On the 13th, yeah, 11:00 o'clock, that's the best time
25   to do it. We'll address it all.

1    MS. HOFFMAN: Thank you, your Honor.

2    (Concluded at 9:33 a.m.)

3    \* \* \* \* \* \* \* \* \*

4    C E R T I F I C A T E

5    I certify that the foregoing is a correct transcript of the

6    record of proceedings in the above-entitled matter.

7

8    */s/ LISA H. BREITER*                              *November 4, 2014*
     LISA H. BREITER, CSR, RMR, CRR
9    Official Court Reporter