# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE CAPITAL ONE TELEPHONE CONSUMER PROTECTION ACT LITIGATION | Master Docket No. 1:12-cv-10064<br>MDL No. 2416<br><br>CLASS ACTION |
| This document relates to:<br><br>BRIDGETT AMADECK, et al.,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, and CAPITAL ONE BANK (USA), N.A. | Case No. 1:12-cv-10135 |
| This document relates to:<br><br>NICHOLAS MARTIN, et al.,<br><br>v.<br><br>LEADING EDGE RECOVERY SOLUTIONS, LLC, and CAPITAL ONE BANK (USA), N.A. | Case No. 1:11-cv-05886 |
| This document relates to:<br><br>CHARLES C. PATTERSON,<br><br>v.<br><br>CAPITAL MANAGEMENT, L.P., and CAPITAL ONE BANK (USA), N.A. | Case No. 1:12-cv-01061 |

**PLAINTIFFS' OPPOSITION TO OBJECTOR JEFFREY T. COLLINS'S
MOTION FOR ADDITIONAL DISCOVERY**

## I. **INTRODUCTION**

This is a Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. case that alleges that defendant Capital One (and its vendors) made improper automated debt collection calls to cellular telephones. The parties reached proposed Class Settlement comprised, in relevant part, of a $75,455,098.74 non-reversionary cash fund to be paid to all claiming Class Members—to date more than 1.25 million individuals. The proposed Class Settlement was preliminarily approved by Judge Holderman on July 29, 2014. The settlement permits, and Class Counsel have sought, attorney's fees and costs in the amount of 30% of the common fund (costs included).

Jeffrey T. Collins filed a *pro se* objection to the settlement on August 25, 2014, and on October 27, 2014, filed a second objection through counsel. The thrust of the objections is that Class Counsel have requested too much money out of the non-reversionary common fund, because, in Objector Collins's view, there was not that much risk involved in prosecuting this case. On October 30, 2014, Judge Holderman granted Objector Collins's motion for limited discovery into Class Counsel's lodestar, and referred the case to this Court for discovery supervision, including to assist with guidance on the proper scope of the discovery. Plaintiffs provided fulsome and transparent responses to the original discovery requests.

But now, having obtained responses to the discovery it actually served—discovery well beyond anything typically ordered in class cases—Collins and his counsel have moved the goalposts. He has now filed a *second* discovery motion which, although styled, in part, as a "motion to compel" based on the supposed opacity of Class Counsel's responses is really no such thing. Instead, it represents an attempt by Collins and his counsel to seek entirely new discovery never previously served, and for which Collins never sought permission from Judge Holderman or this Court to serve.

For this reason, and because of the scope of the referral, this Court has broad authority to decide the appropriateness of the newly-requested discovery. And for the reasons below, Class Counsel respectfully request that the discovery be disallowed..

## II. ARGUMENT

### A. This Court Has Authority to Decide This Motion.

Objector Collins's moving papers suggest that Judge Holderman's previous ruling divests this Court of authority to decide whether additional discovery is permissible, and requires this Court to simply order the new discovery he now seeks. Not so.

The transcript from the October 30, 2014 presentment hearing on the motion for leave to take limited discovery shows that Judge Holderman only approved the discovery because (1) it was limited to three interrogatories, and (2) it was subject to the parties meeting and conferring as to scope, first, which was to be overseen by this Court. Judge Holderman first locked Objector Collins's counsel in as to the scope of the discovery sought:

> **THE COURT:** And one of the points that I didn't quite fully grasp was if I were to allow this very limited discovery -- and it's only three interrogatories you're seeking, correct?
>
> **MS. HOLYOAK:** Yes, that's correct, your Honor.

Exhibit A (October 30, 2014 Transcript) at 3:21 to 3:24.

Next, Judge Holderman made it quite clear that, although he found that the limited discovery sought was permissible, he reserved ruling on the *scope* of what should be produced; that issue was sent to this Court, along with a general "discovery supervision" referral.

> **THE COURT:** And so my concern is, even coming on to the bench after I've reviewed your materials, is not whether I should do this. It's the *extent* to which I should do this.

*Id.* at 8:10 to 8:13 (emphasis added). After these comments, the Court then confirmed with Objector Collins's counsel that she would meet and confer with Class Counsel to figure out how to minimize the burden from these three interrogatories. Ms. Holyoak not only committed to meeting and conferring as to burden, but she also reaffirmed that the discovery she needed was extremely limited in scope:

> **THE COURT:** Let me ask Mr. Collins' counsel.

> **MS. HOLYOAK**: I'm sorry, what's the question, your Honor?
>
> **THE COURT**: Well, you're going to talk about the burden. You'll try to minimize the burden.
>
> **MS. HOLYOAK**: Absolutely. And I believe even as proposed, it's very limited. It's only summaries in those cases and the cases -- and for many of those cases, they've already done this. They've already provided their lodestar summaries in the cases where they've won.

*Id.* at 8:23–9:4.

Any doubt as to the broad scope of authority Judge Holderman conferred upon this Court to decide additional issues was quelled on November 18, 2014, when the Court acknowledged that this Court might deny Objector Collins's motion for additional discovery. Exhibit B (Nov. 18, 2014, Transcript) at 13–14.

In short, this Court has broad discretion to decide the relevancy and scope, if any, of the new information sought.

### B. The "Motion to Compel" Should Be Denied.

Objector Collins's instant motion suggests that his previous discovery was not responded to completely. In Objector Collins's words, the responses were "deficient." Collins takes issue with the response to Interrogatory 2, which asks for:

> Interrogatory No. 2: Please IDENTIFY all TCPA ACTIONS for which YOUR COUNSEL of record in these proceedings has been awarded attorneys' fees and/or litigation expenses, and for each such action, IDENTIFY:
>
> a. The LODESTAR AMOUNT and the LODESTAR MULTIPLIER requested to the court;
>
> b. The total amount of attorneys' fees awarded to YOUR COUNSEL and the LODESTAR MULTIPLIER, if any, used by the court;
>
> c. The total amount of litigation expenses requested by YOUR COUNSEL and the total amount of litigation expenses awarded to YOUR COUNSEL.

The plain language of these requests asks for a list of TCPA cases filed after October 1, 2010, where fees were awarded, and three categories of information about those cases:

- the lodestar amount and multiplier *that were submitted to the Court* in those cases;

- the amount of fees that the Court awarded in those cases; and

- the amount of expenses incurred versus the amount of expenses awarded in those cases.

Class Counsel methodically, accurately, and completely responded to this interrogatory within the time period requested by Collins's counsel, and in excel format, as requested.

Unhappy with the straightforward response to his original interrogatory, Objector Collins now seeks to "compel" Class Counsel to provide a *broader* set of information than originally propounded. Because Class Counsel already fully and appropriately responded to the discovery actually served, the portion of the motion seeking to "compel" further responses should be denied.

### C. The Request for New Discovery Should Be Denied.

Having received fulsome responses to the very discovery he sought permission to obtain and as to which he served three interrogatories as expressly permitted, Objector Collins has now issued three *additional* interrogatories, seeking new and different information. This request for additional discovery should be denied because it is not consistent with Judge Holderman's suggestion that the parties meet and confer to *narrow* the scope of information sought, and because the information sought is not relevant to the issues at hand, and is burdensome and abusive.

#### 1. Class Counsel Believed the Parties Had Mooted This Motion

In addition to the discussions delineated in Ms. Holyoak's declaration, the parties engaged in further substantive meet and confer discussions with regard to the information sought in Interrogatory 4. Indeed, as explained below, and in the Declaration of Daniel Hutchinson,

after these discussions occurred, Class Counsel believed that agreement had been reached that should have mooted this motion.

On November 18, 2014, at 9:40 Pacific, Objector Counsel Melissa Holyoak and Class Counsel Daniel Hutchinson held a telephone call to discuss the possibility of limiting the scope of Objector Collins's discovery. Hutchinson Decl. at ¶ 2. During that call, Ms. Holyoak proposed that Plaintiffs agree to produce additional lodestar and cost information for five cases in exchange for Objector Collins's dropping his request for allocation information. *Id*. Mr. Hutchinson asked Ms. Holyoak whether the offer was to drop just the allocation discovery or all additional discovery. *Id*. Ms. Holyoak stated that Objector Collins would forego all additional discovery if Plaintiffs provided information on the five cases specified. *Id*. Mr. Hutchinson stated that he would consult with co-counsel and respond. *Id*. Mr. Hutchinson emailed Ms. Holyoak later that day stating: "I have conferred with my co-counsel and am available to meet and confer regarding your proposal at your convenience." *Id*. ¶ 3.

At 4:47 Pacific on November 18, 2014, Mr. Hutchinson and Ms. Holyoak held another brief call where Mr. Hutchinson proposed that Ms. Holyoak also agree never to seek to disclose publicly the information produced to Objector Collins. Hutchinson Decl. ¶ 4. Ms. Holyoak agreed to consider it and call back. *Id*.

Twelve minutes later, at 5:05 P.M. Pacific, Ms. Holyoak called Mr. Hutchinson back to reject the additional proposal regarding confidentiality. Hutchinson Decl. ¶ 5. Mr. Hutchinson made an alternate proposal that Objector Collins agree to anonymize all confidential information filed with the Court so that any case names were referred to solely as, for example, Case A or Case B, without prejudice to Objector Collins's ability to analyze and present any of the lodestar information under seal. *Id*. Mr. Hutchinson and Ms. Holyoak discussed this proposal for approximately 16 minutes. *Id*. Ms. Holyoak agreed to consider it and call back. *Id*.

The following morning, November 19, 2014, Ms. Holyoak left Mr. Hutchinson a voicemail asking to speak to him. Hutchinson Decl. ¶ 6. At 10:23 A.M. Pacific on November

18, 2014, Mr. Hutchinson called Ms. Holyoak. *Id*. ¶ 7. During that call, Ms. Holyoak agreed to the following:

>   (1) Plaintiffs would produce lodestar and costs information for the five agreed-upon cases;
>
>   (2) Objector Collins would forego all additional discovery; and
>
>   (3) Objector Collins would anonymize the case information for all his filings with the Court.

*Id.* Objector Collins agreed to memorialize this agreement in writing. This call lasted for approximately 12 minutes, and the promised letter arrived thereafter. Hutchinson Decl. ¶ 7, Ex. 1 (letter from Ms. Holyoak memorializing the call) & Ex. 2 (email from Mr. Hutchinson responding to Ms. Holyoak's email).

At 11:51 A.M., Ms. Holyoak called Mr. Hutchinson again. She explained that she did not understand the third aspect of the agreement. Mr. Hutchinson explained that the intention and effect of that proposal had nothing to do with Objector Collins, and was without prejudice to his ability to later argue that specific case names should be disclosed. Rather, the sole intent was to guard against the possibility of defense counsel in this matter (or former/future adversaries in other matters) receiving specific case information. Mr. Hutchinson stated that Objector Collins had "no dog in that fight" and Ms. Holyoak agreed. The call ended amicably after approximately 25 minutes. Hutchinson Decl. ¶ 10.

Mr. Hutchinson understood at the end of this call that the parties had reached firm agreement on these issues. However, without responding to Mr. Hutchinson's email or notifying Class Counsel that the deal was off, Ms. Holyoak filed the instant motion seeking even *more* discovery than had ever been suggested.[1] The motion recites that the parties met and conferred, but omits substantive information about the critical conversations.

---

[1] For example, Interrogatory No. 5 asks for information concerning *Wilkins v. HSBC*, 1:14-cv-190 (N.D. Ill.) lodestar information.

The attempted broadening of discovery in this matter is similar to the conduct identified by Judge Kennelly a year ago in *In re Southwest Airlines Voucher Litigation*, 1:11-cv-08176 (N.D. Ill.). In that case, the same lawyers representing Collins here were found to have initiated an objection to another class action settlement, and then impermissibly attempted to broaden the scope of such objection. Exhibit C.

In any event, although Class Counsel continues to object to the responsiveness, discoverability, and probative value of such information to this case, Class Counsel is still willing to honor the agreement they believe had been reached, as reflected in Ms. Holyoak's letter: Class Counsel will provide lodestar information for responsive cases where no fee information was submitted to the Court, and in exchange Objector Collins agrees not to seek any more discovery, and agrees that submission of information under seal concerning fees not requested to a court will be anonymized so as to protect the identity of the case. Class Counsel would agree to provide the newly-requested information concerning *Wilkins v. HSBC*, too.[2]

2. **Objector Collins's Request for Fee Allocation Information Should Be Denied**

The fee allocation information sought by Objector Collins is neither relevant nor probative to Class Counsel's fee request. Objector Collins claims that such information must be disclosed pursuant to Rule 23(h). But nothing in Rule 23(h) or the Advisory Committee Notes thereto says anything about fee allocation among class counsel. Collins cites no Seventh Circuit law for this proposition, because that is not the law in this Circuit. *See Spicer v. Chicago Bd. Options Exch.*, 844 F. Supp. 1226, (N.D. Ill. 1993) ("Ideally, allocation of the fee award is a private matter to be handled among class counsel. Herbert Newberg, Attorney Fee Awards § 2.16 (1986). . . . Accordingly, we will not order a specific allocation of our award among the firms. Should the firms require such an order, they have ten days in which to petition this court to make such an allocation."); 1 Attorneys' Fees § 7:10 (3d ed.) (same); *see also In re Diet Drugs*

---

[2] It is worth noting that it appears that objector Jeffrey T. Collins is an objector in both Wilkins and this case, although his lawyers have represented that they do not represent him in that action. *See* Exhibit B at 11.

*Prods. Liab. Litig.*, 401 F.3d 143, 168 (3d Cir. 2005) (same). Objector Collins relies on only two cases, from the Ninth and Fifth Circuits. His reliance on those cases is puzzling. Neither case mandates that the Court review or approve the allocation of fees among class counsel. *See Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (noting that the Court acts as a fiduciary for the class when awarding attorneys' fees but not requiring (or even discussing) the allocation of attorneys' fees among plaintiffs' counsel); *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 223, 227 (5th Cir. 2008) (inquiring into the fee allocation among plaintiffs' counsel in circumstances where some members of class counsel— not class members—objected to the allocation, and where the district court failed to properly supervise a five-member Fee Committee that distributed a $6.875 million lump sum among thirty-two law firms and seventy-nine plaintiffs' attorneys on behalf of the Court)..

Judges do not ask for, and class counsel do not routinely provide, fee allocation among the firms serving the class because it is not the law, and because that information in no way serves the class. Indeed, not only do courts rarely if ever address allocation (outside the context of a "fee fight" between counsel), most typically authorize lead counsel to allocate the fees in their discretion.[3]

Moreover, such fee allocation information is not germane to Class Counsel's fee request. While Collins acknowledges that the market rate approach governs Class Counsel's fee application, he invents a new "risk analysis" focused not on the risk Class Counsel faced *ex ante* in *this* case, but instead seeks to analyze each firm's (or perhaps all of the firms' collective) *practice-wide* income based on all TCPA cases, both successful and unsuccessful. There is no support for such an analysis of which Class Counsel are aware.

To the contrary, the Seventh Circuit is unique among federal circuits in that it requires district courts to simulate a market for legal services when it sets fees in class actions. *See, e.g., Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("When attorney's

---

[3] *See, e.g., Arthur v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132061, at *8 (W.D. Wash. Sept. 17, 2012).

fees are deducted from class damages, the district court must try to assign fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys."). As part of this "market-based approach," the riskiness of the case is analyzed *as of the time the case was filed* based on the facts and circumstances unique to that case. *See In re Synthroid Marketing Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("In re Synthroid I") ("On remand, the district court must estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed).")

Objector Collins's novel practice-wide risk theory not only finds no support in Seventh Circuit law, it also makes no sense. At the outset of each case, attorneys evaluate the potential risks and rewards based on that particular case's facts and legal theories. The risk inherent in any TCPA case will vary depending on a myriad of factors, including the strength of the defendant's consent defense, the presence of an arbitration clause and class action waiver, the ready availability of calling data, and the financial strength of the defendant. These factors vary widely between and among TCPA cases. Class Counsel have experienced success and failure in extremely similar cases. There is simply no factual support for analyzing risk based on any firm's or group of firms' wins and losses over an entire practice area rather than based on the "riskiness" of the case in which the fee has been requested.[4]

Finally, compelling production of the internal fee allocations would require Class Counsel to divulge confidential, financial information about not only their own firms, but also law firms not before this Court. Such an intrusive outcome is not warranted given the irrelevant nature of the information sought. Class Counsel request that Objector Collins's request be denied.

---

[4] Lest there be any doubt about the risk of such cases, just today another district court within this Circuit denied outright a class certification motion and largely adopted a defense view of the TCPA requirements, a case in which several of Class Counsel here are heavily involved, and in which they expended significant time and money. *Balschmiter v. TD Auto Finance LLC*, Case No. 13-CV-1186-JPS (E.D. Wis. Nov. 20, 2014), attached hereto as Exhibit D.

## III. CONCLUSION

For the foregoing reasons, Class Counsel respectfully submit that Objector Collins's motion to compel and for additional discovery be denied.

RESPECTFULLY SUBMITTED AND DATED this 20th day of November, 2014.

        LIEFF CABRASER HEIMANN
          & BERNSTEIN, LLP

       By: /s/ Jonathan D. Selbin
        Jonathan D. Selbin, *Admitted Pro Hac Vice*
        Email: jselbin@lchb.com
        Douglas I. Cuthbertson, *Admitted Pro Hac Vice*
        Email: dcuthbertson@lchb.com
        250 Hudson Street, 8th Floor
        New York, NY 10013-1413
        Telephone: (212) 355-9500
        Facsimile: (212) 355-9592

        Daniel M. Hutchinson, *Admitted Pro Hac Vice*
        Email: dhutchinson@lchb.com
        LIEFF CABRASER HEIMANN
          & BERNSTEIN, LLP
        275 Battery Street, 29th Floor
        San Francisco, CA 94111-3339
        Telephone: (415) 956-1000
        Facsimile: (415) 956-1008

        Beth E. Terrell
        Email: bterrell@tmdwlaw.com
        Michael D. Daudt
        Email: mdaudt@tmdwlaw.com
        TERRELL MARSHALL DAUDT
          & WILLIE PLLC
        936 North 34th Street, Suite 300
        Seattle, Washington 98103
        Telephone: (206) 816-6603
        Facsimile: (206) 350-3528

Keith James Keogh
Email: keith@keoghlaw.com
Timothy J. Sostrin
Email: tsostrin@keoghlaw.com
KEOGH LAW, LTD.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
Telephone: (312) 726-1092
Facsimile: (312) 726-1093

**CERTIFICATE OF SERVICE**

I, Beth E. Terrell, hereby certify that on November 20, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Aaron D. Van Oort
> Email: aaron.vanoort@faegrebd.com
> Eileen M. Hunter
> Email: eileen.hunter@faegrebd.com
> Erin L. Hoffman
> Email: erin.hoffman@faegrebd.com
> FAEGRE BAKER DANIELS
> 2200 Wells Fargo Center
> 90 South Seventh Street
> Minneapolis, Minnesota 55402-3901
> Telephone: (612) 766-7000
> Facsimile: (612) 766-1600
>
> *Attorneys for Defendant Capital One*
>
> James K. Shultz
> Email: jschultz@sessions-law.biz
> SESSIONS, FISHMAN, NATHAN & ISRAEL LLC
> 55 West Monroe Street, Suite 1120
> Chicago, Illinois 60603-5130
> Direct: (312) 578 -0993
> Office: (312) 578-0990
> Fax: (312) 578-0991
>
> *Attorneys for Defendant Capital Management Systems, LP*
>
> Alan I. Greene
> agreene@hinshawlaw.com
> HINSHAW & CULBERTSON LLP
> 222 North LaSalle Street, Suite 300
> Chicago, IL 60601
> Telephone: (312) 704-3536
>
> *Attorneys for Defendant Leading Edge Recovery Solutions, LLC*

Grace Carter
gracecarter@paulhastings.com
PAUL HASTINGS
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105
Phone: (415) 856-7015
Fax: (415) 856-7115

*Attorneys for Defendant AllianceOne Receivables Management, Inc.*

Theodore H. Frank
Melissa A. Holyoak
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (573) 823-5377

*Attorneys for Objector Jeffrey T. Collins*

Additionally I caused to be served via First-Class mail a copy of the foregoing:

Andre Verdun
CROWLEY LAW GROUP
401 West "A" Street, Suite 925
San Diego, California 92101

Chelsea Hamill
DOLL AMIR AND ELEV LLP
1888 Century Park East, Suite 1850
Los Angeles, California 90067

Christy T. Nash
BURR & FORMAN LLP
201 N. Franklin St., Suite 3200
Tampa, Florida 33602

Darren Sharp
ARMSTRONG TEASDALE LLP
2345 Grand, Suite 2000
Kansas City, Missouri 64108

George C Bedell
LASH & WILCOX, PL
4401 W. Kennedy Blvd., Suite 210
Tampa, Florida 33609

Jeanne Lahiff
SLEEMI LAW FIRM
2001 Route 46, Suite 310
Parsippany, New Jersey 07054

Kenneth Grace
SESSIONS FISHMAN NATHAN & ISRAEL LLC
3350 Buschwood Park Drive, Suite 195
Tampa, Florida 33618-4317

Marjorie Bergiste
10352 Old Winston Court
Lake Worth, Florida 33449

Mitchell B. Levine
FISHMAN McINTYRE P.C.
12th Floor
44 Wall Street
New York, New York 10005

Sarah Nicole Davis
MORRISON & FOERSTER
425 Market Street
San Francisco, California 94105

Devera R.D. Bartte
3440 SW 28th Terrace, Apt A
Gainesville, Florida 32608

DATED this 20th day of November, 2014.

        TERRELL MARSHALL DAUDT
         & WILLILE PLLC


       By: /s/ Beth E. Terrell
        Beth E. Terrell
        Email: bterrell@tmdwlaw.com
        936 North 34th Street, Suite 300
        Seattle, Washington 98103
        Telephone: (206) 816-6603
        Facsimile: (206) 350-3528