```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3    IN RE                          )
      CAPITAL ONE TELEPHONE CONSUMER )
 4    PROTECTION ACT LITIGATION,     )
                                     )   Docket No. 12 C 10064
 5                                   )   Chicago, Illinois
                                     )   November 21, 2014
 6                                   )   12:32 p.m.

 7
                      TRANSCRIPT OF PROCEEDINGS - Ruling
 8                    BEFORE THE HONORABLE YOUNG B. KIM

 9
      APPEARANCES:
10

11    For the Plaintiffs:  LIEFF, CABRASER, HEIMANN & BERNSTEIN, by
                           MR. DANIEL M. HUTCHINSON
12                         275 Battery Street
                           29th Floor
13                         San Francisco, CA 94111

14                         BURKE LAW OFFICES LLC, by
                           MR. ALEXANDER H. BURKE
15                         155 North Michigan Avenue
                           Suite 9020
16                         Chicago, IL 60601

17    For Capital One:     FAGRE BAKER DANIELS, by
                           MS. EILEEN M. HUNTER
18                         2200 Wells Fargo Center
                           90 S. Seventh Street
19                         Minneapolis, MN 55402

20    For Objector
      Jeffrey T. Collins:  CENTER FOR CLASS ACTION FAIRNESS, by
21                         MS. MELISSA HOLYOAK (via conference call)
                           1718 M Street NW, No. 236
22                         Washington, DC 20036

23                         WILLIAMS MONTGOMERY & JOHN LTD. by
                           MS. KIRSTEN B. IVES
24                         233 S. Wacker Drive
                           Suite 6100
25                         Chicago, IL 60606-6359
```

```
 1      APPEARANCES (continued):

 2      For Capital Management
        Services and
 3      NCO Financial:          SESSIONS, FISHMAN, NATHAN & ISRAEL, by
                                MR. DANIEL W. PISANI
 4                              55 West Monroe Street
                                Suite 1120
 5                              Chicago, IL 60603

 6      For Leading Edge
        Recovery Solutions:     HINSHAW & CULBERTSON LLP by
 7                              MR. ALAN I. GREENE
                                222 North LaSalle Street
 8                              Suite 300
                                Chicago, IL 60601
 9

10

11

12

13

14

15

16

17

18

19

20      Court Reporter:         LISA H. BREITER, CSR, RMR, CRR
                                Official Court Reporter
21                              219 S. Dearborn Street, Room 1802-C
                                Chicago, IL 60604
22                              (312) 818-6683
                                lisa_breiter@ilnd.uscourts.gov
23

24

25
```

1          (In open court.)

2                 THE CLERK:  12 CV 10064, In Re: Capital One Telephone

3     Consumer Protection Act Litigation.

4                 MR. BURKE:  Good morning, Judge.  Alexander Burke for

5     the plaintiff and class.

6                 MS. HOLYOAK:  Good afternoon, your Honor.

7                 THE COURT:  Go ahead, on the phone.

8                 MS. HOLYOAK:  Melissa Holyoak.  Yes, I'm on the phone.

9                 THE COURT:  All right.  Good afternoon.

10                 MS. HOLYOAK:  Good afternoon.  Last name

11    H-O-L-Y-O-A-K.

12                 THE COURT:  Thank you.

13                 MS. HOLYOAK:  Counsel from Center for Class Action

14    Fairness for Objector Collins.

15                 MR. HUTCHINSON:  Good afternoon, your Honor.  Daniel

16    Hutchinson of Lieff, Cabraser, Heimann & Bernstein, co-lead

17    counsel for the class.

18                 MS. IVES:  Good morning, your Honor, Kirsten Ives,

19    I-V-E-S, also on behalf of Objector Collins and from the Center

20    for Class Action Fairness.

21                 MS. HUNTER:  Good afternoon, your Honor.  Eileen

22    Hunter for defendant Capital One.

23                  MR. PISANI:  Good afternoon, your Honor.  Daniel

24    Pisani on behalf of defendant Capital Management Services.

25                 MR. GREENE:  Good afternoon, your Honor.  Alan Greene

1  on behalf of defendant, Leading Edge Recovery Solutions.

2  THE COURT: Great, thank you. Ms. Ives, your first

3  name is Kirsten?

4  MS. IVES: Yes, it is.

5  THE COURT: That's I-V-E-S?

6  MS. IVES: Correct.

7  THE COURT: All right. So let me first address the

8  issue of -- having read the response, it appears that the

9  parties were, in fact, trying to reach some form of an

10  agreement in order to avoid this motion. And I just want to

11  give Ms. Holyoak and Ms. Ives an opportunity to comment on what

12  class counsel believes to be an agreement.

13  Ms. Ives, or who's going to --

14  MS. HOLYOAK: This is Melissa Holyoak. I can speak to

15  that, your Honor.

16  THE COURT: Yes, go ahead.

17  MS. HOLYOAK: Yes. We did reach out to them, and we

18  conferred several times. We provided a letter to them, which

19  is the proposal that we believed we had reached.

20  They countered with two additional proposals, and I

21  immediately called and said no, this is not what we want, and

22  we have a fundamental misunderstanding and we will not agree to

23  these two proposals.

24  And I would say that their proposal that's contained

25  in their opposition is actually what their counter was. It is

1  not the proposal contained in my letter to them.

2      THE COURT:  Okay.  So essentially there is no

3  agreement.  So I need to go ahead and move forward with the

4  ruling on the motion.  So the motion to -- this is a

5  combination motion, a motion to compel and, in the alternative,

6  to serve interrogatory No. 4 and also a motion for additional

7  discovery.  In the motion to compel, Objector Collins seeks a

8  supplement to answers to interrogatory 2A and interrogatory 2B.

9      Objector Collins argues that answers to 2A are

10  deficient because three of the six firms failed to provide any

11  lodestar information for certain cases where lodestar

12  information may not have been submitted to the court, but

13  simply sought a percentage of the settlement fund as attorney's

14  fees.

15      With respect to 2B, the argument there is that -- I'm

16  not sure whether all of the firms did this, but at least some

17  of the firms did not, in fact, provide specific fee awards that

18  were, in fact, allocated to the specific law firms.

19      I read through the motion.  I read through the

20  response.  I also read through the motion to lift a discovery

21  stay in order to get a better handle on exactly where -- you

22  know, what issues Judge Holderman ruled on.

23      And here's my ruling as to interrogatory 2A:  I do

24  agree with the class counsel that 2A only sought that

25  information that was, in fact, provided to the courts.  But I

1    think -- well, I'll get to it later.

2         With respect to 2B, there's no real controversy or

3    vagueness there.  I mean, Objector Collins asked for the

4    amounts that were, in fact, awarded to these particular law

5    firms, not necessarily the total fee amount that was granted or

6    awarded in some of these cases.  So with respect to 2B, I agree

7    with Objector Collins that the answers are, in fact,

8    inadequate.

9         So let me just deal with the alternative relief that

10   Objector Collins is asking for, which is to simply serve

11   interrogatory 4.  I think that it will be better and cleaner

12   to, in fact, go ahead and allow Collins to go ahead and serve

13   interrogatory 4, which is better drafted, and it's clear in my

14   opinion, and have the class counsel respond to interrogatory 4

15   without having to update answers to 2B.  Any questions so far?

16   Mr. Burke?

17        MR. BURKE:  Yeah, I'm not quite sure I understand --

18   understood the motion as to 2B the same way your Honor did.  So

19   perhaps you could just explain what information you're ruling

20   that we should provide.

21        THE COURT:  The way I do understand the objection from

22   Objector Collins is that -- and I'll just give you an example

23   of how I am interpreting the objection or the argument.

24        Let's just take Judge Holderman, for instance.  Let's

25   take Judge Holderman in a particular case awarded $500,000 in

1    attorney's fees, but there were six law firms working on behalf

2    of the class.  I think the -- and Objector Collins' objection

3    to that is, well, we have $500,000, but we don't know how much

4    of that amount -- how much of the fee went to each particular

5    law firm.

6          And maybe you can correct me.  Maybe that's just

7    wrong.  Maybe each firm did, in fact, provide the information

8    specific to their law firm.

9          MR. BURKE:  No, Judge, we did not.  And the reason

10   that we did not is that the Court orders do not allocate fees

11   for firms.

12         THE COURT:  That's exactly the reason why the

13   interrogatory's drafted the way it's drafted, and that's why

14   it's seeking that information.  And I think that given -- and

15   having looked at the motion to lift the stay on discovery, it's

16   important to see what each law firm, in fact, received and how

17   many hours that law firm spent in actually getting that fee

18   amount.  Otherwise, the raw data that Judge Holderman allowed

19   Objector Collins to secure is meaningless.

20         MR. BURKE:  May I just make a couple comments for the

21   record understanding where we are in the hearing.

22         The 7th Circuit has repeatedly ruled that attorney's

23   fees in class actions are based upon the market at the time the

24   case is filed.  No case that we're aware of has ever held that

25   the profitability of a law firm or the profitability of

1  previous cases has any bearing upon what the fees should be for
2  the instant case.

3       The risk analysis that is to be performed by the
4  district court is the risk of the particular case that one is
5  in. Every case is different. One case might be a dead bang
6  winner, and the risk in filing that case in the beginning of
7  the case is easy.

8       For example, a case where the DOJ has prosecuted an
9  identical action, gathered all the evidence, and there has been
10 a finding of guilt, criminal guilt, a civil action alleging the
11 same violation or a civil violation based upon the same conduct
12 is easy and not risky. That's an example of risk analysis that
13 happens within a particular case, and that's what the 7th
14 Circuit has said Courts should do.

15      Again, no Court has ever held, in discovery or as a
16 matter of final fairness, that the profitability of previous
17 cases has any bearing on the issues as to the particular case,
18 the fees in the particular case as to those class members.

19      I would also point out that we've reviewed the
20 proposed analysis by the objector, which I think that what
21 they're trying to say is class counsel is not entitled to
22 anything more than a one multiplier as a matter of course over
23 their career, or at least four years or something like that.
24 And I would comment that were that sort of thing to be the
25 law --

1       THE COURT:  But Mr. Burke, I do want to be patient and

2   allow you the opportunity.

3       MR. BURKE:  I'm almost done.

4       THE WITNESS:  But I wonder whether you're making the

5   arguments to the wrong judge.

6       MR. BURKE:  I understand, and I'm trying to make my

7   record.

8       THE COURT:  But what good is making the record?  We're

9   only here on the motion to compel.  It's a discovery motion.

10  And much of your arguments are already contained in the

11  response to the motion.

12      So again, I hate to cut attorneys off.  But at the

13  same time, I don't want to sit here and be disingenuous that

14  somehow what you're saying to me is going to make any

15  difference.  So I don't want to do that either.

16      MR. BURKE:  Okay.  In conclusion.

17      THE COURT:  Okay.

18      MR. BURKE:  I would say that given the standard for

19  discoverability and the fact that the profitability of previous

20  cases has nothing to do with the analysis on final approval for

21  this case or any other case, we strongly object to producing

22  this information.  And so that's the record.

23      THE COURT:  My ruling stands as to 2B.  And again, as

24  I said, in lieu of supplementing the answers to 2B, you already

25  have interrogatory 4.  So I ask that class counsel provide an

1   answer to interrogatory 4, and the compliance date is by

2   November 25th.  That should give enough time to the objector to

3   file his supplement by December, I believe it's December 3rd.

4         Moving on to the motion for additional discovery, so

5   we've got interrogatory 5 and interrogatory 6.  Again, going

6   back and looking at the motion to lift stay of discovery and

7   also looking through the transcripts and what Judge Holderman

8   said, the scope of Judge Holderman's ruling does not allow for

9   interrogatory 5 or interrogatory No. 6.  In fact, it actually

10   is not even consistent with the objector's plan here.

11         Objector Collins is simply seeking the historical data

12   in order to analyze the risk that the class counsel is actually

13   accepting and actually facing.  And I'm quoting from page 10 of

14   Objector Collins' motion, quote, "Specifically by reviewing the

15   lodestar and expense data from other TCPA cases that class

16   counsel has won and lost and how class counsel has been

17   compensated in those cases, the Court can assess the actual

18   risk assumed."

19         I'm not saying that I agree with it, but what I'm

20   saying is that what we're looking for is historical data.  And

21   with respect to interrogatory 5, we're looking at a case that

22   has not been resolved.  We still don't know what fees are going

23   to be granted.

24         With respect to interrogatory 6, again, the allocation

25   has no bearing on this case -- on this particular objection

1  because we don't know what the allocation is going to be.  We

2  don't know what the fee amount is going to be.  So again, the

3  scope of discovery that Judge Holderman allowed does not take

4  into account interrogatory 5 or 6.

5          So that's the ruling on the motion, and I believe

6  that's complete.  But I do want to address a couple of other

7  things.  I'm just curious because going through the motions,

8  I'm learning a lot really about the issue of fees.

9          And so I want to ask Ms. Holyoak the reason for

10  including Judge Posner's ruling on page 10.  In the quote, it

11  says, "If an individual who earns $200 an hour and can get all

12  the work he wants at that rate, and then if he is offered a

13  chance to work on a case that has a 50 percent chance of

14  winning, if this particular attorney's risk neutral, he would

15  charge $400 an hour."  I wonder whether that's a risk neutral

16  step.  Do you agree with that analysis?

17          MS. HOLYOAK:  Oh, I guess I would start by saying

18  Judge Posner even explained that this is a very

19  oversimplification of the analysis.  But I wanted to show you

20  an example of what we're looking at.

21          I think, as I tried to explain in my previous example

22  that I had given, it's more complicated than that.  And what

23  our analysis undergoes is all the cases.  But I guess maybe are

24  you trying to understand why we -- I guess I'm not

25  understanding your question, your Honor.  I apologize.

1      THE COURT:  That's fine.  You know, if I am able to --

2  let's say I work 40 hours a week, and I have no problem

3  whatsoever of filling my week with all billable hours, $200 an

4  hour.  And Mr. Burke approaches me and says to me, "You know,

5  Mr. Kim, I have this great case and I'll allow you to charge

6  double what you're charging now, but there is a chance, about

7  50 percent chance that you're going to lose this case, and

8  therefore, you're not going to recover anything if the case is

9  lost."

10     If I am risk averse or risk neutral, why would I ever

11  even take that case at $400 an hour?  Because I'm already able

12  to fill my 40 hours a week at $200 an hour.  Why take that

13  chance?

14     But I do wonder if Mr. Burke came to me and said,

15  "Mr. Kim, I have this great case, albeit a 50 percent chance of

16  losing, but I'll allow you to charge $800 an hour if we win."

17  Now I may have some incentive to actually take that case on,

18  even though there's a 50 percent chance of losing.  Even though

19  I can fill all 40 hours with $200 an hour billable time.  What

20  is wrong with my analysis?

21     MS. HOLYOAK:  Well, I guess -- and this probably goes

22  to class counsel's statement that we argue that they should

23  only receive a one multiplier, which is not what I'm arguing.

24  I agree that there is some risk in taking a case, but how much

25  that risk is can be quantified.

1    And here we see in this case where they filed their

2    lodestar and their request, they're seeking a multiplier of 10.

3    In the Wilkins case, they're seeking a multiplier close to 15.

4    That is overcompensation and results in a windfall.

5          THE COURT:  Okay.

6          MS. HOLYOAK:  Does that clarify?  Does that explain my

7    position a little bit?

8          THE COURT:  Yeah, it really comes down to the views

9    that on the class counsel side, it's very difficult to quantify

10   what risk an attorney assumes at the beginning of the case,

11   whereas you are arguing that it is, in fact, quantifiable.

12   But, of course, you're looking at the historical data in order

13   to get to that point, right?

14         MS. HOLYOAK:  Well, we -- you know, even following the

15   7th Circuit analysis to extend the approach, you can still

16   review this information to demonstrate that ex-ante you would

17   never agree to a multiplier where the lawyers are receiving

18   $5,000 or $10,000 an hour.

19         THE COURT:  Okay.  All right.  Anyway, that was just a

20   side note.  I just wanted to get some thoughts on that.

21         Let me ask the attorneys for the defendants because we

22   have this lingering issue of whether Objector Collins is going

23   to ask for any documents or any information to be de-designated

24   as attorney's eyes only, and Capital One and others may object

25   and say, wait a second.  Before we move forward with the

1  briefing of the objection, we need to see what information was,

2  in fact, provided to Objector Collins.

3  And when I went through the briefs, it appears that

4  the attorney's fees are coming out of a -- coming out of the

5  settlement fund, right?  The settlement fund that covers the

6  cost of notice and everything else and also to cover benefits

7  for the class members and attorney's fees.

8  Is there a provision in the class settlement agreement

9  that class counsel can pull the plug, if you will, if the

10  class -- if class counsel's fee petition is somehow denied?

11  MS. HUNTER:  In this particular case, your Honor?

12  THE COURT:  Yes.

13  MS. HUNTER:  In this case, I believe there's an

14  express provision that says that it's not conditioned on

15  recovery of fees, is that right, Alex?

16  MR. BURKE:  I believe counsel's right.  We cannot pull

17  the plug based upon an adverse fee ruling.

18  THE COURT:  I have not seen anything.  I'm not saying

19  this is what Mr. Collins is arguing or not arguing.  I haven't

20  seen anything where Mr. Collins is saying this case should not

21  settle.

22  He is simply objecting to the amount of fees to be

23  awarded in the case.  And if that's the case, you don't have a

24  fight in this.  You don't have a dog in this fight.

25  MS. HUNTER:  Your Honor, Capital One's position is

1    that there's a possibility that this case will go up on appeal,

2    and there is a chance that the class itself could be scuttled

3    on appeal based on differences about attorney fee issues.

4         And so Capital One's position is that it should be

5    able to see any underlying data that either the objector relies

6    on or class counsel relies on in making arguments to Judge

7    Holderman that then could be taken up on appeal.

8         Having reviewed their papers, Capital One's position

9    today would be that if they want to do the A, B, C, D procedure

10   where they actually make every settlement anonymous so we can't

11   tell which case it is, and they make their corollary firm

12   anonymous, we can't do that lining up, that would be fine with

13   Capital One.

14        And I believe that my co-defense counsel is fine with

15   that as well.  And as Capital One argued previously, to the

16   extent we would only want information that's actually

17   referenced or cited in either, you know, the brief filed by the

18   objector or the response filed by class counsel, that would

19   narrow it.  Another narrowing that could be imposed would be to

20   make the AEO provision outside counsel's eyes only.

21             THE COURT:  I'm sorry, AO provision?

22             MS. HUNTER:  The attorney's eyes only provision would

23   be to make it outside counsel's eyes only as opposed to inside

24   counsel's eyes.  There could be various ways to narrow it, your

25   Honor.

1          THE COURT:  Okay.  I just wanted to share with

2   you --okay.

3          MR. GREENE:  Just so the record is clear, our client,

4   Leading Edge Recovery Solutions, another defendant, agrees with

5   what Ms. Hunter said.

6          MR. PISANI:  On behalf of Capital Management

7   Services, we join in that as well, your Honor.

8          THE COURT:  Okay.  All right.  Anything that we need

9   to sort of discuss in front right now so that we can kind of

10  stay on track?

11         MR. HUTCHINSON:  Yes, your Honor, if I may.  And my

12  question is just one of timing and more than anything else

13  convenience for the Court.  I understand your Honor to have

14  proposed ordering, too, that class counsel provide a response

15  to interrogatory No. 4 within five days, by the 25th.

16         And I am going to consult with my co-counsel.  The

17  allocation information as to the existing counsel in this case,

18  if it were to be produced, would necessarily divulge the

19  amounts that counsel who are not in this case received in those

20  unrelated cases.  So, for example, if there are three firms

21  involved in this case --

22         THE COURT:  I'm sorry, did I misunderstand you?  I'm

23  not allowing No. 6.

24         MR. HUTCHINSON:  Okay.

25         MR. BURKE:  Denied.

1          MR. HUTCHINSON:  So you're -- I'm sorry, I must have

2    misunderstood.

3          THE COURT:  So the motion for additional discovery is

4    denied.

5          MR. HUTCHINSON:  So there will be no allocation

6    information produced --

7          THE COURT:  No.

8          MR. HUTCHINSON:  -- as to the unrelated cases?

9          MS. IVES:  I think he's talking about 2B.

10          MR. HUTCHINSON:  I'm talking about 2B.

11          THE COURT:  2B.

12          MR. HUTCHINSON:  2B, which was encompassed within 4.

13    I understood your Honor to be ordering that allocation

14    information as to unrelated cases would be required to be

15    produced under the proposal that your Honor set forth.

16          THE COURT:  No.  Each firm is to respond to what it

17    got from the fee award.

18          MR. HUTCHINSON:  Yes.  So in order to do that, that's

19    what we're referring to as allocation information.  That would

20    necessarily give allocation information and provide what other

21    firms who are not part of this litigation received as part of

22    that unrelated litigation.

23          THE COURT:  How so, unless, of course, there were only

24    two firms?

25          MR. HUTCHINSON:  Of course.  So if there were two

1    firms, if one firm receives a certain amount, you know what the

2    other firm received.

3                  THE COURT:  Sure.

4                  MR. HUTCHINSON:  If there are four firms, if you know

5    what three firms received, you know what the fourth received.

6    And so I do not know, as I stand here now, whether those other

7    firms would object to that production of essentially their

8    personal financial information.

9                  For those firms who are not before your Honor, they

10   may want to appeal the ruling to your Honor.  They may want to

11   appeal the ruling to Judge Holderman.  And so I would just

12   respectfully ask if your Honor would be open to staying

13   implementation of the order so that I can first consult --

14                 THE COURT:  We don't have time for that.  If they want

15   to object, they certainly can.  I'm not going to stop -- I

16   can't stop them from objecting.  We just don't have the time

17   for that.

18                 We have the supplemental due December 3rd, and this

19   information, although I'm asking you to respond to

20   interrogatory 4, much of the information has already been

21   provided.  We're simply plugging in the holes.

22                 And so I don't find that to be burdensome.  And so we

23   need to move forward.  And I also read through the transcript

24   of Judge Holderman's proceeding that took place on the 18th.  I

25   know that he's very interested in moving the case forward.

1        So I'm doing all I can to be a team player here.  So

2   no, I'm not going to stay that ruling.

3        MR. HUTCHINSON:  Understood, your Honor, and my

4   question was just for the convenience of the Court because to

5   the extent that those counsel do appear, I don't want this

6   Court or Judge Holderman to feel rushed in any sense to deal

7   with that, if that does happen.

8        MR. BURKE:  There's at least one case where I think

9   that an unrelated lawyer, his compensation would be revealed.

10       THE COURT:  Let me caution you on one thing, though.

11       MR. BURKE:  Yes.

12       THE COURT:  If that issue comes up, then I am going to

13  be addressing the issue of whether financial information

14  related to class action settlements is, in fact, confidential

15  or trade secret.

16       As it stands now, there's a good chance that class

17  counsel in this case might be able to work things out where

18  this information is filed under seal or made anonymous for

19  purposes of ruling on the fee petition.  I'll leave that up to

20  you.

21       MR. BURKE:  Yes, Judge.  We worked very hard to try to

22  come to an agreement, and we put that in our papers.

23       THE COURT:  Okay.  All I'm saying is if I am given an

24  issue where I have to deal with the sensitivity or

25  confidentiality of fee issues and financial issues, I will.

1  You may not like my answer.  So I'll leave that up to you.

2       At the moment, it appears that everyone is on board in

3  trying to keep this information somewhat confidential and also

4  address the issue of appropriate fee.  If you want to upset

5  that cart by raising this issue or encouraging others to raise

6  this issue, then I have no choice but to address those issues.

7  That's all I'm saying.

8       MR. BURKE:  Understood.  Judge, there's one final

9  issue.  This is sort of a housekeeping issue.

10      THE COURT:  Yes.

11      MR. BURKE:  The parties over the last week did discuss

12  the possibility of talking about settlement.  Judge Holderman

13  suggested this at the hearing last week, and I do not know the

14  current status of those talks.

15      But if the parties were amenable to coming in and

16  speaking with your Honor as a mediator with respect to the

17  objection, would you be willing to do that?  Do you have time

18  to do that?

19      THE COURT:  Is that accurate, Ms. Holyoak?  Ms. Ives?

20      MS. HOLYOAK:  Well, they had approached me with that,

21  and yes, we had at first agreed.  But I think upon further

22  reflection, I don't think it's necessary, your Honor.  I mean,

23  we're going to file our papers December 3rd and then the

24  fairness hearing is January 15th.

25      The fairness hearing is going to happen whether or not

1    we have any sort of mediation.  So I'm not sure what there is

2    to mediate.  I think -- I don't think it's necessary.

3                THE COURT:  The answer to the question is yes.

4                MR. BURKE:  Okay.

5                THE COURT:  But I need both sides to participate and

6    be on the same page.  I think what Mr. Burke is suggesting,

7    Ms. Holyoak, is that we resolve this issue of fees outside the

8    litigation and perhaps try to come to an agreement as to what

9    is, in fact, reasonable.  That's what you're getting at, right,

10   Mr. Burke?

11               MR. BURKE:  Yes.  During the November 18th hearing,

12   Judge Holderman made it clear that he wanted the parties to

13   talk.  And we thought that it would be a natural thing to come

14   and ask your Honor.

15               THE COURT:  I'm game if you are, but I need both

16   sides.

17               MR. BURKE:  The plaintiff class counsel is game.

18               THE COURT:  All right.  Anything else?

19               MS. HUNTER:  Your Honor, just one more housekeeping

20   thing.  To the extent that you allow defendants' request to be

21   given access to the underlying data and to the unredacted

22   briefs, our proposal would simply be that when each side files

23   its brief, they would file -- give us the unredacted copy and

24   then give us the underlying documents at that time.

25               Capital One is very concerned about another delay in

1    the process that would cause Judge Holderman to delay the

2    January 15th date any further.  And to the extent you allow

3    this request, we would propose that that would be how it would

4    be handled and that you would rule on that now so that we could

5    just simply move through things in December.

6          THE COURT:  I apologize.  I'm a little slow on the

7    uptake here.  You be want the unredacted?

8          MS. HUNTER:  So to the extent, for instance, Objector

9    Collins filed a brief on December 3rd that has confidential

10   information on the protective order, that's redacted, and they

11   cite the underlying documents that have been produced by class

12   counsel.

13         Capital One's request -- and I believe it would be the

14   request of the other defendants -- would be that at that time,

15   assuming that you've allowed us access to the information, that

16   that day, we would get the brief and that day they would give

17   us any underlying documents.  That would just answer the

18   question of when do the defendants get the underlying

19   documents.  We would just get them when the brief is filed.

20         THE COURT:  I don't think I've ruled on that issue.

21         MS. HUNTER:  No.  What I'm proposing to your Honor, to

22   the extent that you allow that, that that would be an efficient

23   way to simply keep things moving in December.  And similarly to

24   the extent that class counsel, when it files its brief, if it

25   refers to other documents, that we would get those at that time

1     as well, assuming that the request is allowed.

2          MR. BURKE:  Judge, the suggestion to anonymize data to

3     resolve the confidentiality issues was my idea.

4          THE COURT:  It's a good one.

5          MR. BURKE:  And the defendants have agreed to it.  We

6     understood -- I guess we were wrong.  But we understood that

7     the objector agreed to it, too.  And I think it's a good idea.

8          I don't see, for some of the reasons that I went

9     through earlier, what interest the class has in seeing the

10     names of cases associated with my firm's income over the past

11     four years.

12          And furthermore, a ruling regarding anonymizing the

13     information would also at least partially resolve the

14     third-party lawyer issue, the third-party lawyer income issue.

15     Because those -- that information would not be in the record.

16          Based upon all these factors, we would request that

17     your Honor rule that the information should be anonymized and

18     that the parties come up with some sort of order.

19          THE COURT:  I'm not sure that this issue is ripe for a

20     decision at this time.  What I can do is give you a status

21     hearing on November 26th to hear arguments on this issue.  I

22     feel as though the objector and class counsel have some

23     agreement on how the information is to be presented to Judge

24     Holderman in order to serve the interest of Objector Collins,

25     but also serve the interest of class counsel wanting to keep

1    the information confidential.  Maybe I'm wrong.

2          MS. HOLYOAK:  Your Honor, this is Melissa Holyoak.  I

3    object to that.  I don't believe that anonymizing is necessary.

4    They have a confidentiality order in here.  If that information

5    is going to be produced, it will be produced under seal.

6          MR. BURKE:  Well, I mean, the issue is what goes in --

7    the issue is what goes into the record.  And what we're asking

8    is that the information be anonymized in the record so that

9    defendants can look at it.  In the record, the information will

10   be -- data's data.

11         MS. HOLYOAK:  Your Honor --

12         MR. BURKE:  They will make their arguments based upon

13   the data.  But when you start identifying specific cases,

14   that's when you can start identifying what defense strategies

15   were effective in spinning my wheels.

16         MS. HOLYOAK:  Your Honor, may I --

17         MR. BURKE:  What defense strategies were effective in

18   spinning my third-party co-counsel's wheels and how much my

19   third-party co-counsel, how much income they made on the case.

20   I just don't see how objectors or the class would be prejudiced

21   by anonymizing this data in the record.

22         MS. HOLYOAK:  Your Honor, if I may propose something

23   that might solve everyone's concern.  When we file our briefing

24   and our expert report which will include the interrogatories

25   and case names, we could redact whatever is attached to that

1    expert report for the case names and serve defense counsel a

2    version of the expert report and briefing with the redacted

3    versions so the case names are not provided.

4           This would satisfy the defense firms because they

5    would understand the underlying data without the case name.

6    This would satisfy class counsel because they're concerned

7    about defense firms receiving that information.  But this would

8    also satisfy Objector Collins because we'd be able to attach

9    whatever information we believe the Court should review

10   including the case names.

11          MR. HUTCHINSON:  Your Honor, if I may, and I did have

12   conversations with Ms. Holyoak, and I was hopeful that we could

13   come to an agreement.  I understood us to come to an agreement,

14   but that is obviously not the case today.

15          Reading between the lines, what I understand the

16   intention of Objector Collins is they want to submit the

17   specific case names into the record so that they can move to

18   unseal these documents at a later point in time and have a

19   "gotcha" document to be able to show class counsel's income in

20   specific cases.

21          That is the underlying desire here that's driving

22   this.  Because if the desire was simply to present the

23   information, the information is data.  And so if they want to

24   show what we earned in a case, they can show case A, B and C.

25   And that information can be used, and Judge Holderman and your

1    Honor has ordered that to be used.

2           But this is about a "gotcha" for other cases and about

3    broadcasting the personal financial information of plaintiffs'

4    counsel for use in other cases is my understanding.  I don't

5    see any other reason that's been articulated why we would have

6    to ask specific case names.

7           THE COURT:  Here's what we are going to do because I

8    have another matter that I need to handle.  We have the

9    response to interrogatory 4 being produced by November 25.  So

10   you are to produce with all the specific case names and

11   numbers, but also produce a second set sanitized with whatever

12   designation you want to use in order to anonymize the case

13   names or whatever the case may be.  So we've got set 1 and

14   set 2, okay?

15          And then by -- also by November 25.  We know what the

16   response is going to look like, right, Ms. Ives and

17   Ms. Holyoak?  Provide me with an explanation as to why you need

18   the case names and numbers to be made part of the record or to

19   be referred to when filing Objector Collins' supplemental on

20   December 3rd.

21          Tell me the significance or the importance of that

22   particular information.  Because so far -- you don't have to

23   say anything.

24          MS. HOLYOAK:  Okay.

25          THE COURT:  So far what I can gather from the motions,

1    especially the motion to lift the stay, what we are interested

2    in knowing is the historical raw data on the fees in order to

3    quantify, as Ms. Holyoak has argued, the risk that was, in

4    fact, assumed by class counsel and the level of risk that

5    attorneys assume in these types of TCPA cases, okay?

6          So by the 25th, I'd like to see the significance of

7    the information, why it's important, how it's going to be used.

8    And I'll hear arguments in response from the class counsel on

9    the 26th.  Now, we need to pick a time that's doable for

10   everyone.

11         MR. BURKE:  The 26th might be Thanksgiving, Judge.

12         MR. GREENE:  That's the day before.

13         THE COURT:  No, that's the day before.

14         MR. BURKE:  Could we have a request that class -- that

15   objector file by noon on the 25th because of the holiday?  My

16   kids have the following day off and --

17         THE COURT:  Okay.  Can you do it by noon, Ms. Ives?

18   Ms. Holyoak?

19         MS. HOLYOAK:  Yes.

20         THE COURT:  Great.  Thank you.

21         MS. HOLYOAK:  And if I understand -- can I just

22   clarify, your Honor, what I'm supposed to be filing?  You want

23   me to file a document that indicates why the case names should

24   be included in the information that we submit to the briefing

25   to the Court?  Is that what you would like?

1          THE COURT:  That's right.  What I understand -- what I

2     understand your proposal is, Ms. Holyoak, that because

3     information is provided under the protective order, you prefer

4     to go ahead and file a supplement on December 3rd with any

5     confidential information under seal so that you are able to go

6     ahead and name the names and case numbers and redact that

7     information from the public's view, right?

8          MS. HOLYOAK:  Well, maybe I can just clarify my

9     response.  Our expert is going to file a report.  And in that

10    report, he's going to attach the interrogatories that were

11    provided to him so that he can say this is what information I

12    reviewed.

13         Now, I believe all that will be filed under seal, as

14    we have worked out the confidentiality order.  And we have

15    argued from the beginning that that information should not be

16    treated as attorney's eyes only.  And I believe now that the

17    burden is now shifting to us.

18         That motion to seal has been -- is filed.  They have

19    the protection they need.  But now we need to -- the burden is

20    now shifting to us to again provide why this information should

21    have a second layer of protection for them.  And I don't

22    understand why that's necessary.

23         But from the beginning, any -- the sealing motion or

24    an ability to seal is the burden of the person designating that

25    information attorney's eyes only.  I believe now that --

1    THE COURT:  No one is imposing any burden on you.

2    MS. HOLYOAK:  -- that burden is now being shifted.

3    THE COURT:  No one is imposing any burden on you.

4 There is no burden to be borne by your side.  All I need to

5 know is why you need the case names and case numbers to be

6 cited in your supplement or by your expert.

7    That's why I'm asking the class counsel to provide two

8 sets of interrogatory answers so that we don't have a dispute

9 over what information was, in fact, provided by class counsel.

10 One set with all the case names and case numbers, the other set

11 sanitized.

12    If, in fact, we go forward with the supplemental

13 briefing by attaching the sanitized version and referring to

14 fee data by referring to case A, case B, nothing has to be

15 under seal.  Everyone can take a look at what's being filed and

16 what's being considered.  I think that's the optimal approach

17 to the situation.

18    So again, tell me why you need the case names and case

19 numbers to be part of your supplemental brief, simple as that.

20 Any questions?

21    MS. HOLYOAK:  Okay.  Thank you, your Honor.

22    THE COURT:  Okay.  Anything else?  All right.  Thanks.

23    MR. BURKE:  Thank you.

24    THE CLERK:  All rise.

25    MR. GREENE:  Your Honor, there was one thing.

1          THE COURT:  I'm sorry.  Ms. Holyoak?

2          THE CLERK:  12 CV 10064, Capital One Telephone

3    Consumer Protection Act Litigation.

4          THE COURT:  We forgot to pick a time for us to get

5    together on the 26th.

6          MS. HOLYOAK:  Okay.

7          THE COURT:  My preference is for a.m. time.

8          MR. GREENE:  That sounds good.  Any limitations,

9    restrictions?

10         MS. HOLYOAK:  I have none, your Honor.

11         THE COURT:  How about you all?

12         MR. BURKE:  Early better.

13         THE COURT:  How about 8:00 a.m., is that too early?

14         MR. HUTCHINSON:  Your Honor, I may be participating by

15   phone.  I'm from the West Coast.  That's fine for me as long as

16   I can participate by phone.

17         THE COURT:  Yes.

18         MR. HUTCHINSON:  Thank you.

19         MR. BURKE:  Depending upon my in-laws, I may also

20   participate by telephone.

21         THE COURT:  Okay.

22         MS. IVES:  Or you may want to be here.

23         THE COURT:  Can you please let Michelle know so she

24   knows exactly who is on the line?

25         MR. BURKE:  Yes.

1          THE COURT:  So it will be 8:00 a.m. November 26th, in

2     court in 1019 or by phone.  Please let Michelle know who is

3     going to be participating by phone.

4          And obviously if class counsel has the time and the

5     opportunity to file a written position after Ms. Holyoak files

6     her position by noon, that will be preferred, and then I can

7     take a look at it in advance of the hearing.

8          MR. HUTCHINSON:  We will certainly do our best, your

9     Honor.  And we will attempt to meet and confer also with

10    Ms. Holyoak in the interim so that we can perhaps not have to

11    put our positions formally to the Court and perhaps find some

12    middle ground in between now and that date.

13         THE COURT:  All right.  Thank you.

14         MR. BURKE:  Thank you.

15    (Concluded at 1:16 p.m.)

16                    *  *  *  *  *  *  *  *  *  *

17                    C E R T I F I C A T E

18    I certify that the foregoing is a correct transcript of the

19    record of proceedings in the above-entitled matter.

20

21    /s/ LISA H. BREITER                    November 24, 2014
      LISA H. BREITER, CSR, RMR, CRR
22    Official Court Reporter

23

24

25