**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE<br>CAPITAL ONE TELEPHONE CONSUMER<br>PROTECTION ACT LITIGATION | Master Docket No. 1:12-cv-10064<br>MDL No. 2416 |
| This document relates to: | |
| BRIDGETT AMADECK, et al., | Case No. 1:12-cv-10135 |
| v. | |
| CAPITAL ONE FINANCIAL CORPORATION,<br>and CAPITAL ONE BANK (USA), N.A. | |
| This document relates to: | |
| NICHOLAS MARTIN, et al., | Case No. 1:11-cv-05886 |
| v. | |
| LEADING EDGE RECOVERY SOLUTIONS,<br>LLC, and CAPITAL ONE BANK (USA), N.A. | |
| This document relates to: | |
| CHARLES C. PATTERSON, | Case No. 1:12-cv-01061 |
| v. | |
| CAPITAL MANAGEMENT, L.P., and CAPITAL<br>ONE BANK (USA), N.A. | |
| JEFFREY T. COLLINS,<br><br>    Objector. | |

**EXPERT REPORT OF M. TODD HENDERSON**

M. Todd Henderson declares as follows: I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

I.      SCOPE OF REPORT

1.      Counsel for Jeffrey Collins, an objecting class member in the above-styled litigation, asked me to provide an expert opinion on the appropriate method for estimating the hypothetical ex ante bargain between class counsel and the class in cases arising under the Telephone Consumer Protection Act.

2.      In order to prepare this report, I reviewed class counsels' answers to the first and second sets of interrogatories (true and correct copies of which are attached at Exhibit 5), and the other materials listed in Exhibit 3. In reviewing this material and reaching the opinions outlined herein, I applied my expertise as a professor of law and economics, torts, and corporate and securities law at the University of Chicago Law School. I also relied on my knowledge of the academic literature on class action litigation, to which I am a frequent contributor and peer-reviewer for two of the top journals in law and economics (that is, the *Journal of Legal Studies* and the *Journal of Law and Economics*).

II.     EXECUTIVE SUMMARY

3.      The six firms have provided information about their time investment in dozens of TCPA cases. Including the *Capital One* and *Wilkins v. HSBC* cases, class counsel have invested 20,132 hours in successful TCPA cases, and 11,885 hours in unsuccessful TCPA cases (totaling 32,017 hours), with a lodestar of $9,813,329 in successful TCPA cases and a lodestar of $5,618,837 in unsuccessful cases. In other words, for any given

2

hour devoted to TCPA litigation, class counsel has a better than even chance of collecting contingent fees: 64% chance per dollar invested, to be precise. Under the Seventh Circuit's ex ante market-based methodology, total fees of $15,432,166 (an average multiplier of 1.57 or the reciprocal of 64%) would be sufficient to compensate class counsel in *all* TCPA litigation.

4.       To date, however, class counsel has collected $17.7 million, with fees yet to be awarded in *Wilkins v. HSBC* (1493 of 1845.2 hours devoted by these six class counsel, with a request of $11,992,500 pending) and in this *Capital One* case (4268 hours, with a request of $22,636,529.62). If both those fee requests are granted in full, class counsel will have received $50.0 million[1] for all of their TCPA work, both successful and unsuccessful: an *average* of $1563/hour for all timekeepers (partners, associates, paralegals, and other support staff), with an *average* multiplier of 3.2 for all litigation and an average multiplier of 5.1 in successful litigation. This is far in excess of a market-based rate, and no informed market participant would agree to a percentage of recovery ex ante that systematically overcompensated class counsel like this.

5.       Class counsel is requesting $22.636 million in this case for 4,268 hours of work at a blended rate of $519/hour. This works out to a multiplier of 10.2 and over $5300/hour. Again, this is far in excess of a market-based rate and overcompensates for the relatively low level of risk faced in TCPA litigation. No informed market participant

---

[1] This figure assumes that $2.3 million of the $12 million *Wilkins v. HSBC* award will be paid to attorneys not requesting fees in this case. $17.7 million + $9.7 million +22.6 million = $50.0 million.

would agree to a percentage of recovery ex ante that systematically overcompensated class counsel like this.

6.      Using generous assumptions favoring class counsel below, I calculate that the ex ante market-based percentage of recovery that an informed market participant would agree to in this case is 4.6%. If the generous assumptions favoring class counsel I use are relaxed, the market-based percentage of recovery would be lower than 4.6%. The underlying numbers are calculated in the spreadsheet attached at Exhibit 4.

7.      The agreements between named plaintiffs and class counsel in class actions are not the product of market transactions. This presents a risk the lawyers will be overpaid relative to the value they deliver to the class.[2] To ensure class counsel receive "suitable compensation" for their investments in the case, the Seventh Circuit requires district courts to conduct a market-based analysis in order to estimate "fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys."[3]

8.      There are two different approaches to estimating the hypothetical ex ante bargain – the percentage of recovery method – and the lodestar method (often used as a check by courts). But in this opinion, I show that in an efficient market for legal services, these two approaches are approximately the same. In a competitive market, the class would negotiate a percentage of recovery for class counsel that produces an expected return of

---

[2] On the other hand, if class counsel were only paid an hourly rate equivalent to that earned by defense lawyers, the risk of non-recovery would present a risk the lawyers would be underpaid relative to their value delivered to the class. This is because plaintiffs' lawyers recover only when they win.

[3] *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718-19 (7th Cir. 2001)).

4

slightly above the amount class counsel invested in the case, adjusted for the risk of non-payment. Whether the form of its contract with counsel is a contingency fee or an hourly rate, the bargain struck should reflect the market-based return on an investment of the attorneys' time in the case.

9.      To see this, the sensible place to start is with defense counsel in class actions whose contract provides a ready analog for a hypothetical ex ante bargain for legal services in TCPA cases. Defense lawyers are paid the market price for their services in the form of the lodestar for the case (that is, billable hours times price per hour). But to determine the proper recovery for plaintiffs' lawyers, this amount must be adjusted upward for riskiness. Unlike defense counsel, class counsel only get paid when they win a recovery for the class, so their efficient wage has to be adjusted upward to account for the risk of non-recovery.

10.     Investments by class counsel in TCPA cases are risky, but the risk is relatively small. In the 38 TCPA cases I analyzed for this report, class counsel was paid in 16 (43% of the time), but when adjusted for the amount of effort in each case, about 64 percent of class counsels' total investments were in cases in which they recovered (at least) their investments: $9.813 million of lodestar in cases where class counsel received or will receive payments, and $5.618 million of lodestar in cases where class counsel was not paid. To adjust for the risk of the failure to recover about 36 percent of their lodestar investments, the district courts could have multiplied the lodestar in successful cases by about 1.57 (that is, 1/0.64) to make class counsel receive a lodestar equivalent to what defense counsel was

5

paid.[4] In other TCPA cases, courts have used a multiple of 2.57 on average: they have awarded fees of about $17.7 million in fees in TCPA cases, based on lodestars in winning cases of about $6.89 million.

11.    Instead of receiving their risk-adjusted investments, class counsel have recovered about 140% of their lodestar investment in *all* TCPA cases (including losing cases where they receive no return), compared with defense lawyers who recover just their lodestar investments. If we add in what class counsel have demanded in this case and in *Wilkins v. HSBC*, the recovery would be about $50.0 million on a lodestar investment of $15.4 million, or a recovery of about 324% of their investment in all TCPA cases.

12.    This means district court judges to date have overcompensated class counsel relative to the ex ante analysis that the Seventh Circuit demands. The supracompetitive fees earned by class counsel in TCPA cases explains why there was no shortage of qualified class counsel – six firms! – willing to bring this case. In fact, the fact that the six firms collaborated instead of competing is a typical sign of anti-competitive behavior that reflect an expectation of receiving rates well above market and opportunity costs—in other contexts, it might be called price fixing in violation of the antitrust laws.

13.    Class counsel's demand of 30 percent of the class recovery in this case, or about $22.6 million, on an investment of about $2.213 million in professional time (at $519 per hour) in the case suggests an implied multiplier of 10.2 of the lodestar amount. No paying client would agree in an ex ante bargain to such a windfall for average efficiency

---

[4] As noted below in Section VII, there is an additional amount that must be added to the fees to make class counsel strictly indifferent. In the model below, this is called "e." It represents compensation for investing in a risky enterprise.

and average results for the class. Instead, an ex ante percentage of about 4.6 percent of recovery, working out to about $3.48 million in fees would have been sufficient to induce class counsel to take this case given the expected returns. Interestingly, the six firms here are requesting a total of 30%, meaning that they are averaging 5% each, which is very close to the 4.6% rate that I posit a single firm would have been willing to accept ex ante in a market-based situation. Note further that I reach this conclusion with the generous assumptions that this settlement reflects average recovery litigated with average efficiency. If, in fact, the lodestar is exaggerated or the settlement is a below-average settlement on a per capita basis, then a market-based rate would be below 4.6%.

14.    If, class counsel receive fees in *Capital One* and *Wilkins v. HSBC* as my methodology suggests, then adding $3.48 million of fees in *Capital One* plus $1.11 million of fees to these class counsel in *Wilkins v. HSBC* (out of a total $1.37 million fee award) to the $17.71 million they have already received in successful litigation, then class counsel will in sum collect $22.3 million in fees for their $15.4 million investment in TCPA litigation, both successful and unsuccessful. This will be an average hourly fee of nearly $700/hour for *all* timekeepers. It would also amount to a stunning multiplier of 1.45 of lodestar for *all* hours, successful and unsuccessful, even though a market-based return would be about 1 times lodestar invested in all cases for a firm of average efficiency and success. These results show that TCPA litigation will still be extraordinarily lucrative *ex ante* if the Court adopts Collins's proposed approach, and refutes any concerns of Professors Fitzpatrick that attorneys will not have sufficient incentive to engage in TCPA litigation.

15. Class counsel's expert, Professor Fitzpatrick, looks at historical awards in class actions as the basis for his conclusion that the 30 percent contingency fees in this case are "suitable compensation." But this is based on the flawed assumption that those awards reflect the appropriate analysis required by the Seventh Circuit. Professor Fitzpatrick has no explanation for why these huge fees of over 140% (or even up to 324%) of lodestar on average are needed to *ex ante* induce counsel to bring these cases.

16. Professors Fitzpatrick and Rosenberg correctly identify potential inefficiencies with lodestar-based awards. My model anticipates for these problems. Class counsel will, in an *ex ante* market-based analysis, agree to retainer at the percentage of the fund such that, if counsel litigates with expected efficiency and with expected average results, they will receive a multiple of lodestar that *ex ante* compensates them for the 36% chance that an hour invested in TCPA litigation will go uncompensated. Thus, class counsel will receive above-average fees when class counsel obtains above-average results or litigates with above-average efficiency.

17. But I see no evidence that this case was litigated with above-average results or with above-average efficiency. If anything, the results appear to be below average: the class's individual claims of statutory damages of $500-$1500/phone call is being settled for $75.5 million for 16 million class members (some of whom have multiple statutory claims), or under $5/class member, less than one percent recovery for the class, with claiming class members receiving between $20 to $40, according to the settlement website (since updated to between $35 to $37 (Dkt. 262 at 8)). In *Rose v. Bank of America*, the Northern District of California called a similar recovery as falling in "the lower range of recovery achieved in other TCPA class action settlements." 2014 U.S. Dist. LEXIS

121641, at *30-*31 (N.D. Cal. Aug. 29, 2014). *Cf. also Murray v GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (questioning tenability of settlement of less than 1% of Fair Credit Reporting Act statutory damages).

18.     Similarly, the evidence is against this case having been litigated with above-average efficiency. In general, class counsel has historically recovered these supracompetitive returns despite the fact that TCPA litigation appears to be performed in an inefficient, top-heavy way. The blended lodestar rates in the 38 cases for which class counsel has produced data is $482 per hour for all professionals, including paralegals, associates, and investigators. For a typical 2000-hour-billable year, the average employee at one of these six law firms with the $482 blended rate would bring in nearly $1 million per year based on a lodestar of one. If the 10.2 lodestar argued for in this case were applied to all successful TCPA cases, the average law-firm employee in these cases would bring in about $6.3 million per year in revenue: $482/hour x 2000 hours/year x 10.2 x 64% chance of recovery.  An expected return of slightly higher than lodestar should be more than sufficient to induce class counsel to bring TCPA litigation: after all, an expected return of lodestar is sufficient to induce defense counsel to accept the defense of TCPA litigation. Because Professor Fitzpatrick fails to identify any reason why an average recovery substantially greater than lodestar is necessary before counsel will be willing to bring litigation (and seems not to have even considered what class counsel actually receives on average in TCPA litigation), his deterrence concerns are a conclusory *non sequitur*.

19.     More specifically, in this case, the blended lodestar hourly rate is about $519 per hour for all law firm employees, which is nearly the $538 per hour that the Seventh Circuit recently criticized in *Pearson v. NBTY, Inc.*, as excessive, and above the

(likely excessive) $482/hour blended-rate average in other TCPA litigation. Furthermore, because six law firms were involved, there was almost certainly duplication of effort that would not have occurred if there had been an *ex ante* market-based decision to hire just one or two law firms to handle the litigation.

20.     In my analysis, however, I assumed average results and efficiency to simplify the analysis. This assumption works to the benefit of class counsel given the likely below-average results and efficiency in this case. This simplification returns a multiplier of lodestar, but it is still based on an ex ante percentage of recovery. If we assume that $75.5 million was the expected value of settlement (if the case settled) ex ante and we further assume that $2.213 million of lodestar was the expected value of lodestar to reach settlement, then class counsel in a competitive marketplace would have been willing to bring this case in return for a contingency fee of 4.61% of recovery. This would result in fees of $3.48 million, or a 1.57 multiplier of their lodestar. In fact, a market-based approach would produce an even lower percentage-of-the-fund contingency fee in this case *ex ante*, because a single firm would both (1) expect a larger settlement given the size of the 16-million-member class and the higher range of recovery in other TCPA settlements, and (2) be able to litigate the case more efficiently than six law firms did here.

21.     The idea that a 10.2 multiplier of lodestar (or an ex ante demand of 30% recovery of an expectedly large settlement fund) is necessary to bring these cases, to attract talent to the plaintiffs' side in these cases, or to give the proper incentives to the lawyers in these cases does not make sense as a matter of economics, policy, or logic.

III.     SUMMARY OF QUALIFICATIONS

22.     I, M. Todd Henderson, am Michael J. Marks Professor of Law and Aaron Director Teaching Scholar at the University of Chicago Law School.  I have taught at the Law School since 2004. I served for three years a member of the National Adjudicatory Council of the Financial Industry Regulatory Association ("FINRA"). I have taught law and economics at the University of Genoa (Italy), Goethe University (Germany), the University of California, Berkeley, the University of California, Hastings School of Law, Bergen University (Norway). I also have taught at the University of Chicago Graduate School of Business "Directors' Consortium" executive education program on securities regulation, including securities class actions.

23.     Prior to becoming an academic, I worked for three years at Kirkland & Ellis in complex and appellate litigation, and for approximately four years at McKinsey & Company. I earned a Mini-MBA while at McKinsey.

24.     I have written on a variety of topics related to the issues raised in this litigation. I am currently working on a large-scale empirical and theoretical analysis of attorneys' fees in class action litigation. In addition, I serve as a referee for the two leading peer-review journals in law and economics—the Journal of Law & Economics and the Journal of Legal Studies—on papers involving class action litigation, especially securities fraud litigation and the issues around the economic incentives of attorney fee structures. Furthermore, I am a frequent speaker to the American Bar Association, law schools, and other professional organizations on securities class action litigation and the law and economics of attorneys' fees in these cases. For instance, I recently spoke at the ABA's Business Law section meeting in Washington, D.C. on this subject, will be a speaker at the

New York Bar Association's winter meeting on the subject, and am organizing a panel even on the subject for the Federalist Society's annual meeting for 2015. I have served as an expert on a variety of matters for both plaintiffs and defense counsel. These are listed in Exhibit 2.

25.     I have a J.D. with high honors from the University of Chicago Law School (1998), and a B.S.E. with honors from Princeton University (1993).  I am a member of the Maryland Bar (inactive) and numerous federal district and appellate courts.

26.     Based on my training and experience, I am deeply familiar with the law and economics of attorneys' fees determinations in class action cases, as well as the law and economics of markets and bargaining.  I believe that my practical and academic experience makes me qualified to render an expert opinion on issues raised by this litigation.

27.     I have set forth in this report a summary of the testimony I expect to provide during a deposition and at trial.  This report does not provide a verbatim account of every detail of my expected testimony, and I may address additional topics in response to arguments or assertions offered by the plaintiffs or their experts during the course of the proceedings.

28.     In accordance with the ethics of the legal profession, my fees for preparing this report and testifying in this case are not contingent on the outcome of the proceedings or on the opinion presented herein. My normal billing rate is $500/hour, but because Mr. Collins's attorneys are non-profit public-interest attorneys, I am doing this report for a reduced-rate flat fee of $10,000, with additional compensation of $750 per hour for any deposition or trial time. My curriculum vitae is attached as Exhibit 1; Exhibit 1 and http://papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=401289 include a list of my

publications. My experience as an expert witness is attached as Exhibit 2 and a list of documents I considered in performing my analysis of the issues in this case is attached as Exhibit 3.

IV.    WHY JUDGES MUST DETERMINE SUITABLE FEES FOR CLASS COUNSEL

29.    In a competitive market transaction, the equilibrium price for any service is that which results in the amount of services sought by buyers (the demand) equals the amount produced by sellers (the supply). In a perfectly competitive market, suppliers will produce a given service until the marginal cost of providing that service equals the price in which it is offered to the market. In the market for legal services, many suppliers compete to offer services to many buyers, creating a competitive market in both supply and demand. While supply is artificially restricted by barriers to entry to the legal market, the marketplace is still competitive with fees set at a market-clearing rate where supply meets demand, and the fees for marginal service reflecting the opportunity cost of providing that service.

30.    Accordingly, when we observe the price of legal services offered in competitive markets, we can assume that these prices represent the equilibrium price, that is, intersection of supply and demand. If lawyers for the defendants are charging their clients an average price of $400 per hour for their services, it is at this price that the supply of legal services of this quality equals the demand for legal services of this quality. There is no superior determinant of the worth or value of these services than the price determined by suppliers and buyers of the service. "The Seventh Circuit's decisions in the *Synthroid Marketing* cases suggest that, in making an ex ante assessment of a negotiated attorneys'

13

fee, it is proper to assume that the negotiation occurred between lawyers and a sophisticated legal consumer." *Williams v. Rohm and Haas Pension Plan*, 2010 U.S. Dist. LEXIS 54414, at *3-*4 (N.D. Ill. June 1, 2010).

31.    If lawyers charged prices higher than the market clearing price, this would cause other lawyers to enter the market at lower prices to win this business. Lawyers will enter the market until the price falls to the market clearing price – that is, at the point where the marginal value of a unit of time supplied to the market equals the marginal cost of supplying that unit of time. In this model, no lawyers can earn supracompetitive fees, since these will be competed away by other lawyers offering superior prices for a given quality of work.

32.    Fee agreements between plaintiffs and the lawyers representing them in class-action cases are not the product of market transactions. Therefore the fee agreements they reach do not reflect the intersection of supply and demand. The plaintiffs in these suits do not choose their lawyers or dicker with them. The named plaintiff is the only member of the class who might do so, but in fact the named plaintiff doesn't choose the lawyers in most cases, but rather is chosen by them. In either case, the named plaintiff is not likely an effective agent for the other class members, since the fee agreement is negotiated on behalf of a dispersed and unidentified group of class members who are either incapable of monitoring the bargain or rationally indifferent to it.[5] Accordingly, that the named plaintiff agreed that the class will pay the lawyers a fee of 30 percent of the value recovered tells us

---

[5] Class members are either not involved (perhaps because they don't know of the class yet) or have weak incentives to choose the lawyers well or negotiate a competitive rate given how little is at stake for them. *See generally Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014).

14

absolutely nothing about whether this amount is "suitable compensation" for the work done in a particular case: it is costless in this case for class representatives to be generous with other people's money. The absence of a competitive market for plaintiffs' lawyers in class action cases means judges must be involved scrutinizing and ultimately setting the appropriate level of fees in a particular case.

33. The importance of judicial scrutiny can be seen by comparing compensation of plaintiffs' lawyers in these cases with defense lawyers on the other side. The defense lawyers are chosen by a single client, which has strong incentives to choose the lawyer wisely and negotiate a reasonable fee. Defense lawyers compete in a competitive market for legal services, meaning no law firm will be able to earn supracompetitive fees. Charging above market rates for a certain quality of work will induce lower bidding for the same work. The resulting competition will bid down defense lawyers fees to an amount equal to the value they put into the case. This is the figure known in class action cases as the "lodestar," that is, billable hours times market rate of services per hour. In other words, a competitive market for lawyer's services drives down the defense attorneys' fees to an amount equal to $1 \times L$, where L equals the lodestar amount. The lodestar amount for defense lawyers is the market rate for their services.

34. In the case of defense lawyers, we don't have to guess that being paid their lodestar amount ($1 \times L$) is sufficient to attract talented and hardworking lawyers to represent defendants in these cases. Lawyers are delighted when they can readily sell their labor at market rates. They demand nothing more. The fact that defendants in TCPA cases are represented by high-quality lawyers who work diligently on their behalf is proof that

the lodestar amount is sufficient motivation and reward for diligent counsel. It is, by definition, "suitable compensation."

35.     In the absence of competition, defense lawyers would charge much higher rates or bill many more hours. It is the potential of losing the work to a competitor that drives the price down toward the optimal level. For example, if a law firm offered to defend Capital One in this case at a rate of $5000 per hour with an expected time requirement of 2000 hours, a firm that could do the same quality work for $4000 per hour or in 1500 hours would win the work. The same dynamic would occur if the defense lawyers bid as a percentage of the value they expected to deliver. For example, if the defendant established a maximum they would be willing to settle the case for, the defense lawyers might bid for the work based on a claim on a percentage of the difference between the actual settlement and the maximum.[6] If Capital One did this, a defense firm might bid for 50 percent of this amount. But if another firm could do the same work for 30 or even 10 percent, it would be able to win the work. Through this familiar competitive process, the amount the defense lawyers would earn defending Capital One would be the market value of those services, whether expressed in billable hours or percentage of value added.

36.     If we could resolve the collective action problem on the plaintiffs' side inherent in the class action system, this same competitive dynamic would also drive plaintiffs' lawyers' fees to competitive rates. This would be true regardless of the type of

_____

[6] Although this is not the prevailing practice today, contingency or performance-based fee structures are increasingly common. This suggests the difference between the defense and plaintiffs' lawyer incentives may be narrowing. It also demonstrates there is nothing fundamentally different about the role that market forces can have in influencing the fees lawyers should expect for their work.

fee arrangement. If fees were determined by lodestar amounts (like for defense lawyers), then competition among plaintiffs' lawyers would drive down the product of billable hours and hourly rate to the efficient or suitable level. If, on the other hand, fees were determined by a percentage of recovery, competition would drive down the percentage to the level where the firm representing the plaintiff was not earning supracompetitive fees.

37.     For example, if the Lieff Cabraser firm bid for the work with an offer of a contingency fee of 50 percent of any recovery, undoubtedly another of the equally talented and efficient firms in this litigation (or outside of it) would have countered for a lower fee. Entry would happen, as in all markets, until the agreed to figure provided the lawyers with the risk-adjusted market value of their services. The ultimate fee that was agreed to by the class (again, assuming they could act through a single faithful agent) would represent the competitive rate, and reward the lawyers with the efficient level of profit for the value of their investment. (In neither the defense case nor this one, it is worth noting, would this bidding have to be done in an auction or even transparent way. Markets do much of their important work in the shadows.) The Seventh Circuit recommends that rates be set by the court at an early stage of the case to avoid hindsight problems. *Synthroid*, 264 F.3d at 718-19. Had that happened here, it is likely that the case would have been litigated with more efficiency, with fewer law firms, and at a contingency rate far below 30%. When there is no ex ante resolution of the collective action problem or agency issues in these cases, the judicial role in the Seventh Circuit is to approximate the ex ante bargain so that the lawyers are not overpaid at the expense of the class.

V.      APPROACHES TO DETERMINING A HYPOTHETICAL EX ANTE BARGAIN

38.      In recognition of the absence of an actual market and the concern plaintiffs' lawyers will be overpaid,[7] the Seventh Circuit requires district courts to "assign fees that mimic a hypothetical ex ante bargain between the class and its attorneys."[8] The Seventh Circuit does not trust the bargain the plaintiffs' lawyers present to the court as representing "suitable compensation," and therefore requires courts to estimate what such a bargain would have looked like in the absence of the collective action and collusion problems described above.[9] There are two general approaches that are used – the percentage of recovery approach and the lodestar approach – and they are worth exploring in detail. But, to preview the analysis below, at the end of the day, in an efficient market for legal services, these two approaches should be approximately the same.

---

[7] As discussed below, there is also the possibility that lawyers would be underpaid. Because plaintiffs' lawyers get paid only when they win, if their compensation were based only on the hours they billed and the market rate for those hours (not adjusted for the risk of non-recovery of their fees), they would be systematically undercompensated relative to defense lawyers. Of course, no lawyer would offer their services in such a world, so the problem is purely one of judicial making. When courts are involved, they must insure to risk-adjust lawyers' fees so as to avoid this problem. As it turns out, the concern is largely overblown, since the lawyers in TCPA cases have historically earned far more than the market wage for their services.

[8] *Williams*, 658 F.3d at 635.

[9] District courts are not rigidly constrained in the mechanisms or approaches they use to estimate what the market would have paid the lawyers for the work in question had they dickered over it. There are various approaches used throughout our legal system generally, and the Seventh Circuit specifically, to set lawyers' fees ex post.

**A. Percentage of Recovery**

39.     One approach to determine suitable compensation would be to rely on a pure percentage of recovery as chosen by the named plaintiff and the lawyers.[10] This is the deal presented to the court in this case: a 30 percent recovery for class counsel, equal to about $22.6 million. Class counsels' experts argue that the court should validate this deal as is.

40.     The primary benefit of using a percentage of recovery method is that it seems to align the interests of the class members and the lawyers, since for every dollar the class receives, the lawyer earns an additional portion of a dollar. This encourages the lawyers to maximize the recovery for the class. If the lawyers and the class actually bargained, the percentage of recovery method would be our best estimate of suitable compensation.

41.     But the percentage of recovery approach has significant flaws. The first flaw with the percentage of recovery approach is that in the absence of a competitive bargaining process, the fact that the named plaintiff and class counsel agreed to a 30 percent contingency fee tells us nothing about whether this is the competitive equilibrium price. After all, a 50 or 60 or 90 percent contingency fee provides even stronger incentives for the lawyers to maximize the value of the class, and yet that is not informative about the percentage recovery that would be set by market forces.[11] The only relevant question is what is the percentage that would be agreed upon by the parties in a hypothetical ex ante

---

[10] This is the approach advocated in the declarations of Professors Fitzpatrick and Rosenberg.

[11] After all, the settlement in this case is for less than a penny on the dollar, which hardly suggests the lawyers were doing more than attempting to obtain a nuisance settlement.

bargain. Perhaps they would have agreed to 10 percent or maybe they would have agreed to 40 percent. We can be certain that the agreement reached by the plaintiffs' lawyers and the named plaintiff tells us no relevant information about what that optimal rate is.

42.     The second flaw with the percentage of recovery method is that it can lead to distortions in plaintiffs' lawyer behavior from the optimal. Under a pure percentage of recovery method, if courts do not modify the percentage of recovery based on the difficulty or the size of the case, class counsel will prefer weaker cases against large defendants to stronger cases against small defendants. The intuition is simple. Consider a case with a percentage of recovery of 30 percent, and a 10 percent chance of receiving a $500 million judgment. For the lawyers, in expectation this case is worth $15 million. By contrast, with the same percentage of recovery, a case with a 90 percent chance of receiving a $30 million judgment with the same investment of time is worth only $8.1 million for the lawyers. The lawyers will strictly prefer the lower quality case against the deep-pocketed defendant. This will adversely affect deterrence, because corporations will be sued not based on their culpability, but rather for having large customer bases.[12] So, while it is true that for a given level of wrongdoing, a percentage of recovery fee may align the interests of the class and their lawyers, ex ante, that method may have societally counterproductive effects unless courts modify the percentage of recovery to reflect these considerations.

43.     The third problem with the percentage of recovery method is that the amount of work necessary to achieve a recovery is not proportional to the recovery. It is

---

[12] In fact, there is likely an inverse correlation between wrongdoing and size of the companies involved, since larger companies have bigger reputations at stake, more public scrutiny, and more oversight by accounting firms, lawyers, and government regulators.

not necessarily ten times harder to bring a $500 million case than a $50 million case. But under the percentage of recovery method, that is the difference in the amount of attorneys' fees. This is why a judicial check on the percentage of recovery is absolutely necessary. The Seventh Circuit recognizes this when it holds that a sliding scale is generally appropriate.[13]

44.     The experts for the plaintiffs' lawyers in this case recognize the deals struck between the named plaintiffs and the lawyers for the class are not the product of a negotiation in a competitive market. Nevertheless, Professor Fitzpatrick argues that it just so happens that the agreement in this case – a contingency fee of 30 percent, yielding fees of nearly $22.6 million – represents what an efficient ex ante bargain between the parties would have been.[14] In other words, the experts for the plaintiffs' lawyers argue that the market for setting attorneys' fees is broken, but remarkably produced the right result in this case.

45.     Professor Brian Fitzpatrick, argues that a fee of 30 percent (or higher!) is justified because it is consistent with the average fee award in other district courts in the Seventh Circuit. There are several problems with this argument. Each case is somewhat unique in terms of the complexity and difficulty of the case, and therefore a cross-suit (and cross-claim or cross-statute) comparison is not apples to apples. In addition, if the other courts were not conducting a hypothetical market analysis in the correct manner, then a comparison with them would be meaningless. Once a percentage figure, like 30 percent,

---

[13] *Silverman v. Motorola Solutions, Inc.* 739 F.3d 956, 959 (7th Cir. 2013) ("negotiated fee agreements regularly provide for a recovery that increases at a decreasing rate").

[14] Fitzpatrick declaration at 7.

became established as a precedent, it would self-perpetuate under Professor Fitzpatrick's analysis, even if it weren't justified in particular types of cases or even at all.

46.     This is why a check on the percentage of recovery is essential. The point of the Seventh Circuit's market-based approach is to estimate the appropriate level of compensation, not the form in which it is delivered. It may be that the hypothetical bargain would always choose contingency fees, but that would leave open the question of the market-clearing percentage amount.   The importance of the risk-adjusted lodestar calculation is that it helps us figure out what the appropriate or suitable amount is. This is why, as discussed below, the lodestar calculation is so vital.

## B. The Lodestar Method

47.     Another approach to determine suitable compensation in class cases is the lodestar method. The lodestar method involves determining the number of hours worked by the lawyers (and support staff) on the case, and then multiplying this by the market rate per hour for the professionals to determine the total investment made by the law firm in the case.[15] This calculation is precisely the one done by defense lawyers in the same case – they tabulate billable hours and hourly rates, compute the product of the two, and then send the client a bill for the total. If plaintiffs' lawyers in class action cases were paid regardless of the outcome of the case, as their opposing counsel are, then this would be the end of the matter. We would think that the market rates they charged fairly compensated them for the

_____

[15] *See, e.g., Hensley v. Eckerhart*, 461 US 424 (1983).

risk of the cases they chose, and we could safely conclude that the market for legal talent would efficiently allocate lawyers to both the plaintiff and defense bar.[16]

48.    But the contingent nature of plaintiffs' lawyers' work in class actions means an additional step is necessary. The lodestar amount (hourly rate times hours worked) must be multiplied by a factor to account for the risk of nonpayment. The basis for this "risk multiplier" is that the contingent nature of compensation for plaintiffs' lawyers in class action cases. If a class action plaintiffs' lawyer is paid only 50 percent of the time, they would need to be paid twice that of an identical defense lawyer, since the defense lawyer gets paid in every case. The risk multiplier of two is needed to "simulate market compensation," which is another way of saying that if the court wants to attract equally skilled lawyers to represent class action plaintiffs as it does class action defendants, it must award fees in excess of the rack rate in cases in which the plaintiff class is successful (in settling or otherwise). Judge Easterbrook summarized the approach well in *In the Matter of Synthroid Marketing Litigation*: "We have held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."[17] Judge Posner explains further: "Suppose a lawyer can get all the work he wants at $200 an hour regardless of the outcome of the case, and he is asked to handle on a contingent basis a case that he estimates he has only a 50

---

[16] In a purely competitive market, the risk or uncertainty of bringing a class action would be baked into the market price the lawyers charge for their time. For example, a defense lawyer might charge $500 per hour for their work, while a plaintiffs' lawyers of exactly the same skill would charge $1000 per hour to reflect the fact that she gets paid only in the 50% of cases where she gets relief for the class.

[17] 264 F.3d 712, 718 (2001).

percent chance of winning. Then if (as under the lodestar method) he is still to be paid on an hourly basis, he will charge (if risk neutral) $400 an hour for his work on the case in order that his expected fee will be $200, his normal billing rate. If the fee award is to simulate market compensation, therefore, the lawyer in this example is entitled to a risk multiplier of 2 (2 × $200 = $400)."[18] This is the methodology I use in my report. Because class counsel has a 64% chance of recovering a dollar invested in TCPA litigation *ex ante*, the lawyer is, on average, entitled to a risk multiplier of 1.57 on average, and, as discussed below, a market-based rate of contingent percentage of recovery will reflect that an attorney will receive a fee of 1.57 times his lodestar for average success litigated with average efficiency.

49.     The lodestar method taken alone also may have flaws. The billable hours approach may not capture the risk-adjusted returns appropriately in a given case. As discussed below, a pure lodestar calculation (that is, 1 x L) will result in systematic undercompensation of plaintiffs' lawyers, who, after all, are paid only when they "win" a case. In addition, plaintiffs' lawyers need to be compensated for risk and for ferreting out wrongdoing, which will add an additional element beyond the standard multiplier.

50.     But, cutting the other way is another flaw in the pure lodestar approach. Being paid per hour worked gives lawyers incentives to bill hours for the sake of billing hours, which may not be in the class's interest. This problem is also real for the defense lawyers, but client monitoring and the competitive market for legal services check it. These constraints are not present to the same degree, if at all, for plaintiffs' lawyers. But, it is

---

[18] *Steinlauf v. Continental Illinois Corp.*, 962 F.2d 566, 569 (7th Cir. 1992).

important to note that defense lawyers will be opposing class counsel in every case, and will have strong incentives to constrain the billable hours within reasonable bounds. Perhaps more importantly, however, is the fact that the general concern in class action cases is overpayment, not underpayment. In this case, the lawyers are asking for nearly $22.6 million in fees, compared with a risk-adjusted lodestar value of about $3.48 million based on an ex-ante market-based percentage of recovery of 4.6% as calculated below. The huge difference in this case shows the irony of class counsel arguing that the lodestar method is dangerous because of the overbilling problem when they are asking for over ten times their actual lodestar, and nearly seven times the amount of their risk-adjusted lodestar.

51.     Nevertheless, the potential distortive effects of the percentage of recovery method and of the lodestar method explain why the Seventh Circuit test mandates the estimate of a market-based bargain, instead of choosing one particular method or another in absolute terms.

VI.     Principles for a Judicial Determination of an Efficient Ex Ante Bargain

52.     Although the Seventh Circuit law does not prescribe a particular method for a district court to determine the "suitable compensation" for class counsel in a class action, three important principles are relevant to all such determinations.

### A. Use a Market Analog

53.     The first key principle for estimating a hypothetical ex ante market transaction is to compare the deal with other market-based transactions for legal services. The fees paid to opposing counsel in these cases are the best available analog for starting the analysis of suitable compensation. After all, if the goal of the suitable-compensation

inquiry is to attract talented lawyers to represent plaintiffs in class actions, looking to the fees paid to presumably talented lawyers on the other side doing similar work is the most sensible starting point. The contracts with defense lawyers are undoubtedly market transactions, so it would be logical that the court estimating a hypothetical ex ante bargain in a TCPA case to use a real ex ante bargain in the same case. The sure recovery of the billable hour (that is, 1 x L) is therefore the appropriate baseline in these cases.

54.     Plaintiffs' lawyers differ in several respects from defense lawyers, however, so adjustments must be made. Plaintiffs' lawyers in these cases get paid only when they recover for the class; plaintiffs' lawyers in these cases must engage in search costs inherent in ferreting out wrongdoing; and plaintiffs' lawyers in these cases bear additional risk. This suggests a pure lodestar approach (1 x L) will underestimate suitable compensation. To account for these differences, adjustments can be made from the baseline set by defense lawyers. If plaintiffs' lawyers need to be paid more, it is more relative to the defense bar, and therefore the latter forms the only logical starting point for the analysis.

## B. Use Modern Risk Analysis Techniques

55.     The second key principle for estimating a hypothetical market transaction in these cases is to use modern risk analysis techniques. The first step in this approach is to adjust for the fact that class counsel gets paid only when they recover for the class. The second step in this approach is to use Modern Portfolio Theory to estimate the true ex ante risk the lawyers face when investing their labor in these cases. The third and final step is to consider the fact that class counsel reduces its risk in these cases by staging its investment in the case to take advantage of the option value inherent in class action cases.

### 1. Risk adjustment for non-recovery

56.     The first step in determining the risk multiplier necessary to create the appropriate incentive to bring uncertain class action cases is to determine the ex ante risk of recovering the lawyers' investment (that is, recovering for the class and therefore being paid). "The greater the risk of loss, the greater the incentive compensation required."[19] All else being equal, a plaintiffs' lawyer with an ex ante 50 percent chance of recovery will have to be paid more when they recover than the same lawyer with an ex ante 80 percent chance of recovery. (A 50 percent chance of recovery suggests a multiplier of 2 in successful cases; an 80 percent chance of recovery suggests a multiplier of 1.25 in successful cases. By contrast, the multiplier in this case – about 10.2 implies a success rate in TCPA cases of only 10 percent of cases!) Ideally, this risk would be determined for the particular type of case, such as a TCPA case. For a law, such as TCPA, to be effectively enforced, the incentives for the lawyers must be specific to that statute or legal doctrine.

### 2. Modern Portfolio Theory

57.     The second step in determining the appropriate risk multiplier is to apply the lessons of Modern Portfolio Theory as a means of understanding the true, ex ante risk in these cases. This is not an academic or theoretical exercise, but it in accord with the practice of plaintiffs' firms of investing in a portfolio of several cases to reduce the overall risk of these investments. A reasonable person investing their time or money is better off spreading the risk across many projects or investments instead of concentrating it in a

---

[19] *Synthroid,* 264 F.3d at 719. Or, as Judge Posner wrote in *Steinlauf,* courts need to give "lawyers more than their ordinary billing rates in order to reflect the risky character of their undertaking." *Steinlauf*, 962 F.2d at 569.

single one. This theory, known in finance as "Modern Portfolio Theory," teaches that investors can increase returns while decreasing risk by investing in a basket or portfolio of stocks instead of putting the same investment into a single stock.[20] While the theory involves complex mathematics, the intuition is a simple one we all learned as children: "don't put all your eggs in one basket." The theory drives investment choices in a range of activities: the multi-trillion dollar mutual fund industry, the practice of syndicated lending and underwriting, and law firm investments with partner firms in multiple cases are all examples of diversification of risk in practice.

58. Any calculation therefore should take into consideration portfolio diversification as a means of reducing plaintiffs' firms' risk. Not only is diversification what plaintiffs' firms *should* be doing (it can increase returns while decreasing risk), but it is what they *are* doing. For example, in the various TCPA cases I analyzed to form this opinion, it was notable that the same six plaintiffs' firms collaborated with each other repeatedly across a range of forty or so cases. Working together spreads risk, thereby reducing the downside of not winning a particular case. In practice, this means that the relevant inquiry is the ex ante risk of non-recovery of investments across a portfolio of cases. For simplicity, one can consider the actual portfolio of cases for particular law firms or the portfolio of all TCPA cases for all of the law firms in the sample of these six law firms. After all, the point of diversification is to reduce risk, and when considering the risk for particular cases, firms, or statutory schemes, the optimal diversification is what should be used as the baseline.

---

[20] Markowitz (1952).

59. The court in *Rose v. Bank of America* acknowledged that plaintiffs' firms in TCPA cases minimize their risk with such hedging and diversification: "Class Counsel, for the most part, have a great deal of experience litigating TCPA class actions and presumably would 'know how to pick a winner.' Furthermore, Class Counsel's apparent strategy of filing numerous small, related cases, with a few attorneys working on each, hedges against the risk of recovering nothing for their work. For example, if *Rose* and *Ramirez* had looked unpromising, Class Counsel could simply have chosen not to file *Duke*, *Bradshaw*, *Makin*, and *Johnson*. This strategy also puts heavy pressure on defendants to settle the case early. Finally, because the TCPA has the potential of ruinous financial liability ($500 or $1,500 per violation, and some defendants are accused of millions of violations), defendants will almost always settle if there is any merit at all to the case." 2014 U.S. Dist. LEXIS 121641, *35-*36 (N.D. Cal. Aug. 29, 2014).

### 3. Option Value in Staged Litigation

60. The final step in determining the appropriate risk multiplier is to account for the fact that class counsel can reduce risk by staging their investment in the case depending on the risk of non-recovery over time. As Judge Posner pointed out in *Steinlauf*, just looking at the ex ante risk of non-recovery of investments oversimplifies matters, because "the risk of loss varies over the life of a case," and the investment by plaintiffs' lawyers does as well.[21] These factors typically move in opposite directions – the risk is highest in the early stages of litigation, where the total investment is at its lowest, and then the risk of not recovering falls over time as more attorney investment is made.

---

[21] *Steinlauf* at 569.

61.     This means that a simple case-based assessment of risk will overestimate the risk of non-recovery, since class counsel can increase its investment in the case as the risk of non-recovery falls. Professors Peter Huang and Joesph Grundfest showed how investments by lawyers in class actions can be thought of as having option value – that is, the initial investment has an uncertain value based on whether the case will proceed, and that this allows plaintiffs' lawyers to stage their investments in ways that reduce risk.[22] Under the approach Huang articulated in a 1998 law review article, the appropriate attorneys' fees multiplier in class actions equals:

$$M^{**} = (D + p^*T) / p * (D + T)$$

Where D is the amount spent on discovery to get to trial, p is the probability of winning at trial, and T is the amount spent on winning at trial. Huang's approach was described in a two-stage model in which the choices were pre-trial and trial expenditures, but it can be applied to any two stage litigation situation. In class action cases, as in this case, the two stages are pre-class certification/motion to dismiss/motion to require arbitration and post-class certification/motion to dismiss/motion to require arbitration. This approach is used below as a robustness check on the model developed for this opinion.

62.     Note that the Huang approach makes testable predictions. It predicts that class counsel will invest more lodestar in successful cases than in unsuccessful cases. And, indeed, we see that: as the lists in Exhibit 4 and Exhibit 5 show, class counsel's lodestar in successful cases is systematically several times higher than in unsuccessful cases. The

---

[22] Joseph A. Grundfest and Peter H. Huang, The Unexpected Value of Litigation: A Real Options Perspective, 58 STAN. L. REV. 1267 (2006).

blended rate is several percent higher in successful cases, too, suggesting either that class counsel devotes lower-paid attorneys to cases less likely to be successful, and/or is more likely to devote higher-paid attorneys to cases once they reach the second stage of success.

### C. Use Case Specific Analysis

63.     The third key principle in estimating a market transaction is that the inquiry should be specific to the particular case, the particular statute or right in question, and the particular attorneys in question. The relevant question is what the ex ante bargain would have been *in this case* or in TCPA cases generally, not what parties in other cases would have agreed to or what would have been required to secure adequate representation in other cases. For example, the risks in TCPA cases are likely quite different than in other statutory cases, personal injury cases, or mass torts. The bigger the risk of non-recovery, the more the ex ante bargain will have to compensate lawyers for cases in which they do not recover in order to get them to the work in this particular case.

VII.     A MODEL FOR ATTORNEYS' FEES

64.     In this section, I develop a simple model for estimating attorneys' fees in TCPA cases that follows from these principles. The model starts from the premise that in a hypothetical competitive market for plaintiffs' lawyers' services, the equilibrium price for class counsel will be bid down toward the risk-adjusted value of the labor class counsel invests into the case. If lawyers compete to be class counsel in a particular case, they will bid against each other until the amount they expect to recover equals the certain recovery of their investment. This is precisely the process for defense lawyers, and there is no reason it should differ for plaintiffs' lawyers, except adding in a bit extra to account for the

31

riskiness of plaintiffs' side work. Importantly, this is true regardless of the method of recovery.

65.     Thus, in a competitive market, the percentage of recovery method will result in the same compensation as a risk-adjusted lodestar calculation. Formally,

$$Q * E(R)|S = 1/p * E(L)|S * e$$

where Q is the contingency percentage, E(R)|S reflects the expected recovery if the case settles, p is the weighted probability that lodestar devoted to the case results in recovery, E(L)|S reflects the expected lodestar devoted to the case to generate a settlement, and e > 1 reflects a risk premium to compensate for variance in outcomes and the risk of the winners' curse.

66.     The left side of the equation is the fees in cases in which the deal with plaintiffs' lawyers is based on a percentage of recovery method; the right side is the equation for fees based on a risk-adjusted lodestar calculation. These two methods should result in the same fees in a competitive market for plaintiffs' lawyers' services. Just as defense firms will bid down their ex ante fees to their lodestar investment (1 x L), plaintiffs firms will bid down their percentage of recovery in an individual case to Q, where they will expect to earn their estimated investment in the case – that is, their risk-adjusted, market-based fees. It is important to note that the market-based price in the lodestar calculation already includes a sufficient return on a lawyer's investment if certain to be paid. The lodestar figures is not a lawyer's costs, but rather the market price to earn profit sufficient to attract talented lawyers to the work.

67.     For example, if a plaintiffs' lawyer expected in a given case to bill 1000 hours at $400 per hour (the market rate), they would expect compensation of at least

$400,000 for this work. Any less and the lawyers would not invest their time and effort into the case. If they were 100 percent sure to be paid, they would charge $400,000 (that is, 1 x L). This is the amount lawyers would take to defend the case, and therefore is the starting point for determining the market rate for opposing counsel. If, on the other hand, they were only 90 percent sure to be paid, the minimum the lawyers would accept to take the case would be $444,444 (that is, (1/0.90) * L). This reflects a 90% chance of receiving $444,444 and a 10% chance of receiving nothing—or $400,000 on average. If they were 50 percent sure to be paid, the minimum they would accept to take the case would be $0.8 million. And so on.[23]

68.     In fact, the lawyers would likely demand more than this amount to account for the variance and risky nature of the investment. This is captured by the risk premium term, e, in the above equation.  The importance of this term can be seen by comparing the lawyers' investments of labor in these cases to investors' investments of cash in securities. In the securities context, investors use asset pricing models to determine the necessary return for a given investment. The Capital Asset Pricing Model (CAPM) is an example. CAPM estimates the expected return necessary to attract investment by looking at how a given security's return differs from the return of risk-free assets and the market return.  The greater the risk of a particular investment (that is, the larger the variance from market returns), the greater return investors will demand. Thus an investor who buys a riskier small

---

[23] As noted above, in this case, the implied risk multiplier from the fees demanded is about 10.2. This suggests the parties estimated a 10 percent chance of recovery in this case. As a crude matter, the chance of recovery in a TCPA case is about 50 percent, since of the cases reviewed in this case, half resulted in settlements. But, when taking into consideration the differential expenditures over time – that is, the lodestar in winning case is about three times that in losing cases – the risk multiplier falls from 2 to about 1.57.

cap stock will demand a greater return than an investor who buys a safer Blue Chip stock. The small cap investor will demand a risk premium (akin to e above) for taking the bigger risk; this is why the returns on small cap stocks are historically higher than for Blue Chip stocks.

69.     In class action cases generally and TCPA cases specifically, the risk premium is likely to be relatively small for two reasons. First, the risk premium will reflect the risk tolerance of the individuals making the investments. Risk averse individuals will demand a higher risk premium than risk neutral individuals, who in turn will demand a higher risk premium than risk preferring individuals. There is reason to believe that lawyers sort into plaintiff and defense work based in part on their risk preferences. After all, lawyers on both sides work on the same matters, and the expected variance in outcomes is one of the only differences in the work. If plaintiffs' lawyers are less likely to be risk averse (or more likely to be risk neutral) relative to defense lawyers, then the risk premium that compensates them for the extra risk of being a plaintiffs' lawyer will have to be less than if all lawyers had the same level of risk aversion. Thus, in a standard asset pricing model, all investors are assumed to be risk neutral, and therefore an adjustment is needed to account for the higher variance of risky assets. But, insofar as investors in particular assets (for example, plaintiff's work) are less risk averse, this adjustment need be less.

70.     Second, while as a matter of finance theory investors who buy riskier assets demand a risk premium,[24] there are reasons why plaintiffs' lawyers are inapposite to

---

[24] *See*, for example, Richard A. Brealey & Stewart C. Myers, Principles of Corporate Finance 197 (6th Ed.) ("[T]he risk premium demanded by investors is proportional to beta.").

investors in other assets. To press the analogy, one could argue that plaintiffs' lawyers are investing in small cap stocks, while defense lawyers are investing in Blue Chip stocks. But there is a big difference between investing in stocks and investing in a class action. In the stock case, the investor bets all of the money on a particular stock or portfolio of stocks at the same time, and then waits for a payoff. In the class action case, the lawyers do not commit their entire investment all at the same time, but rather make continuous investments over time in the case, depending on the signals they receive about whether the case is likely to be a good one or a bad one. As shown below, the investment in cases in which the outcome is bad (that is, attorneys don't get their investment back) are about two and a half times lower than case in which the outcome is good. Returning to the stock investment case, it is as if the investor in the small cap stocks invested some money initially, then, over time as it learned inside information from the company and found out the prospects were better than initially thought, and then bought more at a market price that did not reflect the new information. In such a case, the risk of investing in small cap stocks would be significantly less, and therefore less of risk premium would be needed to offset this risk.

71.     Returning to our fees model, we can simplify the analysis by assuming average results and average efficiency of the lawyers, and a risk premium that is approximately one. This results in an equation as follows:

$Q*R = L/p$

If a firm is either especially efficient or especially successful, they will ex post end up with

a higher multiplier than $1/p$.[25] But we can assume away this complication because there is no evidence in this case that the litigation was especially efficiently and the result here is similar to other settlements, and is large because of the large class, but at low end of the range of settlements on a per-class-member basis. As discussed above and below, assuming that class counsel has achieved average results with average efficiency is a generous assumption in this case, and using the simplified $Q*R = L/p$ model will produce a percentage-of-recovery number that is higher than what could be expected *ex ante*—but still substantially below what plaintiffs and their expert claim. In short, a properly risk-adjusted lodestar analysis approximates the percentage of recovery that would be reached in a competitive market for plaintiffs' lawyers' services.

VIII.    A MARKET ANALYSIS IN THIS CASE

72.    In this case, the plaintiffs' lawyers invested a market value of about $2.213 million in their labor on behalf of the class. (I assume that the $2.213 million entirely reflects legitimate lodestar time, and is not inflated by unnecessary duplicative work or by work done challenging Mr. Collins's objection to the fee request. If either of these assumptions is untrue, then my results should be adjusted downward accordingly.) It is worth reiterating that if the chance of recovery of these fees were certain and if the process of choosing lawyers was competitive, this would be the efficient amount of fees. The

---

[25] Note also that the firms with higher quality and efficiency will be able to win any auction ex ante if the court puts the case out for bid at an early stage, as the Seventh Circuit suggests in *Synthroid*.

$2.213 million is the market price of the lawyers' investments, including profit, opportunity cost, and risk, assuming they were certain to recover these in fees.

73.     But, if the probability of recovery were, say, 50 percent, the fees would have to be doubled to suitably compensate the plaintiffs' lawyers. An additional amount might be necessary in particular cases in order to give lawyers incentives to invest in ways that benefit the class. Hence, a stake in the outcome may make more sense for plaintiffs' lawyers than for defense lawyers in the same case.[26] But, a lodestar amount, in this case, $2.213 million is the appropriate place to start. Any extra incentive for recovery in a particular case would be added to this amount as needed.

74.     As described above, the first adjustment is to account for the risk of nonpayment. (This risk would normally be baked into the market prices for each billable hour, but since there is no bargain and courts require "market rates" with a comparison group of all other lawyers of similar skill, the market rate will not account for this risk.) A naive approach to accounting for this risk would be to simply multiply the market-based lodestar by the probability of recovery in the average TCPA case. The six law firms representing the class in this case have brought a total of 38 TCPA cases. Sixteen of these have resulted in recovery for the class. Therefore, from the perspective of the lawyers, they could expect to win about 43 percent of the TCPA cases they bring. Thus, class members could expect to get recovery this often, and therefore if negotiating with lawyers to take a given case, they would hypothetically agree to pay them their market rates times about 2.31

---

[26] It is worth noting that while this has historically been the case – that is, contingent or performance-based fees are primarily seen on the plaintiffs' side – there is increasing use of performance fee structures by defense lawyers.

(1/p = 1/0.43 = 2.31) to induce them to take the case. This suggests an appropriate level of fees of about $5.1 million. At this level, the plaintiffs' lawyers would be indifferent between being a plaintiffs' lawyer and a defense lawyer in these cases.[27] This would thus be sufficient compensation to attract talented lawyers willing to do the work.

75.     But this amount would systematically overcompensate the plaintiffs' lawyers for the actual risks they take in any case. A more sophisticated analysis recognizes the fact that the investment by plaintiffs' lawyers in class actions is not all at once but over time. There are two stages to the typical case. In the first stage, the lawyers spend time ferreting out wrongdoing, doing initial investigations, writing complaints, and doing initial work to bring the case to the class-certification and motion to dismiss (or motion to require non-class arbitration) stages. At this point, the lawyers get a signal about whether the case will result in recovery (that is, settle) or not. Almost all cases that get past these hurdles settle because defendants are unwilling to risk trial given the huge potential TCPA statutory-damages liability, while those that don't result in no recovery for the class or the lawyers. (And sometimes defendants are willing to settle before litigating these dispositive motions.) After these hurdles, in the second stage, the lawyers are substantially more assured of recovery of their investment, but this is where the bulk of their effort happens. Discovery of documents and witness testimony racks up large investments of attorney and other professional time, all in the hopes of increasing the recovery for the class; beyond that, once settlement is assured, class counsel can churn the clock by insisting on additional mediations or overinvesting in time spent on briefing for settlement approval. But every

---

[27] This assumes the risk adjustment from asset pricing analysis is small. There are reasons to think it is in these cases, as discussed herein.

single dollar invested in stage two will be recovered with near-certainty. During the stage two period, plaintiffs' lawyers are almost the economic equivalent of defense lawyers in terms of being paid.

76.     To see the staged nature of these cases, and the distortions risk adjusting for total hours can create, consider the TCPA cases I analyzed for this opinion. The lodestar in successful cases (that is, where fees were recovered) was about $613,000, compared with about $255,000 in unsuccessful cases. In other words, class counsel invested nearly two and a half times more in cases where they were certain to be paid than in cases in which they did not get paid. A proper risk-adjustment must take this into consideration, otherwise the lawyers would be systematically overcompensated – that is, they would get multiples on their $613,000 based on losing cases in which they invested only $255,000.

77.     Although the average case illustrates the problem with not taking into account the actual practice in these cases, a better way to determine the appropriate multiplier is to look at the entire portfolio of TCPA cases. After all, the point of the risk-adjustment is not to determine the riskiness of a particular case or of a particular case for a particular law firm, but rather to ensure that law firms bringing TCPA cases have proper incentives to bring these cases in the abstract. If we based it on a case or on a law firm, the result would be a severe distortion in incentives. For instance, if recovery were based on the risk for particular firms, lower quality firms would get greater compensation than higher quality firms. Therefore, following from Modern Portfolio Theory, the appropriate way to measure the risk for a given TCPA case is to compare the returns for a law firm investing in a portfolio of all TCPA cases. This tells us the risk of a randomly drawn TCPA

case ex ante, which is when the Seventh Circuit instructs the hypothetical bargain is supposed to be estimated.

78.     The total amount invested in all of the TCPA cases in which these six law firms have participated is about $15.4 million. Of this total, about $9.8 million was invested in successful cases, that is, where the lawyers received at least this much (and, in fact, much more) in fees. Accordingly, at the very least, 64 percent of the market-priced labor invested in TCPA cases is returned to plaintiffs' lawyers in these cases. The appropriate multiplier in TCPA cases (1/p) is therefore about 1.57. In other words, if the lawyers in the successful cases earned 1.57 times the $9.8 million lodestar they invested, they would have received fees totaling $15.4 million. This would have thus made their return equivalent to the defense lawyers in these cases.

79.     In fact, however, class counsels have received significantly more than this amount in fees in these cases. Excluding the Capital One case and the HSBC case, the lawyers have recovered nearly $17.7 million in fees, based on a lodestar investment of about $12.5 million in those cases. The overpayment becomes even more extreme when we add in the requested recovery in the Capital One case. In this case alone, the plaintiffs' lawyers and their experts would have the court award 30 percent of the recovery for the class – about $22.6 million in fees[28] – because this is the agreement made between the named plaintiff and the lawyers. On a lodestar investment of about $2.213 million, this implies a risk multiple of about 10.2 times lodestar. There is absolutely no reason to think this is "suitable compensation" in this case.

---

[28] 30% times the settlement amount of $75,455,099

80.     To see this, imagine if the six firms or some subset of them bid against each other in an attempt to win the right to represent the class in this case. One firm might offer to represent the class for 30 percent of recovery or a multiple of 10.2 over lodestar, but certainly another of the firms would counter with a better offer from the perspective of the class. This bidder might believe it could do the work more efficiently, earn a higher recovery for the class, or think the case was less risky. In any event, it might offer to represent the class for 20 percent of recovery or for a multiple of 5 over lodestar. The bidding process would drive the fee agreement toward the risk-adjusted lodestar rate – that is, the point in which the lawyers were investing the market rate of their labor with certainty. If a lawyer can sell his or her labor at market rates, she will do so. Thus, competition here would drive the expected fees in this case down to nearly $3.48 million. The amount might be higher than this depending on the risk preferences of the particular lawyers, the bidding intensity and skill of the participants, and the different estimates about the quality of the case and the likelihood of resolving it successfully for a given amount of work. But in expectation this case was worth $3.48 million plus or minus.[29] No one has provided any evidence that would explain why a competitive market process would yield fees of even $5 million, let alone over $20 million, and I can think of no economic explanation as to why such fees would be necessary to induce counsel to take these cases.

81.     In defending tremendously more generous fees for representing the class in this case, the plaintiffs' lawyers and their experts argue that a multiple of about 10.2 (that is, 10.2 x L) is necessary to give lawyers incentives to bring TCPA cases. Since the optimal

---

[29] 1.57 times $2.213 million.

number of TCPA cases is an unknowable number, the claim must be that if lawyers were paid 1.57 or even 2 times their market-rate billable hours, they would not have incentives to bring these cases. But the fact we routinely see low-merit class actions and small-scale class actions against relatively small defendants suggests there are sufficient incentives to bring class action suits in general. More specifically, there is no evidence in this case or any other in my experience to support the argument that socially valuable class actions will not be brought if plaintiffs' lawyers cannot recover more than twelve times their market-rate billable hours.

82.     In fact, plaintiffs' lawyers with relatively low opportunity costs are capable of earning revenue in excess of one million dollars a year doing this work at a risk-adjusted billable hour rate. For example, in this case, the partners at the various law firms have a rack rate ranging from  $425-760 per hour. If adjusted for risk (that is, so the lawyer recovers this amount in every case), a 2000 hour work year for plaintiffs' counsel in this case yields annual revenue in the range of $850,000 to $1.5 million. By contrast, if plaintiffs' counsel could recover 10.2 times their billable rates in every case, their annual incomes would dwarf those of any defense lawyers. For instance, if the risk-adjusted rate is based on a multiple of 1.57, then a 10.2 multiple would yield income for these partners of about $7.3 million to $13.0 million per year.[30] It is not a credible claim that lawyers in TCPA cases will not bring cases if they will only earn several million dollars a year doing so, instead of more than ten million dollars.

---

[30] If, as we demonstrate below, the risk-adjusted rate to fully compensate plaintiffs' lawyers in TCPA cases their lodestar hours is 1.57, then a multiple of 10.2 would mean a multiple of 8.63 over and above the risk-adjusted lodestar, or 8.63 times $850,000 to $1.5 million.

83.     In fact, as noted above, many professionals are involved in these cases, including "partners," "of counsel," "associates," "paralegals," and "investigators." The blended hourly rate for all of the professionals involved in these cases is $482 per hour. Certain recovery of this amount (which is what a 1.57 risk adjustment in successful cases would mean) would result in annual fees of nearly $1 million for the average employee at the six law firms involved in TCPA cases. As a point of comparison, this is about the same as the average compensation for *partners* at the largest 100 law firms in the United States.[31]

84.     This is the highest lodestar amount in any of the all TCPA cases I reviewed. The high lodestar here likely reflects the duplication of effort that arises when six law firms are involved in the work. It is also a reasonable assumption because of the relatively high billing rates for the partners in this case. In this case, the six law firms devoted a total of 4268 hours and estimated the total lodestar as about $2.213 million. This results in a blended professional rate of about $519 per hour. This is barely below the $538 per hour blended billing rates that the Seventh Circuit recently criticized as excessive.[32]

IX.     A ROBUSTNESS CHECK ON THE APPROPRIATE MULTIPLIER

85.     As shown above, the multiplier derived from a portfolio risk assessment of an investment in an average TCPA case is about 1.57. We can test the robustness of this result by using the alternative approach proposed by professors Grundfest and Huang. They conceive of investments in class litigation as having an option value based on the staging

---

[31] http://www.americanlawyer.com/id=1202652764078
[32] *Pearson v. NBTY, Inc*. No. 14-1389, 2014 WL 6466128 (7th Cir. Nov. 19, 2014).

43

of the litigation and the different investments made by the attorneys at different stages. Their equation for estimating the appropriate risk multiplier to determine the suitable compensation for class counsel is:

$$M^{**} = (D + p{*}T) / p * (D + T)$$

where D is the amount spent on discovery to get to trial, p is the probability of winning at trial, and T is the amount spent on winning at trial. This approach was described in a two-stage model in which the choices were pre-trial and trial expenditures, but it can be applied to any two stage litigation situation. In class action cases, as in this case, the two stages are pre-class certification/motion to dismiss/motion to require arbitration and post-class certification/motion to dismiss/motion to require arbitration. (As *Rose v. Bank of America* notes, defendants will almost invariably settle rather than risk trial. And we often see risk-averse defendants settling before litigating these dispositive motions.)

86.     Applying this model to the TCPA cases, we can think of the lodestar in unsuccessful cases – about $255,000 – as representing the stage 1 costs, that is, the costs of investigating and prosecuting the average TCPA case to the motion to dismiss (or require arbitration) or class certification stage. Since the lodestar in successful cases (that is, cases that get to stage 2, and then settle) is about $613,000, we can estimate the costs of stage 2 as about $358,000 (that is, $613,000 minus $255,000). Since the chance of getting to stage 2 is about 42 percent, p is 0.42. So in Huang's model, D is $255,000, T is $358,000, and p is 0.42. Plugging these numbers in we see an adjusted multiplier of 1.57.

87.     Under the Huang and Grundfest method, the suitable compensation in this case would also be on the order of $3.48 million, which is consistent with the portfolio estimate. Of course, one could adjust this amount upwards to reflect the riskiness of these

cases and the winners' curse costs – that is, by e in the model above. As I argued, there are reasons to believe e is approximately one in these cases, but even if it was above one, there is no reason under these facts to suggest it is as high as would be needed to justify the lawyers' claims for fees in this case.

X.      CONCLUSION

88.      Everyone agrees that the law of the Seventh Circuit requires courts to scrutinize class action attorneys' fees, and to estimate what the class and their lawyers would have agreed to had their been actual bargaining. Class counsel's claim that $22.6 million, or a risk-adjusted multiple of nearly 10.2 over the fair market value of their labor invested in the case was necessary for the class to be adequately represented in the case. No support is offered for this remarkable claim.

89.      In this opinion, I've set forth an alternative for guiding the court's determination of the result of a hypothetical ex ante bargain between the class and its counsel. The best baseline for starting a determination is with the fees the defendants paid their lawyers to do nearly the same work. From that amount, we can adjust upwards to reflect the differences between being a plaintiffs' lawyer and a defense lawyer. Several of these differences cut in favor of higher fees in this case. Plaintiffs' lawyers only get paid when they win; plaintiffs' lawyers bear extra risk; plaintiffs' lawyers have to ferret out wrongdoing; and so on. But, these differences do not justify paying the six law firms in this case $22.6 million for their investment of about $2.213 million in labor.

90.      Adjusting upward from a lodestar of $2.213 million for risk and for these other factors suggests fees on the order of $3.48 million would be appropriate in this case.

This implies a recovery percentage of about 4.6 percent instead of the 30 percent demanded by class counsel. To drive home the point, if class counsel are paid $3.48 million in this case, it will fully compensate them for the ex ante risk of taking this case and the other TCPA cases they've brought but have not been successful for the classes in those cases.

91.     Moreover, the economics of this would be highly advantageous for the professionals at these six law firms. The average employee of these firms able to sell their labor at a risk-adjusted rate of about $500 per hour[33] would mean they would make annual revenue of $1 million. And law-firm partners make leveraged profits off of the hours of associates and paralegals and support staff. Typical defense law-firm profits per partner are $2 million/year, and there is no reason to think plaintiffs' firms are any less leveraged.

92.     This amount would more than compensate the lawyers for the risks of this TCPA case and provide the class and classes like this one with suitable representation.

93.     Having personal knowledge of all the documents, I hereby declare that Exhibits 1-5 (my curriculum vitae, the list of cases in which I served as an expert, the list of documents considered, my spreadsheet summarizing the data, and the interrogatory answers of class counsel) are all what they are claimed to be.

---

[33] This is the blended lodestar rate of $482 times a risk adjustment of 1.57.

I declare under penalty of perjury under the laws of the United States of America that the foregoing expert report is true and correct.

Executed on December 5, 2014, in Chicago, Illinois.

_____
M. Todd Henderson

# EXHIBIT 1

**M. Todd Henderson**
Michael J. Marks Professor of Law & Aaron Director Teaching Scholar
The University of Chicago Law School
773.383.1700
toddh@uchicago.edu

**Academic positions:**

| | |
|---|---|
| 2004-Present | **The University of Chicago Law School**<br>Michael J. Marks Professor of Law and Aaron Director Teaching Scholar<br>Professor of Law (2009-2014)<br>Assistant professor (2004-2009) |
| 2011-2014 | Member, National Adjudicatory Council, Financial Industry Regulatory Association ("FINRA") |
| 2011 | Roger J. Traynor Summer Professor in Corporate Law at the University of California, Hastings School of Law |
| 2011-2014 | Fresco Chair in Corporate Law at the University of Genoa, Italy |
| 2012-2014 | Visiting Professor, University of Bergen, Norway (teaching class in securities regulation) |
| 2014, 2015 | Visiting Professor, University of California, Berkeley (teaching class in securities regulation) |

**University service:**

| | |
|---|---|
| 2014-Present | Member, Employee Benefits Committee, University of Chicago |
| 2013-Present | Member, Individual Conflict of Interest Committee, University of Chicago |
| 2014-Present | Chair of Bigelow research and writing program at University of Chicago Law School |
| 2012-2014 | Member, Council of the University Senate, University of Chicago (elected by university-wide faculty vote) |
| 2013-2014 | Appointments Committee, University of Chicago Law School |

M. Todd Henderson

**University service (cont.):**

| | |
|---|---|
| 2012-2013 | Chair, JSD Committee, University of Chicago Law School |
| 2011-2013 | Clinical Law Program Committee, University of Chicago Law School |
| **Awards:** | Aaron Director Teaching Scholar (2013-2015) |
| | Paul M. Bator Award for Excellence in Teaching, Scholarship and Public Service awarded by the Federalist Society (2009) |
| | Faculty Hooder, as elected by students of the Class of 2007 |

**Prior Experience:**

| | |
|---|---|
| 2001-2004 | **McKinsey & Company**, Washington, D.C., Boston, Mass. Engagement manager (corporate governance, telecommunications, private equity) |
| 1999-2001 | **Kirkland & Ellis**, Washington, D.C. Associate (regulatory & governance, appellate litigation) |
| 1998-1999 | **Judge Dennis Jacobs**, Second Cir. Ct. of Appeals Law clerk |

**Education:**

| | |
|---|---|
| 1995-1998 | **The University of Chicago Law School**, Chicago, Ill. J.D. with high honors Order of the Coif Editor, University of Chicago Law Review |
| 1989-1993 | **Princeton University**, Princeton, N.J. B.S.E. Civil Engineering & Operations Research, cum laude J. Rich Steers Award for Academic Excellence Elected to Sigma Xi honor society |

2

M. Todd Henderson

**Select academic publications:**

"Offensive Disclosure: How Rule 10b5-1 Plans Can *Increase* Insider Trading Returns," *Georgetown Law Journal* (2014)

"Boards-R-Us: Reconceptualizing Corporate Boards," *Stanford Law Review* (2014)

"Becoming the Fifth Branch," *Cornell Law Review* (2013)

"Reverse Regulatory Arbitrage: An Auction Approach to Regulatory Assignments," *Iowa Law Review* (2013)

"Voice and Exit in Health Care Policy," *Pathology Case Reviews*, (2012) reprinted in *Regulation*

"Pay for Regulator Performance," *University of Southern California Law Review* (2012)

"Paying Bank Examiners for Performance," *Regulation*, (2012)

"Insider Trading and CEO Pay," *Vanderbilt Law Review* (2011) (selected as one of the best securities law articles of 2011 and included in the *Securities Law Review 2012*, Donald Langevoort, ed.)

"Hiding in Plain Sight: Can Disclosure Enhance Insiders' Trade Returns?," (with Alan Jagolinzer and Karl Muller)

"Do Accounting Rules Matter: The Dangerous Allure of Mark to Market" *Journal of Corporation Law* (with Richard Epstein) (2011) (selected for inclusion in *Corporate Practice Commentary 2011*)

"Justifying Jones." 77 *University of Chicago Law Review* 1027 (2010)

"Predicting Crime." 52 *Arizona Law Review* 15 (2010)

"Credit Derivatives Are Not 'Insurance'." 16 *Connecticut Insurance Law Journal* 1 (2009)

"The Nanny Corporation." 76 *University of Chicago Law Review* 1517 (2009)

"Introduction to *The Going Private Phenomenon: Causes and Implications.*" 76 *University of Chicago Law Review* 1 (2009) (with Richard Epstein)

3

M. Todd Henderson

"The Impotence of Delaware's Taxes: A Response to Barzuza's Delaware's Compensation." 95 *Virginia Law Review In Brief* 49 (2009)

"Corporate Philanthropy and the Market for Altruism." 109(5) *Columbia Law Review* 571 (2009) (with Anup Malani)

"One Hat Too Many? Investment Desegregation in Private Equity." 76(1) *University of Chicago Law Review* 45 (2009) (with William Birdthistle)

"Two Visions of Corporate Law." 77(3) *George Washington Law Review* 708 (2009)

"Citing Fiction." 11 *Green Bag 2nd* (2008)

"From 'Seriatim' to Consensus and Back Again: A Theory of Dissent." *Supreme Court Review* (2008)

"Other People's Money." 60 *Stanford Law Review* (2008) (with Douglas Baird)

"Deconstructing Duff and Phelps." 74 *University of Chicago Law Review* 1739 (2007) (Special Issue: Commemorating Twenty-Five Years of Judge Richard A. Posner)

"Paying CEOs in Bankruptcy: Executive Compensation When Agency Costs Are Low." 101 *Northwestern University Law Review* 1543 (2007)

"Prediction Markets for Corporate Governance." 82 *University of Notre Dame Law Review* 1343 (2007) (with Michael Abramowicz)

"Corporate Heroin: A Defense of Perks, Executive Loans, and Conspicuous Consumption." 93 *Georgetown Law Journal* 1835 (2005) (with James C. Spindler)

"The Influence of F. A. Hayek on Law: An Empirical Analysis." *NYU Journal of Law and Liberty* (2005)

## Books:

Securities Regulation (13th Edition) (with Jack Coffee & Hillary Sale)

Piercing the Corporate Veil (with Stephen Bainbridge) (in progress)

Frontiers of Corporate Governance (in progress)

The Law & Economics of Wall Street (with Charles Senatore) (in progress)

M. Todd Henderson

## Book Chapters:

"Firms Without Boards: Unleashing the Hayekian Firm," in *Austrian Law and Economics*, forthcoming 2012

"The Changing Demand for Insider Trading Regulation," in *Insider Trading Anthology*, Edgar Elgar, forthcoming 2012

"Second Best Is Good Enough: The Case of Jones v. Harris Associates," in *Business and the Roberts Court*, Jonathan Adler, ed., Oxford University Press, forthcoming 2012

"Insider Trading and Executive Compensation: What We Can Learn from the Experience with Rule 10b5-1." in *Executive Pay Handbook.* Edgar Elgar, forthcoming 2012

"Everything Old Is New Again: Lessons from *Dodge v. Ford Motor Company*," in *Corporate Law Stories*. Foundation (2009)

## Select presentations:

American Law and Economics Association, "Paying Regulators for Performance," Annual Meeting 2012 (accepted paper)

Coase Lecture, University of Chicago Law School, 2012

Stanford Directors' Roundtable, Invited Faculty, 2006-08

Chicago Booth School of Business Directors' Consortium, Faculty, 2005-Present (executive compensation)

Investment Management Consultants Association, Chartered Private Wealth Advisor program, Invited Faculty, 2009 (executive compensation, valuation of closely held businesses)

European Financial Management 2009 Symposium: Corporate Governance and Control, "Scienter Disclosure" (accepted paper)

NBER Summer Workshop, "Scienter Disclosure," 2008 (accepted paper)

Conference on Empirical Legal Studies, "Scienter Disclosure," 2008 (accepted paper)

American Law and Economics Association, "Paying CEOs in Bankruptcy," Annual Meeting 2005 (accepted paper)

M. Todd Henderson

**Professional affiliations:**

American Law and Economics Association
Referee: Journal of Legal Studies; Journal Law & Economics

**Bar admissions:**

Maryland (inactive)

# EXHIBIT 2

**M. Todd Henderson – List of Expert Reports/Testimony**

1. Prepared expert report on corporate governance settlement terms for securities class action in federal district court in New Jersey. (*In re Johnson & Johnson Derivative Litigation*).

2. Testified as plaintiff's expert on corporate governance, corporate structure, and corporate law in piercing the corporate veil case in state law action in Illinois. (*CareerBuilder.com v. Stirling Bridge Corp.*).

3. Prepared expert report, was deposed and testified as plaintiff's expert on corporate governance for bankruptcy trustee in federal court in Chicago in case involving failed venture capital investment. (*See CDX v. Venrock*).

4. Prepared expert report, was deposed and testified as plaintiff's expert on executive compensation, insider trading, and Rule 10b5-1 trading plans in federal securities class action in California. (*Backe v. Novatel Wireless, Inc.*).

5. Prepared valuation of failed start up telecommunications company and testified as plaintiff's expert on valuation in state court in California in suit brought by shareholders against directors who sold the firm's assets. (*Sylla v. KatanaMe*).

6. Prepared expert report on law and economics of litigation for defendants in case involving pay day lenders in state court in Florida. (*Reuter v. Advance America, Cash Advance Centers of Florida, Inc.*).

7. Prepared expert report on corporate governance, mergers and acquistions, and telecommunications industry best practices for defendants in Illinois state court in case involving merger. (*Patterson v. iPCS, Inc.*).

# EXHIBIT 3

## M. Todd Henderson – List of Documents

1. Settlement Website, https://capitalonetcpaclasssettlement.com.

2. Amended Settlement Agreement and Release (Exhibit 1 to Amended Declaration of Jonathan D. Selbin), Dkt. 131-1.

3. Class Counsel's Brief in Support of Motion for Attorneys' Fees and for Service Awards to the Class Representatives, Dkt. 176 and accompanying exhibit, Dkt. 176-1.

4. Declaration of Jonathan D. Selbin in Support of Class Counsel's Motion for Attorneys' Fees, Dkt. 177 and accompanying exhibit, Dkts. 177-1, 177-2.

5. Objector Jeffrey T. Collins' Motion to Lift Stay for Limited Discovery and Memorandum of Law in Support ("Collins Motion"), Dkt. 191.

6. Objection by Jeffrey T. Collins to Proposed Settlement, Dkt. 197.

7. Plaintiffs' Opposition to Objector Collins' Motion to Lift Stay, Dkt. 205.

8. Objector Jeffrey T. Collins' Reply in Support of Motion to Lift Stay for Limited Discovery, Dkt. 208.

9. Declaration of Daniel Hutchinson Regarding Class Counsel's Attorneys' Fees and Costs, Dkt. 252.

10. Plaintiffs' Memorandum in Support of Final Approval, Dkt. 262.

11. Declaration of Jonathan Selbin in Support of Final Approval, Dkt. 263.

12. Plaintiffs' Memorandum in Response to Objections, Dkt. 269.

13. Declaration of Brian T. Fitzpatrick, Dkt. 270.

14. Declaration of David Rosenberg, Dkt. 271.

15. Notice of Supplemental Authority, Dkt. 278.

16. Class Counsel's Second Supplemental Memorandum in Support of Motion for Attorneys' Fees and For Service Awards to the Class Representatives, *Wilkins v. HSBC Bank Nevada,* No. 1:14-cv-190 (N.D. Ill.), Dkt. 90.

17. *Rose v. Bank of America*, 2014 U.S. Dist. LEXIS 121641 (N.D. Cal. Aug. 29, 2014).

18. *Rose v. Bank of America*, No. 5:11-cv-02390 (N.D. Cal.), Memo in Support of Motion for Attorneys' Fees, Dkt. 73.

19. *Rose v. Bank of America*, No. 5:11-cv-02390 (N.D. Cal.), Declaration of Abbas Kazerounian, Dkt. 74-3.

20. *Rose v. Bank of America*, No. 5:11-cv-02390 (N.D. Cal.), Declaration of Mark Ankcorn, Dkt. 74-4.

21. *Rose v. Bank of America*, No. 5:11-cv-02390 (N.D. Cal.), Declaration of Douglas J. Campion, Dkt. 74-5.

22. *Rose v. Bank of America*, No. 5:11-cv-02390 (N.D. Cal.), Declaration of Syed Ali Saeed, Dkt. 74-6.

23. *Rose v. Bank of America*, No. 5:11-cv-02390 (N.D. Cal.), Declaration of Daniel G Shay, Dkt. 74-7.

24. *Rose v. Bank of America*, No. 5:11-cv-02390 (N.D. Cal.), Declaration of Joshua B. Swigart, Dkt. 74-8.

25. Responses by Class Counsel to Objector Collins' First and Second Set of Interrogatories (attached hereto at Exhibit 5).

# EXHIBIT 4

Multiplier on total lodestar

|  |  | Excluding Capital One and Wilkins v. HSBC |
|---|---|---|
| **Total lodestar in successful cases** | 9,813,329 | 6,889,058 |
| **Total lodestar in unsuccessful cases** | 5,618,837 | 5,618,837 |
| **Total lodestar** | 15,432,166 | 12,507,894 |
| **Percent recovered** | 0.64 | |
| **Ratio for full recovery** | 1.57 | |

Huang method

|  | Average case costs | Win-rate | Multiplier (raw) |
|---|---|---|---|
| **Costs to get past MTD** | 255,402 | 42% | 2.38 |
| **Costs to get successful result** | 357,931 | | |
| | | | |
| **M\*** | 1.57 | | |

Average case

| | |
|---|---|
| **Average lodestar in successful cases** | 613,333 |
| **Average lodestar in unsuccessful cases** | 255,402 |
| | |
| **Total lodestar** | 868,735 |
| | |
| **Ratio** | 2.4 |

Hourly rates

**Successful Cases**

| Firm | Case | Lodestar | Hours | Average Rate (Lodestar/Hours) |
|------|------|----------|-------|-------------------------------|
| Terrell Marshall | Case B | 234,748 | 581 | 404 |
| Lieff Cabraser | Case B | 1,543,761 | 3233 | 477 |
| Meyer Wilson | Case B | 307,298 | 752 | 408 |
| Keogh | Case EE(1) | 260,735 | 887 | 294 |
| Williamson & Williams | Capital One | 337,226 | 479 | 705 |
| Burke | Capital One | 221,088 | 385 | 575 |
| Lieff Cabraser | Capital One | 605,079 | 1171 | 517 |
| Terrell Marshall | Capital One | 379,590 | 740 | 513 |
| Keogh | Capital One | 416,728 | 879 | 474 |
| Meyer Wilson | Capital One | 254,060 | 615 | 413 |
| Terrell Marshall | Case T | 400,930 | 962 | 417 |
| Williamson & Williams | Case T | 449,238 | 675 | 665 |
| Burke | Case Q | 194,500 | 338 | 575 |
| Keogh | Case Q | 258,103 | 539 | 479 |
| Burke | Case O | 194,500 | 338 | 575 |
| Burke | Case N | 157,150 | 273 | 575 |
| Terrell Marshall | Case N | 118,455 | 235 | 503 |
| Terrell Marshall | Wilkins v. HSBC | 40,210 | 77 | 524 |
| Burke | Wilkins v. HSBC | 23,900 | 48 | 500 |
| Lieff Cabraser | Wilkins v. HSBC | 466,134 | 946 | 493 |
| Meyer Wilson | Wilkins v. HSBC | 180,258 | 422 | 428 |
| Keogh | Case M | 42,960 | 93 | 460 |
| Burke | Case M | 36,360 | 81 | 450 |
| Burke | Case P | 125,050 | 217 | 575 |
| Williamson & Williams | Case Z | 192,041 | 295 | 651 |
| Terrell Marshall | Case U | 173,043 | 394 | 439 |
| Williamson & Williams | Case U | 170,738 | 306 | 558 |
| Burke | Case D | 90,218 | 157 | 575 |
| Lieff Cabraser | Case D | 417,397 | 766 | 545 |
| Terrell Marshall | Case D | 224,947 | 421 | 535 |
| Meyer Wilson | Case D | 150,932 | 341 | 443 |
| Keogh | Case DD | 58,900 | 155 | 381 |
| Keogh | Case EE(2) | 222,389 | 666 | 334 |
| Lieff Cabraser | Case C | 467,997 | 824 | 568 |
| Meyer Wilson | Case C | 108,071 | 262 | 413 |
| Terrell Marshall | Case C | 113,503 | 210 | 542 |
| Keogh | Case CC | 175,098 | 370 | 473 |
| | TOTAL | 9,813,329 | 20132 | 18455 |

| | | | |
|---|---|---|---|
| Total hours for successful cases | | 20,132 | |
| Blended for successful cases (total lodestar/total hours) | | 487 | |

| | | |
|---|---|---|
| Capital One lodestar | 2,213,770 | |
| Capital One hours | 4268 | |
| Capital One blended | 519 | |

**Unsuccessful Cases**

| Firm | Case | Lodestar | Hours | Rate |
|------|------|----------|-------|------|
| Burke | Case R | 166,100 | 457 | 364 |
| Burke | Case S | 105,000 | 210 | 500 |
| Keogh | Case FF | 546,510 | 1284 | 426 |
| Keogh | Case HH | 252,735 | 554 | 456 |
| Keogh | Case II | 216,530 | 468 | 463 |
| Keogh | Case GG | 149,908 | 329 | 456 |
| Keogh | Case JJ | 30,255 | 76 | 396 |
| Lieff Cabraser | Case H | 320,772 | 643 | 499 |
| Lieff Cabraser | Case J | 269,989 | 572 | 472 |
| Lieff Cabraser | Case E | 127,577 | 268 | 477 |
| Lieff Cabraser | Case K | 67,088 | 151 | 445 |
| Lieff Cabraser | Case I | 23,703 | 52 | 460 |
| Lieff Cabraser | Case G | 17,836 | 40 | 444 |
| Lieff Cabraser | Case F | 13,052 | 32 | 405 |
| Lieff Cabraser | Case L | 624,715 | 1668 | 375 |
| Meyer Wilson | Case H | 160,183 | 375 | 427 |
| Meyer Wilson | Case J | 66,325 | 176 | 378 |
| Meyer Wilson | Case E | 49,275 | 115 | 428 |
| Meyer Wilson | Case G | 21,765 | 51 | 429 |
| Meyer Wilson | Case I | 21,500 | 47 | 457 |

Hourly rates

| | | | | |
|---|---|---|---|---|
| Meyer Wilson | Case K | 14,833 | 34 | 435 |
| Meyer Wilson | Case F | 2,878 | 7 | 417 |
| Terrell Marshall | Case V | 764,671 | 1604 | 477 |
| Terrell Marshall | Case X | 362,847 | 664 | 547 |
| Terrell Marshall | Case W | 198,740 | 440 | 451 |
| Terrell Marshall | Case Y | 117,846 | 265 | 445 |
| Terrell Marshall | Case E | 44,320 | 105 | 423 |
| Williamson & William | Case V | 259,191 | 384 | 674 |
| Williamson & William | Case AA | 205,668 | 274 | 751 |
| Williamson & William | Case BB | 201,512 | 276 | 731 |
| Williamson & William | Case W | 141,591 | 190 | 746 |
| Williamson & William | Case Y | 53,926 | 76 | 714 |
| | TOTAL | 5,618,837 | 11885 | 15567 |

| | |
|---|---|
| Total Hours for unsuccessful cases | 11,885 |
| Blended for unsuccessful cases (total lodestar/total hours) | 473 |

| | |
|---|---|
| Total lodestar in all cases | 15,432,166 |
| Total hours in all cases | 32,018 |
| Blended for all cases | 482 |
| Blended rate * 1.57 multiplier | 757 |
| Blended rate * 2000-hour billable year | 963,981 |

Lodestar and Fees

**Successful cases**

| Law firm | Case | Lodestar | Fees |
|---|---|---|---|
| Terrell Marshall | Case B | 234,748 | 518,350 |
| Lieff Cabraser | Case B | 1,543,761 | 1,970,751 |
| Meyer Wilson | Case B | 307,298 | 1,970,751 |
| Keogh | Case EE(1) | 260,735 | 1,089,000 |
| Lieff Cabraser | Capital One | 605,079 | |
| Keogh | Capital One | 416,728 | |
| Terrell Marshall | Capital One | 379,590 | |
| Williamson & Williams | Capital One | 337,226 | |
| Meyer Wilson | Capital One | 254,060 | |
| Burke | Capital One | 221,088 | |
| Terrell Marshall | Case T | 400,930 | 548,200 |
| Williamson & Williams | Case T | 449,238 | 548,788 |
| Keogh | Case Q | 258,103 | 1,220,078 |
| Burke | Case Q | 194,500 | 610,039 |
| Burke | Case O | 194,500 | 1,000,000 |
| Burke | Case N | 157,150 | 746,341 |
| Terrell Marshall | Case N | 118,455 | 745,991 |
| Lieff Cabraser | Wilkins v. HSBC | 466,134 | |
| Meyer Wilson | Wilkins v. HSBC | 180,258 | |
| Terrell Marshall | Wilkins v. HSBC | 40,210 | |
| Burke | Wilkins v. HSBC | 23,900 | |
| Keogh | Case M | 42,960 | 60,903 |
| Burke | Case M | 36,360 | 36,360 |
| Burke | Case P | 125,050 | 1,633,333 |
| Williamson & Williams | Case Z | 192,041 | 595,137 |
| Terrell Marshall | Case U | 173,043 | 368,521 |
| Williamson & Williams | Case U | 170,738 | 368,631 |
| Lieff Cabraser | Case D | 417,397 | 672,628 |
| Terrell Marshall | Case D | 224,947 | 360,337 |
| Burke | Case D | 90,218 | 144,135 |
| Meyer Wilson | Case D | 150,932 | 264,247 |
| Keogh | Case DD | 58,900 | 19,635 |
| Keogh | Case EE(2) | 222,389 | 240,000 |
| Lieff Cabraser | Case C | 467,997 | 738,381 |
| Meyer Wilson | Case C | 108,071 | 738,381 |
| Terrell Marshall | Case C | 113,503 | 315,959 |
| Keogh | Case CC | 175,098 | 184,417 |

| | | | |
|---|---|---|---|
| | Total (with Capital One and HSBC lodestar, and assuming $22.6 million and $9.7 million fees respectively) | 9,813,329 | 50,045,823 |
| | Average | 613,333 | |
| | Total (less Capital One and HSBC) | 6,889,058 | 17,709,294 |
| | Implied multiplier for successful cases (without Capital One and HSBC) | 2.57 | |

Lodestar and Fees

| | | |
|---|---|---:|
| Implied multiplier for successful cases (with Capital One and HSBC assumed recovery) | | 5.10 |
| | | |
| Lodestar (successful and unsuccessful) | | 15,432,166 |
| Implied multiplier for all cases | | 3.24 |

**Unsuccessful cases**

| Law firm | Case | Lodestar |
|---|---|---:|
| Williamson & Williams | Case BB | 201,512 |
| Meyer Wilson | Case H | 160,183 |
| Lieff Cabraser | Case H | 320,772 |
| Lieff Cabraser | Case E | 127,577 |
| Meyer Wilson | Case E | 49,275 |
| Terrell Marshall | Case E | 44,320 |
| Lieff Cabraser | Case G | 17,836 |
| Meyer Wilson | Case G | 21,765 |
| Lieff Cabraser | Case K | 67,088 |
| Burke | Case S | 105,000 |
| Lieff Cabraser | Case I | 23,703 |
| Meyer Wilson | Case I | 21,500 |
| Burke | Case R | 166,100 |
| Terrell Marshall | Case X | 362,847 |
| Meyer Wilson | Case K | 14,833 |
| Terrell Marshall | Case W | 198,740 |
| Williamson & Williams | Case W | 141,591 |
| Keogh | Case HH | 252,735 |
| Lieff Cabraser | Case J | 269,989 |
| Meyer Wilson | Case J | 66,325 |
| Lieff Cabraser | Case F | 13,052 |
| Meyer Wilson | Case F | 2,878 |
| Williamson & Williams | Case AA | 205,668 |
| Terrell Marshall | Case Y | 117,846 |
| Williamson & Williams | Case Y | 53,926 |
| Keogh | Case II | 216,530 |
| Keogh | Case GG | 149,908 |
| Keogh | Case JJ | 30,255 |
| Terrell Marshall | Case V | 764,671 |
| Williamson & Williams | Case V | 259,191 |
| Lieff Cabraser | Case L | 624,715 |
| Keogh | Case FF | 546,510 |
| | | |
| | Total | 5,618,837 |
| | Average | 255,402 |

Assumptions

Data from law firms
Interrogatories 1 & 2 are "Successful" cases
Interrogatory 3 are "Unsuccessful" cases
Ignore expenses
Include unsuccessful Case L even though outside of time period
Includes successful HSBC and Capital One even though not concluded
Billing rate for Burke of $575 for Cases N, O, P, Q
Case D fee awards allocated pro rata based on firm's percentage of lodestar total
Capital One was litigated with average success and average efficiency relative to ex ante expectations

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE | ) | |
| CAPITAL ONE TELEPHONE CONSUMER | ) | Master Docket No. 1:12-cv-10064 |
| PROTECTION ACT LITIGATION | ) | MDL No. 2416 |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| This document relates to: | ) | |
| | ) | |
| BRIDGETT AMADECK, et al., | ) | Case No: 1:12-cv-10135 |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL ONE FINANCIAL CORPORATION, | ) | |
| and CAPITAL ONE BANK (USA), N.A. | ) | |
| | ) | |

| | | |
|---|---|---|
| This document relates to: | ) | |
| | ) | |
| NICHOLAS MARTIN, et al., | ) | Case No: 1:11-cv-05886 |
| | ) | |
| v. | ) | |
| | ) | |
| LEADING EDGE RECOVERY SOLUTIONS, | ) | |
| LLC, and CAPITAL ONE BANK (USA), N.A. | ) | |
| | ) | |

| | | |
|---|---|---|
| This document relates to: | ) | |
| | ) | |
| CHARLES C. PATTERSON, | ) | Case No: 1:12-cv-01061 |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL MANAGEMENT SERVICES, L.P. | ) | |
| and CAPITAL ONE BANK (USA), N.A. | ) | |
| | ) | |

**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP'S *AMENDED* RESPONSES TO**
**OBJECTOR COLLINS' PROPOSED FIRST SET OF INTERROGATORIES TO**
**PLAINTIFFS**

PROPOUNDING PARTY:     Objector Jeffrey T. Collins

RESPONDING PARTY:      Plaintiffs Charles C. Patterson, David Mack, Tiffany Alarcon,
                       Bridgett Amadeck, and Andrew Kalik

SET NUMBER:            One

## LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP'S *AMENDED* RESPONSES TO OBJECTOR COLLINS' FIRST SET OF INTERROGATORIES TO PLAINTIFFS

**INTERROGATORY NO. 1:**

Please IDENTIFY the LODESTAR AMOUNT that YOUR COUNSEL has incurred in these proceedings.

**RESPONSE TO INTERROGATORY NO. 1:**

As further set forth in the attached spreadsheet, LCHB incurred the following lodestar and costs in Case A through November 11, 2014:

- Lodestar incurred:  $605,078.50

- Costs incurred:  $36,767.04

**INTERROGATORY NO. 2:**

Please IDENTIFY all TCPA ACTIONS for which YOUR COUNSEL of record in these proceedings has been awarded attorneys' fees and/or litigation expenses, and for each such action, IDENTIFY:

a.     The LODESTAR AMOUNT and the LODESTAR MULTIPLIER requested to the court;

b.     The total amount of attorneys' fees awarded to YOUR COUNSEL and the LODESTAR MULTIPLIER, if any, used by the court;

c.     The total amount of litigation expenses requested by YOUR COUNSEL and the total amount of litigation expenses awarded to YOUR COUNSEL.

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER
1207346.1

## RESPONSE TO INTERROGATORY NO. 2:

Plaintiffs object to this interrogatory because it is overly broad and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not reasonably calculated to lead to the discovery of admissible evidence in this litigation. Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34. Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER. Plaintiffs further object to the extent this request seeks attorney-client privileged material and/or work product. Plaintiffs further object that the terms "lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further object that the term "legal professional" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), and Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241).

In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements. Without waiving these objections, Plaintiffs answer as follows:

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

LCHB has not requested a lodestar amount, a lodestar multiplier, or litigation costs for any TCPA class action settlement. Rather, class counsel have sought fees under the percentage-of-the-fund method. LCHB has not separately sought or been awarded litigation expenses in any TCPA class action settlement. Rather, class counsel has only sought litigation expenses within the requested percentage, thereby reducing that percentage.

Subject to the foregoing, LCHB further responds as follows for the TCPA class action settlements where LCHB has been awarded attorneys' fees:

Case B

In Case B, the court ordered an award of fees to *all* plaintiffs' counsel of $4,837,500.00 and "authorize[d] the Class Counsel firm of Lieff Cabraser Heimann & Bernstein, LLP to allocate the fee award among the Plaintiffs' firms."[1] The Court used the percentage-of-the-fund method and therefore did not consider counsel's lodestar or use a multiplier.

As set forth in the attached exhibit, LCHB incurred the following lodestar and costs in Case B through November 11, 2014:

- Lodestar incurred: $ 1,543,760.50
- Costs incurred: $88,720.21

Case C

In Case C, the court ordered an award of fees to all counsel of $2,175,000.00.[2] The Court used the percentage-of-the-fund method, but cross-checked the percentage of recovery against the lodestar as of the date of the fee motion to determine a multiplier of "approximately 3.5."

---

[1] As a result, the final fee allocated to LCHB (and co-counsel) does not necessarily track to the firm's lodestar on a one-to-one basis.

[2] *See* footnote 1.

As set forth in the attached exhibit, LCHB incurred the following lodestar and costs in Case C through November 11, 2014:

- Lodestar incurred:  $467,996.50
- Costs incurred:  $45,822.25

Case D

In Case D, no attorneys' fees have been paid to counsel pending a ruling on Plaintiffs' motion for reconsideration in that matter.

As set forth in the attached exhibit, LCHB incurred the following lodestar and costs in Case D through November 11, 2014:

- Lodestar incurred:  $417,397.00
- Costs incurred:  $33,019.16

**INTERROGATORY NO. 3:**

Please IDENTIFY all TCPA ACTIONS in which YOUR COUNSEL of record in these proceedings was unable to recover attorneys' fees due to an adverse ruling by the court in which such action was pending, and for each such action, IDENTIFY:

    a.    The LODESTAR AMOUNT incurred by YOUR COUNSEL; and

    b.    The total amount of litigation expenses incurred by YOUR COUNSEL.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiffs object to this interrogatory because it is overly broad, and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not reasonably calculated to lead to the discovery of admissible evidence in this litigation.  Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34.  Plaintiffs further object to this interrogatory to the extent it seeks information

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER. Plaintiffs further object to this interrogatory as it explicitly seeks confidential and commercially sensitive financial information, trade secrets, attorney-client privileged material, and/or work product. Plaintiffs further object that the terms "lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further object that the term "legal professional" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), and Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241).

In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements.

All information produced in response to this interrogatory is subject to the Confidentiality Order entered by this Court on November 12, 2014 (hereinafter "Confidentiality Order"). (Dkt. No. 247.) Plaintiffs expressly reserve all rights, including the right to request appropriate sanctions if the information produced in response to this interrogatory is disclosed to anyone other than the persons expressly permitted pursuant to the Confidentiality Order. Without waiving these objections, Plaintiffs answer as follows:

Subject to the foregoing, LCHB reports the following TCPA actions in which LCHB was unable to recover attorneys' fees because an adverse ruling was received or imminent:

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

1207346.1

- Case E

    - Lodestar incurred:  $127,576.50

    - Costs incurred:  $7,938.86

- Case F

    - Lodestar incurred:  $13,052.00

    - Costs incurred:  $0

- Case G

    - Lodestar incurred:  $17,835.50

    - Costs incurred:  $1,069.63

- Case H

    - Lodestar incurred:  $320,772.00

    - Costs incurred:  $33,503.34

- Case I

    - Lodestar incurred:  $23,703.00

    - Costs incurred:  $3,115.99

- Case J

    - Lodestar incurred:  $269,988.50

    - Costs incurred:  $19,654.39

- Case K

    - Lodestar incurred:  $67,088.00

    - Costs incurred:  $452.13

- Case L

    - Lodestar incurred:  $624,715.00

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

- Costs incurred:  $56,253.64

Dated:  November 25, 2014      LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:    /s/  *Daniel M. Hutchinson*       
        Daniel M. Hutchinson

Jonathan D. Selbin
Email:  jselbin@lchb.com
Douglas I. Cuthbertson
Email:  dcuthbertson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

Daniel M. Hutchinson
Email:  dhutchinson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Co-Lead Counsel*

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER
1207346.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2014, service of this document was accomplished via email to the following:

Melissa A. Holyoak
melissaholyoak@gmail.com
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (573) 823-5377

*Attorneys for Objector Jeffrey T. Collins*

Dated this 25th day of November, 2014.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:  /s/ *Daniel M. Hutchinson*
        Daniel M. Hutchinson

Daniel M. Hutchinson
Email:  dhutchinson@lchb.com
LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

*Attorneys for Plaintiffs*

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER
1207346.1

|  |  | From | Inception |
|---|---|---|---|
|  |  | To | Present |

**PARTNER**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| JONATHAN SELBIN | 191.20 | 775.00 | 148,180.00 |
| DANIEL HUTCHINSON | 356.30 | 550.00 | 195,965.00 |
|  | **547.50** |  | **344,145.00** |

**ASSOCIATE**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| DOUGLAS CUTHBERTSON | 442.70 | 465.00 | 205,855.50 |
| NICOLE DIANE SUGNET | 2.70 | 435.00 | 1,174.50 |
|  | **445.40** |  | **207,030.00** |

**PARALEGAL/CLERK**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| RICHARD ANTHONY | 2.40 | 305.00 | 732.00 |
| TODD CARNAM | 10.00 | 305.00 | 3,050.00 |
| CONNER GRIFFITH | 0.50 | 285.00 | 142.50 |
| MARIANA JONES | 7.10 | 285.00 | 2,023.50 |
| ARIEL LEITNER-ZIEFF | 3.70 | 260.00 | 962.00 |
| DIAMOND LEWIS | 3.50 | 260.00 | 910.00 |
| LIONEL LINTS | 3.80 | 275.00 | 1,045.00 |
| JENNIFER RUDNICK | 103.20 | 305.00 | 31,476.00 |
| YUN SWENSON | 23.50 | 305.00 | 7,167.50 |
| ALEXANDER ZANE | 0.40 | 305.00 | 122.00 |
|  | **158.10** |  | **47,630.50** |

**LITIGATION SUPPORT / RESEARCH**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| MAJOR MUGRAGE | 2.00 | 320.00 | 640.00 |
| RENEE MUKHERJI | 1.90 | 270.00 | 513.00 |
| CYRUS YAMAT | 10.00 | 320.00 | 3,200.00 |
| ANTHONY GRANT | 6.00 | 320.00 | 1,920.00 |
|  | **19.90** |  | **6,273.00** |
| **MATTER TOTALS** | **1,170.90** |  | **605,078.50** |

Case B

|  | From |
|--|------|
|  | To |

## PARTNER

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| ELIZABETH CABRASER | 5.40 | 950.00 | 5,130.00 |
| KELLY DERMODY | 4.10 | 775.00 | 3,177.50 |
| JONATHAN SELBIN | 747.20 | 775.00 | 579,080.00 |
| BARRY HIMMELSTEIN | 18.60 | 700.00 | 13,020.00 |
| DANIEL HUTCHINSON | 276.60 | 550.00 | 152,130.00 |
| KRISTEN LAW SAGAFI | 1.00 | 600.00 | 600.00 |
|  | **1,052.90** |  | **753,137.50** |

## ASSOCIATE

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| DANIEL HUTCHINSON | 340.00 | 390.00 | 132,600.00 |
| ALISON STOCKING | 677.40 | 465.00 | 314,991.00 |
|  | **1,017.40** |  | **447,591.00** |

## PARALEGAL/CLERK

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| DAWN BEHRMANN | 14.80 | 305.00 | 4,514.00 |
| ADELINA ACUNA | 5.80 | 215.00 | 1,247.00 |
| RICHARD ANTHONY | 21.90 | 305.00 | 6,679.50 |
| DAVID BERNSTEIN | 565.50 | 295.00 | 166,822.50 |
| TODD CARNAM | 5.80 | 305.00 | 1,769.00 |
| MEREDITH CARPENTER | 5.50 | 225.00 | 1,237.50 |
| FLORENCIA CUDOS | 5.00 | 305.00 | 1,525.00 |
| RACHEL DEMPSEY | 7.60 | 225.00 | 1,710.00 |
| KINGSTON FARDY | 22.90 | 265.00 | 6,068.50 |
| CURLEY HOWARD | 3.30 | 265.00 | 874.50 |
| LIONEL LINTS | 1.30 | 275.00 | 357.50 |
| MEGAN MICCO | 9.50 | 265.00 | 2,517.50 |
| HAZEL MOTTERSHEAD | 16.10 | 275.00 | 4,427.50 |
| MIKE NGUYEN | 5.80 | 240.00 | 1,392.00 |
| JENNIFER RUDNICK | 402.50 | 305.00 | 122,762.50 |
| JACK SANFORD | 20.50 | 225.00 | 4,612.50 |
| DAN SCHUMAN | 29.40 | 305.00 | 8,967.00 |
| ALEXANDER ZANE | 0.20 | 305.00 | 61.00 |
| RICHARD TEXIER | 2.10 | 305.00 | 640.50 |
|  | **1,145.50** |  | **338,185.50** |

## LITIGATION SUPPORT / RESEARCH

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| ROBERT DE MARIA | 2.70 | 335.00 | 904.50 |
| RENEE MUKHERJI | 14.60 | 270.00 | 3,942.00 |
|  | **17.30** |  | **4,846.50** |
| **MATTER TOTALS** | **3,233.10** |  | **1,543,760.50** |

Case B

Inception

Present

| | | | | |
|---|---|---|---|---|
| | | **From** | | **Inception** |
| | | **To** | | **Present** |

**PARTNER**

| NAME | HOURS | | RATE | TOTAL |
|---|---|---|---|---|
| ELIZABETH CABRASER | 1.00 | | 950.00 | 950.00 |
| JONATHAN SELBIN | 191.30 | | 775.00 | 148,257.50 |
| DANIEL HUTCHINSON | 290.80 | | 550.00 | 159,940.00 |
| ANNIKA MARTIN | 1.40 | | 515.00 | 721.00 |
| KRISTEN LAW SAGAFI | 58.70 | | 600.00 | 35,220.00 |
| | **543.20** | | | **345,088.50** |

**ASSOCIATE**

| NAME | HOURS | | RATE | TOTAL |
|---|---|---|---|---|
| DOUGLAS CUTHBERTSON | 0.30 | | 465.00 | 139.50 |
| JEREMY GLAPION | 0.40 | | 375.00 | 150.00 |
| ALISON STOCKING | 9.90 | | 465.00 | 4,603.50 |
| NICOLE DIANE SUGNET | 233.00 | | 435.00 | 101,355.00 |
| | **243.60** | | | **106,248.00** |

**PARALEGAL/CLERK**

| NAME | HOURS | | RATE | TOTAL |
|---|---|---|---|---|
| RICHARD ANTHONY | 8.60 | | 305.00 | 2,623.00 |
| TODD CARNAM | 1.50 | | 305.00 | 457.50 |
| MIKE NGUYEN | 5.00 | | 240.00 | 1,200.00 |
| JENNIFER RUDNICK | 37.10 | | 305.00 | 11,315.50 |
| JLE TARPEH | 0.30 | | 305.00 | 91.50 |
| BRIAN TROXEL | 1.30 | | 305.00 | 396.50 |
| JULIETTE KRUSE | 1.80 | | 320.00 | 576.00 |
| | **55.60** | | | **16,660.00** |

| | MATTER TOTALS | 842.40 | | 467,996.50 |
|---|---|---|---|---|

Case D

| | | From | | Inception |
| --- | --- | --- | --- | --- |
| | | To | | Present |

**PARTNER**

| NAME | HOURS | | RATE | TOTAL |
| --- | --- | --- | --- | --- |
| JONATHAN SELBIN | 160.80 | | 775.00 | 124,620.00 |
| DANIEL HUTCHINSON | 339.00 | | 550.00 | 186,450.00 |
| | **499.80** | | | **311,070.00** |

**ASSOCIATE**

| NAME | HOURS | | RATE | TOTAL |
| --- | --- | --- | --- | --- |
| DOUGLAS CUTHBERTSON | 73.30 | | 465.00 | 34,084.50 |
| NICOLE DIANE SUGNET | 80.60 | | 435.00 | 35,061.00 |
| | **153.90** | | | **69,145.50** |

**PARALEGAL/CLERK**

| NAME | HOURS | | RATE | TOTAL |
| --- | --- | --- | --- | --- |
| VERONICA ALVARADO | 0.50 | | 285.00 | 142.50 |
| TODD CARNAM | 6.60 | | 305.00 | 2,013.00 |
| ARIEL LEITNER-ZIEFF | 0.40 | | 260.00 | 104.00 |
| JENNIFER RUDNICK | 79.60 | | 305.00 | 24,278.00 |
| YUN SWENSON | 13.80 | | 305.00 | 4,209.00 |
| | **100.90** | | | **30,746.50** |

**OF COUNSEL**

| NAME | HOURS | | RATE | TOTAL |
| --- | --- | --- | --- | --- |
| NICHOLAS DIAMAND | 11.70 | | 550.00 | 6,435.00 |
| | **11.70** | | | **6,435.00** |

| | **MATTER TOTALS** | **766.30** | | **417,397.00** |
| --- | --- | --- | --- | --- |

|  | From | Inception |
|--|------|-----------|
|  | To | Present |

**PARTNER**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| JONATHAN SELBIN | 21.20 | 775.00 | 16,430.00 |
| DANIEL HUTCHINSON | 80.30 | 550.00 | 44,165.00 |
|  | **101.50** |  | **60,595.00** |

**ASSOCIATE**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| DOUGLAS CUTHBERTSON | 80.20 | 465.00 | 37,293.00 |
| JEREMY GLAPION | 13.90 | 375.00 | 5,212.50 |
| EDUARDO SANTACANA | 0.70 | 350.00 | 245.00 |
| ALISON STOCKING | 6.50 | 465.00 | 3,022.50 |
| NICOLE DIANE SUGNET | 11.00 | 435.00 | 4,785.00 |
|  | **112.30** |  | **50,558.00** |

**LAW CLERK**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| PAUL DAVID SHRADER | 11.50 | 320.00 | 3,680.00 |
|  | **11.50** |  | **3,680.00** |

**PARALEGAL/CLERK**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| RICHARD ANTHONY | 7.30 | 305.00 | 2,226.50 |
| TODD CARNAM | 4.10 | 305.00 | 1,250.50 |
| LIONEL LINTS | 4.30 | 275.00 | 1,182.50 |
| JENNIFER RUDNICK | 20.10 | 305.00 | 6,130.50 |
| DAN SCHUMAN | 4.80 | 305.00 | 1,464.00 |
| YUN SWENSON | 0.10 | 305.00 | 30.50 |
|  | **40.70** |  | **12,284.50** |

**LITIGATION SUPPORT / RESEARCH**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| RENEE MUKHERJI | 1.70 | 270.00 | 459.00 |
|  | **1.70** |  | **459.00** |

| | | | |
|--|--|--|--|
| **MATTER TOTALS** | **267.70** | | **127,576.50** |

Case F

|  | From | Inception |
|  | To | Present |

**PARTNER**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| DANIEL HUTCHINSON | 13.00 | 550.00 | 7,150.00 |
|  | **13.00** |  | **7,150.00** |

**ASSOCIATE**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| DOUGLAS CUTHBERTSON | 1.60 | 465.00 | 744.00 |
| ALISON STOCKING | 0.30 | 465.00 | 139.50 |
|  | **1.90** |  | **883.50** |

**PARALEGAL/CLERK**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| NIKKI BELUSHKO BARROWS | 4.00 | 305.00 | 1,220.00 |
| CHANDRA HIPPLE | 8.90 | 285.00 | 2,536.50 |
| JENNIFER RUDNICK | 1.40 | 305.00 | 427.00 |
| JACK SANFORD | 1.00 | 225.00 | 225.00 |
| YUN SWENSON | 2.00 | 305.00 | 610.00 |
|  | **17.30** |  | **5,018.50** |

| | **MATTER TOTALS** | **32.20** | | **13,052.00** |

Case G

|  | | From | Inception |
|--|--|------|-----------|
|  | | To | Present |

**PARTNER**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| JONATHAN SELBIN | 0.90 | 775.00 | 697.50 |
| DANIEL HUTCHINSON | 16.90 | 550.00 | 9,295.00 |
| | **17.80** | | **9,992.50** |

**ASSOCIATE**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| DOUGLAS CUTHBERTSON | 6.90 | 465.00 | 3,208.50 |
| | **6.90** | | **3,208.50** |

**PARALEGAL/CLERK**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| NIKKI BELUSHKO BARROWS | 4.00 | 305.00 | 1,220.00 |
| CHANDRA HIPPLE | 1.50 | 285.00 | 427.50 |
| JENNIFER RUDNICK | 7.70 | 305.00 | 2,348.50 |
| YUN SWENSON | 0.50 | 305.00 | 152.50 |
| | **13.70** | | **4,148.50** |

**LITIGATION SUPPORT / RESEARCH**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| RENEE MUKHERJI | 1.80 | 270.00 | 486.00 |
| | **1.80** | | **486.00** |

| | | | |
|--|--|--|--|
| **MATTER TOTALS** | **40.20** | | **17,835.50** |

| | | | From | Inception |
| --- | --- | --- | --- | --- |
| | | | To | |

**PARTNER**

| NAME | HOURS | RATE | TOTAL |
| --- | --- | --- | --- |
| JONATHAN SELBIN | 26.90 | 775.00 | 20,847.50 |
| DANIEL HUTCHINSON | 96.50 | 550.00 | 53,075.00 |
| | **123.40** | | **73,922.50** |

**ASSOCIATE**

| NAME | HOURS | RATE | TOTAL |
| --- | --- | --- | --- |
| DOUGLAS CUTHBERTSON | 150.70 | 465.00 | 70,075.50 |
| EDUARDO SANTACANA | 19.50 | 350.00 | 6,825.00 |
| NICOLE DIANE SUGNET | 0.60 | 435.00 | 261.00 |
| | **170.80** | | **77,161.50** |

**PARALEGAL/CLERK**

| NAME | HOURS | RATE | TOTAL |
| --- | --- | --- | --- |
| RICHARD ANTHONY | 4.00 | 305.00 | 1,220.00 |
| TODD CARNAM | 1.20 | 305.00 | 366.00 |
| LIONEL LINTS | 1.60 | 275.00 | 440.00 |
| JENNIFER RUDNICK | 21.30 | 305.00 | 6,496.50 |
| DAN SCHUMAN | 16.60 | 305.00 | 5,063.00 |
| YUN SWENSON | 0.10 | 305.00 | 30.50 |
| JLE TARPEH | 4.80 | 305.00 | 1,464.00 |
| | **49.60** | | **15,080.00** |

**LITIGATION SUPPORT / RESEARCH**

| NAME | HOURS | RATE | TOTAL |
| --- | --- | --- | --- |
| RENEE MUKHERJI | 0.90 | 270.00 | 243.00 |
| | **0.90** | | **243.00** |

| | MATTER TOTALS | 344.70 | | 166,407.00 |
| --- | --- | --- | --- | --- |

**PARTNER**

| NAME | HOURS | RATE | TOTAL |
| --- | --- | --- | --- |
| JONATHAN SELBIN | 0.50 | 775.00 | 387.50 |
| DANIEL HUTCHINSON | 9.30 | 550.00 | 5,115.00 |
| | **9.80** | | **5,502.50** |

**ASSOCIATE**

| NAME | HOURS | RATE | TOTAL |
| --- | --- | --- | --- |
| DOUGLAS CUTHBERTSON | 13.30 | 465.00 | 6,184.50 |
| | **13.30** | | **6,184.50** |

**PARALEGAL/CLERK**

| NAME | HOURS | RATE | TOTAL |
| --- | --- | --- | --- |
| RICHARD ANTHONY | 1.30 | 305.00 | 396.50 |
| TODD CARNAM | 6.10 | 305.00 | 1,860.50 |
| JENNIFER RUDNICK | 0.30 | 305.00 | 91.50 |
| | **7.70** | | **2,348.50** |

**LITIGATION SUPPORT / RESEARCH**

| NAME | | HOURS | | RATE | TOTAL |
|------|---|-------|---|------|-------|
| RENEE MUKHERJI | | 3.30 | | 270.00 | 891.00 |
| | | 3.30 | | | 891.00 |
| | MATTER TOTALS | 34.10 | | | 14,926.50 |

**PARTNER**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| JONATHAN SELBIN | 32.70 | 775.00 | 25,342.50 |
| DANIEL HUTCHINSON | 86.70 | 550.00 | 47,685.00 |
| | 119.40 | | 73,027.50 |

**ASSOCIATE**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| DOUGLAS CUTHBERTSON | 137.60 | 465.00 | 63,984.00 |
| EDUARDO SANTACANA | 3.10 | 350.00 | 1,085.00 |
| | 140.70 | | 65,069.00 |

**PARALEGAL/CLERK**

| NAME | | HOURS | RATE | TOTAL |
|------|---|-------|------|-------|
| NIKKI BELUSHKO BARROWS | | 1.90 | 305.00 | 579.50 |
| JENNIFER RUDNICK | | 2.50 | 305.00 | 762.50 |
| | | 4.40 | | 1,342.00 |
| | MATTER TOTALS | 264.50 | | 139,438.50 |
| | TOTALS | 643.30 | | 320,772.00 |

| | | From | | |
|---|---|---|---|---|
| | | To | | Inception Present |

**PARTNER**

| NAME | HOURS | | RATE | TOTAL |
|---|---|---|---|---|
| JONATHAN SELBIN | 5.50 | | 775.00 | 4,262.50 |
| DANIEL HUTCHINSON | 6.80 | | 550.00 | 3,740.00 |
| | **12.30** | | | **8,002.50** |

**ASSOCIATE**

| NAME | HOURS | | RATE | TOTAL |
|---|---|---|---|---|
| DOUGLAS CUTHBERTSON | 2.50 | | 465.00 | 1,162.50 |
| NICOLE DIANE SUGNET | 26.20 | | 435.00 | 11,397.00 |
| | **28.70** | | | **12,559.50** |

**PARALEGAL/CLERK**

| NAME | HOURS | | RATE | TOTAL |
|---|---|---|---|---|
| LIONEL LINTS | 0.30 | | 275.00 | 82.50 |
| JENNIFER RUDNICK | 8.70 | | 305.00 | 2,653.50 |
| | **9.00** | | | **2,736.00** |

**LITIGATION SUPPORT / RESEARCH**

| NAME | HOURS | | RATE | TOTAL |
|---|---|---|---|---|
| RENEE MUKHERJI | 1.50 | | 270.00 | 405.00 |
| | **1.50** | | | **405.00** |

| | MATTER TOTALS | **51.50** | | **23,703.00** |
|---|---|---|---|---|

Case J

| | | From | | Inception |
|---|---|---|---|---|
| | | To | | Present |

**PARTNER**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| JONATHAN SELBIN | 45.50 | 775.00 | 35,262.50 |
| MICHAEL SOBOL | 0.70 | 825.00 | 577.50 |
| DANIEL HUTCHINSON | 173.00 | 550.00 | 95,150.00 |
| | **219.20** | | **130,990.00** |

**ASSOCIATE**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| DOUGLAS CUTHBERTSON | 22.50 | 465.00 | 10,462.50 |
| JEREMY GLAPION | 0.10 | 375.00 | 37.50 |
| EDUARDO SANTACANA | 2.00 | 350.00 | 700.00 |
| NICOLE DIANE SUGNET | 212.40 | 435.00 | 92,394.00 |
| | **237.00** | | **103,594.00** |

**PARALEGAL/CLERK**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| NIKKI BELUSHKO BARROWS | 3.90 | 305.00 | 1,189.50 |
| LIONEL LINTS | 6.00 | 275.00 | 1,650.00 |
| JENNIFER RUDNICK | 77.80 | 305.00 | 23,729.00 |
| YUN SWENSON | 2.00 | 305.00 | 610.00 |
| | **89.70** | | **27,178.50** |

**LITIGATION SUPPORT / RESEARCH**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| MONICA BULLARD | 7.00 | 320.00 | 2,240.00 |
| RENEE MUKHERJI | 3.80 | 270.00 | 1,026.00 |
| CYRUS YAMAT | 6.50 | 320.00 | 2,080.00 |
| ANTHONY GRANT | 9.00 | 320.00 | 2,880.00 |
| | **26.30** | | **8,226.00** |

| | MATTER TOTALS | **572.20** | | **269,988.50** |

Case K

| | | From | | |
| | | To | | |
| | | | | Inception |
| | | | | Present |

**PARTNER**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| DANIEL HUTCHINSON | 61.90 | 550.00 | 34,045.00 |
| | **61.90** | | **34,045.00** |

**ASSOCIATE**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| JEREMY GLAPION | 34.50 | 375.00 | 12,937.50 |
| NICOLE DIANE SUGNET | 27.20 | 435.00 | 11,832.00 |
| | **61.70** | | **24,769.50** |

**PARALEGAL/CLERK**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| TODD CARNAM | 10.30 | 305.00 | 3,141.50 |
| JENNIFER RUDNICK | 8.30 | 305.00 | 2,531.50 |
| BRIAN TROXEL | 1.60 | 305.00 | 488.00 |
| ALEXANDER ZANE | 3.50 | 305.00 | 1,067.50 |
| | **23.70** | | **7,228.50** |

**LITIGATION SUPPORT / RESEARCH**

| NAME | HOURS | RATE | TOTAL |
|------|-------|------|-------|
| RENEE MUKHERJI | 1.50 | 270.00 | 405.00 |
| ANTHONY GRANT | 2.00 | 320.00 | 640.00 |
| | **3.50** | | **1,045.00** |

| MATTER TOTALS | 150.80 | | 67,088.00 |

|  | From | Inception |
|  | To | Present |

**PARTNER**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| BARRY HIMMELSTEIN | 207.90 | 700.00 | 145,530.00 |
|  | **207.90** |  | **145,530.00** |

**ASSOCIATE**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| CHIMENE KEITNER | 32.80 | 340.00 | 11,152.00 |
| CHRISTOPHER LEUNG | 1,175.60 | 360.00 | 423,216.00 |
| AMANDA STEINER | 0.20 | 300.00 | 60.00 |
|  | **1,208.60** |  | **434,428.00** |

**LAW CLERK**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| BARBRA WILLIAMS | 15.50 | 295.00 | 4,572.50 |
|  | **15.50** |  | **4,572.50** |

**PARALEGAL/CLERK**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| TIFFANY ANDERSEN | 6.10 | 145.00 | 884.50 |
| JESSICA CASTILLO | 22.10 | 155.00 | 3,425.50 |
| MELISSA MATHENY | 7.00 | 270.00 | 1,890.00 |
| STEVE PARGAS | 9.30 | 160.00 | 1,488.00 |
| KATHLYN QUERUBIN | 68.80 | 180.00 | 12,384.00 |
| JOANNA ROSEN | 114.40 | 160.00 | 18,304.00 |
| BERNADETTE SOTO | 2.00 | 135.00 | 270.00 |
| KIRTI DUGAR | 1.50 | 410.00 | 615.00 |
|  | **231.20** |  | **39,261.00** |

**LITIGATION SUPPORT / RESEARCH**

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| ROBERT DE MARIA | 0.50 | 335.00 | 167.50 |
| ADAM ELSHOLZ | 4.20 | 180.00 | 756.00 |
|  | **4.70** |  | **923.50** |

| MATTER TOTALS | **1,667.90** |  | **624,715.00** |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE | ) | |
| CAPITAL ONE TELEPHONE | ) | Master Docket No. 1:12-cv-10064 |
| CONSUMER PROTECTION ACT | ) | MDL No. 2416 |
| LITIGATION | ) | |
| | ) | |

| | | |
|---|---|---|
| This document relates to: | ) | |
| | ) | |
| BRIDGETT AMADECK, et al., | ) | Case No: 1:12-cv-10135 |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL ONE FINANCIAL | ) | |
| CORPORATION, and CAPITAL ONE | ) | |
| BANK (USA), N.A. | ) | |

| | | |
|---|---|---|
| This document relates to: | ) | |
| | ) | |
| NICHOLAS MARTIN, et al., | ) | Case No: 1:11-cv-05886 |
| | ) | |
| v. | ) | |
| | ) | |
| LEADING EDGE RECOVERY | ) | |
| SOLUTIONS, LLC, and CAPITAL ONE | ) | |
| BANK (USA), N.A. | ) | |

| | | |
|---|---|---|
| This document relates to: | ) | |
| | ) | |
| CHARLES C. PATTERSON, | ) | Case No: 1:12-cv-01061 |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL MANAGEMENT | ) | |
| SERVICES, L.P. and CAPITAL ONE | ) | |
| BANK (USA), N.A. | ) | |

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP'S *AMENDED* RESPONSES TO
OBJECTOR COLLINS' SECOND SET OF INTERROGATORIES TO PLAINTIFFS**

PROPOUNDING PARTY:    Objector Jeffrey T. Collins

RESPONDING PARTY:    Plaintiffs Charles C. Patterson, David Mack, Tiffany Alarcon,
Bridgett Amadeck, and Andrew Kalik

SET NUMBER:    Two

**INTERROGATORY NO. 4:**

Please IDENTIFY all TCPA ACTIONS for which YOUR COUNSEL of record in these proceedings has been awarded attorneys' fees and/or litigation expenses, and for each such action, IDENTIFY:

a. The LODESTAR AMOUNT incurred by YOUR COUNSEL, regardless of whether the LODESTAR AMOUNT was requested or submitted to the court;

b. The total amount of litigation expenses incurred by YOUR COUNSEL, regardless of whether such expenses were requested or submitted to the court;

c. The total amount of attorneys' fees awarded by the court and the specific portion of that amount obtained by YOUR COUNSEL; and

d. the LODESTAR MULTIPLIER, if any, used by the court.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiffs object to this interrogatory because it is overly broad and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not reasonably calculated to lead to the discovery of admissible evidence in this litigation. Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34. Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER. Plaintiffs further object to the extent this request seeks attorney-client privileged material and/or work product. Plaintiffs further object that the terms "lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further object that the term "legal professional" is vague and

– 1 –

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241), and Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion for Additional Discovery (Dkt. No. 279).

Plaintiffs further object to the extent that the interrogatory is duplicative of Interrogatory No. 2 of Objector Collins' First Set of Interrogatories and will not repeat their response again here.

In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements.

All information produced in response to this interrogatory is subject to the Confidentiality Order entered by this Court on November 12, 2014 (hereinafter "Confidentiality Order"). (Dkt. No. 247.) Plaintiffs expressly reserve all rights, including the right to request appropriate sanctions if the information produced in response to this interrogatory is disclosed to anyone other than the persons expressly permitted pursuant to the Confidentiality Order. Without waiving these objections, Plaintiffs answer as follows:

LCHB has not requested a lodestar amount, a lodestar multiplier, or litigation costs for any TCPA class action settlement. Rather, class counsel have sought fees under the percentage-of-the-fund method. LCHB has not separately sought or been awarded litigation expenses in any TCPA class action settlement. Rather, class counsel has only sought litigation expenses within the requested percentage, thereby reducing that percentage. Subject to the foregoing, LCHB

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

1207354.1

further responds as follows for the TCPA class action settlements where LCHB has been awarded attorneys' fees:

Case B

- Attorneys' Fees received:  $1,970,751.29

- Costs reimbursed:  $77,294.29

Case C

- Attorneys' Fees received:  $738,380.51

- Costs reimbursed:  $33,374.80

Dated:  November 25, 2014                    Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP


By:   /s/  *Daniel M. Hutchinson*
            Daniel M. Hutchinson

Daniel M. Hutchinson
Email:  dhutchinson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

Jonathan D. Selbin
Email:  jselbin@lchb.com
Douglas I. Cuthbertson
Email:  dcuthbertson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

*Co-Lead Counsel*

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

1207354.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2014, service of this document was

accomplished via email to the following:


     Melissa A. Holyoak
     melissaholyoak@gmail.com
     CENTER FOR CLASS ACTION FAIRNESS
     1718 M Street NW, No. 236
     Washington, DC 20036
     Phone: (573) 823-5377

     *Attorneys for Objector Jeffrey T. Collins*


Dated this 25th day of November, 2014.


     LIEFF CABRASER HEIMANN & BERNSTEIN, LLP


     By:   /s/ *Daniel M. Hutchinson*
         Daniel M. Hutchinson

     Daniel M. Hutchinson
     Email:  dhutchinson@lchb.com
     LIEFF CABRASER HEIMANN
      & BERNSTEIN, LLP
     275 Battery Street, 29th Floor
     San Francisco, CA  94111-3339
     Telephone:  (415) 956-1000
     Facsimile:   (415) 956-1008

     *Attorneys for Plaintiffs*

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE<br>CAPITAL ONE TELEPHONE CONSUMER<br>PROTECTION ACT LITIGATION | )<br>)<br>)<br>)<br>) | Master Docket No. 1:12-cv-10064<br>MDL No. 2416 |
| This document relates to:<br><br>BRIDGETT AMADECK, et al.,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION,<br>and CAPITAL ONE BANK (USA), N.A. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No: 1:12-cv-10135 |
| This document relates to:<br><br>NICHOLAS MARTIN, et al.,<br><br>v.<br><br>LEADING EDGE RECOVERY SOLUTIONS,<br>LLC, and CAPITAL ONE BANK (USA), N.A. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No: 1:11-cv-05886 |
| This document relates to:<br><br>CHARLES C. PATTERSON,<br><br>v.<br><br>CAPITAL MANAGEMENT SERVICES, L.P.<br>and CAPITAL ONE BANK (USA), N.A. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No: 1:12-cv-01061 |

**MEYER WILSON'S *AMENDED* RESPONSES TO OBJECTOR COLLINS' PROPOSED**
**FIRST SET OF INTERROGATORIES TO PLAINTIFFS**

PROPOUNDING PARTY:   Objector Jeffrey T. Collins

RESPONDING PARTY:   Plaintiffs Charles C. Patterson, David Mack, Tiffany Alarcon, Bridgett Amadeck, and Andrew Kalik

SET NUMBER:   One

## MEYER WILSON'S *AMENDED* RESPONSES TO OBJECTOR COLLINS' FIRST SET OF INTERROGATORIES TO PLAINTIFFS

### INTERROGATORY NO. 1:

Please IDENTIFY the LODESTAR AMOUNT that YOUR COUNSEL has incurred in these proceedings.

### RESPONSE TO INTERROGATORY NO. 1:

As further set forth in the attached spreadsheet, Meyer Wilson incurred the following lodestar and costs in Case A through November 11, 2014:

- Lodestar incurred:  $ 254,060

- Costs incurred:  $ 12831.58

### INTERROGATORY NO. 2:

Please IDENTIFY all TCPA ACTIONS for which YOUR COUNSEL of record in these proceedings has been awarded attorneys' fees and/or litigation expenses, and for each such action, IDENTIFY:

a.    The LODESTAR AMOUNT and the LODESTAR MULTIPLIER requested to the court;

b.    The total amount of attorneys' fees awarded to YOUR COUNSEL and the LODESTAR MULTIPLIER, if any, used by the court;

c.    The total amount of litigation expenses requested by YOUR COUNSEL and the total amount of litigation expenses awarded to YOUR COUNSEL.

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiffs object to this interrogatory because it is overly broad and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not reasonably calculated to lead to the discovery of admissible evidence in this litigation. Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34. Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER. Plaintiffs further object to the extent this request seeks attorney-client privileged material and/or work product. Plaintiffs further object that the terms "lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further object that the term "legal professional" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), and Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241).

In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements. Without waiving these objections, Plaintiffs answer as follows:

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

Meyer Wilson has not requested a lodestar amount, a lodestar multiplier, or litigation costs for any TCPA class action settlement. Rather, class counsel have sought fees under the percentage-of-the-fund method. Meyer Wilson has not separately sought or been awarded litigation expenses in any TCPA class action settlement. Rather, class counsel has only sought litigation expenses within the requested percentage, thereby reducing that percentage.

Subject to the foregoing, Meyer Wilson further responds as follows for the any TCPA class action settlements where Meyer Wilson has been awarded attorneys' fees:

Case B

In Case B, the court ordered an award of fees to *all* plaintiffs' counsel of $4,837,500.00 and "authorize[d] the Class Counsel firm of Lieff Cabraser Heimann & Bernstein, LLP to allocate the fee award among the Plaintiffs' firms." The Court used the percentage-of-the-fund method and therefore did not consider counsel's lodestar or use a multiplier.

As set forth in the attached exhibit, Meyer Wilson incurred the following lodestar and costs in Case B through November 11, 2014:

- Lodestar incurred: $ 307,297.50

- Costs incurred: $ 50,107.79

Case C

In Case C, the court ordered an award of fees to all counsel of $2,175,000.00. The Court used the percentage-of-the-fund method, but cross-checked the percentage of recovery against the lodestar as of the date of the fee motion to determine a multiplier of "approximately 3.5."

As set forth in the attached exhibit, Meyer Wilson incurred the following lodestar and costs in Case C through November 11, 2014:

- Lodestar incurred: $ 108,071.30

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

- Costs incurred:  $ 9,742.11

<u>Case D</u>

In Case D, no attorneys' fees have been paid to counsel pending a ruling on Plaintiffs' motion for reconsideration in that matter.

As set forth in the attached exhibit, Meyer Wilson incurred the following lodestar and costs in Case D through November 11, 2014:

- Lodestar incurred:  $ 150,931.80

- Costs incurred:  $ 8,383.71

**INTERROGATORY NO. 3:**

Please IDENTIFY all TCPA ACTIONS in which YOUR COUNSEL of record in these proceedings was unable to recover attorneys' fees due to an adverse ruling by the court in which such action was pending, and for each such action, IDENTIFY:

a.      The LODESTAR AMOUNT incurred by YOUR COUNSEL; and

b.      The total amount of litigation expenses incurred by YOUR COUNSEL.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiffs object to this interrogatory because it is overly broad, and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not reasonably calculated to lead to the discovery of admissible evidence in this litigation.  Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34.  Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER.  Plaintiffs further object to this interrogatory as it explicitly seeks confidential and commercially sensitive financial information, trade secrets, attorney-client

privileged material, and/or work product.  Plaintiffs further object that the terms "lodestar,"

"lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and

ambiguous, and thus render the interrogatory overly burdensome.  Plaintiffs further object that

the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly

burdensome.  Plaintiffs further object that the term "legal professional" is vague and ambiguous,

and therefore renders the interrogatory overly burdensome.  Plaintiffs further incorporate by

reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion

to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237),

and Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241).

In responding to these interrogatories and requests for production, Plaintiff will comply

with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any

definitions or instructions that seek to impose further requirements.

All information produced in response to this interrogatory is subject to the Confidentiality

Order entered by this Court on November 12, 2014 (hereinafter "Confidentiality Order").  (Dkt.

No. 247.)  Plaintiffs expressly reserve all rights, including the right to request appropriate

sanctions, if the information produced in response to this interrogatory is disclosed to anyone

other than the persons expressly permitted pursuant to the Confidentiality Order.  Without

waiving these objections, Plaintiffs answer as follows:

Subject to the foregoing, Meyer Wilson reports the following TCPA actions in which

Meyer Wilson was unable to recover attorneys' fees because an adverse ruling was received or

was imminent:

- Case E

  • Lodestar incurred:  $ 49,275.00

- Costs incurred:  $ 0

- Case F

    - Lodestar incurred:  $ 2,877.50

    - Costs incurred:  $ 0

- Case G

    - Lodestar incurred:  $ 21,765.00

    - Costs incurred:  $ 376.10

- Case H

    - Lodestar incurred:  $ 160,182.50

    - Costs incurred:  $ 1,285.46

- Case I

    - Lodestar incurred:  $ 21,500.00

    - Costs incurred:  $ 299.14

- Case J

    - Lodestar incurred:  $ 66,325.00

    - Costs incurred:  $ 701.58

- Case K

    - Lodestar incurred:  $ 14,832.50

    - Costs incurred:  $ 0

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

Dated:  November 25, 2014             Respectfully submitted,

MEYER WILSON CO., LPA


By:   /s/  *Matthew R. Wilson*_____
              Matthew R. Wilson

Matthew R. Wilson
Email:  mwilson@meyerwilson.com
MEYER WILSON CO., LPA
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6600

*Plaintiffs' Counsel*

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2014, service of this document was accomplished via email to the following:

Melissa A. Holyoak
melissaholyoak@gmail.com
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (573) 823-5377

*Attorneys for Objector Jeffrey T. Collins*

Dated this 25th day of November, 2014.

MEYER WILSON CO., LPA

By:  __/s/  *Matthew R. Wilson*_____
           Matthew R. Wilson

Matthew R. Wilson
Email:  mwilson@meyerwilson.com
MEYER WILSON CO., LPA
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:   (614) 224-6600

*Plaintiffs' Counsel*

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

14.11.25  Meyer Wilson Lodestar [Anonymized]--CONFIDENTIAL, ATTORNEYS EYES ONLY SUBJECT TO PROTECTIVE ORDER (00111162xCE85E)

CONFIDENTIAL - ATTORNEY EYES ONLY - SUBJECT TO PROTECTIVE ORDER

Response to Interrogatory Number 1.

Case A

| Staff | Role | Years in Practice | Time | Rate | Total |
|---|---|---|---|---|---|
| Matthew R. Wilson | Principal | 14 | 380.4 | 475 | 180690 |
| Daniel Freytag | Of Counsel | 39 | 54.4 | 450 | 24480 |
| Michael Boyle | Associate | 6 | 51.2 | 325 | 16640 |
| Nathan Forb | Law Clerk | | 129 | 250 | 32250 |

|  |  |
|---|---|
| 254060 | Total Lodestar |
| Expenses  12831.58 | |
| 266891.6 | Total |

Response to Interrogatory Number 2.

Case D

| Staff | Role | Years in Practice | Time | Rate | Total |
|---|---|---|---|---|---|
| Matthew R. Wilson | Principal | 14 | 269.5 | 474 | 127743 |
| Michael Boyle | Associate | 6 | 8.5 | 325 | 2762.5 |
| Bridget Wasson | Associate | 6 | 62.85 | 325 | 20426.25 |

|  |  |
|---|---|
| 150931.8 | Total Lodestar |
| Expenses  8383.71 | |
| 159315.5 | Total |

Case B

| Staff | Role | Years in Practice | Time | Rate | Total |
|---|---|---|---|---|---|
| Matthew R. Wilson | Principal | 14 | 355.5 | 425 | 151087.5 |
| David P. Meyer | Principal | 19 | 196 | 550 | 107800 |
| Bridget Wasson | Associate | 6 | 82.3 | 300 | 24690 |
| Shelly Coffman | Investigator | | 118.6 | 200 | 23720 |

14.11.25  Meyer Wilson Lodestar [Anonymized]--CONFIDENTIAL, ATTORNEYS EYES ONLY SUBJECT TO PROTECTIVE ORDER (00111162xCE85E)

|  |  |  |  |  |  | 307297.5 | Total Lodestar |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  | Expense | 50107.79 |  |
|  |  |  |  |  |  | 357405.3 | Total |

## Case C

| Staff | Role | Years in Practice | Time | Rate | total |  |
|---|---|---|---|---|---|---|
| Matthew R. Wilson | Principal | 14 | 165.4 | 475 | 78565 |  |
| Daniel Freytag | Of Counsel | 39 | 5 | 450 | 2250 |  |
| Michael Boyle | Associate | 6 | 16.6 | 325 | 5395 |  |
| Bridget Wasson | Associate | 6 | 55.05 | 325 | 17891.25 |  |
| Shelly Coffman | Investigator |  | 19.85 | 200 | 3970 |  |
|  |  |  |  |  | 108071.3 | Total Lodestar |
|  |  |  |  | Expense | 9742.11 |  |
|  |  |  |  |  | 117180.9 | Total |

Response to Interrogatory Number 3.

## Case J

| Staff | Role | Years in Practice | Time | Rate | total |  |
|---|---|---|---|---|---|---|
| Matthew R. Wilson | Principal | 14 | 64.2 | 475 | 30495 |  |
| Daniel Freytag | Of Counsel | 39 | 0.7 | 450 | 315 |  |
| Michael Boyle | Associate | 6 | 24 | 325 | 7800 |  |
| Bridget Wasson | Associate | 6 | 23.1 | 325 | 7507.5 |  |
| Courtney Yeager | Associate | 2 | 59.9 | 325 | 19467.5 |  |
| Shelly Coffman | Investigator |  | 3.7 | 200 | 740 |  |
|  |  |  |  |  | 66325 | Total Lodestar |
|  |  |  |  | Expenses | 701.58 |  |
|  |  |  |  |  | 67026.58 | Total |

## Case K

| Staff | Role | Years in Practice | Time | Rate | total |  |
|---|---|---|---|---|---|---|
| Matthew R. Wilson | Principal | 14 | 25 | 475 | 11875 |  |
| Michael Boyle | Associate | 6 | 9.1 | 325 | 2957.5 |  |
|  |  |  |  |  | 14832.5 | Total |

14.11.25  Meyer Wilson Lodestar [Anonymized]--CONFIDENTIAL, ATTORNEYS EYES ONLY SUBJECT TO PROTECTIVE ORDER (00111162xCE85E)

## Case I

| Staff | Role | Years in Practice | Time | Rate | total | |
|---|---|---|---|---|---|---|
| Matthew R. Wilson | Principal | 14 | 41.5 | 475 | 19712.5 | |
| Michael Boyle | Associate | 6 | 5.5 | 325 | 1787.5 | |
| | | | | | 21500 | Total Lodestar |
| | | | Expenses | | 299.14 | |
| | | | | | 21799.14 | Total |

## Case H

| Staff | Role | Years in Practice | Time | Rate | total | |
|---|---|---|---|---|---|---|
| Matthew R. Wilson | Principal | 14 | 96.5 | 475 | 45837.5 | |
| Daniel Freytag | Of Counsel | 39 | 191.4 | 450 | 86130 | |
| Michael Boyle | Associate | 6 | 17.7 | 325 | 5725 | |
| Bridget Wasson | Associate | 6 | 69.2 | 325 | 22490 | |
| | | | | | 160182.5 | Total Lodestar |
| | | | Expenses | | 1285.46 | |
| | | | | | 161468 | Total |

## Case E

| Staff | Role | Years in Practice | Time | Rate | total | |
|---|---|---|---|---|---|---|
| Matthew R. Wilson | Principal | 14 | 84.7 | 475 | 40232.5 | |
| Courtney Yeager | Associate | 2 | 4 | 325 | 1300 | |
| Bridget Wasson | Associate | 6 | 19.7 | 325 | 6402.5 | |
| Shelly Coffman | Investigator | | 6.7 | 200 | 1340 | |
| | | | | | 49275 | Total |

## Case F

| Staff | Role | Years in Practice | Time | Rate | total |
|---|---|---|---|---|---|
| Matthew R. Wilson | Principal | 14 | 4.9 | 475 | 2327.5 |
| Bridget Wasson | Associate | 6 | 1.2 | 325 | 390 |
| Shelly Coffman | Investigator | | 0.8 | 200 | 160 |

14.11.25 Meyer Wilson Lodestar [Anonymized]--CONFIDENTIAL, ATTORNEYS EYES ONLY SUBJECT TO PROTECTIVE ORDER (00111162xCE85E)

2877.5 Total

Case G

| Staff | Role | Years in Practice | Time | Rate | total | |
|-------|------|-------------------|------|------|-------|---|
| Matthew R. Wilson | Principal | 14 | 24 | 475 | 11400 | |
| Daniel Freytag | Of Counsel | 39 | 15.7 | 450 | 7065 | |
| Bridget Wasson | Associate | 6 | 11 | 325 | 3300 | |

|  |  |
|--|--|
| 21765 | Total Lodestar |
| Expenses 376.1 |  |
| 22141.1 | Total |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE | ) | |
| CAPITAL ONE TELEPHONE | ) | Master Docket No. 1:12-cv-10064 |
| CONSUMER PROTECTION ACT | ) | MDL No. 2416 |
| LITIGATION | ) | |
| | ) | |
| This document relates to: | ) | |
| | ) | |
| BRIDGETT AMADECK, et al., | ) | Case No: 1:12-cv-10135 |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL ONE FINANCIAL | ) | |
| CORPORATION, and CAPITAL ONE | ) | |
| BANK (USA), N.A. | ) | |
| This document relates to: | ) | |
| | ) | |
| NICHOLAS MARTIN, et al., | ) | Case No: 1:11-cv-05886 |
| | ) | |
| v. | ) | |
| | ) | |
| LEADING EDGE RECOVERY | ) | |
| SOLUTIONS, LLC, and CAPITAL ONE | ) | |
| BANK (USA), N.A. | ) | |
| This document relates to: | ) | |
| | ) | |
| CHARLES C. PATTERSON, | ) | Case No: 1:12-cv-01061 |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL MANAGEMENT | ) | |
| SERVICES, L.P. and CAPITAL ONE | ) | |
| BANK (USA), N.A. | ) | |

**MEYER WILSON CO., LPA'S RESPONSES TO
OBJECTOR COLLINS' SECOND SET OF INTERROGATORIES TO PLAINTIFFS**

PROPOUNDING PARTY:   Objector Jeffrey T. Collins

RESPONDING PARTY:   Plaintiffs Charles C. Patterson, David Mack, Tiffany Alarcon, Bridgett Amadeck, and Andrew Kalik

SET NUMBER:   Two

**INTERROGATORY NO. 4:**

Please IDENTIFY all TCPA ACTIONS for which YOUR COUNSEL of record in these proceedings has been awarded attorneys' fees and/or litigation expenses, and for each such action, IDENTIFY:

a. The LODESTAR AMOUNT incurred by YOUR COUNSEL, regardless of whether the LODESTAR AMOUNT was requested or submitted to the court;

b. The total amount of litigation expenses incurred by YOUR COUNSEL, regardless of whether such expenses were requested or submitted to the court;

c. The total amount of attorneys' fees awarded by the court and the specific portion of that amount obtained by YOUR COUNSEL; and

d. the LODESTAR MULTIPLIER, if any, used by the court.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiffs object to this interrogatory because it is overly broad and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not reasonably calculated to lead to the discovery of admissible evidence in this litigation. Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34. Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER. Plaintiffs further object to the extent this request seeks attorney-client privileged material and/or work product. Plaintiffs further object that the terms "lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further object that the term "legal professional" is vague and

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241), and Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion for Additional Discovery (Dkt. No. 279).

Plaintiffs further object to the extent that the interrogatory is duplicative of Interrogatory No. 2 of Objector Collins' First Set of Interrogatories and will not repeat their response again here.

In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements.

All information produced in response to this interrogatory is subject to the Confidentiality Order entered by this Court on November 12, 2014 (hereinafter "Confidentiality Order"). (Dkt. No. 247.) Plaintiffs expressly reserve all rights, including the right to request appropriate sanctions if the information produced in response to this interrogatory is disclosed to anyone other than the persons expressly permitted pursuant to the Confidentiality Order. Without waiving these objections, Plaintiffs answer as follows:

Meyer Wilson has not requested a lodestar amount, a lodestar multiplier, or litigation costs for any TCPA class action settlement. Rather, class counsel have sought fees under the percentage-of-the-fund method. Meyer Wilson has not separately sought or been awarded litigation expenses in any TCPA class action settlement. Rather, class counsel has only sought litigation expenses within the requested percentage, thereby reducing that percentage.

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

Subject to the foregoing, see Meyer Wilson's prior and amended responses to Interrogatory 2, regarding lodestar information. Meyer Wilson further responds as follows:

Case B:

- Attorneys' fees received: $1,970,751.29

- Costs reimbursed: $50,107.79

Case C:

- Attorneys' fees received: $738,380.51

- Costs reimbursed: $9,742.11

Dated: November 25, 2014   Respectfully submitted,

         MEYER WILSON CO., LPA


By: /s/ *Matthew R. Wilson*
    Matthew R. Wilson

Matthew R. Wilson
Email: mwilson@meyerwilson.com
MEYER WILSON CO., LPA
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6600

*Plaintiffs' Counsel*

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2014, service of this document was accomplished via email to the following:

> Melissa A. Holyoak
> melissaholyoak@gmail.com
> CENTER FOR CLASS ACTION FAIRNESS
> 1718 M Street NW, No. 236
> Washington, DC 20036
> Phone: (573) 823-5377
>
> *Attorneys for Objector Jeffrey T. Collins*

Dated this 25th day of November, 2014.

MEYER WILSON CO., LPA

By:    /s/  *Matthew R. Wilson*
          Matthew R. Wilson

Matthew R. Wilson
Email:  mwilson@meyerwilson.com
MEYER WILSON CO., LPA
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:   (614) 224-6600

*Plaintiffs' Counsel*

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE CAPITAL ONE TELEPHONE CONSUMER LITIGATION ACT LITIGATION | Master Docket No. 1:12-cv-10064 MDL No. 2416 |
| This document relates to: | CLASS ACTION |
| All Cases | JURY TRIAL DEMANDED |

**OBJECTOR COLLINS' FIRST SET OF INTERROGATORIES TO PLAINTIFFS <u>AND TERRELL MARSHALL DAUDT & WILLIE PLLC'S OBJECTIONS AND ANSWERS THERETO</u>**

Plaintiffs, through their attorneys of record, provide their objections and responses to Objector Collins' first set of Interrogatories to Plaintiffs.

**INTERROGATORIES**

**Interrogatory No. 1:** Please IDENTIFY the LODESTAR AMOUNT that YOUR COUNSEL has incurred in these proceedings.

**ANSWER:** As further set forth in the attached spreadsheet, TMDW incurred the following lodestar and costs in *Case A,* through November 11, 2014:

- Lodestar incurred: $379,590.00
- Costs incurred: $23,991.07

**Interrogatory No. 2:** Please IDENTIFY all TCPA ACTIONS for which YOUR COUNSEL of record in these proceedings has been awarded attorneys' fees and/or litigation expenses, and for each such action, IDENTIFY:

a.      The LODESTAR AMOUNT and the LODESTAR MULTIPLIER requested to the court;

b.      The total amount of attorneys' fees awarded to YOUR COUNSEL and the

- 1 -

LODESTAR MULTIPLIER, if any, used by the court;

      c.      The total amount of litigation expenses requested by YOUR COUNSEL and the total amount of litigation expenses awarded to YOUR COUNSEL.

**ANSWER:** Plaintiffs object to this interrogatory because it is overly broad, and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not reasonably calculated to lead to the discovery of admissible evidence in this litigation. Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34. Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER. Plaintiffs further object to the extent this request seeks attorney-client privileged material and/or work product. Plaintiffs further object that the terms "lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further object that the term "legal professional" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), and Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241).

      In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements. Without waiving these objections, Plaintiffs answer as follows:

      As further set forth in the attached spreadsheet, TMDW reports the following TCPA actions in which TMDW has been awarded attorneys' fees and/or costs:

<u>Case T:</u>

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

In *Case T,* the Court ordered an award of fees to *all* Plaintiffs' counsel of $1,137,500.  As set forth in the attached spreadsheet, TMDW incurred the following lodestar and costs in *Case T.*, through November 11, 2014:

- Lodestar incurred:  $400,930.00
- Costs incurred:  $23,797.76


Case U:

In *Case U*, the Court ordered an award of fees to *all* Plaintiffs' counsel of $750,000.  As set forth in the attached spreadsheet, TMDW incurred the following lodestar and costs in *Case U*, through November 11, 2014:

- Lodestar incurred:  $17,042.50
- Costs incurred:  $7,668.55


Case N:

In *Case N*, the Court awarded one-third of the fund (inclusive of expenses) in the amount $1,500,000 to *all* Plaintiffs' counsel.  No lodestar amount and lodestar multiplier was submitted or requested by Court.

- Lodestar incurred:  $118,454.50
- Costs incurred:  $7,668.55


Case C:

In *Case C,* the court ordered an award of fees to all counsel of $2,175,000.00.  The Court used the percentage-of-the-fund method, but cross-checked the percentage of recovery against the lodestar as of the date of the fee motion to determine a multiplier of "approximately 3.5."

As set forth in the attached spreadsheet, TMDW incurred the following lodestar and costs in *Case C*, through November 11, 2014:

- Lodestar incurred:  $113,502.50

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

- Costs incurred: $3,888.67

Case B:

In *Case B*, the court ordered an award of fees to *all* plaintiffs' counsel of $4,837,500.00. The Court used the percentage-of-the-fund method and therefore did not consider counsel's lodestar or use a multiplier.

As set forth in the attached spreadsheet, TMDW incurred the following lodestar and costs in *Case B*, through November 11, 2014:

- Lodestar incurred: $234,747.50
- Costs incurred: $7,302.69

Case D:

In *Case D*, no attorneys' fees have been paid to counsel pending a ruling on Plaintiffs' motion for reconsideration in that matter.

As set forth in the attached spreadsheet, TMDW incurred the following lodestar and costs in *Case D,* through November 11, 2014:

- Lodestar incurred: $224,947.00
- Costs incurred: $20,902.05

**Interrogatory No. 3:** Please IDENTIFY all TCPA ACTIONS in which YOUR COUNSEL of record in these proceedings was unable to recover attorneys' fees due to an adverse ruling by the court in which such action was pending, and for each such action, IDENTIFY:

a. The LODESTAR AMOUNT incurred by YOUR COUNSEL; and

b. The total amount of litigation expenses incurred by YOUR COUNSEL.

**ANSWER:** Plaintiffs object to this interrogatory because it is overly broad, and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

reasonably calculated to lead to the discovery of admissible evidence in this litigation. Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34. Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER. Plaintiffs further object to this interrogatory as it explicitly seeks confidential and commercially sensitive financial information, trade secrets, attorney-client privileged material, and/or work product. Plaintiffs further object that the terms "lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further object that the term "legal professional" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), and Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241).

In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements.

All information produced in response to this interrogatory is subject to the Confidentiality Order entered by this Court on November 12, 2014 (hereinafter "Confidentiality Order"). (Dkt. No. 247.) Plaintiffs expressly reserve all rights, including to request appropriate sanctions, if the information produced in response to this interrogatory is disclosed to anyone other than the persons expressly permitted pursuant to the Confidentiality Order. Without waiving these objections, Plaintiffs answer as follows:

Subject to the foregoing, TMDW reports the following TCPA actions in which TMDW was unable to recover attorneys' fees because an adverse ruling was received or imminent:

- 5 -

*Case V*:

- Lodestar incurred:  $764,671.00
- Costs incurred: $47,399.56

*Case W*:

- Lodestar incurred:  $198,740.00
- Costs incurred: $8,552.67

*Case X*:

- Lodestar incurred:  $362,846.50
- Costs incurred: $12,753.43

*Case Y*:

- Lodestar incurred:  $117,846.00
- Costs incurred: $4,478.50

*Case E*:

- Lodestar incurred:  $44,320.00
- Costs incurred: $2,932.09

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

RESPECTFULLY SUBMITTED AND DATED this 26th day of November, 2014.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:    /s/  Jonathan D. Selbin
                Jonathan D. Selbin
           Jonathan D. Selbin, *Admitted Pro Hac Vice*
           Email:  jselbin@lchb.com
           Douglas I. Cuthbertson, *Admitted Pro Hac Vice*
           Email:  dcuthbertson@lchb.com
           LIEFF CABRASER HEIMANN
             & BERNSTEIN, LLP
           250 Hudson Street, 8th Floor
           New York, NY  10013-1413
           Telephone:  (212) 355-9500
           Facsimile:  (212) 355-9592

           Daniel M. Hutchinson, *Admitted Pro Hac Vice*
           Email:  dhutchinson@lchb.com
           LIEFF CABRASER HEIMANN
             & BERNSTEIN, LLP
           275 Battery Street, 29th Floor
           San Francisco, CA  94111-3339
           Telephone:  (415) 956-1000
           Facsimile:  (415) 956-1008

TERRELL MARSHALL DAUDT
 & WILLIE PLLC

By:    /s/ Beth E. Terrell
                Beth E. Terrell

           Beth E. Terrell
           Email:  bterrell@tmdwlaw.com
           Michael D. Daudt
           Email:  mdaudt@tmdwlaw.com
           TERRELL MARSHALL DAUDT
             & WILLIE PLLC
           936 North 34th Street, Suite 400
           Seattle, Washington  98103
           Telephone:  (206) 816-6603
           Facsimile:  (206) 350-3528

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

*Interim Lead Counsel*

KEOGH LAW, LTD

By:   /s/ Keith James Keogh
           Keith James Keogh

Keith James Keogh
Email: keith@keoghlaw.com
Craig M. Shapiro
Email: cshapiro@keoghlaw.com
Timothy J. Sostrin
Email: tsostrin@keoghlaw.com
KEOGH LAW, LTD.
55 W. Monroe Street, Suite 3390
Chicago, Illinois  60603
Telephone:  (312) 726-1092
Facsimile:   (312) 726-1093

*Liaison Counsel*

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

## <u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on November 26, 2014, I electronically transmitted

the foregoing to the following:

> Melissa A. Holyoak
> CENTER FOR CLASS ACTION FAIRNESS
> 1718 M Street NW, No. 236
> Washington, DC 20036
> Telephone:  (573) 823-5377
> Email:  melissaholyoak@gmail.com

DATED this 26th day of November, 2014.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:   /s/ Beth E. Terrell
　　　Beth E. Terrell
　　　Email:  bterrell@tmdwlaw.com
　　　936 North 34th Street, Suite 400
　　　Seattle, Washington  98103-8869
　　　Telephone:  (206) 816-6603
　　　Facsimile:  (206) 350-3528

　　　*Attorneys for Plaintiff*

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

**Objector Collins' First Set of Interrogatories to Plaintiffs and Terrell Marshall Daudt & Willie PLLC's Objections and Answers Thereto**

**Response to Interrogatory No. 1**

**Case A:**

| Professional | Role | Time | Rate | | Total | |
|---|---|---|---|---|---|---|
| Beth E. Terrell | Partner | 322.8 | $ | 650.00 | $ | 209,820.00 |
| Michael D. Daudt | Partner | 157.1 | $ | 650.00 | $ | 102,115.00 |
| Mary B. Reiten | Partner | 4.4 | $ | 500.00 | $ | 2,200.00 |
| Kim L. Gunning | Partner | 45.0 | $ | 450.00 | $ | 20,250.00 |
| Jennifer R. Murray | Partner | 11.1 | $ | 450.00 | $ | 4,995.00 |
| Erika L. Nusser | Associate | 26.7 | $ | 350.00 | $ | 9,345.00 |
| Jennifer J. Boschen | Paralegal/Clerk | 14.0 | $ | 250.00 | $ | 3,500.00 |
| Rachel E. Hoover | Paralegal/Clerk | 3.0 | $ | 250.00 | $ | 750.00 |
| Carolyn McConnell | Paralegal/Clerk | 12.8 | $ | 250.00 | $ | 3,200.00 |
| Eden B. Nordby | Paralegal/Clerk | 17.8 | $ | 250.00 | $ | 4,450.00 |
| Sam J. Strauss | Associate | 12.7 | $ | 250.00 | $ | 3,175.00 |
| Bradford K. Kinsey | Paralegal/Clerk | 45.4 | $ | 200.00 | $ | 9,080.00 |
| Hannah J. Buckendorf | Paralegal/Clerk | 50.2 | $ | 100.00 | $ | 5,020.00 |
| Janice C. Cole | Paralegal/Clerk | 16.9 | $ | 100.00 | $ | 1,690.00 |
| | Summary: | 739.9 | | | $ | 379,590.00 |

|  |  |  |
|---|---|---|
| **Total Lodestar:** | **$** | **379,590.00** |
| **Total Expenses:** | **$** | **23,991.07** |
| **Total:** | **$** | **403,581.07** |

**Response to Interrogatory No. 2**

**Case T:**

The Court awarded $1,137,500 total in fees and costs.  No multiplier was used by the Court.

| Professional | Role | Time | Rate | | Total | |
|---|---|---|---|---|---|---|
| Beth E. Terrell | Partner | 135.2 | $ | 650.00 | $ | 87,880.00 |
| Toby J. Marshall | Partner | 5.8 | $ | 575.00 | $ | 3,335.00 |
| Kim L. Gunning | Partner | 376.2 | $ | 450.00 | $ | 169,290.00 |
| Jennifer R. Murray | Partner | 170.0 | $ | 450.00 | $ | 76,500.00 |
| Whitney B. Stark | Associate | 14.1 | $ | 400.00 | $ | 5,640.00 |
| Erin Pettigrew | Paralegal/Clerk | 4.0 | $ | 265.00 | $ | 1,060.00 |
| Jennifer J. Boshen | Paralegal/Clerk | 68.4 | $ | 250.00 | $ | 17,100.00 |
| Eden B. Nordby | Paralegal/Clerk | 102.6 | $ | 225.00 | $ | 23,085.00 |
| Bradford K. Kinsey | Paralegal/Clerk | 85.2 | $ | 200.00 | $ | 17,040.00 |
| | Summary: | 961.5 | | | $ | 400,930.00 |

|  |  |  |  |
|---|---|---|---|
| **Total Lodestar:** | **$** | **400,930.00** |
| **Total Expenses:** | **$** | **23,797.76** |
| **Total:** | **$** | **424,727.76** |
| **Total Fees Received TMDW:** | | **$548,199.95** |

**Case U:**

The Court awarded $750,000 total in fees and costs.  A multiplier of 2.2 was used by the Court.

| Professional | Role | Time | | Rate | | Total |
|---|---|---|---|---|---|---|
| Beth E. Terrell | Partner | 52.8 | $ | 650.00 | $ | 34,320.00 |
| Kim L. Gunning | Partner | 236.1 | $ | 475.00 | $ | 112,147.50 |
| Sharon M. Safarik | Associate | 27.4 | $ | 325.00 | $ | 8,905.00 |
| Charlotte S. Sanders | Paralegal/Clerk | 7.8 | $ | 265.00 | $ | 2,067.00 |
| Jennifer J. Boschen | Paralegal/Clerk | 15.6 | $ | 250.00 | $ | 3,900.00 |
| Eden B. Nordby | Paralegal/Clerk | 27.3 | $ | 250.00 | $ | 6,825.00 |
| Bradford K. Kinsey | Paralegal/Clerk | 27.1 | $ | 180.00 | $ | 4,878.00 |
| | Summary: | 394.1 | | | $ | 173,042.50 |

|  |  |  |
|---|---|---|
| **Total Lodestar:** | **$** | **173,042.50** |
| **Total Expenses:** | **$** | **7,168.52** |
| **Total:** | **$** | **180,211.02** |
| **Total Fees Received TMDW:** | | **$368,521.11** |

**Case N:**

Court awarded one-third of the fund (inclusive of expenses) in the amount $1,500,000. No lodestar amount and lodestar multiplier was submitted or requested by Court.

| Professional | Role | Time | | Rate | | Total |
|---|---|---|---|---|---|---|
| Beth E. Terrell | Partner | 111.5 | $ | 650.00 | $ | 72,475.00 |
| Kim L. Gunning | Partner | 23.7 | $ | 450.00 | $ | 10,665.00 |
| Jennifer R. Murray | Partner | 56.1 | $ | 450.00 | $ | 25,245.00 |
| Whitney B. Stark | Associate | 4.2 | $ | 400.00 | $ | 1,680.00 |
| Bradford Kinsey | Legal Secretary | 33.6 | $ | 200.00 | $ | 6,720.00 |
| Charlotte S. Sanders | Paralegal/Clerk | 6.3 | $ | 265.00 | $ | 1,669.50 |
| | Summary: | 235.4 | | | $ | 118,454.50 |

|  |  |  |
|---|---|---|
| **Total Lodestar:** | **$** | **118,454.50** |
| **Total Expenses:** | **$** | **7,668.55** |
| **Total:** | **$** | **126,123.05** |
| **Total Fees Received TMDW:** | | **$745,990.73** |

**Case C:**

The Court awarded $2,175,000 total in fees and costs.  A multiplier of 3.5 was used by the Court.

| Professional | Role | Time | Rate | Total |
|---|---|---|---|---|
| Beth E. Terrell | Partner | 121.5 | $ 675.00 | $ 82,012.50 |
| Kim L. Gunning | Partner | 48.6 | $ 500.00 | $ 24,300.00 |
| | | | | |
| Eden B. Nordby | Paralegal/Clerk | 7.5 | $ 250.00 | $ 1,875.00 |
| Cassandra Bohannon | Paralegal/Clerk | 1.4 | $ 180.00 | $ 252.00 |
| Bradford Kinsey | Legal Secretary | 23.1 | $ 180.00 | $ 4,158.00 |
| Rachel E. Hoover | Paralegal/Clerk | 6.6 | $ 125.00 | $ 825.00 |
| Janelle E. Chase | Paralegal/Clerk | 0.7 | $ 100.00 | $ 70.00 |
| Christine L. Stanley | Paralegal/Clerk | 0.1 | $ 100.00 | $ 10.00 |
| | Summary: | 209.5 | | $ 113,502.50 |

|  |  |
|---|---|
| Total Lodestar: | $ 113,502.50 |
| Total Expenses: | $ 3,888.67 |
| Total: | $ 117,391.17 |
| Total Fees Received TMDW: | $315,959.16 |

**Case B:**

The Court awarded $4,830,000 total in fees and costs. The Court used the percentage-of-the-fund method and therefore did not consider counsel's lodestar or use a multiplier.

| Professional | Role | Time | Rate | Total |
|---|---|---|---|---|
| Michael D. Daudt | Partner | 5.0 | $ 600.00 | $ 3,000.00 |
| Beth E. Terrell | Partner | 194.7 | $ 600.00 | $ 116,820.00 |
| Toby J. Marshall | Partner | 0.2 | $ 575.00 | $ 115.00 |
| Bradley E. Neunzig | Associate | 16.0 | $ 475.00 | $ 7,600.00 |
| Jennifer R. Murray | Partner | 116.8 | $ 450.00 | $ 52,560.00 |
| Erika L. Nusser | Associate | 11.4 | $ 325.00 | $ 3,705.00 |
| Marc C. Cote | Associate | 1.1 | $ 295.00 | $ 324.50 |
| | | | | |
| Eden B. Nordby | Paralegal/Clerk | 46.1 | $ 275.00 | $ 12,677.50 |
| Beau C. Haynes | Paralegal/Clerk | 0.2 | $ 265.00 | $ 53.00 |
| Bradford K. Kinsey | Paralegal/Clerk | 130.9 | $ 225.00 | $ 29,452.50 |
| Janelle E. Chase | Paralegal/Clerk | 0.5 | $ 200.00 | $ 100.00 |
| Tova C. Maclean | Paralegal/Clerk | 1.0 | $ 200.00 | $ 200.00 |
| Kait Heacock | Paralegal/Clerk | 20.3 | $ 175.00 | $ 3,552.50 |
| Cassandra Bohannon | Paralegal/Clerk | 36.7 | $ 125.00 | $ 4,587.50 |
| | Summary: | 580.9 | | $ 234,747.50 |

|  |  |
|---|---|
| Total Lodestar: | $ 234,747.50 |
| Total Expenses: | $ 7,302.69 |
| Total: | $ 242,050.19 |

| | | | | Total Fees Obtained TMDW: | $518,349.64 |

**Case D:**

No attorneys' fees have been paid to counsel pending a ruling on Plaintiffs' motion for reconsideration in that matter.

| Professional | Role | Time | | Rate | | Total |
|---|---|---|---|---|---|---|
| Beth E. Terrell | Partner | 179.5 | $ | 675.00 | $ | 121,162.50 |
| Kim L. Gunning | Partner | 146.7 | $ | 525.00 | $ | 77,017.50 |
| Charlotte S. Sanders | Paralegal/Clerk | 4.6 | $ | 325.00 | $ | 1,495.00 |
| Jennifer J. Boschen | Paralegal/Clerk | 23.2 | $ | 305.00 | $ | 7,076.00 |
| Eden B. Nordby | Paralegal/Clerk | 12.7 | $ | 305.00 | $ | 3,873.50 |
| Whitney B. Stark | Associate | 10.9 | $ | 525.00 | $ | 5,722.50 |
| Bradford K. Kinsey | Paralegal/Clerk | 43.0 | $ | 200.00 | $ | 8,600.00 |
| | Summary: | 420.6 | | | $ | 224,947.00 |

| | | |
|---|---|---|
| Total Lodestar: | $ | **224,947.00** |
| Total Expenses: | $ | **20,902.05** |
| Total: | $ | **245,849.05** |
| Total Fees Obtained TMDW: | | **$224,947** |

**Response to Interrogatory No. 3 - HIGHLY CONFIDENTIAL - SUBJECT TO CONFIDENTIALITY ORDER**

**Case V:**

| Professional | Role | Time | | Rate | | Total |
|---|---|---|---|---|---|---|
| Michael D. Daudt | Partner | 756.8 | $ | 650.00 | $ | 491,920.00 |
| Beth E. Terrell | Partner | 78.2 | $ | 650.00 | $ | 50,830.00 |
| Jennifer R. Murray | Partner | 48.7 | $ | 500.00 | $ | 24,350.00 |
| Mary B. Reiten | Partner | 74.7 | $ | 500.00 | $ | 37,350.00 |
| Kim L. Gunning | Partner | 4.3 | $ | 450.00 | $ | 1,935.00 |
| Whitney B. Stark | Associate | 11.9 | $ | 400.00 | $ | 4,760.00 |
| Erika L. Nusser | Associate | 47.7 | $ | 325.00 | $ | 15,502.50 |
| Blythe H. Chandler | Associate | 210.9 | $ | 265.00 | $ | 55,888.50 |
| Jennifer B. Boschen | Paralegal/Clerk | 138.7 | $ | 250.00 | $ | 34,675.00 |
| Rachel E. Hoover | Paralegal/Clerk | 44.1 | $ | 250.00 | $ | 11,025.00 |
| Eden B. Nordby | Paralegal/Clerk | 31.0 | $ | 250.00 | $ | 7,750.00 |
| Sam J. Strauss | Associate | 24.1 | $ | 250.00 | $ | 6,025.00 |
| Bradford K. Kinsey | Paralegal/Clerk | 82.3 | $ | 200.00 | $ | 16,460.00 |
| Jenna C. Smith | Paralegal/Clerk | 2.3 | $ | 200.00 | $ | 460.00 |
| Shira Zucker | Paralegal/Clerk | 18.0 | $ | 150.00 | $ | 2,700.00 |
| Sam A. Hoover | Paralegal/Clerk | 6.0 | $ | 100.00 | $ | 600.00 |
| Hannelore K. Ohaus | Paralegal/Clerk | 24.4 | $ | 100.00 | $ | 2,440.00 |
| | Summary: | 1604.1 | | | $ | 764,671.00 |

|  |  |  |  |
|---|---|---|---|
| Total Lodestar: | $ | 764,671.00 |
| Total Expenses: | $ | 47,399.56 |
| Total: | $ | 812,070.56 |

**Case W:**

| Professional | Role | Time | Rate |  | Total |
|---|---|---|---|---|---|
| Michael D. Daudt | Partner | 63.9 | $ | 650.00 | $ | 41,535.00 |
| Beth E. Terrell | Partner | 47.2 | $ | 650.00 | $ | 30,680.00 |
| Kim L. Gunning | Partner | 228.7 | $ | 450.00 | $ | 102,915.00 |
| Marc C. Cote | Associate | 8.2 | $ | 375.00 | $ | 3,075.00 |
| Jennifer B. Boschen | Paralegal/Clerk | 17.8 | $ | 250.00 | $ | 4,450.00 |
| Eden B. Nordby | Paralegal/Clerk | 23.7 | $ | 250.00 | $ | 5,925.00 |
| Bradford K. Kinsey | Paralegal/Clerk | 29.1 | $ | 200.00 | $ | 5,820.00 |
| Anna-Rita Wong | Paralegal/Clerk | 17.3 | $ | 200.00 | $ | 3,460.00 |
| Charlotte S. Sanders | Paralegal/Clerk | 4.4 | $ | 200.00 | $ | 880.00 |
|  | Summary: | 440.3 |  |  | $ | 198,740.00 |

|  |  |  |  |
|---|---|---|---|
| Total Lodestar: | $ | 198,740.00 |
| Total Expenses: | $ | 8,552.67 |
| Total: | $ | 207,292.67 |

**Case X:**

| Professional | Role | Time | Rate |  | Total |
|---|---|---|---|---|---|
| Michael D. Daudt | Partner | 417.0 | $ | 650.00 | $ | 271,050.00 |
| Beth E. Terrell | Partner | 62.3 | $ | 650.00 | $ | 40,495.00 |
| Bradley E. Neunzig | Associate | 16.9 | $ | 475.00 | $ | 8,027.50 |
| Jennifer R. Murray | Partner | 4.5 | $ | 450.00 | $ | 2,025.00 |
| Kim L. Gunning | Partner | 5.6 | $ | 450.00 | $ | 2,520.00 |
| Marc C. Cote | Partner | 8.4 | $ | 375.00 | $ | 3,150.00 |
| Erika L. Nusser | Associate | 7.9 | $ | 325.00 | $ | 2,567.50 |
| Beau C. Haynes | Associate | 68.1 | $ | 265.00 | $ | 18,046.50 |
| Jennifer B. Boschen | Paralegal/Clerk | 3.7 | $ | 250.00 | $ | 925.00 |
| Rachel E. Hoover | Paralegal/Clerk | 3.2 | $ | 250.00 | $ | 800.00 |
| Eden B. Nordby | Paralegal/Clerk | 0.4 | $ | 250.00 | $ | 100.00 |
| Bradford K. Kinsey | Paralegal/Clerk | 55.0 | $ | 200.00 | $ | 11,000.00 |
| Janelle E. Chase | Paralegal/Clerk | 10.7 | $ | 200.00 | $ | 2,140.00 |
|  | Summary: | 663.7 |  |  | $ | 362,846.50 |

|  |  |  |  |
|---|---|---|---|
| Total Lodestar: | $ | 362,846.50 |
| Total Expenses: | $ | 12,753.43 |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  | **Total: $** | **375,599.93** |

**Case Y:**

| Professional | Role | Time | Rate | Total |
|---|---|---|---|---|
| Beth E. Terrell | Partner | 32.2 $ | 650.00 $ | 20,930.00 |
| Jennifer R. Murray | Partner | 1.8 $ | 500.00 $ | 900.00 |
| Kim L. Gunning | Partner | 196.9 $ | 450.00 $ | 88,605.00 |
| Beau C. Haynes | Associate | 9.4 $ | 265.00 $ | 2,491.00 |
| Bradford K. Kinsey | Paralegal/Clerk | 24.6 $ | 200.00 $ | 4,920.00 |
|  | Summary: | 264.9 | $ | 117,846.00 |

|  |  |  |
|---|---|---|
| **Total Lodestar: $** | **117,846.00** |
| **Total Expenses: $** | **4,478.50** |
| **Total: $** | **122,324.50** |

**Case E:**

| Professional | Role | Time | Rate | Total |
|---|---|---|---|---|
| Beth E. Terrell | Partner | 30.3 $ | 650.00 $ | 19,695.00 |
| Mary B. Reiten | Partner | 1.1 $ | 500.00 $ | 550.00 |
| Kim L. Gunning | Partner | 15.0 $ | 450.00 $ | 6,750.00 |
| Sharon M. Safarik | Associate | 42.1 $ | 325.00 $ | 13,682.50 |
| Sam J. Strauss | Associate | 6.8 $ | 250.00 $ | 1,700.00 |
| Jennifer J. Boschen | Paralegal/Clerk | 0.1 $ | 250.00 $ | 25.00 |
| Rachel E. Hoover | Parlegal/Clerk | 1.5 $ | 225.00 $ | 337.50 |
| Bradford K. Kinsey | Paralegal/Clerk | 7.5 $ | 200.00 $ | 1,500.00 |
| Christine L. Stanley | Paralegal/Clerk | 0.4 $ | 200.00 $ | 80.00 |
|  | Summary: | 104.8 | $ | 44,320.00 |

|  |  |  |
|---|---|---|
| **Total Lodestar: $** | **44,320.00** |
| **Total Expenses: $** | **2,932.09** |
| **Total: $** | **47,252.09** |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE CAPITAL ONE TELEPHONE CONSUMER LITIGATION ACT LITIGATION | Master Docket No. 1:12-cv-10064 MDL No. 2416 |
| This document relates to: | CLASS ACTION |
| All Cases | JURY TRIAL DEMANDED |

**OBJECTOR COLLINS' SECOND SET OF INTERROGATORIES TO PLAINTIFFS
AND TERRELL MARSHALL DAUDT & WILLIE PLLC'S OBJECTIONS AND
ANSWERS THERETO**

Plaintiffs, through their attorneys of record, provide their objections and responses to

Objector Collins' second set of Interrogatories to Plaintiffs.

**INTERROGATORIES**

**Interrogatory No. 4:** Please IDENTIFY all TCPA ACTIONS for which YOUR

COUNSEL of record in these proceedings has been awarded attorneys' fees and/or litigation

expenses, and for each such action, IDENTIFY:

> a.     The LODESTAR AMOUNT incurred by YOUR COUNSEL, regardless of
>
> whether the LODESTAR AMOUNT was requested or submitted to the court;
>
> b.     The total amount of litigation expenses incurred by YOUR COUNSEL, regardless
>
> of whether such expenses were requested or submitted to the court;
>
> c.     The total amount of attorneys' fees awarded by the court and the specific portion
>
> of that amount obtained by YOUR COUNSEL; and
>
> d.     The LODESTAR MULTIPLIER, if any, used by the court.

- 1 -

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

**ANSWER:** Plaintiffs object to this interrogatory because it is overly broad and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not reasonably calculated to lead to the discovery of admissible evidence in this litigation. Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34. Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER. Plaintiffs further object to the extent this request seeks attorney-client privileged material and/or work product. Plaintiffs further object that the terms "lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further object that the term "legal professional" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241), and Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion for Additional Discovery (Dkt. No. 279).

Plaintiffs further object to the extent that the interrogatory is duplicative of Interrogatory No. 2 of Objector Collins' First Set of Interrogatories and will not repeat their response again here.

In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements.

All information produced in response to this interrogatory is subject to the Confidentiality

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

Order entered by this Court on November 12, 2014 (hereinafter "Confidentiality Order").  (Dkt. No. 247.)  Plaintiffs expressly reserve all rights, including the right to request appropriate sanctions if the information produced in response to this interrogatory is disclosed to anyone other than the persons expressly permitted pursuant to the Confidentiality Order.  Without waiving these objections, Plaintiffs answer as follows:

Case T:

- Attorneys' Fees received: $548,199.95.
- Costs reimbursed: $23,797.76.
- Lodestar multiplier: No multiplier was used by the Court.

Case U:

- Attorneys' Fees received: $368,521.11.
- Costs reimbursed: $7,168.52.
- Lodestar multiplier: A multiplier of 2.2 was used by the Court.

Case N:

- Attorneys' Fees received: $745,990.73.
- Costs reimbursed: $7,668.55.
- Lodestar multiplier: No multiplier was used by the Court.

Case C:

- Attorneys' Fees received: $315,959.16.
- Costs reimbursed: $3,888.67.
- Lodestar multiplier: The Court used a multiplier of "approximately 3.5."

Case B:

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

- Attorneys' Fees received: $518,349.64.

- Costs reimbursed: $7,302.69.

- Lodestar multiplier: No multiplier was used by the Court.

Case D:

- Lodestar incurred: $224,947.00.

- Costs incurred: $20,902.05.

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

RESPECTFULLY SUBMITTED AND DATED this 25th day of November, 2014.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:   /s/  Jonathan D. Selbin
             Jonathan D. Selbin
Jonathan D. Selbin, *Admitted Pro Hac Vice*
Email:  jselbin@lchb.com
Douglas I. Cuthbertson, *Admitted Pro Hac Vice*
Email:  dcuthbertson@lchb.com
LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

Daniel M. Hutchinson, *Admitted Pro Hac Vice*
Email:  dhutchinson@lchb.com
LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

TERRELL MARSHALL DAUDT
  & WILLIE PLLC

By:   /s/ Beth E. Terrell
             Beth E. Terrell

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

Beth E. Terrell
Email: bterrell@tmdwlaw.com
Michael D. Daudt
Email: mdaudt@tmdwlaw.com
TERRELL MARSHALL DAUDT
  & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

*Interim Lead Counsel*

KEOGH LAW, LTD

By:   /s/ Keith James Keogh
         Keith James Keogh

Keith James Keogh
Email: keith@keoghlaw.com
Craig M. Shapiro
Email: cshapiro@keoghlaw.com
Timothy J. Sostrin
Email: tsostrin@keoghlaw.com
KEOGH LAW, LTD.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
Telephone: (312) 726-1092
Facsimile: (312) 726-1093

*Liaison Counsel*

- 6 -

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

## **CERTIFICATE OF SERVICE**

I, Beth E. Terrell, hereby certify that on November 25, 2014, I electronically transmitted

the foregoing to the following:

> Melissa A. Holyoak
> CENTER FOR CLASS ACTION FAIRNESS
> 1718 M Street NW, No. 236
> Washington, DC 20036
> Telephone: (573) 823-5377
> Email: melissaholyoak@gmail.com

DATED this 25th day of November, 2014.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:   /s/ Beth E. Terrell
          Beth E. Terrell
          Email: bterrell@tmdwlaw.com
          936 North 34th Street, Suite 400
          Seattle, Washington 98103-8869
          Telephone: (206) 816-6603
          Facsimile: (206) 350-3528

*Attorneys for Plaintiff*

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

## CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on November 25, 2014, I electronically transmitted the foregoing to the following:

> Melissa A. Holyoak
> CENTER FOR CLASS ACTION FAIRNESS
> 1718 M Street NW, No. 236
> Washington, DC 20036
> Telephone: (573) 823-5377
> Email: melissaholyoak@gmail.com

DATED this 25th day of November, 2014.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:   /s/ Beth E. Terrell
      Beth E. Terrell
      Email: bterrell@tmdwlaw.com
      936 North 34th Street, Suite 400
      Seattle, Washington 98103-8869
      Telephone: (206) 816-6603
      Facsimile: (206) 350-3528

*Attorneys for Plaintiff*

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE CAPITAL ONE TELEPHONE CONSUMER LITIGATION ACT LITIGATION | Master Docket No. 1:12-cv-10064 MDL No. 2416 |
| This document relates to: | CLASS ACTION |
| All Cases | JURY TRIAL DEMANDED |

**OBJECTOR COLLINS' PROPOSED FIRST SET OF INTERROGATORIES TO
PLAINTIFFS AND OBJECTIONS AND ANSWERS THERETO**

Plaintiffs, through their attorneys of record, provide their objections and responses to Objector Collins' first set of Interrogatories to Plaintiffs.

**INTERROGATORIES**

**Interrogatory No. 1:** Please IDENTIFY the LODESTAR AMOUNT that YOUR COUNSEL has incurred in these proceedings.

**ANSWER**

*See* attached spreadsheet.

**Interrogatory No. 2:** Please IDENTIFY all TCPA ACTIONS for which YOUR COUNSEL of record in these proceedings has been awarded attorneys' fees and/or litigation expenses, and for each such action, IDENTIFY:

a.   The LODESTAR AMOUNT and the LODESTAR MULTIPLIER requested to the court;

b.   The total amount of attorneys' fees awarded to YOUR COUNSEL and the LODESTAR MULTIPLIER, if any, used by the court;

c.      The total amount of litigation expenses requested by YOUR COUNSEL and the total amount of litigation expenses awarded to YOUR COUNSEL.

**ANSWER:**  Plaintiffs object to this interrogatory because it is overly broad, and unduly burdensome.  Plaintiffs further object to this interrogatory because it seeks information not reasonably calculated to lead to the discovery of admissible evidence in this litigation.  Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34.  Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER.  Plaintiffs further object to the extent this request seeks attorney-client privileged material and/or work product.  Plaintiffs further object that the terms "lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome.  Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome.  Plaintiffs further object that the term "legal professional" is vague and ambiguous, and therefore renders the interrogatory overly burdensome.  Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), and Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241).

In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements.  Without waiving these objections, Plaintiffs answer as follows:

*See* attached spreadsheet.

**Interrogatory No. 3:**  Please IDENTIFY all TCPA ACTIONS in which YOUR COUNSEL of record in these proceedings was unable to recover attorneys' fees due to an adverse ruling by the court in which such action was pending, and for each such action,

IDENTIFY:

    a.      The LODESTAR AMOUNT incurred by YOUR COUNSEL; and

    b.      The total amount of litigation expenses incurred by YOUR COUNSEL.

**ANSWER:** Plaintiffs object to this interrogatory because it is overly broad, and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not reasonably calculated to lead to the discovery of admissible evidence in this litigation. Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34. Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER. Plaintiffs further object to this interrogatory as it explicitly seeks confidential and commercially sensitive financial information, trade secrets, attorney-client privileged material, and/or work product. Plaintiffs further object that the terms "lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further object that the term "legal professional" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), and Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241).

In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements.

All information produced in response to this interrogatory is subject to the Confidentiality Order entered by this Court on November 12, 2014 (hereinafter "Confidentiality Order"). (Dkt. No. 247.) Plaintiffs expressly reserve all rights, including the right to request appropriate

sanctions, if the information produced in response to this interrogatory is disclosed to anyone other than the persons expressly permitted pursuant to the Confidentiality Order. Without waiving these objections, Plaintiffs answer as follows:

　　　*See* attached spreadsheet.

RESPECTFULLY SUBMITTED AND DATED this 13th day of November, 2014.

　　　　　　　　　　　　　　LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

　　　　　　　　　By:　  /s/  Jonathan D. Selbin
　　　　　　　　　　　　　Jonathan D. Selbin

　　　　　　　　　Jonathan D. Selbin, *Admitted Pro Hac Vice*
　　　　　　　　　Email:  jselbin@lchb.com
　　　　　　　　　Douglas I. Cuthbertson, *Admitted Pro Hac Vice*
　　　　　　　　　Email:  dcuthbertson@lchb.com
　　　　　　　　　LIEFF CABRASER HEIMANN
　　　　　　　　　　& BERNSTEIN, LLP
　　　　　　　　　250 Hudson Street, 8th Floor
　　　　　　　　　New York, NY  10013-1413
　　　　　　　　　Telephone:  (212) 355-9500
　　　　　　　　　Facsimile:  (212) 355-9592

　　　　　　　　　Daniel M. Hutchinson, *Admitted Pro Hac Vice*
　　　　　　　　　Email:  dhutchinson@lchb.com
　　　　　　　　　LIEFF CABRASER HEIMANN
　　　　　　　　　　& BERNSTEIN, LLP
　　　　　　　　　275 Battery Street, 29th Floor
　　　　　　　　　San Francisco, CA  94111-3339
　　　　　　　　　Telephone:  (415) 956-1000
　　　　　　　　　Facsimile:  (415) 956-1008

　　　　　　　　　TERRELL MARSHALL DAUDT
　　　　　　　　　　& WILLIE PLLC

　　　　　　　　　By:　  /s/ Beth E. Terrell
　　　　　　　　　　　　　Beth E. Terrell

Beth E. Terrell
Email: bterrell@tmdwlaw.com
Michael D. Daudt
Email: mdaudt@tmdwlaw.com
TERRELL MARSHALL DAUDT
   & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

*Interim Lead Counsel*

KEOGH LAW, LTD

By:   /s/ Keith James Keogh
          Keith James Keogh

Keith James Keogh
Email: keith@keoghlaw.com
Craig M. Shapiro
Email: cshapiro@keoghlaw.com
Timothy J. Sostrin
Email: tsostrin@keoghlaw.com
KEOGH LAW, LTD.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
Telephone: (312) 726-1092
Facsimile: (312) 726-1093

*Liaison Counsel*

## CERTIFICATE OF SERVICE

I, Alexander H. Burke, hereby certify that on November 13, 2014, I served this document upon the following person by email:

Melissa A. Holyoak
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Telephone: (573) 823-5377
Email: melissaholyoak@gmail.com

DATED this 13th day of November, 2014.

/s/Alexander H. Burke

**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE | ) | |
| CAPITAL ONE TELEPHONE | ) | Master Docket No. 1:12-cv-10064 |
| CONSUMER PROTECTION ACT | ) | MDL No. 2416 |
| LITIGATION | ) | |
| | ) | |
| This document relates to: | ) | |
| | ) | |
| BRIDGETT AMADECK, et al., | ) | Case No: 1:12-cv-10135 |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL ONE FINANCIAL | ) | |
| CORPORATION, and CAPITAL ONE | ) | |
| BANK (USA), N.A. | ) | |
| This document relates to: | ) | |
| | ) | |
| NICHOLAS MARTIN, et al., | ) | Case No: 1:11-cv-05886 |
| | ) | |
| v. | ) | |
| | ) | |
| LEADING EDGE RECOVERY | ) | |
| SOLUTIONS, LLC, and CAPITAL ONE | ) | |
| BANK (USA), N.A. | ) | |
| This document relates to: | ) | |
| | ) | |
| CHARLES C. PATTERSON, | ) | Case No: 1:12-cv-01061 |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL MANAGEMENT | ) | |
| SERVICES, L.P. and CAPITAL ONE | ) | |
| BANK (USA), N.A. | ) | |

**BURKE LAW OFFICES, LLC'S RESPONSES TO
OBJECTOR COLLINS' SECOND SET OF INTERROGATORIES TO PLAINTIFFS**

PROPOUNDING PARTY:   Objector Jeffrey T. Collins

RESPONDING PARTY:   Plaintiffs Charles C. Patterson, David Mack, Tiffany Alarcon,
                                      Bridgett Amadeck, and Andrew Kalik

SET NUMBER:   Two

**INTERROGATORY NO. 4:**

Please IDENTIFY all TCPA ACTIONS for which YOUR COUNSEL of record in these proceedings has been awarded attorneys' fees and/or litigation expenses, and for each such action, IDENTIFY:

a. The LODESTAR AMOUNT incurred by YOUR COUNSEL, regardless of whether the LODESTAR AMOUNT was requested or submitted to the court;

b. The total amount of litigation expenses incurred by YOUR COUNSEL, regardless of whether such expenses were requested or submitted to the court;

c. The total amount of attorneys' fees awarded by the court and the specific portion of that amount obtained by YOUR COUNSEL; and

d. the LODESTAR MULTIPLIER, if any, used by the court.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiffs object to this interrogatory because it is overly broad and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not reasonably calculated to lead to the discovery of admissible evidence in this litigation. Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34. Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER. Plaintiffs further object to the extent this request seeks attorney-client privileged material and/or work product. Plaintiffs further object that the terms "lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further object that the term "legal professional" is vague and

– 1 –

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241), and Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion for Additional Discovery (Dkt. No. 279).

Plaintiffs further object to the extent that the interrogatory is duplicative of Interrogatory No. 2 of Objector Collins' First Set of Interrogatories and will not repeat their response again here.

In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements.

All information produced in response to this interrogatory is subject to the Confidentiality Order entered by this Court on November 12, 2014 (hereinafter "Confidentiality Order"). (Dkt. No. 247.) Plaintiffs expressly reserve all rights, including the right to request appropriate sanctions if the information produced in response to this interrogatory is disclosed to anyone other than the persons expressly permitted pursuant to the Confidentiality Order. Without waiving these objections, Plaintiffs answer as follows:

Burke Law Offices, LLC has not requested a lodestar amount, a lodestar multiplier, or litigation costs for any responsive TCPA class action settlement. Rather, class counsel have sought fees under the percentage-of-the-fund method.

Subject to the foregoing, see Burke Law Offices, LLC's prior and amended responses to Interrogatory 2, regarding lodestar information. Burke Law Offices, LLC further responds as

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

delineated in the attached excel spreadsheets; the format requested by Objector Collins.


Dated:  November 25, 2014                Respectfully submitted,


                                         /s/Alexander H. Burke

                                         **BURKE LAW OFFICES, LLC**
                                         155 N. Michigan Ave., Suite 9020
                                         Chicago, IL 60601
                                         (312) 729-5288
                                         (312) 729-5289 (fax)
                                         ABurke@BurkeLawLLC.com
                                         www.BurkeLawLLC.com

                                         *Plaintiffs' Counsel*

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2014, service of this document was

accomplished via email to the following:

> Melissa A. Holyoak
> melissaholyoak@gmail.com
> CENTER FOR CLASS ACTION FAIRNESS
> 1718 M Street NW, No. 236
> Washington, DC 20036
> Phone: (573) 823-5377
>
> *Attorneys for Objector Jeffrey T. Collins*

Dated this 25th day of November, 2014.


/s/Alexander H. Burke

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

Burke Law Offices, LLC

**Interrogatory 1**

| Case | Lawyer | Hours | Rate | Expenses | Lodestar Total |
|---|---|---|---|---|---|
| *Case A* | A. Burke | 384.50 | $ 575.00 | $ 4,666.95 | $ 221,087.50 |

**Interrogatory 2: Fee Awards**

| Case | Lawyer | Hours | | Rate Requested | Amount Requested | Multiplier Requested | Amount Approved | Expenses Requested | Expenses Approved |
|---|---|---|---|---|---|---|---|---|---|
| *Case M* | A. Burke | | $ | 450.00 | $ 36,360.00 | 1.00 | $ 36,360.00 | NA | NA |
| *Case D* | A. Burke | 156.90 | $ | 575.00 | please see court file | please see court file | please see court file | $ 1,532.00 | please see court file |

**Interrogatory 3: Adverse Ruling**

| Case | Lawyer | Hours | Rate | Expenses | Lodestar Loss |
|---|---|---|---|---|---|
| *Case R* | A. Burke | 332.20 | $ 500.00 | $ 2,046.70 | $ 166,100.00 |
| | D. Marovitch | 124.30 | $ 350.00 | | $ 43,505.00 |
| *Case S* | A. Burke | 210.00 | $ 500.00 | $ 183.80 | $ 105,000.00 |

**Interrogatory 4: Additional Fee Awards**

Case N

 Court awarded one-third of the fund (inclusive of expenses) in the amount $1,500,000
 No Lodestar Amount and Lodestar Multiplier was submitted or requested by Court.
 Check amount

| | |
|---|---|
| Interrogatory 4(a): Lodestar Amount Incurred | $ 157,150.00 |
| Interrogatory 4(b): Expenses Incurred | $ 350.00 |
| Interrogatory 4(c): Fees Awarded | $ 1,500,000.00 |
| Interrogatory 4(c): Fees Received by Burke Law | $ 746,340.72 |
| Interrogatory 4(d): Lodestar Multiplier | None requested. |

Case O

 Court awarded one-third of the fund (inclusive of expenses) in the amount of $5,000,000
 No Lodestar Amount and Lodestar Multiplier was submitted or requested by Court.

| | |
|---|---|
| Interrogatory 4(a): Lodestar Amount Incurred | $ 194,500.00 |
| Interrogatory 4(b): Expenses Incurred | $ 10,987.43 |
| Interrogatory 4(c): Fees Awarded | $ 5,000,000.00 |
| Interrogatory 4(c): Fees Received by Burke Law | $ 1,000,000.00 |
| Interrogatory 4 None. | None requested. |

Case P

 Court awarded one-third of the fund (inclusive of expenses) in the amount of $1,633,333.33
 No Lodestar Amount and Lodestar Multiplier was requested to Court.

| | |
|---|---|
| Interrogatory 4(a): Lodestar Amount Incurred | $ 125,050.00 |
| Interrogatory 4(b): Expenses Incurred | $ 350.00 |
| Interrogatory 4(c): Fees Awarded | $ 1,633,333.33 |
| Interrogatory 4(c): Fees Received by Burke Law | $ 1,633,333.33 |
| Interrogatory 4(d): Lodestar Multiplier | None. |

Case Q

 Court awarded one-third of the fund (inclusive of expenses) in the amount of $3,052,500.00.
 No Lodestar Amount and Lodestar Multiplier was submitted or requested by Court.

| | |
|---|---|
| Interrogatory 4(a): Lodestar Amount Incurred | $ 194,500.00 |
| Interrogatory 4(b): Expenses Incurred | No expenses |
| Interrogatory 4(c): Fees Awarded | $ 3,052,500.00 |
| Interrogatory 4(c): Fees Received by Burke Law | $ 610,038.80 |
| Interrogatory 4(d): Lodestar Multiplier | None. |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| CAPITAL ONE TELEPHONE CONSUMER | ) | Master Docket No. 1:12-cv-10064 |
| PROTECTION ACT LITIGATION | ) | MDL No. 2416 |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| This document relates to: | ) | |
| | ) | |
| BRIDGETT AMADECK, et al., | ) | Case No: 1:12-cv-10135 |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL ONE FINANCIAL CORPORATION, | ) | |
| and CAPITAL ONE BANK (USA), N.A. | ) | |
| | ) | |

| | | |
|---|---|---|
| This document relates to: | ) | |
| | ) | |
| NICHOLAS MARTIN, et al., | ) | Case No: 1:11-cv-05886 |
| | ) | |
| v. | ) | |
| | ) | |
| LEADING EDGE RECOVERY SOLUTIONS, | ) | |
| LLC, and CAPITAL ONE BANK (USA), N.A. | ) | |
| | ) | |

| | | |
|---|---|---|
| This document relates to: | ) | |
| | ) | |
| CHARLES C. PATTERSON, | ) | Case No: 1:12-cv-01061 |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL MANAGEMENT SERVICES, L.P. | ) | |
| and CAPITAL ONE BANK (USA), N.A. | ) | |
| | ) | |

## KEOGH LAW LTD.'S RESPONSES TO OBJECTOR COLLINS' PROPOSED FIRST SET OF INTERROGATORIES TO PLAINTIFFS

PROPOUNDING PARTY:    Objector Jeffrey T. Collins

RESPONDING PARTY:    Plaintiffs Charles C. Patterson, David Mack, Tiffany Alarcon, Bridgett Amadeck, and Andrew Kalik

SET NUMBER:    One

## RESPONSES TO OBJECTOR COLLINS' FIRST SET OF INTERROGATORIES TO PLAINTIFFS

**INTERROGATORY NO. 1:**

Please IDENTIFY the LODESTAR AMOUNT that YOUR COUNSEL has incurred in these proceedings.

**RESPONSE TO INTERROGATORY NO. 1:**

See attached spreadsheet.

**INTERROGATORY NO. 2:**

Please IDENTIFY all TCPA ACTIONS for which YOUR COUNSEL of record in these proceedings has been awarded attorneys' fees and/or litigation expenses, and for each such action, IDENTIFY:

    a.    The LODESTAR AMOUNT and the LODESTAR MULTIPLIER requested to the court;

    b.    The total amount of attorneys' fees awarded to YOUR COUNSEL and the LODESTAR MULTIPLIER, if any, used by the court;

    c.    The total amount of litigation expenses requested by YOUR COUNSEL and the total amount of litigation expenses awarded to YOUR COUNSEL.

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiffs object to this interrogatory because it is overly broad and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not reasonably

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

1205401.3

calculated to lead to the discovery of admissible evidence in this litigation. Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34. Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER. Plaintiffs further object to the extent this request seeks attorney-client privileged material and/or work product. Plaintiffs further object that the terms "lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further object that the term "legal professional" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), and Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241).

In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements. Without waiving these objections, Plaintiffs answer as follows:

Keogh Law. Ltd. has not requested a lodestar amount, a lodestar multiplier, or litigation costs for any TCPA class action settlement. Rather, class counsel have sought fees under the percentage-of-the-fund method. Keogh Law, Ltd. has not separately sought or been awarded

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

litigation expenses in any TCPA class action settlement. Rather, class counsel has only sought

litigation expenses within the requested percentage, thereby reducing that percentage.

Subject to the foregoing, please see attached.

## INTERROGATORY NO. 3:

Please IDENTIFY all TCPA ACTIONS in which YOUR COUNSEL of record in these

proceedings was unable to recover attorneys' fees due to an adverse ruling by the court in which

such action was pending, and for each such action, IDENTIFY:

      a.      The LODESTAR AMOUNT incurred by YOUR COUNSEL; and

      b.      The total amount of litigation expenses incurred by YOUR COUNSEL.

## RESPONSE TO INTERROGATORY NO. 3:

Plaintiffs object to this interrogatory because it is overly broad, and unduly burdensome.

Plaintiffs further object to this interrogatory because it seeks information not reasonably

calculated to lead to the discovery of admissible evidence in this litigation. Plaintiffs object to

this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ.

P. 26, 33, and 34. Plaintiffs further object to this interrogatory to the extent it seeks information

already in Objector Collins' possession, custody, or control and/or readily available through

public databases such as PACER. Plaintiffs further object to this interrogatory as it explicitly

seeks confidential and commercially sensitive financial information, trade secrets, attorney-client

privileged material, and/or work product. Plaintiffs further object that the terms "lodestar,"

"lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and

ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that

the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly

burdensome. Plaintiffs further object that the term "legal professional" is vague and ambiguous,

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

1205401.3

and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), and Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241).

In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements.

All information produced in response to this interrogatory is subject to the Confidentiality Order entered by this Court on November 12, 2014 (hereinafter "Confidentiality Order"). (Dkt. No. 247.) Plaintiffs expressly reserve all rights, including the right to request appropriate sanctions if the information produced in response to this interrogatory is disclosed to anyone other than the persons expressly permitted pursuant to the Confidentiality Order. Without waiving these objections, Plaintiffs refers Mr. Collins to the attached spreadsheet.

/s/ Keith J. Keogh

Keith J. Keogh
Keogh Law, Ltd.
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Keoghlaw.com
312.726.1092
312.726.1093 (fax)

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER
1205401.3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2014, service of this document was accomplished via email to the following:

Melissa A. Holyoak
melissaholyoak@gmail.com
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (573) 823-5377

*Attorneys for Objector Jeffrey T. Collins*

Dated this 14th day of November, 2014.

/s/ Keith J. Keogh

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

1205401.3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE | ) | |
| CAPITAL ONE TELEPHONE CONSUMER | ) | Master Docket No. 1:12-cv-10064 |
| PROTECTION ACT LITIGATION | ) | MDL No. 2416 |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| This document relates to: | ) | |
| | ) | |
| BRIDGETT AMADECK, et al., | ) | Case No: 1:12-cv-10135 |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL ONE FINANCIAL CORPORATION, | ) | |
| and CAPITAL ONE BANK (USA), N.A. | ) | |
| | ) | |

| | | |
|---|---|---|
| This document relates to: | ) | |
| | ) | |
| NICHOLAS MARTIN, et al., | ) | Case No: 1:11-cv-05886 |
| | ) | |
| v. | ) | |
| | ) | |
| LEADING EDGE RECOVERY SOLUTIONS, | ) | |
| LLC, and CAPITAL ONE BANK (USA), N.A. | ) | |
| | ) | |

| | | |
|---|---|---|
| This document relates to: | ) | |
| | ) | |
| CHARLES C. PATTERSON, | ) | Case No: 1:12-cv-01061 |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL MANAGEMENT SERVICES, L.P. | ) | |
| and CAPITAL ONE BANK (USA), N.A. | ) | |
| | ) | |

**KEOGH LAW LTD.'S RESPONSES TO OBJECTOR COLLINS' PROPOSED SECOND
SET OF INTERROGATORIES TO PLAINTIFFS**

PROPOUNDING PARTY:    Objector Jeffrey T. Collins

RESPONDING PARTY:     Plaintiffs Charles C. Patterson, David Mack, Tiffany Alarcon,
                      Bridgett Amadeck, and Andrew Kalik

### RESPONSES TO OBJECTOR COLLINS' FIRST SET OF INTERROGATORIES TO PLAINTIFFS

### INTERROGATORY NO. 4:

Please IDENTIFY all TCPA ACTIONS for which YOUR COUNSEL of record in these proceedings has been awarded attorneys' fees and/or litigation expenses, and for each such action, IDENTIFY:

a. The LODESTAR AMOUNT incurred by YOUR COUNSEL, regardless of whether the LODESTAR AMOUNT was requested or submitted to the court;

b. The total amount of litigation expenses incurred by YOUR COUNSEL, regardless of whether such expenses were requested or submitted to the court;

c. The total amount of attorneys' fees awarded by the court and the specific portion of that amount obtained by YOUR COUNSEL; and

d. the LODESTAR MULTIPLIER, if any, used by the court.

### RESPONSE TO INTERROGATORY NO. 4:

Plaintiffs object to this interrogatory because it is overly broad and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not reasonably calculated to lead to the discovery of admissible evidence in this litigation. Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34. Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER. Plaintiffs further object to the extent this request seeks attorney-client privileged material and/or work product. Plaintiffs further object that the terms

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

"lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further object that the term "legal professional" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241), and Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion for Additional Discovery (Dkt. No. 279).

Plaintiffs further object to the extent that the interrogatory is duplicative of Interrogatory No. 2 of Objector Collins' First Set of Interrogatories and will not repeat their response again here.

In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements.

All information produced in response to this interrogatory is subject to the Confidentiality Order entered by this Court on November 12, 2014 (hereinafter "Confidentiality Order"). (Dkt. No. 247.) Plaintiffs expressly reserve all rights, including the right to request appropriate sanctions if the information produced in response to this interrogatory is disclosed to anyone other than the persons expressly permitted pursuant to the Confidentiality Order. Without waiving these objections, Plaintiffs answer as follows:

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

Without waiving these objections, Plaintiffs refers Mr. Collins to the attached spreadsheet.

/s/ Keith J. Keogh

Keith J. Keogh
Keogh Law, Ltd.
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Keoghlaw.com
312.726.1092
312.726.1093 (fax)

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER
1205401.3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2014, service of this document was accomplished via email to the following:

>Melissa A. Holyoak
>melissaholyoak@gmail.com
>CENTER FOR CLASS ACTION FAIRNESS
>1718 M Street NW, No. 236
>Washington, DC 20036
>Phone: (573) 823-5377
>
>*Attorneys for Objector Jeffrey T. Collins*

Dated this 25th day of November, 2014.


/s/ Keith J. Keogh

HIGHLY CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER

1205401.3

**Response to 4 and 3 Anonynised**

**Responses to Interrogatory Number 4**

Case M:

        Court Awarded $1,250,000 in Fees and Costs. No Loadstar multiplier was used.

| | | |
|---|---|---|
| Interrogatory 4(a): Loadstar Amount incurred | $ | 42,960.00 |
| Interrogatory 4(b): Expenses Incurred | $ | 1,280.12 |
| Interrogatory 4(c): Fees Awarded | $ | 1,250,000.00 |
| Interrogatory 4(c): Fees Received by Keogh Law | $ | 60,902.89 |
| Loadstar Multiplier | None | |

*Case CC:*

        Court awarded $562,500 for fees and costs and no multiplier was requested or awarded.

| | | |
|---|---|---|
| Interrogatory 4(a): Loadstar Amount incurred | $ | 175,097.50 |
| Interrogatory 4(b): Expenses Incurred | $ | 3,777.13 |
| Interrogatory 4(c): Fees Awarded | $ | 562,500.00 |
| Interrogatory 4(c): Fees Received by Keogh Law | $ | 184,416.80 |
| Loadstar Multiplier | None | |

*Case Q*

        Court awarded 33% of the fund (inclusive of expenses) in the amount $3,052,500.00. No Loadstar

| | | |
|---|---|---|
| Interrogatory 4(a): Loadstar Amount incurred | $ | 258,102.50 |
| Interrogatory 4(b): Expenses Incurred | $ | 2,306.35 |
| Interrogatory 4(c): Fees Awarded | $ | 3,052,500.00 |
| Interrogatory 4(c): Fees Received by Keogh Law | $ | 12,200,776.00 |
| Loadstar Multiplier | None | |

*Case DD*

        Court Awarded $19,635.00 in fees. No Loadstar Multiplier was used.

| | | |
|---|---|---|
| Interrogatory 4(a): Loadstar Amount incurred | $ | 58,900.00 |
| Interrogatory 4(b): Expenses Incurred | $ | 405.00 |
| Interrogatory 4(c): Fees Awarded | $ | 19,635.00 |
| Interrogatory 4(c): Fees Received by Keogh Law | $ | 19,635.00 |
| Loadstar Multiplier | None | |

*Case EE(1)*

        Court awarded in the amount $1,089,000.00. No lodestar mutiplier was used.

| | | |
|---|---|---|
| Interrogatory 4(a): Loadstar Amount incurred | $ | 260,735.00 |
| Interrogatory 4(b): Expenses Incurred | $ | 13,863.32 |
| Interrogatory 4(c): Fees Awarded | $ | 1,089,000.00 |
| Interrogatory 4(c): Fees Received by Keogh Law | $ | 1,089,000.00 |
| Loadstar Multiplier | None | |

*Case EE(2)*

Keogh Law Supplemental Fee, Anonymised

Court granted fees and costs in the amount of $240,000.00, No Loadstar Multiplier was used.

| | |
|---|---|
| Interrogatory 4(a): Loadstar Amount incurred | $ 222,388.50 |
| Interrogatory 4(b): Expenses Incurred | $ 5,935.03 |
| Interrogatory 4(c): Fees Awarded | $ 240,000.00 |
| Interrogatory 4(c): Fees Received by Keogh Law | $ 240,000.00 |
| Loadstar Multiplier | None |

**Response to Interrogatory Number 3.**

| | | | |
|---|---|---|---|
| *Case FF* | Total Fees for Keogh Law, LTD | $ | 546,510.00 |
| | Total Expenses for Keogh Law, LTD | $ | 41,067.32 |
| *Case II* | Total Fees for Keogh Law | $ | 216,530.00 |
| | Total Expenses for Keogh Law, LTD | $ | 2,292.54 |
| *Case HH* | Total Fees for Keogh Law, LTD | $ | 252,735.00 |
| | Total Expenses for Keogh Law, LTD | $ | 4,840.16 |
| *Case GG* | Total Fees for Keogh Law, LTD | $ | 149,907.50 |
| | Total Expenses for Keogh Law, LTD | $ | 1,316.80 |
| *Case JJ* | Total Fees for Keogh Law, LTD | $ | 30,255.00 |
| | Total Expenses for Keogh Law, LTD | $ | 501.48 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE CAPITAL ONE TELEPHONE CONSUMER LITIGATION ACT LITIGATION | Master Docket No. 1:12-cv-10064 MDL No. 2416 |
| This document relates to: | CLASS ACTION |
| All Cases | JURY TRIAL DEMANDED |

## OBJECTOR COLLINS' FIRST SET OF INTERROGATORIES TO PLAINTIFFS <u>AND WILLIAMSON AND WILLIAMS, LLC'S OBJECTIONS AND ANSWERS THERETO</u>

Plaintiffs, through their attorneys of record, provide their objections and responses to Objector Collins' first set of Interrogatories to Plaintiffs.

### INTERROGATORIES

**Interrogatory No. 1:** Please IDENTIFY the LODESTAR AMOUNT that YOUR COUNSEL has incurred in these proceedings.

**ANSWER:** As further set forth in the attached spreadsheet, W&W has incurred the following lodestar and costs in *Case A,* through October 30, 2014:

- Lodestar incurred: $337,225.50
- Costs incurred: $8,098

**Interrogatory No. 2:** Please IDENTIFY all TCPA ACTIONS for which YOUR COUNSEL of record in these proceedings has been awarded attorneys' fees and/or litigation expenses, and for each such action, IDENTIFY:

    a.    The LODESTAR AMOUNT and the LODESTAR MULTIPLIER requested to the court;

    b.    The total amount of attorneys' fees awarded to YOUR COUNSEL and the

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

LODESTAR MULTIPLIER, if any, used by the court;

     c.     The total amount of litigation expenses requested by YOUR COUNSEL and the total amount of litigation expenses awarded to YOUR COUNSEL.

**ANSWER:** Plaintiffs object to this interrogatory because it is overly broad, and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not reasonably calculated to lead to the discovery of admissible evidence in this litigation. Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34. Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER. Plaintiffs further object to the extent this request seeks attorney-client privileged material and/or work product. Plaintiffs further object that the terms "lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further object that the term "legal professional" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), and Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241).

     In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements. Without waiving these objections, Plaintiffs answer as follows:

     As further set forth in the attached spreadsheet, W&W reports the following TCPA actions in which W&W has been awarded attorneys' fees and/or costs:

Case T:

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

In *Case T,* the Court ordered an award of fees to *all* Plaintiffs' counsel of $1,137,500. As set forth in the attached spreadsheet, W&W incurred the following lodestar and costs in *Case T,* through November 11, 2014:

- Lodestar incurred: $449,237.50
- Costs incurred: $16,715.54

Case U:

In *Case U,* the Court ordered an award of fees to *all* Plaintiffs' counsel of $750,000. As set forth in the attached spreadsheet, W&W incurred the following lodestar and costs in *Case U,* through November 11, 2014:

- Lodestar incurred: $170,699.50
- Costs incurred: $5,679.73

Case Z:

In *Case Z,* the Court ordered an award of fees costs to Plaintiff's counsel of $600,000. As set forth in the attached spreadsheet, W&W incurred the following lodestar and costs in *Case Z,* through November 11, 2014:

- Lodestar incurred: $192,041.00
- Costs incurred: $4,963.29

**Interrogatory No. 3:** Please IDENTIFY all TCPA ACTIONS in which YOUR COUNSEL of record in these proceedings was unable to recover attorneys' fees due to an adverse ruling by the court in which such action was pending, and for each such action, IDENTIFY:

a.    The LODESTAR AMOUNT incurred by YOUR COUNSEL; and

b.    The total amount of litigation expenses incurred by YOUR COUNSEL.

**ANSWER:** Plaintiffs object to this interrogatory because it is overly broad, and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not

- 3 -

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

reasonably calculated to lead to the discovery of admissible evidence in this litigation. Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34. Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER. Plaintiffs further object to this interrogatory as it explicitly seeks confidential and commercially sensitive financial information, trade secrets, attorney-client privileged material, and/or work product. Plaintiffs further object that the terms "lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further object that the term "legal professional" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), and Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241).

In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements.

All information produced in response to this interrogatory is subject to the Confidentiality Order entered by this Court on November 12, 2014 (hereinafter "Confidentiality Order"). (Dkt. No. 247.) Plaintiffs expressly reserve all rights, including to request appropriate sanctions, if the information produced in response to this interrogatory is disclosed to anyone other than the persons expressly permitted pursuant to the Confidentiality Order. Without waiving these objections, Plaintiffs answer as follows:

Subject to the foregoing, W&W reports the following TCPA actions in which W&W was unable to recover attorneys' fees because an adverse ruling was received or imminent:

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

*Case V*:

- Lodestar incurred: $259,190.50
- Costs incurred: $37,455.70

*Case W*:

- Lodestar incurred: $141,591
- Costs incurred: $2,871.40

*Case Y*:

- Lodestar incurred: $53,948.17
- Costs incurred: : $1,796.23

*Case AA:*

- Lodestar incurred: $205,668.00

- Costs incurred: $18,784.42

*Case BB:*

- Lodestar incurred: $201,514.17

- Costs incurred: $14,102.01

RESPECTFULLY SUBMITTED AND DATED this 26th day of November, 2014.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:   /s/  Jonathan D. Selbin
          Jonathan D. Selbin

- 5 -

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

Jonathan D. Selbin, *Admitted Pro Hac Vice*
Email: jselbin@lchb.com
Douglas I. Cuthbertson, *Admitted Pro Hac Vice*
Email: dcuthbertson@lchb.com
LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Daniel M. Hutchinson, *Admitted Pro Hac Vice*
Email: dhutchinson@lchb.com
LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

TERRELL MARSHALL DAUDT
& WILLIE PLLC

By:   /s/ Beth E. Terrell
        Beth E. Terrell

Beth E. Terrell
Email: bterrell@tmdwlaw.com
Michael D. Daudt
Email: mdaudt@tmdwlaw.com
TERRELL MARSHALL DAUDT
  & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

*Interim Lead Counsel*

KEOGH LAW, LTD

By:    /s/ Keith James Keogh
            Keith James Keogh

      Keith James Keogh
      Email: keith@keoghlaw.com
      Craig M. Shapiro
      Email: cshapiro@keoghlaw.com
      Timothy J. Sostrin
      Email: tsostrin@keoghlaw.com
      KEOGH LAW, LTD.
      55 W. Monroe Street, Suite 3390
      Chicago, Illinois 60603
      Telephone: (312) 726-1092
      Facsimile: (312) 726-1093

*Liaison Counsel*

- 7 -

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

## CERTIFICATE OF SERVICE

I, Rob Williamson, hereby certify that on November 26, 2014, I electronically transmitted the foregoing to the following:

> Melissa A. Holyoak
> CENTER FOR CLASS ACTION FAIRNESS
> 1718 M Street NW, No. 236
> Washington, DC 20036
> Telephone: (573) 823-5377
> Email: melissaholyoak@gmail.com

DATED this 26th day of November, 2014.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:  /s/ Rob Williamson
Rob Williamson
Email: roblin@williamslaw.com
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
Telephone: (206) 466-6230

*Attorneys for Plaintiff*

- 8 -

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

**Responses of Williamson and Williams to Objector Collins' First Set of Interrogatories to Plaintiffs**

**Response to Interrogatory No. 1**

**Case A**

| Professional | Role | Time | | Rate | | Total |
|---|---|---|---|---|---|---|
| Rob Williamson | Partner | 237.30 | $ | 760.00 | $ | 180,348.00 |
| Kim Williams | Partner | 241.35 | $ | 650.00 | $ | 156,877.50 |
| | | Summary: | 478.65 | | $ | 337,225.50 |
| | | | | Total Lodestar: | $ | 337,225.50 |
| | | | | Total Expenses: | $ | 6,770.00 |
| | | | | Total: | $ | 343,995.50 |

**Response to Interrogatory No. 2**

**Case T**

The Court awarded $1,137,500 in fees and costs.  No multiplier was used by the Court.

| Professional | Role | Time | | Rate | | Total |
|---|---|---|---|---|---|---|
| Rob Williamson | Partner | 303.15 | $ | 760.00 | $ | 230,394.00 |
| Kim Williams | Partner | 320.99 | $ | 650.00 | $ | 208,643.50 |
| Paralegal/Clerk | Paralegal/Clerk | 51.00 | $ | 200.00 | $ | 10,200.00 |
| | | Summary: | 675.14 | | $ | 449,237.50 |
| | | | | Total Lodestar: | $ | 449,237.50 |
| | | | | Total Expenses: | $ | 16,715.00 |
| | | | | Total: | $ | 465,952.50 |

**Case U**

 The Court awarded $750,000 in fees and costs.  A multiplier of 2.2 was used by the Court.

| Professional | Role | Time | | Rate | | Total |
|---|---|---|---|---|---|---|
| Rob Williamson | Partner | 106.25 | $ | 760.00 | $ | 80,750.00 |
| Kim Williams | Partner | 126.25 | $ | 650.00 | $ | 82,062.50 |
| Paralegal/Clerk | Paralegal/Clerk | 61.25 | $ | 100.00 | $ | 6,125.00 |
| Paralegal/Clerk | Paralegal/Clerk | 12.00 | $ | 150.00 | $ | 1,800.00 |

|  |  | Summary: | 305.75 |  | $ | 170,737.50 |
|---|---|---|---|---|---|---|

|  |  | Total Lodestar: | $ | 170,737.50 |
|---|---|---|---|---|
|  |  | Total Expenses: | $ | 5,679.73 |
|  |  | Total: | $ | 176,417.23 |

**Case Z**

| Professional | Role | Time | | Rate | | Total |
|---|---|---|---|---|---|---|
| Rob Williamson | Partner | 146.10 | $ | 760.00 | $ | 111,036.00 |
| Kim Williams | Partner | 120.20 | $ | 650.00 | $ | 78,130.00 |
| Paralegal/Clerk | Paralegal/Clerk | 28.75 | $ | 100.00 | $ | 2,875.00 |
|  |  | Summary: 295.05 | | | $ | 192,041.00 |

|  |  | Total Lodestar: | $ | 192,041.00 |
|---|---|---|---|---|
|  |  | Total Expenses: | $ | 4,963.29 |
|  |  | Total: | $ | 197,004.29 |

**Response to Interrogatory No. 3 - HIGHLY CONFIDENTIAL - SUBJECT TO CONFIDENTIALITY ORDER**

**Case V**

| Professional | Role | Time | | Rate | | Total |
|---|---|---|---|---|---|---|
| Rob Williamson | Partner | 297.55 | $ | 760.00 | $ | 226,138.00 |
| Kim Williams | Partner | 50.85 | $ | 650.00 | $ | 33,052.50 |
|  |  | Summary: 348.40 | | | $ | 259,190.50 |

|  |  | Total Lodestar: | $ | 259,190.50 |
|---|---|---|---|---|
|  |  | Total Expenses: | $ | 33,276.70 |
|  |  | Total: | $ | 292,467.20 |

**Case W**

| Professional | Role | Time | | Rate | | Total |
|---|---|---|---|---|---|---|
| Rob Williamson | Partner | 165.35 | $ | 760.00 | $ | 125,666.00 |
| Kim Williams | Partner | 24.50 | $ | 650.00 | $ | 15,925.00 |
|  |  | Summary: 189.85 | | | $ | 141,591.00 |

|  |  | Total Lodestar: | $ | 141,591.00 |
|---|---|---|---|---|

|  |  |  | Total Expenses: $ | 2,871.40 |
|  |  |  | Total: $ | 144,462.40 |

**Case AA**

| Professional | Role |  | Time | Rate |  | Total |
|---|---|---|---|---|---|---|
| Rob Williamson | Partner |  | 251.80 $ | 760.00 | $ | 191,368.00 |
| Kim Williams | Partner |  | 22.00 $ | 650.00 | $ | 14,300.00 |
|  |  | Summary: | 273.80 |  | $ | 205,668.00 |

|  |  |  | Total Lodestar: $ | 205,668.00 |
|  |  |  | Total Expenses: $ | 18,784.42 |
|  |  |  | Total: $ | 224,452.42 |

**Case BB**

| Professional | Role |  | Time | Rate |  | Total |
|---|---|---|---|---|---|---|
| Rob Williamson | Partner |  | 203.50 $ | 760.00 | $ | 154,660.00 |
| Kim Williams | Partner |  | 72.08 $ | 650.00 | $ | 46,852.00 |
|  |  | Summary: | 275.58 |  | $ | 201,512.00 |

|  |  |  | Total Lodestar: $ | 201,512.00 |
|  |  |  | Total Expenses: $ | - |
|  |  |  | Total: $ | 201,512.00 |

**Case Y**

| Professional | Role | Time | Rate | Total |
|---|---|---|---|---|
| Rob Williamson | Partner | 44.10 | $760.00 | $33,516.00 |
| Kim Williams | Partner | 31.40 | $650.00 | $20,410.00 |
|  | Summary: |  |  | $53,926.00 |

|  |  |
|---|---|
| Total Lodestar: |  |
| Total Expenses: |  |
| Total: |  |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE CAPITAL ONE TELEPHONE CONSUMER LITIGATION ACT LITIGATION | Master Docket No. 1:12-cv-10064 MDL No. 2416 |
| This document relates to: | CLASS ACTION |
| All Cases | JURY TRIAL DEMANDED |

**OBJECTOR COLLINS' SECOND SET OF INTERROGATORIES TO PLAINTIFFS AND WILLIAMSON AND WILLIAMS LLC'S  OBJECTIONS AND ANSWERS THERETO**

Plaintiffs, through their attorneys of record, provide their objections and responses to Objector Collins' second set of Interrogatories to Plaintiffs.

**INTERROGATORIES**

**Interrogatory No. 4:**  Please IDENTIFY all TCPA ACTIONS for which YOUR COUNSEL of record in these proceedings has been awarded attorneys' fees and/or litigation expenses, and for each such action, IDENTIFY:

      a.      The LODESTAR AMOUNT incurred by YOUR COUNSEL, regardless of whether the LODESTAR AMOUNT was requested or submitted to the court;

      b.      The total amount of litigation expenses incurred by YOUR COUNSEL, regardless of whether such expenses were requested or submitted to the court;

      c.      The total amount of attorneys' fees awarded by the court and the specific portion of that amount obtained by YOUR COUNSEL; and

      d.      The LODESTAR MULTIPLIER, if any, used by the court.

- 1 -

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

**ANSWER:** Plaintiffs object to this interrogatory because it is overly broad and unduly burdensome. Plaintiffs further object to this interrogatory because it seeks information not reasonably calculated to lead to the discovery of admissible evidence in this litigation. Plaintiffs object to this interrogatory to the extent it imposes obligations greater than those imposed by Fed. R. Civ. P. 26, 33, and 34. Plaintiffs further object to this interrogatory to the extent it seeks information already in Objector Collins' possession, custody, or control and/or readily available through public databases such as PACER. Plaintiffs further object to the extent this request seeks attorney-client privileged material and/or work product. Plaintiffs further object that the terms "lodestar," "lodestar amount," and "lodestar multiplier," as defined by Objector Collins, are vague and ambiguous, and thus render the interrogatory overly burdensome. Plaintiffs further object that the term "identify" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further object that the term "legal professional" is vague and ambiguous, and therefore renders the interrogatory overly burdensome. Plaintiffs further incorporate by reference all objections asserted in Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion to Lift Stay (Dkt. No. 205), Plaintiffs' Motion for Entry of Confidentiality Order (Dkt. No. 237), Plaintiffs' Reply in Support of Motion for Entry of Confidentiality Order (Dkt. No. 241), and Plaintiffs' Opposition to Objector Jeffrey T. Collins' Motion for Additional Discovery (Dkt. No. 279).

Plaintiffs further object to the extent that the interrogatory is duplicative of Interrogatory No. 2 of Objector Collins' First Set of Interrogatories and will not repeat their response again here.

In responding to these interrogatories and requests for production, Plaintiff will comply with the requirements set forth by Fed. R. Civ. P. 26, 33, and 34, but will not comply with any definitions or instructions that seek to impose further requirements.

All information produced in response to this interrogatory is subject to the Confidentiality

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

Order entered by this Court on November 12, 2014 (hereinafter "Confidentiality Order"). (Dkt. No. 247.) Plaintiffs expressly reserve all rights, including the right to request appropriate sanctions if the information produced in response to this interrogatory is disclosed to anyone other than the persons expressly permitted pursuant to the Confidentiality Order. Without waiving these objections, Plaintiffs answer as follows:

Case T

- Attorneys' Fees received: $548,787.75.
- Costs reimbursed: $16,715.54.
- Lodestar multiplier: No multiplier was used by the Court.

Case U

- Attorneys' Fees received: $368,630.62
- Costs reimbursed: $5,679.73.

- Lodestar multiplier: A multiplier of 2.2 was used by the Court.

Case Z

- Attorneys' Fees Received:  $595,136.64
- Costs reimbursed:  $4,963.29
- Lodestar multiplier: 3.1

RESPECTFULLY SUBMITTED AND DATED this 26th day of November, 2014.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:   /s/ Jonathan D. Selbin
         Jonathan D. Selbin

- 3 -

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

Jonathan D. Selbin, *Admitted Pro Hac Vice*
Email: jselbin@lchb.com
Douglas I. Cuthbertson, *Admitted Pro Hac Vice*
Email: dcuthbertson@lchb.com
LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Daniel M. Hutchinson, *Admitted Pro Hac Vice*
Email: dhutchinson@lchb.com
LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

TERRELL MARSHALL DAUDT
  & WILLIE PLLC

By:    /s/ Beth E. Terrell
           Beth E. Terrell

Beth E. Terrell
Email: bterrell@tmdwlaw.com
Michael D. Daudt
Email: mdaudt@tmdwlaw.com
TERRELL MARSHALL DAUDT
  & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

- 4 -

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

*Interim Lead Counsel*

KEOGH LAW, LTD

By:   /s/ Keith James Keogh
          Keith James Keogh

      Keith James Keogh
      Email: keith@keoghlaw.com
      Craig M. Shapiro
      Email: cshapiro@keoghlaw.com
      Timothy J. Sostrin
      Email: tsostrin@keoghlaw.com
      KEOGH LAW, LTD.
      55 W. Monroe Street, Suite 3390
      Chicago, Illinois  60603
      Telephone:  (312) 726-1092
      Facsimile:   (312) 726-1093

*Liaison Counsel*

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER

## CERTIFICATE OF SERVICE

I, Rob Williamson, hereby certify that on November 26, 2014, I electronically transmitted the foregoing to the following:

> Melissa A. Holyoak
> CENTER FOR CLASS ACTION FAIRNESS
> 1718 M Street NW, No. 236
> Washington, DC 20036
> Telephone:  (573) 823-5377
> Email:  melissaholyoak@gmail.com

DATED this 26th day of November, 2014.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:    /s/ Rob Williamson
       Rob Williamson
       Email:  roblin@williamslaw.com
       936 North 34th Street, Suite 400
       Seattle, Washington  98103-8869
       Telephone: (206) 466-6230

*Attorneys for Plaintiff*

HIGHLY CONFIDENTIAL – SUBJECT TO CONFIDENTIALITY ORDER