**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE<br>CAPITAL ONE TELEPHONE<br>CONSUMER PROTECTION ACT<br>LITIGATION | )<br>)<br>)<br>)<br>) | Master Docket No. 1:12-cv-10064<br>MDL No. 2416 |
| This document relates to:<br><br>BRIDGETT AMADECK, et al.,<br><br>v.<br><br>CAPITAL ONE FINANCIAL<br>CORPORATION, and CAPITAL ONE<br>BANK (USA), N.A. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No: 1:12-cv-10135 |
| This document relates to:<br><br>NICHOLAS MARTIN, et al.,<br><br>v.<br><br>LEADING EDGE RECOVERY<br>SOLUTIONS, LLC, and CAPITAL ONE<br>BANK (USA), N.A. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No: 1:11-cv-05886 |
| This document relates to:<br><br>CHARLES C. PATTERSON,<br><br>v.<br><br>CAPITAL MANAGEMENT<br>SERVICES, L.P. and CAPITAL ONE<br>BANK (USA), N.A. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No: 1:12-cv-01061 |

**NOTICE OF SUPPLEMENTAL AUTHORITY**

Class counsel respectfully submit this Notice of Supplemental Authority to bring to the Court's attention the attached decision the Seventh Circuit issued yesterday in *Wong v. Accretive Health, Inc.*, No. 14-2191 (7th Cir. Dec. 9, 2014) (attached hereto as Exhibit A), and relevant to issues to be decided on Plaintiffs' Motion for Final Approval of Class Action

Settlement, Dkt. 260, and Class Counsel's Motion for Attorneys' Fees and For Service Awards to the Class Representatives, Dkt. 175.

*Wong* involved a non-reversionary all-cash settlement fund of $14 million. An objector argued that the settlement recovered "too low" of a percentage of potential damages. First, the Seventh Circuit found that "[t]he fact that a lawsuit may recover a small portion of a plaintiff's potential damages does not make it frivolous" or inadequate. *Id.* at 6. Second, *Wong* held that it is not an abuse of discretion not to quantify the net expected damages potentially available to the class through continued litigation. *Id.* at 6, 8. Instead, courts must apply the long-standing relevant factors that Plaintiffs set forth in their final approval papers. *Id.* at 7; *see* Dkt. No. 260 at 13-21. The Seventh Circuit upheld the settlement as fair, adequate, and reasonable.

Regarding attorneys' fees, the district court found that an award of 30% of the settlement fund, plus litigation expenses of $63,911.14 and interest, was "consistent with percentage fees negotiated *ex ante* in the private market for legal services." *See Wong v. Accretive Health, Inc.*, Case No. 1:12-cv-03102 (N.D. Ill.), Dkt. No. 84. The Seventh Circuit upheld the attorneys' fee award of $4.2 million. *Wong*, No. 14-2191, at 4.

In valuing the settlement, *Wong* did not deduct the amounts paid to provide direct and publication notice to class members, nor the amounts paid to administer the settlement. *See id. Wong* therefore reiterates the long-standing rule in this Circuit that, when valuing a non-reversionary all-cash settlement fund for purposes of awarding attorneys' fees, courts should not discount the amounts paid for class notice and claims administration. *Cf. Pearson v. NBTY, Inc.*, 2014 U.S. App. LEXIS 21874 (7th Cir. Nov. 19, 2014) (deducting notice and administration costs in a reversionary, claims-made settlement unlike the settlement here).

Consistent with Seventh Circuit authority, neither the district court nor the Seventh Circuit applied a lodestar crosscheck. As commonly occurs when courts award a percentage of the fund, the attorneys' fee award was higher than class counsel's actual lodestar. *See Wong v. Accretive Health, Inc.*, Case No. 1:12-cv-03102 (N.D. Ill.), Dkt. No. 72 at 8 (reporting total lodestar of approximately $890,000).

Class counsel respectfully submit that *Wong* supports the requested fees here. *Wong* awarded attorneys' fees of 30% of the common fund plus costs. Here, Class Counsel seek less than that amount because they request 30% of the common fund without requesting reimbursement of their litigation costs. Class Counsel's request for less than the market rate is therefore supported by *Wong*.

Dated: December 10, 2014

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: /s/ *Jonathan D. Selbin*
Jonathan D. Selbin

Jonathan D. Selbin
Email: jselbin@lchb.com
Douglas I. Cuthbertson
Email: dcuthbertson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Daniel M. Hutchinson
Email: dhutchinson@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Co-Lead Counsel*

TERRELL MARSHALL DAUDT
  & WILLIE PLLC

By:  /s/ *Beth E. Terrell*
         Beth E. Terrell

Beth E. Terrell
Email:  bterrell@tmdwlaw.com
Michael D. Daudt
Email:  mdaudt@tmdwlaw.com
TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington  98103
Telephone:  (206) 816-6603
Facsimile:   (206) 350-3528

*Co-Lead Counsel*

KEOGH LAW, LTD

By:   /s/ *Keith James Keogh*
         Keith James Keogh

Keith James Keogh
Email: Keith@Keoghlaw.com
Craig M. Shapiro
Email: cshapiro@keoghlaw.com
Timothy J. Sostrin
Email: tsostrin@keoghlaw.com
KEOGH LAW, LTD
55 W. Monroe
Suite 3390
Chicago, IL 60603
Telephone:  (312) 726-1092
Facsimile:  (312) 726-1093

*Liaison Counsel*

# EXHIBIT A

# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 14-2191

LINDA WONG, individually and on
behalf of all others similarly situated,

*Plaintiff-Appellee,*

*v.*

ACCRETIVE HEALTH, INC., et al.,

*Defendants-Appellees.*

APPEAL OF: JAMES J. HAYES

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12-CV-03102— **Sharon Johnson Coleman**, *Judge.*

ARGUED OCTOBER 2, 2014 — DECIDED DECEMBER 9, 2014

Before FLAUM, MANION, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* The Indiana State Police Benefit System, as lead plaintiff in a class action, sued Accretive Health, Inc., and two of its officers under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. James Hayes, a

member of the class, appeals *pro se* from the approval of the class settlement and plan of distribution.[1] We hold that the district court did not abuse its discretion in approving the settlement, and therefore affirm.

## I. Background

Accretive is a nationwide company that provides cost control, revenue cycle management, and compliance services primarily to not-for-profit healthcare providers. Underlying the suit are two contracts Accretive entered into with Minnesota-based Fairview Health Systems worth several million dollars each. The first contract, called a Revenue Cycle Operations Agreement ("RCA"), accounted for approximately 12% of Accretive's revenue during the class period. Accretive's second contract with Fairview, called a Quality and Total Cost of Care ("QTCC") contract, was the first of its kind and was held out by Accretive as the future for healthcare services. The Indiana State Police Benefit System ("ISPBS") alleged that Accretive provided its services through overly aggressive

---

[1] Despite Hayes's *pro se* status, he is an experienced litigator. *See, e.g., Hayes v. Harmony Gold Min. Co.*, 509 F. App'x 21, 23 n.1 (2d Cir. 2013) (declining to consider waived argument despite customary solicitude offered to pro se litigants because Hayes is "a frequent class action objector and appellant"), *cert. denied,* 134 S. Ct. 310 (2013); *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 294 (S.D.N.Y. 2010) (concluding that Hayes was a serial objector who must post bond); *In re Genesis Health Ventures, Inc.*, 362 B.R. 657, 662 (D. Del. 2007) ("Suffice it to say that Mr. Hayes has turned the system inside and out to try to obtain this particular relief."), *aff'd*, 248 F. App'x 475, 477 (3d Cir. 2007) (affirming the district court's denial of Hayes's motion for an extension of time to file a notice of appeal after finding Hayes to be "an experienced litigator").

collection practices and with inadequate regulatory compliance, conduct that was both illegal and in violation of its contracts with Fairview. ISPBS further alleged that Accretive concealed this fact and instead represented that it complied with the law and its contractual obligations in an effort to artificially inflate the price of Accretive common stock.

Certain newsworthy events eventually uncovered Accretive's alleged improper and unlawful conduct. On January 19, 2012, the Minnesota Attorney General sued Accretive for failure to comply with healthcare, debt collection, and consumer protection laws. In response to the lawsuit, Accretive announced on March 29, 2012, that it was winding down its RCA contract well short of its five-year term and expecting a loss of $62 to $68 million in revenue. On April 24, 2012, the Minnesota Attorney General released a voluminous and damaging report on Accretive's business practices. Three days later, on April 27th, Accretive announced that Fairview was cancelling its QTCC contract, thereby severing all ties with Accretive. News of these events caused Accretive's stock to plummet from over $24 per share on March 29, 2012, to under $10 per share on April 27, 2012.

Accretive moved to dismiss all claims on the grounds that the alleged misrepresentations were mere puffery or immaterial omissions not actionable as securities fraud and that ISPBS did not adequately allege scienter. The motion was fully briefed, and the district court held a hearing on the motion. After the hearing, the parties submitted the case to an established mediation firm and participated in an in-person session with an experienced mediator. After five weeks of negotiation, before the district court ruled on the motion to

dismiss, the parties agreed to the mediator's proposal of $14 million to settle all claims against Accretive.

The district court granted ISPBS's motion for preliminary approval of the class settlement and plan of distribution and denied Accretive's motion to dismiss as moot. The proposed settlement of $14 million amounted to $0.20 per share, or $0.14 per share once attorneys' fees and expenses were deducted. Notice of the proposed settlement and plan of distribution was sent to over 34,200 potential class members and published in *Investor's Business Daily* and over the *Business Wire*. Only one individual opted out of the class settlement, and only Hayes filed an objection.

At the fairness hearing, the district court granted final approval to the class settlement and plan of distribution and overruled Hayes's objection. The district court awarded attorneys' fees of 30% of the settlement proceeds, or $4.2 million, and expenses in the amount of $63,911.14. Hayes did not attend the proceedings.

## II. Discussion

A district court may approve a class action settlement if it finds it to be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). "In the past, we have gone so far as to characterize the court's role as akin to the high duty of care that the law requires of fiduciaries." *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652–53 (7th Cir. 2006) (quotation omitted). We review such an approval for an abuse of discretion. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). "Our focus, then, is upon the general principles governing approval of class action settlements and not upon the

substantive law governing the claims asserted in the litigation." *Id*. at 1197 (quotation omitted).

Hayes raises five arguments on appeal: 1) the settlement recovers too low a percentage of class members' potential damages; 2) the plan of distribution provides settlement funds to those who were not damaged by the alleged fraud; 3) a district court lacks sufficient information to judge the fairness of a class action settlement prior to ruling on a motion to dismiss; 4) we should adopt a rule that attorneys' fees in class action settlements are deducted from each claim paid by the settlement fund at a set rate per share, what he calls "per share terms"; and, 5) we should direct the district court on remand to replace the lead plaintiff with the named plaintiff and himself. We address each argument in turn.

Hayes's first argument has two parts. First, he contends that the district court erred by approving the settlement because the Private Securities Litigation Reform Act ("PSLRA") of 1995 does not allow it. Hayes correctly points out that Congress enacted the PSLRA to discourage frivolous securities class actions. Recognizing the "concern over the use of then-existing class action procedures to bring strike suits in order to exact extortionate settlements," Congress enacted the PSLRA "to discourage frivolous lawsuits by establishing special procedures for instituting private class actions under the securities laws." Hazen, LAW OF SECURITIES REGULATION § 12.15[1] (6th ed. 2009) (quotation omitted). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (recognizing "the PSLRA's twin goals: to curb frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims"). However, Hayes mistakenly

equates frivolous lawsuits with those that recover a low percentage of potential damages. The fact that a lawsuit may recover a small portion of a plaintiff's potential damages does not make it frivolous. A lawsuit is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Although Congress expressed concern that frivolous lawsuits for securities fraud often resulted in limited recovery for the investor, *see* S. Rep. No. 104-98 at 9 (1995) ("The 'victims' on whose behalf these lawsuits are allegedly brought often receive only pennies on the dollar in damages."), it also expressed concern that abusive lawsuits often resulted in exorbitant settlements, s*ee* H.R. Conf. Rep. No. 104-369 at 32 (1995) ("In these and other examples of abusive and manipulative securities litigation, innocent parties are often forced to pay exorbitant 'settlements.'"). *See also Tellabs*, 551 U.S. at 321 (noting that Congress also limited recoverable damages). When enacting the PSLRA, Congress was not concerned with low recoveries but with abusive practices; the PSLRA is not a *per se* bar to low settlements. *See* H.R. Cong. Rep. No 104-369 at 31–32 (1995).

Next, Hayes relies on our guidance in *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002), that the district court should "quantify the net expected value of continued litigation to the class, since a settlement for less than that value would not be adequate." *Id.* at 284–85. In this case, ISPBS did not provide the district court with a damage estimate from which it could "estimat[e] the range of possible outcomes and ascrib[e] a probability to each point on the range" as laid out in *Reynolds*. *Id.* at 285. As ISPBS explained to the district court, for the court to have quantified the case in this manner would

have required testimony by a damages expert. Any such testimony would have been hotly contested by Accretive. This would have resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class—exactly the type of litigation the parties were hoping to avoid by settling.

Rather, the district court followed our general, long-standing guidance on the matter, namely, that when conducting a fairness determination relevant factors include: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982) (citing *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980)); *see also E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) (restating factors), *Isby*, 75 F.3d at 1199 (same), and *Synfuel*, 463 F.3d at 653 (same). We have deemed the first factor to be the most important: "The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 n.44 (7th Cir. 1979); *see also Synfuel*, 463 F.3d at 653 (quoting same).

The district court considered numerous documents provided by the parties concerning these factors. Accretive was prepared to vigorously contest the lawsuit, having raised

potentially valid defenses. Accretive's motion to dismiss was fully briefed and argued before the district court. Further litigation almost certainly would have involved complex and lengthy discovery and expert testimony. Insurance proceeds to fund a settlement or judgment were a limited, wasting asset, *i.e.*, further defense costs would have reduced those funds. Of the over 34,200 potential class members identified, only one individual opted out and only Hayes objected to the settlement. The counsel who negotiated the settlement during mediation, and ultimately agreed to the mediator's proposal, are highly experienced. Although formal discovery had not commenced, ISPBS had access to extensive public documents, such as the Minnesota Attorney General's report (which included internal company documents otherwise unobtainable up to this point in the proceedings), the Minnesota Department of Health's findings, U.S. Senate hearing transcripts, and a number of potential witness interviews. Finally, and importantly, the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated. So, although we have said that a district court generally should attempt "to quantify the net expected value of continued litigation," *Reynolds*, 228 F.3d at 284, it was not an abuse of discretion to approve the settlement without doing so here. Unlike *Reynolds*, there were no "suspicious circumstances." *Id*. The settlement was reached through extensive arm's-length negotiations with an experienced third-party mediator, the parties contentiously litigated a motion to dismiss, and the district court considered the other factors above.

In his second argument, Hayes argues that the district court abused its discretion by approving a plan of distribution that includes class members not damaged by the alleged fraud. His argument relies on *Dura Pharmaceuticals, Inc., v. Broudo*, 544 U.S. 336 (2005), in which the Supreme Court held that "[a] private plaintiff who claims security fraud must prove that the defendant's fraud caused the economic loss." *Id.* at 338. In so doing, *Dura* stated that proof that a plaintiff sold an inflated security at a loss is by itself insufficient to establish loss causation. *Id.* at 343. One way of establishing loss causation is to "show both that the defendants' alleged misrepresentations artificially inflated the price of the stock and that the value of the stock declined once the market learned of the deception." *Ray v. Citigroup Global Markets, Inc.*, 482 F.3d 991, 995 (7th Cir. 2007). That is the method ISPBS relied upon here. In its amended complaint, ISPBS alleged that the truth of Accretive's misrepresentations was revealed over a period of approximately one month in 2012 that covered the disclosures of March 29, April 24, and April 27, and that the timing and magnitude of the declines in Accretive common stock following these disclosures established loss causation. Thus, those class members who sold their Accretive common stock before March 29, 2012, the first corrective price decline, cannot be said to have suffered economic loss caused by Accretive's alleged fraud.

However, the plan of distribution states that class members will be eligible for a distribution if they suffered a net loss from all transactions of Accretive common stock purchased or acquired during the class period. The plan of distribution accounts for, among others, those who purchased stock on or

after November 10, 2010 and sold the stock on or after November 10, 2010 through April 26, 2012. This period of time includes those who purchased stock during the class period and sold it before the first corrective disclosure on March 29, 2012, *i.e.*, those who cannot show loss causation. Furthermore, the stock was sufficiently volatile during this period that some of those who sold before March 29, 2012 suffered a net loss. The plan of distribution, then, appears to be overbroad because it appears to provide for those who cannot show loss causation but can show a net loss.

Hayes's position is that the district court abused its discretion by approving a plan of distribution that provides for those who cannot show damages, *i.e.*, loss causation, even though it defined the class for purposes of settlement as those individuals who purchased Accretive common stock during the class period "and who were *damaged* by Defendants' alleged violations." (Emphasis added.) Yet, he is mistaken. The plan of distribution, in fact, does not provide for those who cannot show loss causation. An examination of the formula used to calculate settlement distributions reveals that only those who can show loss causation, *i.e.*, those that held their stock until March 29, 2012, will receive a distribution. The claim per share for those who sold before March 29, 2012 will

always be zero.[2] Thus, the district court did not abuse its discretion by approving the plan of distribution.

Hayes's last three arguments are waived on appeal because he failed to raise them at the trial level. *See Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); *Costello v. Grundon*, 651 F.3d 614, 641 (7th Cir. 2011). The waiver of his fourth and fifth arguments is straightforward, but the waiver of his third argument requires some explanation. In the court below, Hayes objected to the settlement on the grounds that the district court could not have adequately determined the settlement's fairness because it established neither the legal sufficiency of ISPBS's claims nor the class's commonality and typicality as required by Fed. R. Civ. P. 23(a). But now Hayes presents the very specific argument that the district court should not have approved the settlement without first testing ISPBS's claims by ruling on Accretive's motion to dismiss. This argument now before us is sufficiently different from that raised below to be considered newly raised, and therefore

---

[2] The portion of the distribution formula at issue is
> If sold on or between November 10, 2010 through April 26, 2012, inclusive, the claim per share shall be the lesser of (i) the inflation in Table A at the time of purchase less the inflation in Table A at the time of sale; and (ii) the difference between the purchase price and the selling price.

Settlement Agreement, Ex. A-1 at 14. Importantly, Table A has one value for the inflation during the time period of November 10, 2010 through March 28, 2012, that is $13.37. *Id.* at 15. So, the calculation for all claims involving sales before March 29, 2012 (those without loss causation) will always be zero: $13.37 – $13.37 = 0.

waived. Nevertheless, a review of our discussion concerning the second part of Hayes's first argument, *supra*, shows that this new argument is also without merit.

### III. Conclusion

Because the district court's approval of the settlement and plan of distribution was not an abuse of discretion, we AFFIRM.