UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE<br>CAPITAL ONE TELEPHONE CONSUMER PROTECTION ACT LITIGATION | Master Docket No. 1:12-cv-10064<br>MDL No. 2416 |
| This document relates to:<br><br>BRIDGETT AMADECK, et al.,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION, and CAPITAL ONE BANK (USA), N.A. | Case No. 1:12-cv-10135 |
| This document relates to:<br><br>NICHOLAS MARTIN, et al.,<br><br>v.<br><br>LEADING EDGE RECOVERY SOLUTIONS, LLC, and CAPITAL ONE BANK (USA), N.A. | Case No. 1:11-cv-05886 |
| This document relates to:<br><br>CHARLES C. PATTERSON,<br><br>v.<br><br>CAPITAL MANAGEMENT, L.P., and CAPITAL ONE BANK (USA), N.A. | Case No. 1:12-cv-01061 |
| JEFFREY T. COLLINS,<br><br>        Objector. | |

**OBJECTOR JEFFREY T. COLLINS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD, AND MEMORANDUM OF LAW IN SUPPORT**

**INTRODUCTION**

Pursuant to Local Rule 54.3, Objector Collins files this motion for attorneys' fees, expenses, incentive award, and memorandum in support.[1] Objectors who provide a material benefit to the class through their objections are entitled to fees as a matter of law. *See Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) (objectors are entitled to attorneys' fees when they improve the settlement). Collins' objection revealed that the fee request of $22.6 million was excessive. *See* Collins Objection, Dkt. 197 at 2-11. Collins argued that, at a minimum, the fee should be decreased by $6.3 million because the court should apply decreasing marginal rates based on the size of the settlement fund. *See id.* at 16 (citing *In re Synthroid Marketing Litigation*, 325 F.3d 974, 980 (7th Cir. 2003) ("*Synthroid II*")). While the Court did not agree with all of Collins' objections, it did agree that it should apply a declining tiered structure, awarding a decreased fee award that returned $6.97 million to the class compared to what class counsel requested. *See* Final Approval Order, Dkt. 329 at 21-22, 34-35, 43.

In addition, Collins sought discovery regarding class counsel's risks in prosecuting TCPA cases. Dkts. 191, 272. Collins submitted an expert report analyzing the discovery which concluded that in a competitive marketplace, class counsel would have been willing to bring this case in return for a contingency fee of 4.61% of recovery. Expert Report of M. Todd Henderson ("Henderson Report"), Dkt. 294, at 10. The district court utilized the information in calculating attorneys' fees because it concluded that the Henderson Report provided "the best information available to the court" reflecting class counsel's risk. Dkt. 329 at 37, *but see id.* at 39-40 (declining to adopt the entire Henderson model).

Collins' request seeks to apply the same 4.61% market rate in Henderson's Report to the benefit conferred by Collins. If Collins is credited with 50% of the $6.97 million benefit to the class jointly achieved by class counsel and by Collins's objection, *see In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 747 (7th Cir. 2011), then Collins' 4.61% contingency request results in an award of $160,619

---

[1] Local Rule 54.3(a) provides that the parties need not confer prior to the filing of the fee motion if the fees would be paid out of a fund created by judgment or by settlement. Collins is seeking fees to be paid out of class counsel's fee award from the settlement fund and thus, pre-motion conference was not required.

(4.61% of $3.48 million improvement credited to Collins). In addition, Collins also seeks reimbursement of $10,000 paid to Professor Henderson for the report relied on by the court. This request is slightly under the actual lodestar incurred by Collins' attorneys, a multiplier of 0.98. This is perhaps a fraction of what Collins would be entitled to under Seventh Circuit law such as *Synthroid* and *Trans Union*. Finally, Collins requests an incentive award of $1,000 for Objector Collins, which is reasonable based on the significant benefit conferred and risk entailed. Collins seeks payment from class counsel for all amounts so as to not deplete the settlement fund.

## BACKGROUND

On December 10, 2012, the Judicial Panel on Multidistrict Litigation ("JPML") created this MDL and ordered consolidation of cases alleging TCPA violations by Capital One. *See* Transfer Order, Dkt. 1 at 2. The JPML ordered transfer of dozens of individual cases and three putative class actions: *Amadeck v. Capital One Financial Corp.*, No. 2:12-cv-00244 (W.D. Wash.) (plaintiffs' counsel Williamson & Williams and Terrell Marshall Daudt & Willie, PLLC ("Terrell Marshall")); *Patterson v. Capital Management Services, L.P.*, et al., No. 1:12-cv-01061 (N.D. Ill.) (plaintiffs' counsel Keogh Law); *Martin v. Leading Edge Recovery Solutions, LLC*, No. 1:11-cv-05886 (N.D. Ill.) (plaintiffs' counsel Burke Law Offices). *Id.* at 3-4.

After transfer, the law firms Lieff, Cabraser, Heimann & Bernstein, LLP ("Lieff Cabraser")— who did not have a case or client in the MDL—along with Terrell Marshall sought appointment as interim lead class counsel and the law firm Keogh Law sought appointment as interim liaison counsel. *See* Motion to Appoint Interim Counsel, Dkt. 11. No other law firm sought appointment and the Court ordered appointment on February 15, 2013. *See* Order Appointing Interim Counsel, Dkt. 12. Plaintiffs filed a consolidated master class action complaint on February 28, 2013 and three weeks later, the Court granted the parties' motion to stay proceedings pending mediation. *See* Consolidated Class Action Complaint, Dkt. 19; Stay Order, Dkt. 39.

Class counsel moved for preliminary approval of a proposed settlement on June 13, 2014. *See* Motion for Preliminary Approval, Dkt. 121. The settlement created a $75,455,099 settlement fund. *See* Amended Settlement Agreement and Release ("Settlement"), Dkt. 131-1 at 10. The 17.5 million class

members could submit a claim for a *pro rata* share of the remaining settlement fund after deducting attorneys' fees, representative incentive payments, and administration expenses. *See* Settlement, Dkt. 131-1 at 13; Transcript of January 15, 2015 Fairness Hearing ("Fairness Haring Transcript"), Dkt. 324. The settlement allowed six law firms (defined as "class counsel" under the settlement) to request up to 30% of the $75,455,099 ($22,636,530). *See* Settlement, Dkt. 131-1 at 13. The six firms included interim lead counsel Terrell Marshall and Lieff Cabraser, liaison counsel Keogh Law, and the additional firms of Williamson & Williams, Burke Law, and Meyer Wilson, Co. *See* Settlement, Dkt. 131-1 at 6. Under the settlement, defendants agreed not to oppose any attorneys' fee request. *See id.* at 13. The class representatives would receive $25,000 for incentive awards ($5,000 each). *Id.* The Court granted preliminary approval, appointing the six firms as "class counsel," and setting the claims deadline for November 26, 2014 and the fairness hearing for December 9, 2014. *See* Order Granting Preliminary Approval, Dkt. 137 at 11.

Class counsel filed their motion for attorneys' fees on September 29, 2014 requesting 30% of the $75.4 million fund ($22.6 million). *See* Motion for Attorneys' Fees ("Fee Request"), Dkt. 176. Before the objection deadline, on October 17, 2014, Objector Collins, represented by the non-profit Center for Class Action Fairness, moved the Court to lift the stay of proceedings for limited discovery regarding class counsel's fee request. *See* Motion to Lift Stay for Limited Discovery, Dkt. 191. Specifically, Collins' sought: (1) class counsel's lodestar in this action for purposes of a cross-check for class counsel's percentage-of-recovery request to confirm that counsel wouldn't be awarded an exorbitant hourly rate and to prevent a windfall; and (2) class counsel's lodestar in previous successful and unsuccessful TCPA cases, which would reflect the actual risk class counsel assumed in prosecuting this action. *Id.* at 7-8, 10-11. Collins explained that under Seventh Circuit law, the district court must award the market rate, which "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Id.* at 9-10 (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 721 (7th Cir. 2001) (*Synthroid I*)). The actual risk class counsel assumed in this action could be quantified by comparing their lodestar investment in TCPA cases they had lost with their lodestar in TCPA cases

they had won. *Id.* at 10. The actual risk assumed by class counsel was an integral part of the district court's *ex post* reconstruction of the *ex ante* market in which class counsel's fee was negotiated. *Id.* at 10-12.

Class counsel opposed Collins' discovery requests. *See* Plaintiffs' Opposition to Lift Stay, Dkt. 205. The Court granted Collins' discovery requests and referred the case to Magistrate Young B. Kim to supervise production and decide obligations regarding confidentiality. Order, Dkt. 209. Collins and class counsel engaged in numerous rounds of briefing and hearings regarding the scope of the protective order and the fee request discovery. Dkts. 234, 237, 239, 241, 246, 248, 252, 364, 257, 279, 282, 285, 356. Magistrate Kim granted plaintiffs' motion for a protective order. Order, Dkt. 247. After class counsel's initial discovery production, Collins moved to compel discovery responses and sought additional discovery including (1) class counsel's lodestar information in another TCPA case also pending before Judge Holderman, *Wilkins v. HSBC Bank Nevada, N.A.*, No. 1:14-cv-190 (N.D. Ill.); and (2) any agreement regarding allocation of the fee award in this action among class counsel's six law firms. *See* Collins' Motion to Compel, Dkt. 272 at 6-7. Magistrate Kim granted Collins' motion as to the deficient discovery responses, but denied the additional discovery requests because they were outside the scope of Judge Holderman's discovery order. *See* Order, Dkt. 282 at 10.

Prior to receiving the discovery, Collins submitted an objection to the settlement on October 27, 2014. *See* Objection, Dkt. 197. Collins did not challenge the total value of the settlement but argued that the attorneys' fee request was excessive, particularly because the settlement was a "nuisance settlement": although the lawsuit alleged that over 16 million class members were entitled to $500 to $1500 damages per violation (totaling over $8 billion), the $75.4 million proposed settlement would distribute an average of less than $3-$4 per class member. *See id.* at 7-8 (citing *Murray v. GMAC*, 434 F.3d 948, 952 (7th Cir. 2006)). Collins challenged the fee request's excessiveness on several grounds. *First*, the request improperly included $4.5 million in estimated notice and administrative costs in contravention of *Redman v. RadioShack*, 768 F.3d 622, 630 (7th Cir. 2014). *See id.* at 16. (Class counsel's Fee Request argued that *Redman* was inapplicable. Fee Request, Dkt. 176 at 10.)

*Second*, the request was excessive because it should have applied diminishing marginal rates given the size of the fund. *See id.* at 11. Collins argued that the fee request should be decreased by *at least* the same diminishing marginal rates applied in *In re Synthroid Marketing Litigation*, 325 F.3d 974, 980 (7th Cir. 2003) ("*Synthroid II*") and his objection included the following table:

| Recovery Tier | Rate | Fee |
|---|---|---|
| $0 to $10 million | 30% | $3,000,000 |
| $10 to $20 million | 25% | $2,500,000 |
| $20 to $46 million | 22% | $5,720,000 |
| $46 to $70.8 million | 15% | $3,720,000 |
| | **TOTAL** | $14,940,000 |

Objection, Dkt. 197 at 13. (Class counsel's fee request made no mention of *Synthroid II* or any discussion of decreasing marginal rates. Fee Request, Dkt. 176.)

And *third,* Collins argued that the discovery he was seeking would show that because class counsel had a successful portfolio of TCPA cases, class counsel did not need a large multiplier of their lodestar to compensate class counsel *ex ante* for the risk incurred in bringing TCPA cases. *See id.* at 15-16. Collins predicted that the discovery would show that a fee award of $4 million would be more appropriate, but "[a]t ***most***, this Court should follow the schedule set forth in *Synthroid II* and award attorneys' fees of no more than $14.9 million instead of the requested $21.2 million, returning over $6.3 million to the class." *See id.* at 16.

Collins' discovery efforts were successful and his predictions were correct. The lodestar for the six law firms totaled $2,213,768, which equaled a 10.2 multiplier for their $22.6 million fee request. *See* Declaration of Daniel Hutchinson, Dkt. 252 at 3-6. After receipt of the discovery, Collins submitted an expert report and supplemental brief. *See* Collins' Supplemental Brief, Dkt. 293; Expert Report of M. Todd Henderson ("Henderson Report"), Dkt. 294. Collins' expert, Professor M. Todd Henderson, a law professor at University of Chicago Law School with economic expertise, reviewed the discovery produced by class counsel which included lodestar and fee award information for 36 cases. *See* Henderson Report, Dkt. 294 at 66-67. The discovery showed that while class counsel was successful in 43% of their cases, 64% of class counsel's lodestar investment resulted in recovery and based on this success rate, a multiplier of 1.57 would be sufficient to compensate class counsel in all

TCPA litigation. *See id.* at 2-3, 61. Henderson concluded that assuming class counsel had expected *ex ante* a $75.5 million settlement value and a $2.2 million lodestar to reach such settlement, then class counsel in a competitive marketplace would have been willing to bring this case in return for a contingency fee of 4.61% of recovery. *See id.* at 10.

Collins appeared through counsel at the fairness hearing on January 15, 2015 and presented argument regarding the excessive fee request and the Henderson Report. *See* Fairness Hearing Transcript, Dkt. 324 at 2, 45-58, 63-65. On February 25, 2015, the Court issued its Memorandum Opinion and Order ("Final Approval Order") approving the settlement and decreasing the fee award from $22.6 million to $15,668,265. Dkt. 329 at 43. While the Court did not agree with all of Collins's arguments, the ones it did agree with increased class recovery by millions of dollars.

*First*, while the Court did not adopt Henderson's conclusion that class counsel should receive a 4.61% contingency fee award,[2] the Court did agree with Collins that the fee award should include decreasing marginal rates similar to those found in *Synthroid II* and utilized the Henderson Report in determining those rates. *Compare* Final Approval Order, Dkt. 329 at 33, *with* Objection, Dkt. 197 at 12-13. The Court included a table, similar to the one above found in Collins' Objection, setting forth the marginal rates:

| Application of Modified *Synthroid II* Structure | | |
| --- | --- | --- |
| **Recovery** | **Fee Percentage** | **Fee** |
| First $10 million | 30% | $3,000,000 |
| Next $10 million | 25% | $2,500,000 |
| $20 to $45 million | 20% | $5,000,000 |
| Excess above $45 million ($30,455,900) | 15% | $4,568,265 |
| **Total Fee** | **19.97%** | **$15,068,265** |

*Compare* Final Approval Order, Dkt. 329 at 35, *with* Objection, Dkt. 197 at 13. The Court reasoned that the *Synthroid II* rates should be adjusted for risk. Dkt. 329 at 37. The Court determined that the

---

[2] The Court held that Professor Henderson's conclusion of a 4.61% negotiated rate may possibly be a good predictor "in a competitive market of homogenous plaintiffs lawyers," but the market for large TCPA cases was not "highly competitive." Final Approval Order, Dkt. 329 at 40-41. The Court also found that Henderson's methodology was limited by the data and not one of the methods accepted by the Seventh Circuit. Dkt. 329 at 41.

Henderson Report was "the best information available to the court" reflecting class counsel's risk. Dkt. 329 at 37. The Court adjusted the tiered structure based on the information in Henderson's Report regarding class counsel's risk:

| Risk-Adjusted Fee Structure | | |
|---|---|---|
| **Recovery** | **Fee Percentage** | **Fee** |
| First $10 million | 36% | $3,600,000 |
| Next $10 million | 25% | $2,500,000 |
| $20 to $45 million | 20% | $5,000,000 |
| Excess above $45 million ($30,455,900) | 15% | $4,568,265 |
| **Total Fee** | **19.97%** | **$15,668,265** |

*See* Dkt. 329 at 39. The Court awarded $15,668,265 in attorneys' fees or 20.77% of the settlement amount. *Id.* at 43. Based on the Court's reduced fee award of $15,668,265, $6,968,265 was returned to the class (difference between $22,636,530 fee request and $15,668,265 fees awarded). Collins' objection regarding decreasing marginal rates and the Henderson Report regarding class counsel's risk were instrumental to the Court's analysis and conclusions and resulted in a $6.97 million benefit for the class. Accordingly, Collins seeks attorneys' fees of $160,619, $10,000 for the Henderson Report, and an incentive award of $1,000 for Collins' role in conferring the benefit achieved.

## ARGUMENT

**I.      Collins is entitled to fees and expenses for the benefit attributable to his Objection.**

Collins is entitled to a share of the total attorneys' fees awarded in this case because he realized a substantial pecuniary benefit to the class. *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) ("If…objections persuade the judge to disapprove it, and as a consequence a settlement more favorable to the class is negotiated and approved, the objectors will receive a cash award that can be substantial."); *Reynolds v. Beneficial National Bank,* 288 F.3d 277, 288 (7th Cir. 2002) (holding that objectors' "lawyers who contribute materially to the proceeding" are entitled to a fee, even if the judge would have *sua sponte* made same finding without the objection); *see also Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994) (error to deny fees to objector that benefitted class); *Rodriguez v. West Publ'g. Corp.*, 563 F.3d 948 (9th Cir. 2009) (holding that it was "clearly erroneous" to deny an objector attorneys' fees where the objector had raised issues that the court had not previously considered on the record).

When such a claim is presented, the court should consider whether the efforts of counsel for the objectors "improved the settlement, assisted the court, and/or enhanced the recovery in any discernible fashion." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PriceWaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 413 (E.D. Wis. 2002).

In *In re Trans Union Corp. Privacy Litigation*, the Seventh Circuit found that an objector's fee award "was too small." 629 F.3d 741, 748 (7th Cir. 2011). The Seventh Circuit affirmed the special master's finding that 50% of the improvement in class benefit should be credited to the objectors (and 50% of the improvement credited to MDL counsel who had negotiated the initial settlement). *Id.* at 747. The Seventh Circuit concluded that because the objector was responsible for 22% of the total benefit conferred, she was entitled to 22% of the total fee award that should have been awarded, increasing her fee award from $2.7 million to $4.125 million. *Id.* at 748.

Here, as a result of Collins' objection, the class benefit increased by $6.97 million. Class counsel requested 30% of the $75.4 million fund ($22.6 million) without mention of decreasing marginal rates or *Synthroid II*. Fee Request, Dkt. 176. Defendants had agreed under the settlement not to challenge the fee request and thus provided no information regarding a reasonable market rate. It was Collins that argued to the court that at a minimum, the court should utilize the tiered structure in *Synthroid II* and decrease fees by $6.3 million. Objection, Dkt. 197 at 16. The court's opinion included a table like the one in Collins's objection and utilized a tiered structure similar to the one proposed by Collins, resulting in a decreased fee award and returning $6.97 million to the class. Like *In re Trans Union*, Collins is jointly responsible for that benefit and if credited with 50% of that increase, Collins is responsible for $3.48 million improvement. The $3.48 million increase credited to Collins equals 4.62% of the gross $75.4 settlement amount.[3] Under *In re Trans Union*, Collins would thus be entitled to 4.62% of the $15,668,265 total attorneys' fees awarded, or $723,873. Collins' request, however, is merely a fraction of that amount.

---

[3] It is an even higher 4.95% percent of the more relevant net settlement amount of $70.3 million.

In his Supplemental Brief, Collins argued that the market rate for class counsel's fee request was a 4.61% contingency fee based on Professor Henderson's conclusions. Henderson Report. Dkt. 293 at 10. Applying that same 4.61% market rate to the improvement credited to Collins, Collins seeks 4.61% of the $3.48 million increase, or $160,619. Collins would be within his rights to request $723,873; his actual request for $160,619 is less than one-fourth of that and well within the range of acceptable percentage fee awards. *See, e.g., to McDonough v. Toys "R" Us, Inc., et al.* (06-cv-242), 2015 U.S. Dist LEXIS 7510, at *143-*44 (E.D. Pa. Jan. 21, 2015) (awarding Center for Class Action Fairness $742,500 in fees, or 9.9% of the $7.5 million benefit credited to CCAF objector); *Dewey v. Volkswagen of Am.*, No. 07-2249, 2012 U.S. Dist. LEXIS 177844, at *64 (D.N.J. Dec. 14, 2012) (awarding the Center for Class Action Fairness "10.5% of the benefit conferred, well within the range of acceptable percentages-of-recovery"); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. 2011) (finding that "10% [of $3 million benefit conferred] is reasonable and appropriate to reflect Objectors' time, effort, ingenuity and success in increasing the kitty for the benefit of the Class"); *Lan v. Ludrof,* 2008 WL 763763, at *28 (W.D. Pa. Mar, 21, 2008) (awarding objector 25% of the increase in the benefit to the class); *see also In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 12, 2012) (noting that award of $100,000 "if anything" "would have undercompensated CCAF" where $100,000 was roughly 5% of the monetary benefit conferred). Collins' fee request of $160,619 should be granted because it is much less than what he would be entitled to under Seventh Circuit law based on the significant benefit his Objection conferred.

Finally, the only expense Collins is seeking reimbursement for is the Henderson Report. Professor Henderson charged Collins a $10,000 flat fee, giving Collins a significant discount because the Center for Class Action Fairness is a non-profit public interest firm. *See* Henderson Report, Dkt. 294 at 12. The Court relied on the Henderson Report in calculating attorneys' fees and held that it was "the best information available to the court" in assessing class counsel's risk. Final Approval Order, Dkt. 329 at 37. Reimbursement of the Henderson Report is appropriate because the Henderson Report was greatly discounted and instrumental in the court's analysis.

II. **Objectors' fee awards should be funded from class counsel's fee award.**

"[T]he 'common benefit' theory is premised on a court's equity power" *United Steelworkers of Am. v. Sadlowski*, 435 U.S. 977, 979 (1978); *accord Rodriguez v. Disner*, 688 F.3d 645, 654 (9th Cir. 2012). Where class counsel initially endorses an unfair settlement, necessitating the participation of objecting class members, the equities are clear. It would be highly inequitable to require the class to foot the bill for **both** class counsel **and** again for objector's counsel, when class counsel alone created the necessity of objection by tendering an unreasonable fee request in the first place. *See Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) ("While a court of equity will on swift wings fly to relieve the innocent from wrong and injury, it travels with leaded feet and turns a deaf ear, when called on to furnish a cloak of righteousness to cover sin.") (quoting *Grant v. Grant*, 286 S.W. 647, 650 (Tex. Civ. App. 1926)). Class counsel's fee proposal in this case would have distributed to class members nearly $7 million less than that to which they were entitled. If the Court were to award the objector's fee from the class's share of the fund even though class counsel had earlier sought an excessive fee as part of an untenable allocation, then class counsel "would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful." *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980); *see also Commonwealth Electric Co. v. Woods Hole*, 754 F.2d 46, 49 (1st Cir. 1985) ("Outside-chance opportunity for a megabucks prize must cost to play.")

Class counsel cannot justify shifting the costs of combating their unsupportable fee request to the class. As between the class members and class counsel, "equity requires that the loss, which in consequence thereof must fall on one of the two, shall be borne by him by whose fault it was occasioned." *Neslin v. Wells*, 104 U.S. 428, 437 (1882). As the venerable Supreme Court reporter and jurist Henry Wheaton observed at oral argument in *Hunt v. Rousmanier's Adm'rs*, 21 U.S. (8 Wheat) 174 (1823), "no maxim of equity is better established than this, 'that no man is entitled to the aid of a Court of equity, when the necessity of resorting to that Court is created by his own fault.'" The costs of proposing an initially unreasonable allocation should not be borne by the class members

themselves, who had nothing to do with the first proposal. The costs should be borne by class counsel, who had complete responsibility for fee proposal. The class should not have to pay twice for a benefit they should have received at the outset. *See Classmates*, 2012 U.S. Dist. LEXIS 83480, at *20 ("[C]lass counsel cannot satisfy its duty to the class by ignoring the weaknesses in the settlements it negotiated."); *id.* at *23 (reducing fee to less than 20% of the common fund to "reflect[] that counsel should not benefit from its efforts to win approval of an inadequate settlement."); *McDonough*, 2015 U.S. Dist LEXIS 7510, at *112 (debiting objector's fee award from class counsel's award because class' benefit was only achieved on the "second try"); *cf. also Belleville Catering Co. v. Champaign Mkt. Place, LLC*, 350 F.3d 691, 694 (7th Cir. 2003) ("[C]lients [should] pay just once for the litigation….[and should] not pay for lawyers' time that has been wasted for reasons beyond the clients' control.").

Perhaps this is why many courts across the nation have held that objector fees should be paid out of class counsel's award.[4] It is not punitive when, as listed above, objectors' fees are paid from the same pot awarded to class counsel. Rather, doing so recognizes several realities, equities, and best practices of settlement and class representation. The court's opinion in *Great Neck* provides pertinent discussion of this issue. 212 F.R.D. at 416-17. There, the court recognized its equitable discretion to impose the burden of paying objector's fees on the class but correctly declined to do so, based on its recognized fiduciary obligation to safeguard the class funds, especially in a pre-certification settlement and in light of the fact that the amount per claimant was already modest. *Id.* at 417. Instead, the *Great Neck* court awarded the objector fees from "class counsel and the defendants as they may agree but without diminution of the sum awarded to the class." *Id.*; *accord Ikon Office Solutions*, 194 F.R.D. at 197

---

[4] *See e.g., McDonough*, 2015 U.S. Dist LEXIS 7510, at *112 (awarding objector's attorneys' fees out of class counsel's fee award); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 125041, at *27 n.1 (D. Mass. Sept. 8, 2014) (same); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-817 (N.D. Ohio 2010) (same); *Parker v. Time Warner Entm't Co., L.P.* 631 F. Supp. 2d 242, 277 (E.D.N.Y. 2009) (same); *Prudential*, 273 F. Supp. at 573 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695, 697 (3d Cir. 2004) (same); *In re Ikon Office Solutions*, 194 F.R.D. 166, 197 (E.D. Pa. 2000) (same); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 2 F. Supp. 2d 175, 176 (D. Mass. 1998) (same); *In re Horizon/CMS Healthcare Corp. Secs. Litig.*, 3 F. Supp. 2d 1208, 1215 (D.N.M. 1998) (same); *In re Citigroup Secs. Litig.*, No. 07-cv-9901(SHS), Dkt. No. 286, Order at 1-2 (S.D.N.Y. Sept. 10, 2013) (same with objector's expenses).

(Objectors' "fees and costs will be taken from class counsel's award to avoid dilution of the settlement fund.").

Awarding all legal expenses from the initial fee pot is not merely equitable, it is also good public policy. It provides a practical incentive for class counsel to avoid proffering settlements that have a high probability of being objectionable to class members and to courts. Plenty of unfavorable settlements are approved quickly, quietly and unopposed, without a single objection filed. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 FJC survey of several federal districts that reported between 42% and 64% of settlements engendered no filings by objectors); *see generally In re Continental Ill. Secs. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) ("No class member objected either—but why should he have? His gain from a reduction, even a large reduction, in the fees awarded the lawyers would be minuscule"). Add to that the reality that non-profit watchdog groups cannot be everywhere at one time, and it is readily apparent why class counsel must be encouraged to submit good requests on their own. If they are not even responsible for paying the comparatively minimal fees of successful objectors, then there will be little if any incentive for them to reach good settlements from the very outset.

### III.   This request is below lodestar, even though the Seventh Circuit mandates a multiplier for contingent-fee litigation.

The Center staffs its cases very leanly. Here, the lodestar for Collins' attorneys, Melissa A. Holyoak, Adam Schulman, Ted Frank and local counsel Kirstin Ives, for several rounds of briefing and hearings regarding discovery requests and protective order, submission of an objection, expert report and supplemental briefing, and attendance at a fairness hearing is $164,562. *See* Declaration of Melissa A. Holyoak ("Holyoak Decl.") (attached at Exhibit 1), ¶¶ 21, 30. The lodestar excludes time after the court's Final Approval Order on February 25, 2015. The lodestar is conservative and excludes all expenses. Collins' attorneys' average blended rate was $497/hour, *see* Holyoak Decl., ¶ 29, which is lower than class counsel's average blended rate of $519/hour (before a multiplier). *See* Hutchinson Declaration, Dkt. 252 at 3-6. It is likely that class counsel's lodestar exceeded Collins' attorneys' lodestar for the same issues.

Objection entails risks. There is no guarantee a court will honor objections and even a successful objection may merely scuttle a settlement without class benefit creating an entitlement to attorneys' fees; and, class counsel may still challenge an objector's entitlement to fees even after an objection results in a $6.97 million improvement (such as here) in direct benefit to the class. *E.g., McDonough*, 2015 U.S. Dist LEXIS 7510, at *138. Under Seventh Circuit law, attorneys who take on cases on a contingent-fee basis with risk of nonpayment are entitled to a multiplier of their lodestar to compensate them for that *ex ante* risk. *E.g., Synthroid II,* 325 F.3d at 978; *Florin v. Nationsbank of Georgia, NA*, 60 F.3d 1245, 1248 (7th Cir. 1995).

The Center is a 501(c)(3) non-profit public-interest law firm precluding the Center attorneys from personally profiting from any fee award. *See* Holyoak Decl., ¶ 6. The Center is also limited by tax law in the amount it can earn from court-awarded fees in a given year to a percentage of its total annual expenses. *Id.* ¶ 10. Center attorneys have billed thousands of hours in dozens of cases where no fees were paid to the Center, even in cases where the Center was successful on appeal. *Id.* ¶ 11. A $160,619 award to the Center for $164,562 of lodestar time is a 0.98 multiplier, which, given the degree of success, the degree of risk, and the efficiency of the lodestar, is a fraction of what Collins is entitled to and is presumptively reasonable. *See Perdue v. Kenny A*, 139 S.Ct. 1662 (2010).[5]

## IV. Objector Collins is entitled to an incentive award.

Collins requests a $1000 incentive award. It is appropriate to award objectors incentive payments for their role in conferring a benefit upon the class. *McDonough*, 2015 U.S. Dist LEXIS 7510, at *152; *Dewey*, 909 F. Supp. 2d at 398-400; *Lonardo*, 706 F. Supp. 2d at 816-17; *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF, 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011).

---

[5] While CCAF, as a non-profit, is limited in the total awards of fees it may receive in any given year-to-year period, Rev. Proc. 92-59, 1992-2 C.B. 411, its non-profit status does not preclude it from being awarded fees as any other counsel. Representation that is *pro bono* and/or by a non-profit does not preclude a request for attorneys' fees of the same size that a for-profit firm could recover. *E.g., In re Primus*, 436 U.S. 412, 429-31 (1978) (ACLU and NAACP); *Blum v. Stenson*, 465 U.S. 886, 894-95 (1984) (*pro bono* publico representation not grounds for reducing attorneys' fees) (42 U.S.C. § 1988); *Cuellar v. Joyce*, 603 F.3d 1142 (9th Cir. 2010) ("The fact that Cuellar's lawyers provided their services pro bono does not make a fee award inappropriate.").

Collins devoted significant personal time including submission of his *pro se* objection prior to contacting the Center for Class Action Fairness. *See* Dkt. 143; Holyoak Decl. ¶ 32-34. By objecting, Collins exposed himself to the risk of harassing discovery and private investigation from the plaintiffs' attorneys; other CCAF clients have faced vitriolic personal attacks and abusive discovery requests when objecting, and many potential CCAF clients genuinely upset with abusive class-action settlements have declined to object when informed of these risks. *See, e.g. Classmates, supra* (describing the "hammer and tongs" approach of class counsel); Rob Capriccioso, *McCain Opposes Harper Nomination to UN Council, Citing Indian Concerns*, INDIAN COUNTRY TODAY MEDIA NETWORK, Sept. 24, 2013, http://indiancountrytodaymedianetwork.com/2013/09/24/mccain-opposes-harper-nomination-un-council-citing-indian-concerns-151434 (last visited July 17, 2014) (recounting how class counsel in *Cobell* case had revealed personal information of objecting class members in an attempt to intimidate them into dropping their appeal); *see generally Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 926 (9th Cir. 2014), *opinion vacated on other grounds* 772 F.3d 608, ("[C]ourts commonly require objectors to make themselves available for deposition…").

Collins' request is a fraction of the $5,000 incentive payments awarded to each of the five class representatives. Objectors, if they are willing to sacrifice the larger interests of the class, are able to settle their objections for substantial sums much larger than the $5,000 incentive payments. *See, e.g.*, Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 428-32. Even when *pro bono* counsel is available, class members have little incentive to object and jump through hoops and hurdles erected by the settling parties. Just as class representatives receive incentive payments, so should objectors whose objections meaningfully contribute to class recovery.

## CONCLUSION

For the foregoing reasons, Objector Collins respectfully requests the Court to award the Center for Class Action Fairness $160,619 in attorneys' fees and $10,000 in expenses, and an incentive award to Objector Collins of $1,000, with all amounts to be deducted from the Rule 23(h) award to class counsel.

Dated: May 14, 2015.

<u>/s/ Melissa A. Holyoak</u>
Melissa A. Holyoak, (DC Bar No. 487759)
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (573) 823-5377
Email: melissaholyoak@gmail.com

*Attorneys for Objector Jeffrey T. Collins*

**CERTIFICATE OF SERVICE**

    The undersigned certifies she electronically filed the foregoing Motion for Attorneys' Fees, and Memo in Support via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing. Additionally she caused to be served via First-Class mail a copy of this Motion and Memo in Support upon the following:

| | |
|---|---|
| Andre Verdun<br>Crowley Law Group<br>401 West "A" Street, Suite 925<br>San Diego, CA 92101<br><br>Chelsea Hamill<br>Doll Amir and Eley LLP<br>1888 Century Park East, Suite 1850<br>Los Angeles, CA 90067<br><br>Christy T. Nash<br>Burr & Forman LLP<br>Suite 3200<br>201 N. Franklin St.<br>Tampa, FL 33602<br><br>Darren Sharp<br>Armstrong Teasdale LLP<br>2345 Grand<br>Suite 2000<br>Kansas City, MO 64108<br><br>George C Bedell<br>Lash & Wilcox, PL<br>4401 W. Kennedy Blvd., Suite 210<br>Tampa, FL 33609 | Jeanne Lahiff<br>Sleemi Law Firm<br>2001 Route 46<br>Suite 310<br>Parsippany, NJ 07054<br><br>Kenneth Grace<br>Sessions Fishman Nathan & Israel LLC<br>3350 Buschwood Park Drive, Ste 195<br>Tampa, FL 33618-4317<br><br>Marjorie Bergiste<br>10352 Old Winston Ct<br>Lake Worth, FL 33449<br><br>Mitchell B. Levine<br>Fishman McIntyre P.C.<br>12th Floor<br>44 Wall Street<br>New York, NY 10005<br><br>Sarah Nicole Davis<br>Morrison & Foerster<br>425 Market St<br>SF, CA 94105<br><br>Devera R.D. Bartte<br>3440 SW 28th Terrace<br>Apt A<br>Gainesville, FL 32608 |

Dated: May 14, 2015.          /s/ Melissa A. Holyoak